## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Mark Anthony REID, | ) |
| | ) |
| on behalf of himself and others | ) |
| similarly situated, | ) |
| | ) |
| *Petitioner/Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| Christopher DONELAN, Sheriff, | )   Case No. |
| Franklin County, Mass; David A. LANOIE, | ) |
| Superintendent, Franklin County Jail & | ) |
| House Of Correction; Janet | ) |
| NAPOLITANO, Secretary of the | ) |
| Department of Homeland Security; | ) |
| John MORTON, Director of Immigration | ) |
| and Customs Enforcement; Dorothy | )   July 1, 2013 |
| HERRERA-NILES, Director, | ) |
| Immigration and Customs Enforcement | ) |
| Boston Field Office; Thomas HODGSON, | ) |
| Sheriff, Bristol County, Mass, Joseph | ) |
| McDONALD, Jr., Sheriff, Plymouth | ) |
| County, Mass, Steven TOMPKINS, | ) |
| Sheriff, Suffolk County, Mass.; Eric | ) |
| HOLDER, Attorney General of the United | ) |
| States; Juan OSUNA, Director of the | ) |
| Executive Office for Immigration Review; | ) |
| and THE EXECUTIVE OFFICE FOR | ) |
| IMMIGRATION REVIEW, | ) |
| | ) |
| *Respondents/Defendants*. | ) |

## PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

In 2009, this Court concluded that the prolonged no-bond detention of an immigrant confined in the Franklin County Jail was not authorized by the immigration statutes or the Constitution, holding  that "an alien can be detained without a hearing so long as the detention is reasonable, by which the Court meant (among other things perhaps) of limited duration." Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009).  The government did not appeal this decision.  In subsequent years, several other judges in the District of Massachusetts expressly adopted this Court's reasoning, rejecting the government's preferred reading of 8 U.S.C. § 1226; the government also declined to appeal those decisions.

This litigation choice has led to pernicious consequences for immigration detainees throughout the District.  Government counsel appearing in the Hartford and Boston Immigration Courts have objected to the conduct of a bond hearing for persons similarly situated to Bristout Bourguignon by repeating the very arguments rejected by this Court and other judges in the District.  The immigration judges adjudicating the cases of Massachusetts-based immigration detainees refuse to hold bond hearings in the absence of binding circuit law compelling them to do so. Thus, individual detainees, many of whom are indigent, must retain counsel to file an individual habeas petition seeking a bond hearing once their no-bond detention becomes prolonged and thus unauthorized by 8 U.S.C. § 1226.

Petitioner Mark Reid is the most recent victim of the government's refusal to provide long-term detainees with a bond hearing. Mr. Reid, a lawful permanent resident and honorably discharged veteran, who is currently pursuing a colorable Convention Against Torture claim for relief from removal before the Board of Immigration Appeals, has been detained in civil immigration custody for nearly eight months. He has never received an individualized bond

hearing. No court has ever determined whether Mr. Reid is dangerous or a flight risk, and he has prepared an extensive post-release support plan including housing, psychological and spiritual counseling, and continuing education, should he be released.

As this Court held in Bourguignon, Mr. Reid's prolonged, no-bond detention is not authorized by any immigration statute, and it also violates his rights under the Due Process Clause of the Fifth Amendment and the Excessive Bail Clause of the Eighth Amendment. In addition, Mr. Reid's continued unlawful detention fits a widespread pattern and practice, custom, and policy applied to many individuals detained by U.S. Immigration and Customs Enforcement ("ICE") pursuant to an interpretation of 8 U.S.C. § 1226(c) that this Court has previously held unlawful. On behalf of himself and others similarly situated, Mr. Reid respectfully applies to this Court for a writ of habeas corpus to remedy his prolonged unlawful detention by Respondents and for declaratory and injunctive relief to prevent such harms from recurring.

In addition, at the hearing on his motion for bond redetermination held two weeks ago in Hartford Immigration Court, immigration authorities shackled Mr. Reid at his hands, waist, and feet, over the objection of Mr. Reid's counsel. Mr. Reid was shackled for the entirety of the proceeding, pursuant to what the government attorney described as a blanket policy of mandatory shackling of all immigration detainees in court, without regard for individual circumstances.  The Immigration Judge disclaimed authority to order Mr. Reid unshackled.  As to himself only, Mr. Reid requests an order that should the writ be granted and a bond hearing held in Immigration Court, he not be shackled absent a showing of individualized need.

