UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARK ANTHONY REID, on            )
behalf of himself and others     )
similarly situated,              )
    Plaintiff/Petitioner         )
                                 )
                                 )
            v.                   )  C.A. NO. 13-cv-30125-MAP
                                 )
CHRISTOPHER DONELAN, Sheriff     )
of Franklin County, et. al.      )
    Defendants/Respondents       )


MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S PETITION FOR WRIT OF HABEAS CORPUS
AND PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
(Dkt. No. 4 & 5)

January 9, 2014

PONSOR, U.S.D.J.

## I.   INTRODUCTION

Plaintiff, a lawful permanent resident, has been held in immigration detention for fourteen months pursuant to 8 U.S.C. § 1226(c).  He has brought a Petition for Writ of Habeas Corpus, 28 U.S.C. § 2241, seeking an individualized bond hearing to challenge his detention.  (Dkt. No. 4.)  He has also filed a Motion for Order to Show Cause.  (Dkt. No. 5.)  Defendants are: Christopher Donelan, Sheriff of Franklin County; David Lanoie, Superintendent, Franklin

County Jail and House of Correction; Jeh Charles Johnson, Secretary of the Department of Homeland Security; John Morton, Director of Immigration and Customs Enforcement (ICE); Dorothy Herrera-Niles, Director, ICE Boston Field Office; Thomas Hodgson, Sheriff of Bristol County; Joseph McDonald, Jr., Sheriff of Plymouth County; Steven Tompkins, Sheriff of Suffolk County; Eric Holder, Attorney General of the United States; Juan Osuna, Director of the Executive Office for Immigration Review; and The Executive Office for Immigration Review.

The decision in Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009), finding a "reasonableness" requirement embedded in § 1226(c), controls this case. Because detention pursuant to § 1226(c) for over six months is presumptively unreasonable, the court will grant Plaintiff's Petition for Habeas Corpus and deny as moot Plaintiff's Motion for Order to Show Cause.  Furthermore, even if detention after six months were not categorically unreasonable, the facts of this case would still entitle Plaintiff to an individualized bond hearing.

## II.   BACKGROUND[1]

Plaintiff, Mark Anthony Reid, left Jamaica for the United States in 1978 and was admitted as a lawful permanent resident.  Although Plaintiff faced a number of hardships growing up, he earned a GED and served in the U.S. Army Reserve for six years.

Between 1986 and 2010 Plaintiff amassed an extensive criminal history.  His convictions included, inter alia, possession of narcotics, larceny, assault, interfering with an officer, driving with a suspended license, and selling illegal drugs.  Relevant for the pending motions are his convictions for selling an illegal drug, third degree burglary, and failure to appear.  As a result of those convictions in 2010, Plaintiff was sentenced in Connecticut state court to twelve years in prison, to be suspended after five.

After Plaintiff served two years in prison, he was paroled on November 13, 2012.  On the same day, ICE took

---

[1] The facts are drawn from Plaintiff's Petition for Habeas Corpus.  (Dkt. No. 4.)

Plaintiff into custody pursuant to 8 U.S.C. § 1226(c).[2]   ICE
immediately took action to remove Plaintiff.   Although
Plaintiff conceded the factual allegations underlying the
case, he sought relief on two grounds.   First, he argued
that the Convention Against Torture (CAT) applied.   Second,
he believed that removal was a disproportionate punishment
to the crimes committed.

A hearing on these claims was held before an
Immigration Judge (IJ) on February 13, 2013.   Two months
later, the IJ denied both of Plaintiff's claims and ordered
him deported.   Plaintiff appealed to the Board of
Immigration Appeals (BIA).

While his immigration case was pending, Plaintiff filed
a motion with the IJ requesting a bond re-determination
hearing.   That motion was argued on June 17, 2013, at the
Hartford Immigration Court.   The IJ concluded that he lacked

---

[2] Section 1226 of Title 8 governs the detention of non-
citizens during immigration removal proceedings.   Sub-
section (c) requires the government to detain certain
individuals who have committed a crime enumerated in the
statute.   § 1226(c)(1).   These individuals are not entitled
to an individualized bond hearing.

authority under § 1226(c) to make a bond re-determination and, therefore, denied Plaintiff's motion.

