UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK ANTHONY REID, on | ) |
| behalf of himself and others | ) |
| similarly situated, | ) |
|     Plaintiff/Petitioner | ) |
| | ) |
| | ) |
|             v. | ) C.A. NO. 13-cv-30125-MAP |
| | ) |
| CHRISTOPHER DONELAN, Sheriff | ) |
| of Franklin County, et. al. | ) |
|     Defendants/Respondents | ) |

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
(Dkt. Nos. 1 & 77)

March 6, 2014

PONSOR, U.S.D.J.

I.   INTRODUCTION

Plaintiff has brought a class action on behalf of all individuals in Massachusetts who are detained pursuant to 8 U.S.C. § 1226(c) for over six months and are not provided an individualized bond hearing.  Tangential to that central dispute, Plaintiff has brought a Motion for Summary Judgment, (Dkt. No. 1), solely on his own behalf, seeking a permanent injunction prohibiting Defendants from shackling

him during immigration proceedings absent an individualized determination that such restraint is necessary.  Defendants have responded with a Cross-Motion for Summary Judgment. (Dkt. No. 77.)

On January 16, 2014, counsel appeared for argument, and the court took under advisement the question of whether a permanent injunction covering shackling of Plaintiff at any future hearings should issue.  Though Immigrations & Customs Enforcement (ICE) agreed to conduct an individualized determination of need before shackling Plaintiff at a February 3, 2014, immigration hearing, the parties disputed whether due process permitted ICE, as opposed to an Immigration Judge, to make this assessment.

This decision set forth in this memorandum is not intended to address the issue of shackling as applied to any class of detainee-aliens.  Unlike the question of whether detainee aliens are entitled to an individualized bond hearing after six months of detention, the question of shackling is not posed as a class action.  Instead, Plaintiff only seeks an order applying to possible future shackling ICE might impose on him.

The court, for the reasons set forth below, will deny Plaintiff's motion for summary judgment and allow Defendants' motion.  Although, as a general matter, due process <u>does</u> require some type of an individualized assessment before a detained alien may be shackled at a hearing, Plaintiff has obtained the remedy due process mandates.  He has also been recently released from custody, (Dkt. No. 98 at 2), which removes the possibility that he will be subjected to the challenged shackling policy in the future.  He therefore cannot establish potential irreparable harm to himself warranting a permanent injunction.

## II.   <u>BACKGROUND</u>[1]

This litigation centers on a question of statutory interpretation: does § 1226(c) impose a "reasonableness" limit on the length of time an individual may be detained absent a bond hearing.  On January 9, 2014, the court answered that question affirmatively and granted Plaintiff's individual Petition for Habeas Corpus.  <u>Reid v. Donelan</u>, -- F. Supp. 2d--, 2014 WL 105026 (D. Mass. Jan. 9, 2014).

---

[1] The facts are drawn, unless otherwise noted, from Plaintiff's Statement of Undisputed Facts, (Dkt. No. 7), and Defendants' Cross-Motion for Summary Judgment, (Dkt. No. 77).

Following that, on February 10, 2014, the court determined that class treatment was appropriate and allowed Plaintiff's Motion for Class Certification.  Reid v. Donelan, -- F.R.D. --, 2014 WL 545144 (D. Mass. Feb. 10, 2014).

The current motions before the court, as noted above, focus on a peripheral issue: whether Defendants can shackle Plaintiff at immigration hearings without first making a particularized determination that shackling is necessary to ensure courtroom safety.  The facts bearing on this separate question are as follows.

Plaintiff's first immigration proceeding occurred at the Hartford, Connecticut, Immigration Court on February 13, 2013.  Throughout that entire hearing, Plaintiff was unshackled.  On April 5, 2013, the Immigration Judge rejected both of Plaintiff's arguments against deportation and ordered him removed.  Plaintiff filed a timely Notice of Appeal with the Board of Immigration Appeals (BIA).

While that appeal with the BIA was pending, Plaintiff filed a motion with the immigration court on June 10, 2013, requesting a bond re-determination hearing.  That motion was heard before an Immigration Judge on June 17, 2013.  At that

hearing, Plaintiff's hands, waist, and feet were shackled.
Although Plaintiff's counsel objected to the shackling, ICE
asserted that it was solely responsible for determining
whether Plaintiff would be restrained and that the
Immigration Judge did not have the authority to order the
shackles removed.  The Immigration Judge agreed with ICE and
kept Plaintiff shackled throughout the hearing.

