UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK ANTHONY REID, on behalf of himself and others similarly situated, Plaintiff, | ) ) ) ) ) |
| v. | ) C.A. NO. 13-cv-30125-MAP ) |
| CHRISTOPHER DONELAN, Sheriff of Franklin County, et al., Defendants. | ) ) ) |

MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTION FOR ENFORCEMENT OR MODIFICATION OF CLASS
CERTIFICATION ORDER AND FOR LIMITED DISCOVERY
(Dkt. No. 144)

December 10, 2014

PONSOR, U.S.D.J.

## I.  INTRODUCTION

Plaintiff,[1] an alien and lawful permanent resident who

was detained without the right to seek release pending

deportation, brought a class action on behalf of himself and

all similarly situated persons held in custody for longer

than six months within the Commonwealth of Massachusetts by

---

[1]  The class is represented by a single person, Mark
Anthony Reid, who stands in the shoes of all others
similarly situated.  For purposes of clarity, the court
refers to "Plaintiff" in the singular throughout this
memorandum.

Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1226(c). The court has previously granted individual habeas relief, certified the class, and granted summary judgment allowing class-wide relief and ordering Defendants to give notice to class members of their entitlement to bond hearings after six months. See Reid v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014)("Reid I")(granting habeas relief); Reid v. Donelan, 297 F.R.D. 185 (D. Mass. 2014)("Reid II")(certifying class); Reid v. Donelan, -- F. Supp. 2d --, 2014 WL 2199780 (D. Mass. May 27, 2014)("Reid III")(granting summary judgment).

Some disagreements have arisen regarding the interpretation of the court's remedial order. Plaintiff has moved to enforce the order to the extent that it requires Defendants to provide individualized bond hearings and notice to all individuals held under 8 U.S.C. § 1226(c). Insofar as some ambiguity exists regarding who exactly these individuals are, Plaintiff has moved, in the alternative, to modify the language of the class certification order so that it provides relief to the class as Plaintiff construes it. Plaintiff has also moved for limited discovery to identify

-2-

class members who may be entitled to relief but who have not yet been disclosed by Defendants. Lastly, Plaintiff has moved for an order requiring Defendants to notify class counsel of the date and time when a class member's bond hearing is scheduled. For the reasons set forth below, the court will substantially allow Plaintiff's motion, denying for now only some aspects of the requested relief.

## II. BACKGROUND

The facts of this litigation have been set forth in detail in the court's three previous memoranda, cited above. Only the facts germane to this motion merit repetition.

Plaintiff represents a class of individuals who were detained in Massachusetts pursuant to 8 U.S.C. § 1226(c) by ICE for over six months without an opportunity for a bond hearing. On January 9, 2014, the court, relying on its prior decision in Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009), granted Plaintiff's individual petition for habeas corpus. Reid I, 991 F. Supp. 2d at 282. The court concluded that two Supreme Court decisions, Zadvydas v. Davis, 533 U.S. 678 (2001), and Demore v. Kim, 538 U.S. 510 (2003), implied that § 1226(c) contained a

-3-

reasonableness limitation on the length of time an individual could be detained without a bond hearing. Citing the Ninth Circuit's decision in Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013), the court set that reasonableness threshold at the six-month mark.[2] Reid I, 991 F. Supp. 2d at 279-81.

One month later, on February 10, 2014, the court certified the case as a class action. Reid II, 297 F.R.D. 185. The court defined the class as "all individuals who are or will be detained within the Commonwealth of Massachusetts pursuant to 8 U.S.C. § 1226(c) for over six months and have not been afforded an individualized bond hearing." Id. at 194. Defendants expressed concern that two of the requirements for class certification, typicality and commonality, were lacking because the proposed class

---

[2] A peripheral issue in this case was Plaintiff's individual challenge to Defendants' policy of shackling him during immigration proceedings absent any individualized consideration. The court, after three hearings, concluded that due process did mandate some form of individualized consideration. Reid v. Donelan, 2 F. Supp. 3d 38, 47 (D. Mass. 2014). However, because ICE had already made a determination regarding Plaintiff individually, the court found that he failed to establish the irreparable harm necessary to warrant a permanent injunction.

included individuals who had received a final order of removal and were, according to Defendants, therefore not detained under § 1226(c). To assuage that concern, the court explicitly stated, "The class requested, and being certified, only includes individuals held under § 1226(c) beyond the six-month mark. Any individual held under a different statute is not, for the time being at least, part of this class." Id. at 191 (emphasis in original). The court further explained, "Plaintiff does point out that an individual may be held under one statute but, due to the nature of his or her immigration litigation, later held under § 1226(c). At the point such individuals have been held under § 1226(c) for six months, they will become members of the class." Id. at 191 n.3.