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1343, 1361, 2201-02, and 2241, and Article III of the Constitution.

2.      Venue lies within the District of Massachusetts because Mr. Reid is presently detained in the Franklin County Jail and House of Correction in Greenfield, Massachusetts, in the physical custody of the Sheriff of Franklin County, Massachusetts.

## PARTIES

3.      Petitioner[1] Mark A. Reid is a representative of a proposed class of all individuals currently held for more than six months in mandatory ICE custody in Massachusetts, pursuant to its unlawful interpretation of  8 U.S.C. § 1226(c), and all individuals in Massachusetts in future mandatory immigration custody for more than six months pursuant to this same faulty statutory interpretation.

4.      Mr. Reid is a citizen of Jamaica and a Lawful Permanent Resident ("LPR") of the United States.  He is currently being detained by ICE at the Franklin County Jail and House of Correction in Greenfield, Massachusetts.

5.      Respondent Christopher Donelan is the Sheriff of Franklin County, Massachusetts. Mr. Donelan has custody of Mr. Reid and other members of the proposed class. He is sued in his official capacity.

6.      Respondent David Lanoie is the Superintendent of Franklin County Jail and House of Correction. Mr. Lanoie has custody of Mr. Reid and other members of the proposed class. He is sued in his official capacity.

---

[1] This is a representative Petition for a Writ of Habeas Corpus with respect to Counts 1-6 and a Complaint for Injunctive and Declaratory Relief with respect to Count 7. For ease of reading, the terms "petitioner(s)" and "respondent(s)" are used throughout this Petition and Complaint.

7.      Respondent Janet Napolitano is the Secretary of Homeland Security. ICE is a unit of the Department of Homeland Security ("DHS").   Secretary Napolitano has immediate custody of Mr. Reid and other members of the proposed class. She is sued in her official capacity.

8.      John Morton is the Director of ICE. Director Morton has immediate custody of Mr. Reid and other members of the proposed class. He is sued in his official capacity.

9.      Dorothy Herrera-Niles is the District Director of ICE's Boston Field office, which has immediate custody of Mr. Reid and other members of the proposed class. She is sued in her official capacity.

10.      Thomas Hodgson is the sheriff of Bristol County, Massachusetts. Sheriff Hodgson has immediate custody of members of the proposed class. He is sued in his official capacity.

11.      Joseph McDonald, Jr. is the sheriff of Plymouth County, Massachusetts. Sheriff McDonald has immediate custody of members of the proposed class. He is sued in his official capacity.

12.      Steven Tompkins is the sheriff of Suffolk County, Massachusetts. Sheriff Tompkins has immediate custody of members of the proposed class. He is sued in his official capacity.

13.      Eric Holder is the Attorney General of the United States. The Attorney General oversees the operation of the Executive Office for Immigration Review. The Attorney General shares responsibility for the implementation and enforcement of the immigration laws with the Secretary of Homeland Security. He is sued in his official capacity.

14.      The Executive Office for Immigration Review ("EOIR") is an agency within the U.S. Department of Justice with the primary mission of adjudicating immigration cases,

including cases involving detained immigrants. One of EOIR's immigration courts is the Hartford Immigration Court, located at 450 Main Street in Hartford, Connecticut.  Another is the Boston Immigration Court, located at 15 New Sudbury Street in Boston, Massachusetts.  All the Immigration Judges in Boston and Hartford are members and employees of EOIR.

15.     Juan Osuna is the Director of EOIR and is responsible for EOIR's policies, practices, and procedures. Director Osuna is sued in his official capacity.

## FACTS AND PROCEDURAL BACKGROUND

16.     Mr. Reid was born in Jamaica on April 7, 1964. Mr. Reid's mother, Beverly Pryce, emigrated from Jamaica to the United States for work when Mr. Reid was two years old. Mr. Reid's mother left him in the care of his maternal grandmother and other relatives. Mr. Reid knew his father as a child but did not live with him.

17.     When Mr. Reid was fourteen years old, his mother sought permission to bring him to the United States, and in 1978, Mr. Reid entered the United States as an LPR.