On October 23, 2013, nearly half a year after the IJ ruled on Plaintiff's claims, the BIA reversed the IJ's decision and remanded the case for further proceedings related to Plaintiff's CAT claim.  An evidentiary hearing was held on November 19, 2013.  On December 17, 2013, the IJ again denied Plaintiff's CAT claim.  (Dkt. No. 76.) Plaintiff has indicated that he will appeal that decision to the BIA.  (Id.)

On July 1, 2013, Plaintiff filed the present Petition for Habeas Corpus and the Motion for Order to Show Cause to challenge his prolonged immigration detention.[3]  Counsel appeared for argument on December 12, 2013, and the court took the matter under advisement.

_____

[3] Plaintiff also filed a Motion for Summary Judgment to challenge ICE's policy of shackling him during immigration proceedings, absent an individualized determination that such shackling was necessary, (Dkt. No. 1), and a Motion for Class Certification.  (Dkt. No. 33.)  Defendants responded with a Motion to Dismiss.  (Dkt. No. 35.)  The shackling issue was postponed based upon the government's request to submit further briefing.  The question of class certification will be addressed in a separate memorandum and order that will soon issue.

III.  <u>DISCUSSION</u>

The answers to two questions dictate the result in this case.  The first question is whether § 1226(c) includes a "reasonableness" restriction on the length of time an individual can be detained without a bond hearing.  For the reasons set forth in <u>Bourguignon</u> and repeated below, the court must conclude that such a reasonableness restriction does exist.  The second question is how to define and apply a "reasonableness standard."[4]

A.  <u>§ 1226(c) and a "Reasonableness" Limit</u>

The threshold question is whether § 1226(c) imposes a "reasonableness" limit on the length of time an individual can be detained in immigration custody without an individualized bond hearing.  This court has previously held

---

[4] Defendants suggest that the claims against all parties except Defendant Donelan should be dismissed.  They highlight <u>Rumsfeld v. Padilla</u>, 542 U.S. 426 (2004), to contend the immediate custodian of a petitioner is the only person who can be named as a defendant in a habeas action. This argument is unavailing in this case.  First, each Sheriff-Defendant is properly named since Plaintiff seeks, and the court has not yet decided the propriety of, class resolution.  Second, every other Defendant is potentially required to effectuate the remedies requested.  <u>See</u> <u>Vasquez v. Reno</u>, 233 F.3d 688 (1st Cir. 2000).

that such a limit <u>does</u> exist.  <u>Bourguignon</u>, 667 F. Supp. 2d at 182.

Defendants believe <u>Bourguignon</u> was wrongly decided and should be reconsidered.  Their argument is anchored on a broad reading of <u>Demore v. Kim</u>, 538 U.S. 510 (2003), where the Supreme Court upheld the constitutionality of § 1226(c). Far from supporting reconsideration of <u>Bourguignon</u>'s holding, <u>Demore</u> supports this court's ruling.  Only a brief discussion is required to make this clear.

As discussed in <u>Bourguignon</u>, the two Supreme Court cases touching upon this issue, <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), and <u>Demore</u>, suggest a "reasonableness" limit in § 1226(c).  In <u>Zadvydas</u>, the Supreme Court held that post-removal detention without a bond hearing was permissible so long as removal was "reasonably foreseeable."  <u>Zadvydas</u>, 533 U.S. at 699.  In that context, detention for less than six months was considered presumptively valid.  <u>Id.</u>  However, after six-months, if an individual "provides good reason to believe that there is no significant likelihood of removal," the detention is presumptively invalid and a bond hearing is required.  <u>Id.</u> at 701.

Two years later, the Supreme Court directly addressed the constitutionality of § 1226(c) in <u>Demore</u>.  There, Chief Justice Rehnquist distinguished <u>Zadvydas</u> and upheld the constitutionality of § 1226(c) for the "brief period necessary for [the detainee's] removal proceedings." <u>Demore</u>, 538 U.S. at 513.

Picking up on that language, Justice Kennedy, in his concurrence, explicitly identified a "reasonableness" requirement that limited the scope of 1226(c).  He said, "[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  <u>Id.</u> at 532 (Kennedy, J., concurring) (citing <u>Zadvydas</u>, 533 U.S. at 684-86).

Taken together, these two cases support the conclusion that a "reasonableness" requirement is included in the statute.  <u>Bourguignon</u>, 667 F. Supp. 2d.  Such an interpretation is necessary to avoid the Fifth Amendment due process problem that prolonged detention, absent an

individualized hearing, would present.[5]  No subsequent
controlling authority alters this analysis.