At that time, ICE was relying on a policy adopted in
November 2012.  It provided for automatic, full restraint of
all detainees during immigration proceedings without any
individualized assessment of risk, unless the detainee was
obviously pregnant, had a physical disability, or had
injuries that could be aggravated by standard handcuffing
procedures.

As a result of the shackling, Plaintiff experienced a
number of serious problems at his hearing.  He had
difficulty writing notes for himself and to his counsel; he
was only able to write one sentence.  Plaintiff also had
trouble managing his glasses, which counsel had to place on
Plaintiff's face and later return to Plaintiff's pocket.

Plaintiff thereafter filed a Motion for Summary

Judgment with this court, (Dkt. No. 1), seeking an order precluding such shackling absent an individualized inquiry. Defendants responded with their first Motion to Dismiss. (Dkt. No. 35.)  In their view at that time, since Plaintiff had no pending immigration hearings, his claim was moot.

On October 23, 2013, the BIA reversed the Immigration Judge's decision and remanded the case for further proceedings relating to Plaintiff's Convention Against Torture (CAT) claim.  An evidentiary hearing was scheduled for November 19, 2013.  Given the pending date, Plaintiff moved for an emergency hearing in this court seeking a determination on the shackling issue.  Defendants, in response, notified the court that they had updated their shackling policy.  The new policy, enacted in October 2013, provided for individualized assessments before detainees at immigration hearings would be restrained.  These individualized assessments, however, would be conducted by representatives of ICE and not by the Immigration Judge.

The court heard an initial argument on the shackling issue on November 18, 2013.  Recognizing that the new policy was an improvement, Plaintiff nevertheless insisted that a

neutral arbiter, the Immigration Judge, and not an ICE
officer was the proper party to make the individualized
assessment to comply with the requirements of due process.
Satisfied that Defendants' new policy provided Plaintiff a
sufficient individualized determination, at least in the
immediate circumstances, the court denied Plaintiff's
emergency motion and permitted ICE to make the assessment
but reserved the broader issue respecting the
constitutionality of Defendants' policy.  (Dkt. No. 63.)

At the November 18 hearing, Defendants indicated that
they had already conducted the assessment of Plaintiff and
concluded that he posed a safety risk.[2]  Plaintiff was thus
shackled at the November 19 evidentiary proceeding at the
immigration court.

On November 27, 2013, Plaintiff filed a Motion to
Compel Discovery, (Dkt. No. 71), requesting, among other
things, a copy of Defendants' new October 2013 shackling

---

[2] Defendants relied, in part, on Plaintiff's
significant criminal history.  Since 1986, Plaintiff has
been convicted of, inter alia: narcotics possession,
larceny, a misdemeanor assault, carrying a dangerous weapon,
interfering with an officer, failure to appear, driving with
a suspended license, selling an illegal drug, and third
degree burglary.

policy.  However, on December 6, 2013, the ground shifted
once more when Defendants notified the court that they had
reverted to their prior, November 2012 policy.  According to
Defendants, a number of Immigration Judges expressed
concerns about the October 2013 policy, and it was therefore
placed on hold pending further review.  In response, ICE
returned to its blanket, national policy of restraining,
without any individual assessment of risk, all alien-
detainees, with only very narrow exceptions, during
immigration hearings.

     As a result of this change, Defendants moved to
withdraw their prior response and requested additional time
to respond to Plaintiff's Motion for Summary Judgment.
(Dkt. No. 74.)  The court allowed the motion and provided
Defendants an additional opportunity to respond.

     On January 3, 2014, Defendants filed a Motion to
Dismiss on standing grounds and a Cross-Motion for Summary
Judgment on the merits.  (Dkt. No. 77.)  On January 14,
2014, Defendants withdrew the Motion to Dismiss because
Plaintiff's individualized bond hearing before an
Immigration Judge, as ordered by this court on January 9,

2014, had been scheduled for February 3, 2014.

The court heard argument on the cross-motions for summary judgment on January 16, 2014.  Near the end of the hearing, Defendants' counsel represented to the court that, despite the national, blanket policy of shackling, ICE would conduct a second individualized analysis to determine whether Plaintiff should be restrained at the February 3, 2014, hearing.  As a result of that proffer, the court denied Plaintiff's motion with respect to the upcoming hearing, but took the broader issue of Plaintiff's potential future shackling under advisement.