The parties then filed their dispositive motions. On May 27, 2014, the court, adhering to its prior decisions, granted summary judgment for Plaintiff. Reid III, 2014 WL 2199780, at *6-7. The court entered an injunction requiring Defendants to provide all class members held under § 1226(c) for more than six months the opportunity for a bond hearing pursuant to § 1226(a), which requires an initial bond

-5-

determination.  If a class member is not satisfied with that determination, he or she may seek provisional release under a bond through a hearing before an Immigration Judge.

A dispute quickly arose over which detainees were class members, specifically which were subject to detention under § 1226(c).  Defendants contended that the class only included what they termed "pre-removal" aliens.  Once an administrative order of removal was issued, even if it was appealed, Defendants contended, the aliens were no longer in a "pre-removal" status under § 1226(c) since they were supposedly held pursuant to § 1231(a)(1) in a 90-day "removal period."  As such, they were not class members. Plaintiff disputed Defendants' construction of § 1231 and their distorted interpretation of the class boundary.  By incorrectly grafting this "pre-removal" qualification onto the class definition, Plaintiff argued, Defendants improperly reduced the size of the class and, in the process, failed to comply with the court's order.

As this disagreement was blossoming, Plaintiff's counsel was also attempting to obtain information about the date and time of the calendared bond hearings for

individuals who, Defendants conceded, actually were class members.  The immigration court in Hartford refused to provide that information.  Since presence of counsel is often crucial at bond hearings, Plaintiff's counsel asked Defendants to provide notice of scheduled bond hearings, which Defendants also declined to do.

In this context, on July 21, 2014, Plaintiff filed this motion for enforcement or modification of the class certification order and for limited discovery.  (Dkt. No. 144.)  Specifically, Plaintiff requested that the court make clear that the cohort of aliens supposedly within the 90-day "removal period," whom Defendants were attempting to excise from the class, <u>were</u> being detained pursuant to § 1226(c) and not § 1231(a)(1), and were in fact class members subject to the court's remedial order.  Plaintiff further requested that the court order Defendants to alter their notice of class certification to reflect the proper scope of the class.  In addition, Plaintiff sought limited discovery to ensure that all class members were obtaining timely bond hearings.  Finally, Plaintiff requested that the court order Defendants to provide notice to class counsel of the dates

and times of bond hearings as they were calendared, so that counsel could be present to advocate on behalf of individuals appearing before an Immigration Judge.

On August 11, 2014, Defendants filed their opposition to Plaintiff's motion. (Dkt. No. 158.)  Defendants contended that the class certified by the court did not include individuals who had been detained for more than six months but had received a final administrative removal order and were therefore <u>not</u> "pre-removal" but rather within the "removal period."  Defendants characterized Plaintiff's motion as an impermissible attempt to expand the boundary of the class.

Plaintiff's reply brief cited a decision from this district, <u>Brown v. Lanoie</u>, No. 1:13-cv-13211, Dkt. No. 27, (D. Mass. Aug. 4, 2014)(unpublished), in which Judge Indira Talwani ruled that Petitioner Brown was a member of the <u>Reid</u> class and entitled to a bond hearing, despite the fact that he had received a final administrative removal order and was appealing that order to the Second Circuit.  For the reasons set forth below, this court agrees with Judge Talwani that Plaintiff's construction of the class boundary, and not

Defendants', is correct.  As a result, the court will substantially allow Plaintiff's Motion for Enforcement (Dkt. No. 144).  No modification of the order is needed, since by its terms it clearly covers the entire class cohort as conceived by Plaintiff.  On one or two details the court will decline, for the time being, to provide some of the relief requested by Plaintiff.

### III.  DISCUSSION

### A.  Procedural Framework

A motion for noncompliance with a court order focuses on the four corners of the order, and the court's inquiry is limited to the order's language.  U.S. v. Saccoccia, 433 F.3d 19, 28 (1st Cir. 2005).  A party is only considered noncompliant if the order is clear and unambiguous.  Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991).