18.     Mr. Reid first lived with his mother and stepfather in Roselle, New Jersey. Following his mother's divorce, Mr. Reid and his mother moved to Plainfield, New Jersey.

19.     Mr. Reid attended high school in the United States. He did not graduate due to multiple changes of residence and school and his struggles to cope with trauma he experienced as a child, but eventually he earned his GED from the Tomlinson Adult Learning Center in St. Petersburg, Florida.

20.     In the early 1980s, Mr. Reid moved to New Haven, Connecticut to work for his uncle Murvelle in construction.

21.     In 1984, at 20 years old, Mr. Reid enlisted in the United States Army Reserve out of a desire to serve his country.  At the time, Mr. Reid's military recruiter told him that if he joined the Reserve, the military would take care of his citizenship.

22.     While in the Army Reserve, Mr. Reid worked in construction and at a Wendy's restaurant.

23.     Mr. Reid served in the Army Reserve until 1990, when he was honorably discharged.  At that time, he believed that he had become a U.S. citizen.

24.     Following his honorable discharge, Mr. Reid pursued post-secondary education and held several jobs. He has taken courses in business administration, paralegal skills, and criminalistics.   He earned a certificate as a loan originator from Walter and Associates, a financial services firm in New Haven.

25.     Mr. Reid has been employed by Walter and Associates and Liberty Mortgage in Milford, Connecticut. He has also worked in construction and asbestos removal.

26.     In addition, Mr. Reid has earned income from residential rental properties. With the money he earned from working in asbestos removal, Mr. Reid was able to put a down payment on his first property in the late 1990s. He purchased three other properties using income from his job as a loan originator.

27.     Mr. Reid has two children—Ryan Mabry, born 1987, and M.R., a minor—both of whom are U.S. citizens. Ryan recently graduated from the University of Maryland in Baltimore. Mr. Reid understands that he plans to enlist in the United States Navy. M.R., with whom Mr. Reid is close, lives in New Haven with her mother.

**Mr. Reid's Convictions**

28.     Mr. Reid started using illegal drugs in the 1980s, at a time when he was angry and confused about trauma he experienced as a child. He was first arrested for drug possession in 1986, and has been incarcerated four times for drug-related offenses. He also has a non-drug related criminal history.

29.     In 1986, Mr. Reid was convicted of one count of possession of narcotics. In 1988, he was convicted of one count of second degree larceny and one count of possession of narcotics. In 1992, he was convicted of one count of misdemeanor assault. In 1993, Mr. Reid was convicted of one count of carrying a dangerous weapon. In 1995, he was convicted of interfering with an officer. In 1997, Mr. Reid was convicted of one count of threatening and one count of failure to appear. In 1998, he was convicted of one count of possessing a weapon in a motor vehicle and a separate count of reckless endangerment. In 1999, Mr. Reid was convicted of a motor vehicle violation of driving with a suspended license as well as one count of failure to appear. In 2000, Mr. Reid was convicted of one count of misdemeanor assault and two counts of failure to appear. In 2004, Mr. Reid was convicted of two counts of possession of narcotics, two counts of illegally selling a hallucinogenic narcotic, one count of selling an illegal drug, one count of failure to appear, and two probation violations. In 2010, Mr. Reid was convicted of one count of sale of an illegal drug, one count of third degree burglary and one count of failure to appear.

30.     Mr. Reid served approximately two years of his most recent jail sentence and was paroled by the Connecticut Department of Corrections on November 13, 2012 to ICE custody. He became sober during his incarceration.

31.     Should Mr. Reid be released from ICE custody, he will be subject to electronic monitoring and other conditions previously set by the Connecticut Board of Pardons and Paroles.

**Mr. Reid's Removal Proceedings**

32.     In the fall of 2012, ICE issued an administrative immigration detainer for Mr.

Reid. Mr. Reid first became aware that he was not a U.S. citizen when he learned of the detainer.

33.     ICE issued a Notice to Appear ("NTA") on November 13, 2012 charging Mr.

Reid with two grounds of removability, as a noncitizen convicted of an aggravated felony and a

controlled substance violation. ICE took custody of Mr. Reid and, on the same day, refused to set

any bond for him.