Indeed, strong authority supports this interpretation.
At least two other circuits have considered this issue and
have both found a "reasonableness" limitation in the
statute.  See Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir.
2013); Diop v. ICE/Homeland Sec., 656 F.3d 221 (3d Cir.
2011).  Moreover, since Bourguignon, a majority of judges in
this district have reached the same conclusion.  See Ortega
v. Hodgson, No. 11-cv-10358-MBB, 2011 WL 4103138 (D. Mass.
Sept. 13, 2011)(Bowler, Mag. J.); Flores-Powell v.
Chadbourne, 677 F. Supp 2d 455 (D. Mass. 2010)(Wolf, J.);
Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009)
(Gertner, J.); see also Zaoui v. Horgan, No. 13-11254-DPW,
2013 WL 5615913, at *4 (D. Mass. Aug. 23, 2013)(Woodlock,
J.)(finding against the petitioner, but recognizing the
"reasonableness" requirement in § 1226(c)).

---

[5] Plaintiff also believes that the detention implicates the
Eighth Amendment.  Given the strength of the due process
argument, analysis under the Eighth Amendment is
unnecessary.

No sound reason justifies departure from Bourguignon's analysis.  To comply with the constitution's due process requirement, § 1226(c) must be read to include a "reasonableness" limit on the length of time an individual can be detained without an individualized bond hearing.

B.   Defining "Reasonableness"

The thornier aspect of this case lies in the definition of "reasonableness."  Two approaches have emerged.  One view, adopted by the Third and Sixth Circuits, requires a "fact-dependent inquiry requiring an assessment of all of the circumstances of any given case," to determine whether detention without an individualized hearing is unreasonable. Diop, 656 F.3d at 234 (3d Cir. 2011); see also Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003).  This approach requires each detainee to file a habeas petition challenging his or her detention.  If a federal court believes the detention crosses the reasonableness threshold, then the individual is subsequently entitled to a bond hearing.

The other approach, one employed by the Ninth Circuit, applies a bright-line rule.  Under that view, the government's "statutory mandatory detention authority under

Section 1226(c) . . . [is] limited to a six-month period, subject to a finding of flight risk or dangerousness." Rodriguez, 715 F.3d at 1133 (9th Cir. 2013).  The Ninth Circuit justified its view by applying one of its prior cases, Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011), to § 1226(c).  In Diouf, the court analyzed the due process considerations arising from an immigration detention lasting over six-months.  Consistent with Zadvydas, it concluded that such detention, absent an individual hearing, violated the constitution.

The First Circuit has not yet weighed in on this question, but the simpler approach adopted by the Ninth Circuit strikes this court as fairest to both sides.  This rule follows in line with Supreme Court precedent, satisfies due process, and avoids the unnecessary administrative burden of holding two, repetitive hearings -- a habeas proceeding to determine if a bond hearing is required and then the bond hearing itself.  This is the approach this court will take unless and until it is instructed otherwise. Significantly, however, the court would grant the petition here even using the more complex rule adopted by the Third

and Sixth Circuits.

    1.   <u>Six-Month Rule</u>

    This rule is optimal for a number of reasons.  First, this bright-line rule is consistent with Supreme Court precedent.  In <u>Zadvydas</u>, after determining that indefinite, post-removal detention was impermissible, the Court said, "[W]e think it practically necessary to recognize some presumptively reasonable period of detention."  <u>Zadvydas</u>, 533 U.S. at 700-01.  Such pragmatism was justified by prior Supreme Court cases.  <u>Id.</u> at 701, <u>citing</u> <u>Cnty. of Riverside v. McLaughlin</u>, 500 U.S. 44, 56-58 (1991)(applying a 48-hour rule to probable cause determinations); <u>Cheff v. Schanckenberg</u>, 384 U.S. 373, 379-80 (1966)(plurality opinion)(adopting a rule that the right to a jury trial extends to all cases in which a sentence greater than six months is imposed).  Although the six-month line did not guarantee the detainee's release in <u>Zadvydas</u>, of course, it did entitle the detained individual to a bond hearing.  A closely analogous situation is present in this case.