At the February 3, 2014, hearing, Plaintiff was fully shackled.  Nonetheless, the Immigration Judge granted Plaintiff's request for bond and set various conditions of release.  (Dkt. No. 91.)  Plaintiff has informed the court that he posted bond, and is therefore no longer in custody. (Dkt. No. 98 at 2.)

### III.  DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences from those facts in that party's favor.  <u>Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt.</u>, 369 F.3d 584, 588 (1st Cir. 2004).  In the absence of a dispute over a genuine issue of material fact, summary judgment is appropriate.  <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1 (1st Cir. 1997).

In addition to actual success on the merits, a plaintiff seeking a permanent injunction must establish: (1) irreparable harm; (2) the absence of an adequate remedy at law; (3) a balance of hardship favoring the plaintiff; and (4) an absence of detriment to the public interest.  <u>Esso Standard Oil Co. v. Lopez-Freyes</u>, 522 F.3d 136, 148 (1st Cir. 2008), <u>citing</u> <u>eBay v. MercExchange, LLC</u>, 547 U.S. 388, 391 (2006).

A.   <u>Success on the Merits</u>

As the ICE policy currently stands, all immigration detainees across the country -- except in narrowly defined exceptional cases -- are shackled at immigration hearings without any individual assessment of the risk they may pose. Plaintiff contends that this policy violates his

constitutional rights and seeks judgment as a matter of law. (Dkt. No. 1.)  He requests a permanent injunction "ordering Defendants to unshackle him during future proceedings in immigration court, absent a constitutionally adequate individualized finding of dangerousness."  (Dkt. No. 82 at 14-15.)

Though the parties spend significant effort disputing the constitutionality of Defendants' broad policy, Plaintiff only seeks <u>individual</u> relief.  As such, the question before the court is solely whether Defendants' policy, <u>as applied to Plaintiff</u>, is unconstitutional.  To succeed on such a claim on procedural due process grounds, a plaintiff "must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process."  <u>Gonzalez-Droz v. Gonalez-Colon</u>, 660 F.3d 1, 13 (1st Cir. 2011), <u>citing</u> <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 56 (1st Cir. 2006).  To determine what constitutes "adequate" process, Plaintiff contends that the court should employ the balancing test provided in <u>Matthews v. Eldridge</u>.  424 U.S. 319, 335 (1976).

-11-

Defendants dispute that the <u>Matthews</u> formulation applies in the immigration context.  Instead, Defendants, citing <u>Saakian v. I.N.S.</u>, 252 F.3d 21, 24-25 (1st Cir. 2001), argue that Plaintiff can only bring a due process claim if he can establish prejudice by pointing to some way in which the <u>outcome</u> of his immigration proceedings was affected by the shackling.  Since the first incident of shackling did not occur until after the Immigration Judge made his initial decision to order Plaintiff removed, Defendants contend, it is impossible for Plaintiff to demonstrate prejudice.

Defendants' contention fails to distinguish between a challenge to the outcome of an immigration hearing and a preemptive objection to a procedure before the hearing takes place.  Indeed, the <u>Saakian</u> case and the cases it relies on all unfold in the same context: a petitioner argues that a due process violation negatively affected his or her immigration case.  <u>Saakian</u>, 252 F.3d at 24-25 (arguing that the failure of the Immigration Judge to reopen his case to argue ineffective assistance of counsel was a due process violation); <u>see</u> <u>also</u> <u>Hernandez v. Reno</u>, 238 F.3d

50 (1st Cir. 2001)(arguing that the ineffective assistance
of counsel prejudiced plaintiff's immigration case); <u>Bernal-
Vallejo v. INS</u>, 195 F.3d 56 (1st Cir. 1999)(same).  The
prejudice requirement, like the harmless error doctrine
often applied in criminal appeals, makes sense in that
context: It prevents the needless remanding of a case that
will be resolved identically even when the procedural
infirmity is remedied.