In Reid III, the court ordered, "Defendants shall immediately cease and desist subjecting all current and future class members -- that is, those detainees held under 8. U.S.C. § 1226(c) beyond six months -- to mandatory detention under that statute."  2014 WL 2199780, at *8. Defendants take the position that certain individuals

subject to administrative orders of removal are no longer held under § 1226(c) and thus are not members of the class. Consistent with this interpretation, Defendants have not given notice of class membership or the right to individualized bond hearings to those persons. As the discussion below will demonstrate, Defendants' argument is based upon a clear misreading of the applicable statutes -- a misreading that has already been noted by a number of courts.

B. <u>Categories of Contested Individuals</u>

Plaintiff has identified four disputed categories of individuals detained under § 1226(c) in the Commonwealth for a total of at least six months who, Plaintiff argues, are class members entitled to the benefit of the court's remedial order: 1) those who have received -- in the awkward wording of the statute -- "administratively final" orders of removal but are then granted a stay of their removal by a Court of Appeals; (2) those who have received "administratively final" orders of removal and whose motions for a stay are pending before a Court of Appeals; (3) those who receive "administratively final" orders of removal after

-10-

they have been detained for more than six-months; and (4) those who receive "administratively final" orders, but whose petitions for review, motions to reopen, or motions to reconsider are thereafter granted.  Defendants counter that none of these categories of aliens is entitled to relief under the court's remedial order because they are no longer held pursuant to § 1226(c).

No analytical difference separates the first and second categories, i.e. those who have been granted a stay of removal by a Court of Appeals and those whose motions seeking a stay of removal are pending before a Court of Appeals.  These two categories will be addressed together below.  The third category -- individuals who have received a final administrative order of removal after the six-month detention limit -- contains two sub-categories: individuals who received a final order before May 27, 2014 (the date Reid III was issued) and individuals who received a final order after that date.  These two sub-groups will be addressed separately.  Lastly, the court will address the status of individuals in the fourth category -- aliens whose petitions for review, motions to reopen, or motions to

reconsider have actually been granted, but who continue to
held under 1226(c) without the opportunity for a bond
hearing.

    1.    <u>Individuals whose motions to stay removal are
        granted by, or pending before, a Court of Appeals</u>

    The parties agree the key question as to this group is
whether its detention is governed by § 1226 or § 1231.
Section 1231(a)(1) provides:

    (A) In general - - Except as otherwise provided in this
    section, when an alien is ordered removed, the Attorney
    General shall remove the alien from the United States
    within a period of 90 days (in this section referred to
    as the "removal period").

    (B) Beginning of period - - The removal period begins
    <u>on the latest of the following</u>:

        (i) The date the order of removal becomes
        administratively final.
        (ii) If the removal order is judicially reviewed
        and if a court orders a stay of the removal of the
        alien, the date of the court's final order.
        (iii) If the alien is detained or confined (except
        under an immigration process), the date the alien
        is released from detention or confinement.

<u>Id.</u>  (emphasis added).

    Defendants contend that individuals who are pursuing
appeals before a Courts of Appeals are held under § 1231,
rather than § 1226, because the "removal period" for

-12-

purposes of § 1231 commences at "the date the order of removal becomes administratively final."

The glaring flaw in this argument is that it overlooks the preceding phrase, "on the latest of the following." The statute makes clear that an alien is not within the "removal period" and is <u>not</u> detained for purposes of § 1231 until the <u>latest</u> of three enumerated events, including "the day the removal order becomes administratively final" <u>or</u> "if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order."  If a removal order has been stayed, or if a motion to stay is pending, the reviewing court's decision will obviously occur later than the administrative decision that precipitated the motion for stay.  Until the reviewing court issues its final order, the individual subject to the order is not within any "removal period" and is simply not being held under § 1231.

The Ninth Circuit has noted the manifest import of the statute's language.

> The more sensible reading of the statute is that if an alien files a timely petition for review and requests a stay, the removal period does not begin until the court

> of appeals (1) denies the motion for a stay <u>or</u> (2)
> grants the motion <u>and</u> finally decides the petition for
> review.

<u>Prieto-Romero v. Clark</u>, 534 F.3d 1053, 1059 n.5 (9th Cir.

2008)(emphasis in original)(citation omitted).

Indeed, every circuit to consider the matter has found

that § 1226 continues to govern the detention in this

situation.[3] <u>See</u> <u>Leslie v. A.G.</u>, 678 F.3d 265, 270 (3d Cir.

2012)("[Section] 1231 cannot explain nor authorize detention

during a stay of removal pending further judicial review.");

<u>Wang v. Ashcroft</u>, 320 F.3d 130, 147 (2d Cir. 2003)(same);

<u>Bejjani v. INS</u>, 271 F.3d 670, 689 (6th Cir. 2001)(abrogated

on other grounds)(same).