34.     On December 3, 2012, Mr. Reid, through counsel, conceded the factual

allegations and charges in the NTA. However, Mr. Reid contested his removability by stating his

intention to apply for relief from removal under the Convention Against Torture ("CAT") and to

file a motion to terminate proceedings on the ground that removal would be disproportionate.

35.     In a written opinion dated April 5, 2013 Immigration Judge ("IJ") Verrillo denied

Mr. Reid's application for deferral of removal under CAT and ordered Mr. Reid removed to

Jamaica.  IJ Verrillo did not address Mr. Reid's separate claim that his removal is barred by the

Fifth Amendment's requirement that punishment be proportional to the gravity of an individual's

underlying misconduct.

36.     Mr. Reid, through counsel, timely filed a Notice of Appeal of his removal order to

the Board of Immigration Appeals ("BIA").  His opening brief is due July 11, 2013.

**Mr. Reid's Bond Proceeding**

37.     On June 10, 2013, Mr. Reid filed a motion for bond redetermination with the

Immigration Court in Hartford. On June 12, 2013, the Court scheduled a hearing for June 13,

2013.  On June 13, 2013, counsel for ICE requested that the hearing be postponed so that Senior

Attorney John Marley could handle the matter.  The Immigration Court granted ICE's
application and continued the hearing to June 17, 2013.

38.     On June 17, 2013, Mr. Reid appeared before IJ Verrillo in Hartford, Connecticut
and through counsel renewed his request for a bond redetermination hearing.

39.     Mr. Reid was escorted into the courtroom by two law enforcement officers.  On
information and belief, at least one of the law enforcement officers was an ICE officer.   Mr.
Reid's hands, waist, and feet were shackled.

40.     Counsel for Mr. Reid made an oral application to IJ Verrillo requesting that Mr.
Reid be unshackled for the hearing.

41.     Mr. Marley objected, stating that the decision as to whether Mr. Reid would be
shackled during the hearing was a "discretionary decision solely for the officers" then present in
the courtroom.

42.     Mr. Marley asserted that "it is ERO [Enforcement & Removal Operations] policy
that all detainees who are detained will remain shackled while in the courtroom.  Apparently
there was an incident recently somewhere in the building and the full detention procedures are
going to stay in place for all people in ICE custody." Mr. Marley further stated that no
exceptions would be made to ICE's blanket policy.

43.     Mr. Marley offered no evidence or argument that Mr. Reid was dangerous,
disruptive, or a flight risk.

44.     IJ Verrillo stated that he did not have the authority to order ICE to unshackle Mr.
Reid.  For the duration of his proceeding, Mr. Reid remained shackled, with the two law
enforcement officers who escorted him into the courtroom standing near him.

45.     The shackling was humiliating for Mr. Reid.  In addition, because he was shackled, Mr. Reid had difficulty taking notes during the hearing, impairing his ability to participate in his own legal defense. Mr. Reid also could not put on or remove his reading glasses without the assistance of counsel, who was also engaged in argument with the court.

46.     At his hearing, Mr. Reid submitted the Connecticut Board of Pardons & Paroles' Release to Detainer to ICE requiring that he be subject to the Board's conditions of parole, including electronic monitoring, if released. He also offered a letter from Dr. Madelon Baranoski, Associate Professor of Psychiatry at Yale School of Medicine and licensed clinical psychologist at the Connecticut Mental Health Center ("CMHC"), stating that, in her clinical opinion, Mr. Reid would not pose a danger to others if released, and offering Mr. Reid free mental health treatment and counseling at CMHC. Lastly, he presented, as evidence of his community ties, letters from Reverend Joshua Pawelek, minister of the Unitarian Universality Society: East, who has provided Mr. Reid with pastoral care since 2012; and the mother of his daughter, M.R. Mr. Reid was also prepared to submit a letter from Keith Thomas, manager of a New Haven halfway house, offering Mr. Reid a bed upon his release.

47.     During the hearing, ICE counsel renewed an interpretation of 8 U.S.C. § 1226(c) that this Court in Bourguignon v. Macdonald and multiple U.S. Courts of Appeals and District Courts have rejected in arguing that Mr. Reid was not entitled to a bond hearing and could be held for a prolonged period of time. ICE counsel insisted upon this unlawful interpretation of 8 U.S.C. § 1226(c) even though it declined to appeal this Court's finding in Bourguignon that such an interpretation was constitutionally infirm.