    The Seventh Circuit's dicta in a comparable case is noteworthy.  As Judge Posner said, "[I]t would be a

considerable paradox to confer a constitutional or quasi-constitutional right to release on an alien ordered removed (<u>Zadvydas</u>) but not on one who might have a good defense to removal." <u>Hussain v. Mukasey</u>, 510 F.3d 739, 743 (7th Cir. 2007).  The Ninth Circuit's conclusion in <u>Rodriguez</u> applies that logic to § 1226(c).  Indeed, no persuasive argument justifies discarding this pragmatic approach when dealing with individuals detained under § 1226(c).

The fact that <u>Demore</u> did not adopt a six-month rule does not undermine this logic.  Defendants argue that the <u>Demore</u> Court <u>could</u> have utilized this approach.  In failing to do so, they contend, the Court made a deliberate choice.

However, the <u>Demore</u> Court had no reason to invoke this rule.  <u>Demore</u> explicitly noted that detention under § 1226(c) is inherently "of a much shorter duration," lasting "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." <u>Demore</u>, 538 U.S. at 529-31.  Since the Court was facing a direct constitutional challenge to § 1226(c) and was operating under those temporal assumptions, it simply avoided

answering an unripe question.[6] Justice Kennedy's
concurrence, which was the fifth vote to comprise the
majority, clearly implies as much.  In utilizing Zadyvdas to
opine on a reasonableness requirement in § 1226(c), Justice
Kennedy seems to suggest that the temporal discussion in
that case is still the most applicable law on this issue.
Id. at 532 (Kennedy, J., concurring)(citing Zadvydas
affirmatively).

Due process considerations also favor the six-month
approach.  As the Ninth Circuit said in Diouf,

> When detention crosses the six-month threshold and
> release or removal is not imminent, the private
> interests at stake are profound.  Furthermore, the
> risk of an erroneous deprivation of liberty in the
> absence of a hearing before a neutral
> decisionmaker is substantial.  The burden imposed
> on the government by requiring hearings before an
> immigration judge at this stage of the proceedings
> is therefore a reasonable one.

Diouf, 634 F.3d at 1091-92.

These considerations, as the Ninth Circuit later found
in Rodriguez, are equally applicable to the § 1226(c)

---

[6] Although the plaintiff's detention in that case was for
roughly six-months, the court noted that the length was
largely due to plaintiff's own tactics.  It thus anchored
its broad decision on the average length of detainment.

analysis.  After six months, a detainee's private interest in freedom from unreasonable restraint is high.  The risk of unnecessary detention, unless it is found to be justified by safety concerns or flight risk, is also substantial.

Significantly, the burden on the government to hold such a bond hearing is minimal.  Indeed, adopting a six-month approach actually <u>eases</u> the burden on the government. This approach only requires the executive to hold one hearing, rather than defend against an individual habeas petition first.

Broader due process concerns also militate against the individualized approach adopted by the Third and Sixth Circuits.  Although that approach may work for those individuals with access to the federal courts, only a minority of detainees have this capacity.  The individualized approach presumes that detainees have knowledge about the American court system and have finances to obtain an attorney (or are fortunate enough to receive <u>pro</u> <u>bono</u> assistance) and that they have the language skills required to navigate the legal thicket.  Simply put, "litigation is unlikely to be a viable solution for most

immigrants in prolonged detention . . . [because] it is
logistically difficult to bring a habeas petition."
Geoffrey Heeren, <u>Pulling Teeth: The State of Mandatory
Immigration Detention</u>, 45 Harv. C.R.-C.L. L. Rev. 601, 603
(2010).  The six-month approach protects the due process
rights of all detainees whose confinement has become
"presumptively unreasonable."[7]

Finally, administrative concerns favor this rule.
Defendants suggest that factual differences between cases
justify the Third and Sixth Circuit's approach.  However,
this argument conflates the right to a bond hearing with the
outcome of said hearing -- the possible right to release.
In a bond hearing, an IJ is necessarily going to consider
the reasonableness of the alien's continued detention.  For
example, an IJ may properly decline to grant bail to a
detainee whose stalling tactics were the sole cause of the
length of confinement.  It makes more sense to have one

---

[7] **This factor is particularly persuasive since the
government has continued to employ its interpretation of §
1226(c) as new cases arise, despite consistent court orders
to do otherwise.  Absent an approach that deals with this
issue globally, Defendants will likely continue to apply
their incorrect interpretation of the statute in violation
of the Fifth Amendment.**

hearing in front of an IJ, rather than require each detainee to file a habeas petition first so that the detainee can obtain a hearing on whether he or she is entitled to a hearing.  This six-month rule effectively protects both a detainee's due process rights and Defendants' resources.