     Plaintiff's complaint here is of a different nature.
Plaintiff is not arguing in this forum that the Immigration
Judge's decision respecting removal was incorrect.[3]  He is
certainly not contending that the shackling led to the
removal decision.  He does not even argue that shackling
itself was per se unconstitutional.  Plaintiff merely
maintains that the restraint imposed by shackling infringes
on his liberty interest and that the government may only
curtail such a right after enacting appropriate safeguards.
As another court has aptly said with regard to an identical
challenge, "The premise that a due process violation is not
grounds for <u>reversal</u> absent a showing of that degree of

_____

     [3] The Immigration Judge's order to remove Plaintiff is
currently before the BIA.

prejudice has no bearing on a plaintiff's right to seek to enjoin due process violations from occurring in the first instance." <u>De Abadia-Peixoto v. U.S. Dep't of Homeland Sec.</u>, 277 F.R.D. 572, 575 (N.D. Cal. 2011)(emphasis in original).

In sum, it makes little sense to apply the prejudice requirement as framed by Defendants, and, moreover, the case law cited by Defendants is distinguishable.  The court's analysis will therefore proceed along the familiar lines established in <u>Matthews</u>.  This approach requires the court to balance the individual's interests, the risk of an erroneous deprivation of those interests, and the government's interests.  <u>Matthews</u>, 424 U.S. at 335.

### 1.   <u>Plaintiff's Interests</u>

Plaintiff's interests have been identified, at least to an extent, in Supreme Court precedent addressing shackling in the criminal context.  <u>Deck v. Mo.</u>, 544 U.S. 622 (2005). Though the <u>Deck</u> case does not imbricate perfectly with the pending dispute, it does provide guidance.  In that case, the Supreme Court justified a presumption against shackling a defendant in front of a jury in the criminal context for

-14-

three primary reasons.  Id. at 630-31.  First, shackling
undermined the presumption of innocence as it "suggests to
the jury that the justice system itself sees a need to
separate a defendant from the community at large."  Id. at
631 (internal quotation marks and citations omitted).
Second, it diminished the defendant's right to counsel since
shackles "can interfere with a defendant's ability to
participate in his own defense, say, by freely choosing
whether to take the witness stand on his own behalf."  Id.
Finally, shackling undermined the judicial objective of
preserving the dignified and respectful treatment of
defendants.  Id.

     The factor most clearly present in the immigration
context, and the one bearing most heavily in Plaintiff's
favor, is the detainee's interest in the preservation of his
or her dignity.[4]  The presumption against shackling has its
roots in the common law, where one of the primary

_____

     [4] The second reason provided by the Supreme Court -- an
individual's ability to assist his or her counsel -- is also
implicated here.  As evidenced by Plaintiff's inability to
take notes during his immigration proceeding, restraints can
restrict an individual's practical ability to work with his
or her attorney.  This interest, however, though more than
minimal, is insubstantial in comparison with Plaintiff's
dignity interest.

justifications for eschewing mandatory shackling was respect
for the humanity of every individual.  <u>See</u>, <u>People v.</u>
<u>Harrington</u>, 42 Cal. 165, 167-68 (1871); <u>see</u> <u>also</u> <u>Illionis v.</u>
<u>Allen</u>, 397 U.S. 337, 344 (1970)("[N]o person should be tried
while shackled . . . except as a last resort."); <u>U.S. v.</u>
<u>Brantley</u>, 342 Fed App'x 762, 770 (3d Cir. 2009)("A
declaration of "no unfair prejudice" . . . cannot cure the
injury that results to the decorum of the courtroom or the
dignity of the individual if restraints are not actually
necessary.); Joan M. Kauskopf, <u>Physical Restraint of the</u>
<u>Defendant in the Courtroom</u>, 15 St. Louis U.L.J. 351, 351-54
(1970-71).

    It cannot seriously be argued that a detainee such as
Plaintiff has any diminished dignity interest at an
immigration proceeding.  It is just as dehumanizing -- and,
no doubt, demoralizing -- to shackle a detainee in an
immigration court as it would be to shackle him in a
criminal court.  To deny or minimize an individual's dignity
in an immigration proceeding, or to treat this essential
attribute of human worth as anything less than fundamental
simply because an immigration proceeding is titularly civil,

would be an affront to due process and entirely inconsistent with the values underlying Deck.

In reaching this conclusion, the court is not suggesting that no one may ever be shackled.  Under appropriate circumstances, an individual may, in fact, be shackled, even in a criminal courtroom in the presence of a jury and, of course, also in an immigration proceeding. Recognition of the dignity interest at play in the shackling decision merely means that this very important consideration must be balanced against the remaining Matthews factors to determine whether automatic shackling, absent an individualized determination, violates Plaintiff's right to due process and warrants correction.