Furthermore, as noted above, this district has already

considered this very question with respect to the detention

_____

[3] Defendants do not pursue a distinction between an
alien being held under § 1226(a) as opposed to § 1226(c).
At least one circuit has held that the authority to detain
an alien who is in custody following the commission of an
aggravated felony and who has received a final
administrative removal order which he then appealed to the
Court of Appeals is held under § 1226(a).  <u>Prieto-Romero</u>,
534 F.3d at 1058.  However, as § 1226(a) contains the
hearing procedure that this court afforded to class members
as relief in <u>Reid III</u>, it is clear that application of
either 1226(a) or 1226(c) would require a bail hearing.

of an individual in this category.  In <u>Brown v. Lanoie</u>, No.
1:13-cv-13211, Dkt. No. 27, (D. Mass. Aug. 4,
2014)(unpublished), Judge Talwani ruled that Petitioner
Dwane Brown's detention was authorized by § 1226, rather
than § 1231, during the pendency of his appeal and that
Brown was therefore a member of the <u>Reid</u> class.  <u>Brown</u>,
1:13-cv-13211 at *7.

Defendants' remaining arguments regarding this group of
aliens have no merit. <u>In re Joseph</u>, 22 I.& N. Dec. 660 (BIA
1999), is not controlling, and to the extent it may be
interpreted as reaching a different conclusion about the
applicability of § 1226, it is unpersuasive. Defendants'
arguments that § 1231 must be read in light of §
1252(b)(3)(B) and § 1252(b)(8)(A) and that this perspective
supports their interpretation of the scope of § 1231 have
been convincingly rejected by the Ninth Circuit.  As that
court recognized,

> Section 1252(b)(8) merely clarifies that a pending
> petition for review does not, by itself, detract from
> the detention authority otherwise conferred by §
> 1231(a)(2) and (a)(6). . . . When the court of appeals
> has issued a stay, however, the alien may not be
> detained under any subsection of § 1231(a) unless and

> until the court finally denies the alien's petition for review.

Prieto-Romero, 534 F.3d at 1060.

In sum, the most reasonable interpretation, indeed the only reasonable interpretation, of § 1231(a), and the consensus of courts that have addressed this issue, make it clear that the statutory authority to detain an individual who has successfully obtained a stay from a Court of Appeals, or has a motion to stay pending, is to be found in § 1226(c). Those individuals are therefore members of the class and entitled to the relief set forth in Reid III.

### 2. Individuals who received "administratively final" orders after the six-month mark

The next category of persons with disputed entitlement to bond hearings are those individuals who received "administratively final" removal orders, not subject to stay or review by the Court of Appeals, after six-months of detention. Individuals in this category are now indisputably being held under § 1231(a) and not § 1226(c). This category must be subdivided into a pre-Reid III period and a post-Reid III period.

At least two individuals identified by counsel, Triston Lewin and Melvin Nooks, received final removal orders prior to May 27, 2014, the date of <u>Reid III</u>. As noted, they were therefore being held under § 1231(a) and not § 1226(c) at the time the court's remedial order issued. At least two others, Carlos Zapata and Jean Cange, received their final orders of removal after May 27, 2014. These two individuals had been held pursuant § 1226(c) for more than six months at the time the remedial order issued, but they are currently being held under § 1231(a).

### a. <u>Final administrative removal orders received before May 27, 2014</u>

Plaintiff argues that, in fairness, because the two identified individuals, and perhaps others, were members of the class at the time it was certified on February 10, 2014, they should be entitled to the same relief as all other class members, even if they were no longer held pursuant to § 1226(c) as of the date that the court issued its remedial order in <u>Reid III</u>, more than three months later. Apart from fairness, Plaintiff's concern is that, if members can fall

-17-

out of the class with the passage of time, the government
will have an incentive to engage in dilatory tactics.

While Plaintiff's anxiety is understandable, it is
assuaged by the fact -- which Plaintiff acknowledges -- that
this small group of individuals will soon disappear.  To
comply with the remedial order, Defendants as of now must
provide individualized bond hearings to class members <u>at or
before</u> the six-month mark.  The few detainees who received
final removal orders prior to May 27, 2014, are <u>not</u> within
the purview of the <u>Reid III</u> order.  It would be unfair to
Defendants for the court to hold that they failed to comply
with an order that did not yet exist when they issued the
final administrative order of removal against this very
limited group of individuals without granting an earlier
bond hearing.