48.     IJ Verrillo refused to consider whether Mr. Reid was dangerous or a flight risk, and instead held that he lacked jurisdiction to determine whether Mr. Reid was entitled to a bond hearing under 8 U.S.C. § 1226(c).

**Mr. Reid's Incarceration**

49.     Mr. Reid has pursued further education during his incarceration.  He has enrolled in courses through the Blackstone Career Institute and is preparing to become a paralegal.

50.     During his incarceration, Mr. Reid has sought professional psychological counseling services to assist him in dealing with his recently-diagnosed post-traumatic stress disorder. Mr. Reid is currently under the care of Dr. Madelon Baranoski of CMHC. Dr. Baranoski and her associates at the Department of Psychiatry at the Yale School of Medicine have offered to continue providing mental health care services to Mr. Reid upon his release.

51.     During his incarceration, Mr. Reid has also sought out spiritual counseling from the Reverend Joshua Pawelek of the Unitarian Universalist Society: East in Manchester, Connecticut. Reverend Pawelek and his congregation have paid for Mr. Reid's courses with the Blackstone Career Institute and have offered to provide Mr. Reid spiritual counseling upon his release.

52.     Notwithstanding Mr. Reid's requests, made through counsel, that ICE release Mr. Reid or agree to set bond for him, ICE has continuously held Mr. Reid in mandatory, no-bond detention for nearly eight months since November 13, 2012.

## REPRESENTATIVE HABEAS ACTION ALLEGATIONS

53.     Respondents have a pattern and practice, custom, and policy of holding individuals in mandatory, prolonged, no-bond detention pursuant to an interpretation of 8 U.S.C.

§ 1226(c) that this Court, several other judges within the District of Massachusetts, and three

Courts of Appeal have held invalid.

54.     Many of the individuals held by ICE in prolonged no-bond detention pursuant to

8 U.S.C. § 1226(c) are lawfully present in the United States, including LPRs such as Mr. Reid.

55.     Many individuals subjected to prolonged no-bond detention under 8 U.S.C. §

1226(c) are indigent, have limited English proficiency, and/or a limited understanding of the

U.S. judicial system. Members of the proposed class lack the ability to obtain the assistance of

counsel in challenging their detention based on an unauthorized interpretation of 8 U.S.C. §

1226(c), even if they are able to determine that such detention is susceptible to legal challenge.

56.     ICE routinely detains individuals pursuant to 8 U.S.C. § 1226(c) for periods

greatly exceeding the time limits that the Supreme Court in Demore v. Kim and this Court in

Bourguignon v. MacDonald have determined constitutional, especially when those detained are

in the process of challenging the grounds of their removability.

57.     Petitioner Mark Reid seeks either certification of a representative habeas, see

United States ex rel. Sero v. Preiser, 506 F.2d 1115 (2d Cir. 1974); see also Rodriguez v. Hayes,

591 F.3d 1105 (9th Cir. 2009), or certification of a class under Federal Rule of Civil Procedure

23, to challenge ICE's practice of subjecting individuals to prolonged no-bond detention

pursuant to an unlawful interpretation of 8 U.S.C. § 1226.

58.     Mr. Reid seeks certification of a class consisting of all individuals (1) detained by

ICE within the Commonwealth of Massachusetts and (2) who are or will be mandatorily detained

for longer than six months pursuant to § 1226(c).

59.     Upon information and belief, the proposed representative class is sufficiently

numerous as to make joinder impracticable because there are more than 40 class members.

60.     The proposed representative class presents common questions of law and fact, including (1) whether the government has a policy or general practice of detaining non-citizens in removal proceedings for longer than six months under § 1226(c) without providing an adequate hearing to determine whether such prolonged detention is justified; (2) whether § 1226(c) authorizes this detention policy or practice notwithstanding this Court's previous rejection of ICE's interpretation of that statute; and (3) whether this detention policy or practice violates the immigration statutes and the Due Process and Excessive Bail Clauses.