Under the six-month approach, the analysis in this case is simple: Plaintiff has been held in custody for fourteen months, and thus his continued detention without a bond hearing is presumptively unreasonable.

### 2. Case-by-Case Determination

Even if the individualized approach were more appropriate, Plaintiff's prolonged detention without a bond hearing is unreasonable.  Relevant factors in this determination include: the length of detention; the period of detention compared to the criminal sentence; the foreseeability of removal; the prompt action of immigration authorities; and whether the petitioner engaged in any dilatory tactics.  Zaoui, 2013 WL 5615913, at *4 citing Flores-Powell, 677 F. Supp. 2d at 471.

The length of Plaintiff's criminal sentence compared to his detention is the only factor that cuts against his

claim.  That element, however, is substantially outweighed
by the length of Plaintiff's confinement and the uncertainty
underlying his immigration case.

First, Plaintiff has been detained for fourteen months.
This is well beyond the brief detainment contemplated in
Demore.  Demore, 538 U.S. at 529.  In Demore, the Court
assumed that detention would last an average of thirty days
up to a maximum of five months.

Moreover, this court has already ruled that a seven-
month detainment, half the length of the confinement here,
would be unreasonable.  Bourguignon, 667 F. Supp. 2d at 183.
In dealing with the defendants' arguments in that case, this
court said, "[E]ven if the court made its calculations
conservatively. . . the more than seven-month detention
period still exceeds the brief time frame contemplated by
Chief Justice Rehnquist in Demore."  Id.

It is significant, as well, that Plaintiff's removal is
not foreseeable.  In Bourguignon, there was no end in sight
for the petitioner's case before the BIA, since it was
unclear when the BIA would rule and subsequently, whether
the petitioner would appeal.  Id.  Here, Plaintiff is even

-18-

further away from a final outcome.  Nearly half a year after
the IJ's initial decision, the BIA reversed and remanded
Plaintiff's case.  Then, on December 17, 2013, the IJ again
ruled against Plaintiff.  Plaintiff now intends to bring his
case back to the BIA.  At best, he will receive another
favorable decision and obtain the remedy he seeks.  At
worst, the BIA, at some indeterminate point in the future,
will rule against Plaintiff.  In that latter scenario, he
will have the right to appeal his case to the Second Circuit
Court of Appeals.  It is impossible to determine exactly
when that litigation will conclude, but the date is
certainly far enough out to implicate due process concerns.

     The other relevant factors do not weigh one way or the
other.  Although the government has not dragged its feet,
Plaintiff has also not engaged in dilatory tactics.  Like
the petitioner in <u>Bourguignon</u>, Plaintiff has raised a
colorable claim against deportation and is vigorously
contesting removal.  Defendants' contentions
notwithstanding, Plaintiff should not be penalized simply
because he is invoking his rights.

     Ultimately, § 1226(c) includes a "reasonableness"

threshold.  Regardless of how that limit is defined,
Plaintiff's detention has crossed the line.  While Plaintiff
may not obtain the relief he seeks, he is at least entitled
to take a shot at persuading the IJ to release him.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Petition for
Habeas Corpus (Dkt. No. 4) is hereby ALLOWED, and
Plaintiff's Motion for Order to Show Cause (Dkt. No. 5) is
hereby DENIED as moot.

Having allowed the Petition for Habeas Corpus, the
court orders as follows:

1.  Petitioner will receive a bond hearing by February
7, 2014, before an Immigration Judge, at which the judge
will consider whether conditions may be placed upon
Petitioner's release that will reasonably ensure that he
will pose no danger to the community and will not pose a
risk of flight.  If such conditions are found to exist,
Petitioner will be released from custody.

2.  Counsel for Respondents will report to this court
on or before February 14, 2014, regarding compliance with

this order.  This report will include notification as to the outcome of the bond hearing.

3.   Failure of an Immigration Judge to conduct the bond hearing as ordered will entitle Petitioner to request a bond hearing before this court.

It is So Ordered.


                                      /s/ Michael A. Ponsor
                                     MICHAEL A. PONSOR
                                     U. S. District Judge