### 2.   Government's Interests

Balanced against Plaintiff's dignity interest is the government's compelling interest in courtroom safety.  The Deck court explicitly recognized that courtroom security constituted an "essential state interest."  Deck, 544 U.S. at 629.

The government has provided examples of some of the unique safety concerns present at the immigration court in

Hartford, Connecticut, where the proceedings related to
Plaintiff were conducted.  These include: limited officers
on the floor where the immigration court is located; the
logistical requirements of escorting detainees through
multiple floors and public hallways; public waiting areas
the detainees are escorted through; the different stationing
of officers creating potential difficulties in responding to
an emergency; and the public nature of the immigration
proceedings.  (McCaffrey Decl., Dkt. No. 77, Ex. 1.)
Particularly notable is that the Immigration Judges in
Hartford themselves requested that ICE place its modified
2013 policy of individualized determinations on hold because
of safety concerns they had.  (Tr. of Mot. Hr'g at p. 11,
Dkt. No. 88.)("[T]here was a decision made to withdraw that
[November 2013] policy because concerns were made by
immigration judges about the implementation.")  Viewed
collectively, Defendants point out, legitimate safety risks
are present in the Hartford facility and must be taken into
account.

    The court respects these concerns.  It is sometimes
very hard to gauge potential risk, and serious problems,

even violence, can erupt suddenly and without warning from a
seemingly low-risk case.  These safety considerations,
however, do not provide Defendants unlimited authority, nor
do they justify ignoring Plaintiff's dignity interest.  As
the Deck court emphasized, these concerns about potential
risk necessarily require "individualized security
determinations."  Deck, 544 U.S. at 632.  Balanced against
one another, some type of individual determination is
essential to avoid any unnecessary infringement of
Plaintiff's dignity interest while still protecting the
public's safety.  The form of such an individual assessment,
as applied to this Plaintiff, becomes clear after examining
the final Matthews factor.[5]

    3.   Alternate Procedures and Risk to Plaintiff

The final factor requires the court to balance the
additional procedures requested and the risk, absent such

---

[5] The proper balance between a plaintiff's dignity
interest and security concerns was intelligently addressed
in the settlement agreement in Abadia-Peixoto v. U.S. Dep't
of Homeland Sec., 227 F.R.D. 572 (N.D. Cal. 2011).  That
agreement contemplates an individual assessment prior to
shackling during immigration hearings for all detainees at
the San Francisco Immigration Court. (Dkt. No. 90.)  This
settlement agreement illustrates the plausibility of
balancing security interests while still respecting an
individual's dignity.

safeguards, of an erroneous deprivation of a detainee's due process interest.  Plaintiff contends that due process demands that an independent Immigration Judge conduct the individualized determination.  Defendants maintain their position that no individualized assessment is necessary, whether conducted by an Immigration Judge, ICE, or anyone else.

The facts of this specific case present difficulties for Plaintiff.  He has a significant criminal history, including convictions for violent offenses and even for interference with an officer.  Defendants have also pointed to disturbing behavior on Plaintiff's part during his detention, including fighting with other inmates.

Plaintiff for his part points to his good behavior during his initial immigration hearings.  At those proceedings, he was unshackled and yet no security issue arose.  Those hearings, he contends, establish his ability to maintain decorum absent any restraints.

Based on these conflicting arguments, the determination of whether Plaintiff's shackling is required to ensure public safety is a question over which reasonable minds

could disagree.  This court does not fault the recent
decision by ICE, after an individual assessment, that
restraint was required at Plaintiff's February 3, 2014
hearing.

The problem is that under the current blanket policy,
no question exists -- Plaintiff would always be restrained.
Although the risk of erroneous deprivation may be less
troubling in this case than in others, it is still present.
Through an individualized assessment, a reasonable person,
given Plaintiff's prior comportment at immigration court,
could conclude that Plaintiff did not need to be shackled.
This risk, coupled with Plaintiff's dignity interest,
justifies some form of individual assessment on any future
hearing.

The question then becomes whether ICE's individual
analysis respecting Plaintiff is constitutionally
sufficient, or whether an Immigration Judge, and not ICE,
must consider any risk that Plaintiff may pose at a future
hearing.  On the facts before the court, the likelihood that
ICE would decide that Plaintiff should be shackled while the
Immigration Judge would conclude otherwise is negligible.