> b. <u>Final administrative removal orders received
> after May 27, 2014</u>

The result is different for individuals who received
the final administrative order of removal <u>after</u> May 27,
2014.  The court at that time ordered Defendants immediately
to give aliens held within the Commonwealth pursuant to §

-18-

1226(c) for six months or more an individualized bond
hearing.  At the time this order issued, those individuals
were within the scope of the court's order.  Defendants had
a duty to comply with that order and their failure to grant
immediate relief to the affected persons constituted
noncompliance with that order.

An example makes the justice of this conclusion clear.
Jean Cange was a class member and subject to the <u>Reid III</u>
order on May 27, 2014; he was entitled to a bond hearing
then.  Nearly two months later, in their July 31, 2014,
status report, Defendants conceded that Cange "was a <u>Reid</u>
class member until he became subject to a final
administrative order on 7/8/14, and thus, was no longer a
class member."  (Dkt. No. 154-1.)  In other words, up until
July 8, 2014, Cange was entitled to a bond hearing, but the
government failed to provide it in a timely manner.  In <u>Reid</u>
<u>III</u>, the court stated, "Once a member's detention crosses
that six-month barrier, he is entitled to seek some form of
individualized analysis of his entitlement to bail."  <u>Reid</u>
<u>III</u>, 2014 WL 2199780, at *7.  As the court recognized in
<u>Bourguignon</u>, "simple fairness, if not basic humanity,

dictates that a court should take into consideration the
entire period in which a person has lost his liberty."   667
F. Supp. 2d at 183.   Denying Cange the right to an
individualized bond hearing now would violate the plain
language of the court's order and the spirit behind its
decision.

In this instance, moreover, Plaintiff's concern about
rewarding Defendants' dilatoriness is compelling.   If class
members can fall out of the class because of Defendants'
delay in providing a bond hearing, Defendants have an
incentive to stall.   The only way to avoid this is to
recognize that once the entitlement to a bond hearing
attaches at the six-month mark individuals must be permitted
the hearing, even if, due to delays, they subsequently find
themselves detained under 1231(a) and not 1226(c).   The
right to a bond hearing for this group of detainees
essentially vested on May 27, 2014.   Defendants' failure to
identify those individuals and provide a bond hearing
constituted a violation of the court's order.   The fact that
individuals later received a final order of removal does not

excuse the previous violation or justify Defendants'
noncompliance with the court's order.

      3.   <u>Individuals who received administratively final
            orders but whose petitions for review, motions to
            reopen, or motions to reconsider are granted</u>

Lastly, the parties seek clarification on whether
individuals who were detained pursuant to § 1226(c) in the
Commonwealth for a total of at least six months and who
receive administratively final orders but whose petitions
for review, motions to reopen, or motions to reconsider were
granted are subject to the <u>Reid III</u> order.  It is worth
noting that neither party has identified any individual who
falls into this category.  However, it is clear that <u>if</u> an
individual successfully obtains review, reopening, or
reconsideration of an administratively final order, then the
statutory basis for his or her continued detention would
have to be § 1226(c).  Once the individual is held for six
months, he or she would be entitled to a bond hearing.

In sum, with the exception of individuals who were
already subject to an administratively final order of
removal as of the effective date of <u>Reid III</u>, May 27, 2014,
<u>all</u> the categories of individuals identified by Plaintiff

are class members entitled to bond hearings under the court's remedial order.

## C.   Request for Limited Discovery

In addition to seeking clarification from the court, Plaintiff has also requested discovery -- including the right to serve interrogatories and requests for production and to conduct depositions -- to determine the breadth of Defendants' noncompliance.  This may not be necessary. Defendants' noncompliance was borne out of a dispute over the interpretation of the scope of the court's order, rather than an expression of bad faith or intentional obstruction. The preferable course, now that the boundaries of the court's order are clear, is to allow the parties to attempt to resolve any discovery issues informally.  If this effort fails, the court will consider permitting formal discovery. The parties will submit a report to the court on this issue on or before January 16, 2015.

## D.   Class Notification

The parties also disputed the timing and language of the class notification.  Plaintiff expressed concern that the proposed notice did not timely or accurately apprise

class members of the relief available to them.  During the
September 15 hearing, Defendants represented to the court
that any perceived timing issues had been resolved and that
the content of the notice would be adjusted so that it would
be consistent with the court's definition of the class.
Accordingly, the parties will, again, be directed to work
together to craft a notice letter consistent with the scope
of the class as detailed in this order.  The status report
due on January 16, 2015, will inform the court of the
progress made on this joint effort.

E.    <u>Notice of Bond Hearings</u>

        Lastly, Plaintiff requests that the court direct
Defendants to notify class counsel upon calendaring a class
member's bond hearing.  Defendants' refusal to advise class
counsel regarding the timing of impending bond hearings will
obviously handicap severely individuals appearing at these
hearings.  The unfairness of requiring persons to appear <u>pro</u>
<u>se</u> is especially galling, and gratuitous, since Plaintiff's
counsel has assembled a network of <u>pro</u> <u>bono</u> counsel who are
willing to appear and offer their services to class members
if they know in advance when a hearing will be taking place.

The process of scheduling hearings, admittedly, creates some awkwardness. In the typical case, an alien who requests a bond hearing will receive written notice of the date and time via regular mail shortly before the hearing is to take place. The Immigration Court will provide notice of the hearing to an attorney only if the attorney has previously filed an appearance. No notice will be given to attorneys who, though willing to come to the hearings and offer representation, have not yet entered into an attorney-client relationship with an alien or filed an appearance.

Defendants point out that <u>Reid III</u> only required Defendants to notify class members; the order imposed no duty to notify class counsel. Defendants contend that it would violate the individual alien's privacy to notify a lawyer the alien may never have heard of, and may or may not want to retain, of the scheduling of the alien's bond hearing.

Further complicating matters, class counsel is understandably reluctant to enter a blanket appearance for all bond hearings because of the ethical and practical issues related to formal representation and, where

appropriate, withdrawal.  As noted, class counsel will try to arrange for attorneys to come to the bond hearings, when notice is available, by acting as a facilitator for a network of pro bono attorneys it has recruited.  These volunteer attorneys appear at bond hearings and establish attorney-client relationships at that time with aliens who wish to be represented.

The crux of the dispute appears to be the privacy concerns raised by Defendants.  The actual risk of some improper invasion seems minimal, given that the bond hearings themselves are public proceedings.  The court therefore proposes the following approach.  Along with the notification of the alien's right to request a bond hearing, Defendants will provide, or include, a notice that he or she may request that class counsel be notified of the date and time of the bond hearing.  Class members will be permitted, at the same time they request a bond hearing, to request that class counsel be notified of the date and time of the bond hearing.  Where an alien makes this request, class counsel will be notified of the date and time of the bond hearing. Counsel are directed, again, to work together to

draft the language of this notification and include a report on this effort in the status report to be submitted on or before January 16, 2015.

It may be that the court's proposal overlooks some practical problem that the parties can themselves work out, or that will need to be presented to the court for resolution. If so, the problem may be described in the status report. Striking the balance between privacy concerns, logistical demands, and the obvious importance of having counsel available for class members at these bond hearings wherever possible does not seem overly difficult if the parties work in good faith to find a solution.

## IV. <u>CONCLUSION</u>

For the reasons set forth, Plaintiff's Motion for Enforcement (Dkt. 144) is ALLOWED in part. The <u>Reid III</u> order is applicable to the class as described above.

In addition, the court orders as follows:

1. The parties will meet promptly to discuss informal discovery regarding class members entitled to relief.

2. The parties will meet promptly to craft a notice to class members that informs them of their rights, consistent with this memorandum.

3. The parties will meet promptly to draft language informing class members of their right to consent to have notice of the date and time of their bond hearing conveyed to class counsel. If a class member so consents, Defendants will notify class counsel of the date and time of the class member's bond hearing.

4. On or before January 16, 2015, counsel will file a joint status report regarding their progress in providing informal discovery or the need for more formal discovery. Counsel will include as an exhibit a copy of the new class notice regarding their rights, as well as a description of the progress on the issue of class notice regarding informing class counsel of the date and time of calendared bond hearings. This report will be drafted and submitted by Plaintiff's counsel, though it should be substantively the product of

the joint efforts of counsel for both sides. In the event counsel cannot agree on the contents of a joint status report, they may submit separate reports.

The clerk shall set this matter for a status conference to take place on January 21, 2015, at 11 a.m. to discuss any outstanding matters, as well as entry of final judgment.

It is So Ordered.


                              /s/ Michael A. Ponsor
                              MICHAEL A. PONSOR
                              U.S. District Judge