61.     Mr. Reid's claim is typical of the representative class he seeks to represent. Like all class members, Mr. Reid is currently in removal proceedings. Mr. Reid has been detained pursuant to § 1226(c) for over six months without being afforded a bond hearing and, absent relief from this Court, will be held in detention for the pendency of his removal case.

62.     Mr. Reid is able to fairly and adequately protect the interests of the proposed representative class. Attorneys and law student interns of the Jerome N. Frank Legal Services Organization have extensive experience in litigating complex civil cases and habeas corpus actions involving immigration law, civil rights, and constitutional claims, and will vigorously prosecute the claim on behalf of all members of the class.

63.     Respondents have "acted or refused to act on grounds that apply generally to the class."  Moreover, because members of the proposed representative class will seek bond hearings, final relief is "appropriate respecting the class as a whole" to ensure that members of the proposed class are subject to a consistent government policy concerning their detention.

64.     Petitioner and members of the proposed class seek a writ of habeas corpus to remedy their illegal and unconstitutional prolonged no-bond detention.

## CAUSES OF ACTION

## COUNT ONE

### (VIOLATION OF CONSTITUTIONALLY VALID INTERPRETATION OF 8 U.S.C. § 1226(c) – SUBSTANTIVE DUE PROCESS)

65.     The allegations contained in paragraphs 1 through 64 above are repeated and realleged as though fully set forth therein.

66.     The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V. Freedom from physical restraint is a fundamental interest protected by the Due Process Clause. This liberty interest is threatened when an individual is subjected to unreasonable detention.

67.     The Due Process Clause of the Fifth Amendment protects all persons residing in the United States. See Zadyvdas v. Davis, 533 U.S. 678, 693 (2001).

68.     A foundational canon of statutory interpretation requires courts to interpret statutes in such a way that constitutional questions are avoided whenever possible.

69.     To avoid violating the constitutional requirements of substantive due process under the Fifth Amendment to the Constitution, this Court must interpret 8 U.S.C. § 1226(c) as authorizing only "reasonable" detention.

70.     Mr. Reid brings this cause of action on behalf of himself and the proposed class.

## COUNT TWO

### (VIOLATION OF CONSTITUTIONALLY VALID INTERPRETATION OF 8 U.S.C. § 1226(c) – PROCEDURAL DUE PROCESS)

71.     The allegations contained in paragraphs 1 through 70 above are repeated and realleged as though fully set forth herein.

72.     Procedural due process imposes constraints on governmental decisions that deprive individuals of "liberty" interests within the meaning of the Due Process Clause of the Fifth Amendment. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

73.     The necessity of specific procedural protections under the Due Process Clause is assessed through a balancing of the following three factors: the private interest affected by official action; the risk of erroneous deprivation of that interest and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that additional procedural requirements would entail. See id. at 335.

74.     To avoid constitutional doubt, this Court must interpret 8 U.S.C. § 1226(c) as authorizing an individualized bond hearing when the private interest affected and the risk of erroneous deprivation of the private interest outweigh the government's interest in minimizing the burden of additional procedural requirements.

75.     The private interest affected by Respondents' actions—Mr. Reid's liberty interest, and that of other members of the proposed class—is substantial. Mr. Reid has been detained for nearly eight months. His detention has impeded his access to comprehensive psychological counseling for the extensive trauma he has suffered. Moreover, Mr. Reid is neither a flight risk nor a danger to the community.

76.     In Mr. Reid's case and that of other members of the proposed class, the risk of erroneous deprivation of liberty is high and the value of an individualized bond hearing would be significant. Without a bond hearing, Mr. Reid would be subject to continued detention under the IJ's interpretation of 8 U.S.C. § 1226(c), an interpretation that this Court has recognized is unlawful. However, if an individualized bond hearing is required, Mr. Reid would present

evidence that demonstrates that he is neither a flight risk nor a danger to the community and therefore eligible for release on bond.

77.    The additional procedural safeguard of a bond hearing would provide protection from unjust incarceration for Mr. Reid and other members of the proposed class. Individual assessment of the factors relevant to bond redetermination—flight risk and danger to the community—would provide Mr. Reid and other members of the proposed class with the opportunity to contest their continued detention.

78.    The government's interest in the prolonged detention of an individual who is neither a flight risk nor a danger to the community and whose deportation is not reasonably foreseeable is slight.

79.    Balancing Mr. Reid's private liberty interest and that of other members of the proposed class, the high risk of erroneous deprivation of liberty, the value of additional procedural safeguards, and the government's minimal interest in prolonged detention, the continued no-bond detention of Mr. Reid and other members of the proposed class is not authorized by 8 U.S.C. § 1226(c).

80.    Mr. Reid brings this cause of action on behalf of himself and the proposed class.


**COUNT THREE**

**(VIOLATION OF CONSTITUTIONALLY VALID INTERPRETATION OF 8
U.S.C. § 1226(c) – EIGHTH AMENDMENT)**


81.    The allegations contained in paragraphs 1 through 80 above are repeated and realleged as though fully set forth herein.

82.     The Excessive Bail Clause of the Eighth Amendment prohibits the Government from setting conditions of release or detention that are "'excessive' in light of the perceived evil.'" United States v. Salerno, 481 U.S. 739 (1987); see U.S. Const. amend. VIII.

83.     To avoid constitutional doubt, 8 U.S.C. § 1226(c) must be construed as authorizing no-bond detention only when there exists a compelling government interest other than the prevention of flight, and further, where the length of detention is limited.

84.     Mr. Reid does not pose a high flight risk and is not a danger to the community. If released from ICE custody, Mr. Reid will be subject to conditions of parole, including electronic monitoring, set by the Connecticut Board of Pardons and Paroles.  He also has an extensive post-release support plan. He will continue to have access to professional psychological counseling by Dr. Baranoski at CMHC, has been offered a bed at a New Haven halfway house, and plans to continue to receive spiritual counseling from Reverend Joshua Mason Pawelek, minister of the Unitarian Universality Society: East, who has provided Mr. Reid with pastoral care for over a year.

85.     Considering the government's lack of compelling interest in Mr. Reid's continued no-bond detention and the excessive length of time Mr. Reid has already spent in detention, his continued no-bond detention and that of other members of the proposed class is not authorized by 8 U.S.C. § 1226(c).

86.     Mr. Reid brings this cause of action on behalf of himself and the proposed class.

## COUNT FOUR

## (VIOLATION OF FIFTH AMENDMENT SUBSTANTIVE DUE PROCESS)

87.     The allegations contained in paragraphs 1 through 86 above are repeated and realleged as though fully set forth herein.

88.     Substantive due process principles forbid the infringement of fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling government interest.

89.     Interpreting 8 U.S.C. § 1226(c) as authorizing prolonged no-bond detention when the likelihood of ultimate removal is not foreseeable would violate the requirements of substantive due process.

90.     Freedom from physical restraint is a liberty interest protected by substantive due process. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Mr. Reid's interest in liberty after nearly eight months of detention is a fundamental liberty interest.

91.     The prolonged no-bond detention of an individual who, like Mr. Reid, does not pose a danger to the community or a flight risk is not narrowly tailored to serve a compelling government interest. Interpreting 8 U.S.C. § 1226(c) as authorizing Mr. Reid's continued detention without a bond hearing violates his substantive due process rights.

92.     Mr. Reid brings this cause of action on behalf of himself and the proposed class.


## COUNT FIVE

## (VIOLATION OF FIFTH AMENDMENT PROCEDURAL DUE PROCESS)

93.     The allegations contained in paragraphs 1 through 92 above are repeated and realleged as though fully set forth herein.

94.     Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of "liberty" interests protected under the Due Process Clause of the Fifth Amendment. Certain procedures constraining governmental action may be required after a consideration of the following three factors: the private interest affected by official action; the risk of erroneous deprivation of that interest and the probable value, if any, of additional or

substitute procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that additional procedural requirements would entail.

95.     Mr. Reid's private liberty interest and that of other members of the proposed class is substantial. The risk that he and other members of the proposed class have been erroneously deprived of liberty is high due to the failure of the IJ to provide Mr. Reid with an individualized bond hearing, in which Mr. Reid could present evidence that demonstrates that he is neither a flight risk nor a danger to the community.

96.     The government's interest in the continued detention of Mr. Reid and other members of the proposed class without an individualized bond hearing is slight when considering that he and other members of the proposed class are neither a flight risk nor a danger to the community.

97.     Interpreting 8 U.S.C. § 1226(c) as authorizing the continued detention without an individualized bond hearing of Mr. Reid and other members of the proposed class violates procedural due process.

98.     Mr. Reid brings this cause of action on behalf of himself and the proposed class.

## COUNT SIX

### (VIOLATION OF EIGHTH AMENDMENT EXCESSIVE BAIL CLAUSE)

99.     The allegations contained in paragraphs 1 through 98 above are repeated and realleged as though fully set forth herein.

100.     The Excessive Bail Clause of the Eighth Amendment prevents prolonged detention without a bond hearing when there is no compelling government interest other than the prevention of flight.

101.     Interpreting 8 U.S.C. § 1226(c) as authorizing prolonged no-bond detention violates the requirements of the Excessive Bail Clause of the Eighth Amendment.

102.     The nearly eight-month long, no-bond detention of Mr. Reid, who does not pose a danger to the community and is not a flight risk, serves no compelling government interest.

103.     The government has no compelling interest in denying all class members any opportunity to receive a meaningful bond hearing before a neutral decision maker.

104.     Interpreting 8 U.S.C. § 1226(c) as authorizing his continued detention without a bond hearing, and that of other members of the proposed class, violates the Excessive Bail Clause of the Eighth Amendment.

105.     Mr. Reid brings this cause of action on behalf of himself and the proposed class.


## COUNT SEVEN

## (SHACKLING - VIOLATION OF FIFTH AMENDMENT DUE PROCESS CLAUSE)

106.     The allegations contained in paragraphs 1 through 105 above are repeated and realleged as though fully set forth herein.

107.     Mr. Reid, a civil immigration detainee, has a constitutional liberty interest in being free from physical restraints such as the hard metal shackles that are currently used on his hands, legs, and waist during immigration court proceedings.

108.     Defendants' policy and practice with respect to the shackling of detained immigrants in the Hartford Immigration Court violate Mr. Reid's right to due process guaranteed by the Fifth Amendment to the United States Constitution.

109.    Mr. Reid has suffered and is likely to suffer future irreparable injury as a result of Defendants' policy and practice and is entitled to declaratory and injunctive relief to avoid any further injury.

110.    Mr. Reid asserts this seventh cause of action in his own name only and does not seek to represent a class with respect to this cause of action.

111.    This cause of action is asserted only against Defendants Donelan, Lanoie, Napolitano, Morton, Herrera-Niles, Holder, Osuna, and EOIR.


### PRAYER FOR RELIEF

**WHEREFORE**, Mr. Reid prays that this Court grant the following relief:

(1) Enter a judgment declaring that Respondents' detention of Mr. Reid and other members of the proposed class is unauthorized by statute, contrary to law, and unconstitutional;

(2) Issue a Writ of Habeas Corpus requiring Respondents to release Mr. Reid and other members of the proposed class immediately, or, in the alternative, hold a constitutionally valid individualized bond hearing;

(3) Issue an injunction ordering Respondents not to detain Mr. Reid or any other member of the proposed class under 8 U.S.C. § 1226(c) without conducting an individualized bond hearing;

(4) Issue an injunction ordering Respondents to unshackle Mr. Reid during future proceedings in immigration court absent an individualized finding of dangerousness;

(5) Award Mr. Reid and other members of the proposed class reasonable costs and attorney's fees; and

(6) Grant any other and further relief that this Court may deem fit and proper.

Date: July 1, 2013

Respectfully submitted,


_____/s/ Lauren Carasik_____
Lauren J. Carasik (Bar # 558918)
Western New England University School of Law
1215 Wilbraham Road
Springfield, MA 01119
Phone: (413) 782-1504

Linda Evarts, Law Graduate Intern
Tassity Johnson, Law Graduate Intern
Travis Silva, Law Graduate Intern
Matthew S. Vogel, Law Graduate Intern
Muneer I. Ahmad, Supervising Attorney*
Michael J. Wishnie, Supervising Attorney*
Jerome N. Frank Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT  06511
Phone: (203) 432-4800
Fax: (203) 432-1426

*Counsel for Mark A. Reid*


*\* Motion for admission pro hac vice forthcoming*