In other words, if ICE determined that shackling were
appropriate, it is extraordinarily unlikely that an
Immigration Judge, given Plaintiff's extensive criminal
history, would reject or overrule that recommendation.  This
is particularly true since it was Immigration Judges
themselves, or at least some of them, who expressed concern
about the October 2013 individualized policy.  Although an
impartial decision-maker may be necessary in some cases as
an element of due process, the court cannot conceive of
circumstances under which an Immigration Judge, in <u>this</u>
case, would disregard ICE's opinion.  An independent
decision by the Immigration Judge may be advisable but is
not constitutionally required as regards to this Plaintiff.[6]

    After balancing all of the <u>Matthews</u> factors, the court
must conclude that an individual assessment is required
before a detainee may be shackled during immigration

_____

    [6]  This conclusion is limited <u>solely</u> to this Plaintiff.
Although the court believes, based on a number of individual
factors discussed, that the distinction between an
assessment conducted by an Immigration Judge and ICE in this
instance is meaningless, the decision may not be applicable
to other detainees.  There may well be a case where due
process requires that the shackling assessment be made by
the independent judicial officer, the Immigration Judge, and
not by ICE.

proceedings.  Plaintiff's strong dignity interest and the risk of erroneous deprivation of his due process rights make this determination inevitable.  However, when compared with ICE's significant safety concerns, and the fact that ICE and the Immigration Judge would undoubtedly arrive at the same conclusion in this case, Plaintiff's due process rights are satisfied when this individual assessment is made by ICE.

B.   <u>Irreparable Harm</u>

In addition to examining the merits, the court must look carefully at the issue of potential irreparable harm to determine whether issuance of a permanent injunction is appropriate.  <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 217 F.3d 8, 13 (1st Cir. 2000)("Irreparable harm is an essential prerequisite for a grant of injunctive relief.")(citation omitted).  Although, as the discussion above makes clear, the possibility that Plaintiff may be shackled without any individual assessment of risk does raise substantial due process concerns, the absence of any irreparable harm here is fatal to his request for a permanent injunction.

The key, obvious consideration is that Plaintiff has already received the remedy that the court has found due process requires on the facts of this case.  ICE, for the November 2013 and February 2014 hearings, conducted an individual analysis of Plaintiff, and it determined that shackling was necessary.  Plaintiff cannot show <u>any</u> harm, let alone irreparable harm, when an injunction would merely order a remedy Plaintiff has already obtained.

Furthermore, Plaintiff cannot show any risk of a concrete, future injury subjecting him to irreparable harm.  <u>See</u> <u>Charlesbank Equity Fund II v. Blinds To Go, Inc.</u>, 370 F.3d 151, 162 (1st Cir. 2004).  No immigration hearing is pending, nor is it inevitable that Plaintiff will ever be in immigration court again.  More importantly, now that Plaintiff has been released on bail, he is no longer part of the class of detainee-aliens subject to Defendant's blanket shackling policy.  In this context, Plaintiff simply cannot demonstrate that, absent court action, he will suffer irreparable harm.[7]  <u>Id.</u>

---

[7] The court has not addressed the two remaining equitable factors -- balance of harm and public interest -- since the absence of irreparable harm eliminates any justification for a permanent injunction.

IV.  <u>CONCLUSION</u>

In general, due process requires an individualized assessment of the risk posed by an alien detainee before he or she may be shackled during an immigration proceeding. Given the facts of record, it is not necessary for the court to address the question of whether this assessment must always be made by an Immigration Judge rather than an ICE official.  The fact that the evaluation was made by an ICE official in this case does not entitle Plaintiff to permanent injunctive relief, since ICE's individual assessment was enough, here, to satisfy due process.

The coup de grâce to any claim for permanent injunctive relief for Plaintiff on the shackling issue is the recently emerged fact that he is no longer detained and therefore faces no future risk of shackling under the challenged policy.

Thus, since Plaintiff cannot show irreparable harm absent a permanent injunction, Plaintiff's Motion for Summary Judgment on the shackling issue (Dkt. No. 1) is hereby DENIED, and Defendants' Cross-Motion for Summary Judgment on this issue (Dkt. No. 77) is hereby ALLOWED.

The case will continue on the broader issue relating to individual bond hearings that are defined in the class certification.

It is So Ordered.


/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge