# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| MARK ANTHONY REID, )<br>on behalf of himself and others )<br>similarly situated, )<br>                                  )<br>        Petitioners/Plaintiffs, )<br>v.                                    )<br>                                    )<br>CHRISTOPHER DONELAN, SHERIFF, )<br>FRANKLIN COUNTY, MASS., ET AL., )<br>                                    )<br>       Respondents/Defendants. )<br>_____ ) | CIVIL ACTION NO. 3:13-cv-30125-PBS |

## JOINT STATUS REPORT

**I.     Defendants' Response**

The parties appeared before the Court on September 17, 2018, to address the pending motions regarding whether the *Reid* class should be decertified (or can be modified) in light of *Jennings v. Rodriguez*, No. 15-1204, --- U.S. ---, 138 S. Ct. 830 (2018).  The Court ordered the parties to submit a joint status report by October 17, 2018.

      **A. Effect of the First Circuit's Decision and *Jennings v. Rodriguez***

In *Jennings v. Rodriguez*, the Supreme Court specifically rejected the legal basis upon which Judge Ponsor certified the *Reid* class — that under the canon of constitutional avoidance, 8 U.S.C. § 1226(c) implicitly imposed a statutory right to a bond hearing after six months of detention.  *See* 138 S. Ct. 830.[1]  *Jennings* reiterated that 8 U.S.C. § 1226(c) is constitutional and confirmed that § 1226(c) mandates detention for certain aliens throughout their removal

---

[1] Rather than repeat arguments previously made, Defendants incorporate by reference their motion to decertify and opposition to Plaintiffs' motion to modify the class and motion to amend the complaint.  (ECF Nos. 377, 400, 401).

proceedings. Moreover, *Jennings* explicitly rejected the application of any bright-line, time-based rule on a classwide basis to determine whether an alien's detention has become so "unreasonable" as to amount to an arbitrary deprivation of liberty.[2] Additionally, *Jennings* suggested that a class action may no longer be an appropriate vehicle for plaintiffs' due process claims where a single declaratory judgement is incapable of providing relief to the entire class in a single stroke. *See Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338, 350-51 (2011).

Similarly, even before *Jennings*, the First Circuit held that Plaintiffs' claims required an individualized approach — explicitly rejecting the district court's adoption of a bright-line rule, which was "an essential predicate to class certification." *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *cert. denied*, 138 S. Ct. 1547 (2018), *vacated*, 2018 WL 4000993 (1st Cir. May 11, 2018). It further held that the certified class was "substantially overbroad." *Id*. Additionally, the First Circuit noted that "[i]t may well be that no suitable class can be formed, and that due process concerns [] must be raised by an individual. . . ." *Id.* at 502.

However, *Jennings* left open (and remanded) the question of whether the Due Process Clause may require bond hearings whenever 1226(c) detention lasts longer than six months (or at any given pre-determined fixed point). Defendants assert that an individual alien detained under 8 U.S.C. § 1226(c) may bring an as-applied constitutional challenge on a case-by-case basis. To do this, the alien must show that his or her ongoing detention has become so unreasonable or arbitrary that its continuation may violate his or her individual rights under the Due Process Clause and, therefore, the statute is unconstitutional as applied to him under specific

---

[2] 8 U.S.C. § 1252(f)(1) prohibits class-wide injunctive relief that would enjoin or restrain the operation of § 1226(c). The *Jennings* Court instructed the 9th Circuit to reconsider § 1252(f)(1)'s limitation to class-wide injunctive relief based on an as-applied constitutional claim that would enjoin or restrain operation of the statute. *Jennings*, 138 S. Ct. at 851.

circumstances. But this inquiry is highly fact-specific and will necessarily be different in every case. Accordingly, such claims must be raised by way of an individual petition for a writ of habeas corpus when the alien believes that the particular circumstances of his case suggest that his detention has become so "unreasonable" as to amount to an arbitrary deprivation of liberty.

### B. The Court Should Grant the Pending Motion to Decertify the Class Before Evaluating the Merits

The First Circuit remanded this case "for reconsideration of the certification order." *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993, at *1 (1st Cir. May 11, 2018). Thus, the Court must first determine whether the *Reid* class should be decertified. It may then either evaluate Plaintiffs' motions to amend the complaint and modify the class, or determine whether the Plaintiffs' claim is capable of classwide relief at all. Only after resolving these issues should the Court turn its attention to any merits analysis of an as-applied constitutional challenge after appropriate briefing on summary judgment.

### C. Response to the Court's Inquiries

At the September 17, 2018 hearing, the Court articulated a desire "to understand what's happening in the field" and "to understand the case a little better" before moving to "briefing on summary judgment." *Reid* September 17, 2018 Hearing Transcript ("Transcript"), p. 60. Specifically, the Court inquired about the length of time required to complete removal proceedings; the types of criminal convictions that warrant mandatory detention under § 1226(c); the length of criminal incarceration as compared to immigration detention; the types of relief § 1226(c) aliens may apply for; and the likelihood of success in receiving such relief from removal. *See* Transcript pp. 9-10, 20, 46, 56, 60-61. Defendants emphasize that, while this type of information may be relevant to the merits of an individual alien's constitutional due process challenge to his or her continued mandatory detention, gathering such information and data

before the Court decides the foundational legal issue of class decertification is both premature and extremely burdensome.

In any event, Defendants submit relevant statistics from the Executive Office of Immigration Review's ("EOIR") on immigration case completion times for detained individuals at the Boston and Hartford Immigration Courts who have removal charges that may trigger mandatory detention under 8 U.S.C. § 1226(c), as well as information regarding average processing times for those cases appealed to the Board of Immigration Appeals ("BIA"). *See* Defendants' Exhibit 1, Declaration of Benjamin B. McDowell and Appendix.[3] The data reflects that:

- Over the past five years, the median completion time in non-appealed cases involving detained aliens with removal charges that trigger 1226(c) detention was below 45 days at the Boston Immigration Court, and was below 40 days at the Hartford Immigration Court.

- For non-appealed cases involving detained aliens with removal charges that trigger 1226(c), the Boston Immigration Court completed the vast majority (approximately 90%) of cases prior to the six-month mark for FY 2014 – 2018. Indeed, in FY 2018, only 18 cases in Boston meeting the above criteria took over six months to resolve. In the Hartford Immigration Court only four cases took longer than six months to resolve in FY 2018. For appealed cases, Boston completed all but eight cases in less than six months and Hartford did not have any cases that took longer than six months to resolve.

- In cases that were appealed to the BIA, the median completion time at the immigration judge ("IJ") level was less than 100 days at the Boston Immigration Court and less than 80 days at Hartford in 2018. The data reflect that in 2018, it took EOIR a median completion time of less than nine months to complete both stages of IJ adjudication and BIA appeal in cases originating in Boston and Hartford.

- In 2018, 12% of detained aliens with charges of removal that trigger mandatory detention were granted relief by IJs at the Boston Immigration Court (20/168) in non-appealed cases, and 10% had their removal cases terminated (18/168). In

---

[3] Defendants submit this data in response to the Court's request for "readily available information". *See* Transcript p. 60. By doing so, they are not waiving their objection to Plaintiffs' request for expedited discovery.

4

       Hartford, only six aliens were granted relief at the IJ stage and none received termination in 2018 in non-appealed cases. In appealed cases, no alien was granted relief (0/32) by IJs at the Boston Immigration Court and only 3 out of 32 received termination in 2018. In appealed cases, no alien was granted relief or received termination at the IJ level in Hartford in 2018.[4]

       Additionally, EOIR prevents arbitrary detention under 8 U.S.C. § 1226(c) by providing *Joseph*[5] hearings and by prioritizing the adjudication of cases involving detained aliens. In fact, all cases involving individuals in detention, including aliens properly subject to mandatory detention under § 1226(c), are priorities for completion. *See* EOIR, Memorandum: Case Priorities and Immigration Court Performance Measures (Jan. 2018) available at https://www.justice.gov/eoir/page/file/1026721/download. The designation of a category of cases as priority indicates an expectation that such cases will be completed expeditiously and without undue delay, consistent with due process. *See id.* EOIR has always had a goal of completing 80% of all non-status detained removal cases within 60 days of DHS's filing the charging document. *See* Dep't of Justice FY17 Annual Performance Report and FY2019 Performance Plan at 44 (Feb 2018) available at https://www.justice.gov/doj/page/file/1033761/download#goals.

---

[4] EOIR has also published statistics regarding case completion times nationwide for detained aliens with removal charges that may trigger mandatory detention. *See* Executive Office for Immigration Review, Certain Criminal Charge Completion Statistics (Aug. 2016) available at https://www.justice.gov/sites/default/files/pages/attachments/2016/08/25/criminal-charge-completion-statistics-201608.pdf

[5] A *Joseph* hearing provides an alien an opportunity to contest the government's basis for mandatory detention "by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003); *Matter of Joseph*, 22 I. & N. Dec. 799, 806 (B.I.A. 1999) (An IJ or BIA determines whether DHS/ICE "is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention."); 8 C.F.R. § 1003.19(h)(2)(ii). An alien may appeal the IJ's *Joseph* decision to the BIA. *See* 8 C.F.R. § 1003.1(b)(7).

EOIR also encourages IJs to limit the number of continuances granted in removal cases, especially those involving detained aliens. *See* EOIR, Office of the Chief Immigration Judge OPPM 17-01: Continuances available at https://www.justice.gov/eoir/file/oppm17-01/download. Similarly, the BIA prioritizes the adjudication of detained cases. *See* 8 C.F.R. 1003.1(e)(8) (BIA appeals should be disposed of within 90 days or 180 days . . . "with a priority for cases . . . involving detained aliens."). Indeed, in 2017 the BIA exceeded its goal of completing 90% of detained appeals within 150 days. *See* Dep't. of Justice FY17 Annual Performance Report at 45. Additionally, an alien can always file a motion to advance his or her hearing date if he believes his detention has become prolonged. *See* Immigration Court Practice Manual Ch. 5 at 109 (2018) available at https://www.justice.gov/eoir/page/file/1084851/download

Notwithstanding EOIR's efforts to prioritize detained cases, an IJ must "safeguard due process above all [else]." OPPM 17-01: Continuances at 3. Simply put, statistics alone do not tell the whole story. EOIR provides robust process[6] and the passage of time in removal

---

[6] After DHS charges an alien with violating immigration laws, EOIR decides whether that individual is removable from the country and if found removable, whether they qualify for protection or relief from removal. An alien's initial appearance in immigration court is at a master calendar hearing at which the alien will be advised of his rights, have the removal charges explained to him, have the IJ explain how to apply for various forms of relief, and be provided a list of pro bono attorneys. 8 C.F.R. § 1240.10(c); *see also* Dep't. of Justice Fact Sheet, EOIR an Agency Guide at https://www.justice.gov/eoir/page/file/eoir_an_agency_guide/download. Additionally, it is EOIR's policy that at least one continuance should be granted to allow an alien sufficient time to try to retain counsel. *See* OPPM 17-01: Continuances at 4. Further, IJs may grant continuances for attorney preparation, especially if the issues in the case are "complex." *See id.* If an alien contests the charges of removal, the IJ will hold a hearing on the issue. 8 C.F.R. § 1240.10(c). An alien also has an opportunity to apply for various forms of relief from removal. To adjudicate the alien's application for relief, the IJ will conduct a "merits hearing," at which the alien has an opportunity to present evidence, including witness testimony, and an opportunity to cross-examine government witnesses. 8 U.S.C. § 1229a(b)(4). And an alien who is unsatisfied with the outcome of his or her case has an opportunity to file an appeal with the BIA. 8 C.F.R. § 1003.1(b).

proceedings typically reflects the alien's decision to avail himself of various due process protections available in immigration court and the IJ's efforts to ensure due process.

Next, in response to the Court's request for details into the types of criminal acts and/or convictions that cause an alien to fall under § 1226(c)'s mandatory detention (Transcript pp. 9-10), Defendants refer the Court to Defendants' Exhibit 2, "Summary of Offenses, Crimes, and Convictions Referenced in 8 U.S.C. § 1226(c)".  Also, in response to the Court's request for "letters" about cases where other courts rule on this issue post-*Jennings* (Transcript p. 54), Defendants have compiled a list of several post-*Jennings* district court decisions from eight different jurisdictions that address the constitutional "reasonableness" of § 1226(c) detention, and determine that the inquiry requires an individualized, case-specific analysis — not a bright-line rule.  *See* Defendants' Exhibit 3, "Case List".

### D.  Plaintiffs Are Not Entitled To Expedited Discovery

Plaintiffs attempted to gain expedited discovery in this case by submitting the attached letter and Request for Production to Defendants on October 3, 2018.  *See* Defendants' Exhibit 4 – Letter from Plaintiffs.  On October 4, 2018, Defendants conferred with Plaintiffs telephonically and informed Plaintiffs that the government did not believe that the Court ordered such discovery at the September 17, 2018 hearing, and furthermore, Defendants believed that such expedited discovery requests were premature and not relevant to the legal posture of the case.

Although a single, legal question can dispose of the claims in this case, Plaintiffs have continuously sought broad discovery[7] in this matter since 2013.  ECF No. 92.  Each time, Judge

---

[7] The Federal Rules of Civil Procedure permit discovery of "any non-privileged matter that is *relevant* to any party's claim or defense, and *proportional* to the needs of the case, considering the importance of the issues at stake in the action . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1) (emphasis added).

Ponsor determined that discovery was either not warranted or was only permitted on a very limited and targeted basis.[8]  Accordingly, Defendants believe that the Court should not permit Plaintiffs to seek expedited discovery in this case at all, and certainly not until the preliminary motions—motions to decertify the class, modify the class, and amend the complaint—have been resolved.

---

[8]  On November 27, 2013, Plaintiffs sought to compel Defendants to respond to interrogatories, document requests, and 30(b)(6) depositions "on an expedited basis," before the Court certified the *Reid* class.  *See* ECF No. 71.  Judge Ponsor denied Plaintiffs' request as moot on January 22, 2014.  *See* ECF No. 87.  Plaintiffs continued to press the Court for "eight (8) months of discovery," which the Court denied on March 3, 2014, noting that "at the moment, however, the need for discovery does not appear compelling."  ECF No. 101 at 2; ECF No. 94 at 2.  On April 20, 2015, Plaintiffs again sought an order to compel discovery "about the identification of class members and notification processes of class members and class counsel."  *See* ECF No. 182 at 27; ECF No. 211-1.  On July 8, 2015, after noting that Plaintiffs' counsel were not "satisfied" with Defendants' informal "attempts to provide" Plaintiffs with information about identification and notification procedures of *Reid* class members, the Court allowed Plaintiffs to notice "two depositions."  ECF No. 236.  Again, on November 24, 2015, Plaintiffs sought more formal discovery asserting that it was "necessary to speak to a witness that can testify to remaining topics outlined in the 30(b)(6) notice."  *See* ECF No. 259.  And on December 14, 2015, the Court allowed Plaintiffs to "conduct the deposition for no more than a total of two hours of the individual or individuals identified as knowledgeable by Defendants."  *See* ECF No. 267 at 2. Despite taking this discovery, on February 10, 2017, Plaintiffs filed another motion to compel discovery based on their supposed "ongoing difficulties" encountered by Plaintiffs in contacting detained *Reid* class members.  *See* ECF No. 331.  On March 23, 2017, Judge Ponsor denied that discovery motion.  *See* ECF No. 344.

## II. Plaintiffs' Response

Pursuant to the Court's September 17, 2018 Order instructing both parties to submit a joint status report, Plaintiff Mark Reid, on behalf of himself and others similarly situated ("Plaintiffs"), and Defendants Christopher Donelan, et. al, respectfully submit this Joint Status Report:

**Procedural History**

During the hearing on September 17, this Court instructed the parties to "confer and find out what information is out there" in order to "understand what's happening in the field" regarding the government's use of prolonged detention under Section 1226(c). *See* Transcript of Motion Hearing at 60, Dkt. No. 413. In accordance with the Court's instructions, counsel for Plaintiffs emailed counsel for Defendants on September 19 to schedule a time to confer regarding the development of a record as requested by the Court, including targeted discovery. On September 24, Defendants' counsel responded that they did not believe the Court had approved discovery, that they were discussing with their clients how to respond to the Court's requests, and that they were available to confer the first week of October.

The parties agreed to confer on October 4. The day before, Plaintiffs' counsel sent a letter articulating their understanding of the scope of the Court's requests for information, and requesting production of records in four areas. *See* Plaintiffs' Exhibit A. By reply email, Defendants' counsel reiterated their view that discovery was not ordered by the court.

During the meet and confer call, the parties confirmed their positions with regard to the Court's information requests. Defendants' position was that Plaintiffs' requests for production were not ordered by the Court. Plaintiffs maintained their position that the Court's stated interest in acquiring empirical information to understand the implementation of the Government's

9

Section 1226(c) detention practice requires Defendants to make available targeted and responsive data.

On October 8, Plaintiffs' counsel emailed Defendants' counsel to provide a summary of Plaintiffs' understanding of Defendants' position based on the meet and confer call and a plan to move forward to submit the Joint Status Report. Counsel for Defendants responded on October 9 that "the government intends to provide information relevant to addressing the Court's inquiries, but not to Plaintiffs' requests for expedited discovery" and that Defendants would share with Plaintiffs the information they plan to provide the Court on October 16.

## **PLAINTIFFS' POSITION**

In accordance with the Court's directive, articulated at the September 17 Motion Hearing, to develop an evidentiary record in the case, Plaintiffs seek limited discovery and request that the Court order parties (1) to confer regarding a Federal Rule of Civil Procedure 26(f) report within 10 days, (2) submit the report within 10 days of conferral, and (3) commence discovery upon submission of the report.

Defendants have superior access to information regarding detention practice under Section 1226(c). Thus, Defendants are in the best position to make available information relevant to the Court's inquiries. However, Defendants have declined to share with Plaintiffs the data by which they arrived at their figures and the methodologies by which they calculated those figures. In order to facilitate a fuller and more reliable understanding of the government's detention practices per the Court's request, Plaintiffs seek limited discovery.

Plaintiffs have had no opportunity to view any of the government's exhibits, and have not seen or verified the methodologies or the list of cases appended. The only class action challenge brought by Section 1226(c) detainees of which Plaintiffs are aware is *Rodriguez*.

In the interim, to assist the Court's understanding of the questions it raised at the September 17 Motion Hearing, Plaintiffs' counsel investigated and produced both qualitative and quantitative empirical information available to them and have reproduced it for the Court's consideration, below.

**Factual Background**

The stories of named plaintiff Mark Reid and *Reid* class member Arnoldo Rodriguez illustrate the human cost associated with the procedural and legal complexities of prolonged detention without an opportunity to be heard.

The government subjected Mark Reid to mandatory detention for over fourteen months at Franklin County Jail. Finally, after this Court's consideration of his habeas petition, Mr. Reid was provided the opportunity to make a case for his release from immigration detention at a bond hearing in February 2014. At Mr. Reid's bond hearing, the Immigration Judge set bond in the amount of $25,000. Mr. Reid posted the bond and, shortly thereafter, was released. Over the five-and-a-half years since Mr. Reid's release on bond, the Board of Immigration Appeals has ruled in his favor three times. Mr. Reid was recently found to have not committed an aggravated felony by the Immigration Judge, opening up alternative avenues for him to secure permanent immigration relief. By the time of Mr. Reid's next individual hearing, he will have spent approximately six years in removal proceedings. If not for the intervention of this Court, Mr. Reid would never have had a hearing over whether his detention was necessary. *See* Pls.' Suppl. 56.1 Statement of Undisputed Facts in Supp. of Suppl. Mem. in Supp. of Mot. for Summ. J., Dkt. No. 387-2 [hereinafter "SSOUF"] ¶ 22-25.

The government incarcerated *Reid* class member Arnoldo Rodriguez at Bristol County Jail Immigration Detention Center for over a year and a half – from July 2016 until February

11

2018 – while he litigated his immigration proceedings. He was released on bond in February 2018 and continues to contest his removal; the First Circuit and the Board of Immigration Appeals have remanded his case to the immigration judge, illustrating the importance of appellate and federal court review in class members' immigration cases. Prior to his detention, Mr. Rodriguez worked three jobs to support his three U.S. citizen daughters and one U.S. citizen grandson. His youngest daughter has a learning disability and struggled in school while he was detained. Since his release, his daughter has resumed living with Mr. Rodriguez and her grades have improved. SSOUF ¶ 45-47. Mr. Rodriguez continues to contest removability in his immigration proceedings and now able to provide for his family at the same time.

Mr. Reid and Mr. Rodriguez are emblematic of the approximately 108 current and former *Reid* Class Members and the proposed new *Reid* Class Members housed by the Strafford County Sherriff's Office.

**Plaintiffs' Aggregate Data on Individuals Detained under Section 236(c)**

In order to facilitate the Court's understanding of the inquiries it posed at the September 17 Motion Hearing, Plaintiffs have investigated and summarized the responsive empirical data available to them and reproduce that information below.

1. Plaintiffs are aware of at least 79 individuals detained under Section 1226(c) in Massachusetts who have had bond hearings pursuant to the May 2014 injunction in *Reid*. *See* SSOUF ¶ 3.

2. Of the *Reid* bond hearings for which Plaintiffs were able to determine the outcome, 44% (35 out of 79) resulted in bond being granted. *Id.* ¶ 4.

3. <u>Length of Detention</u>**:** According to the government's corrections to its representations to the Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003), in cases where an appeal of

an immigration judge decision to the Board of Immigration Appeals is taken, statistics from the Executive Office of Immigration Review show that the average length of detained proceedings under Section 1226(c) is 382 days. SSOUF ¶ 21

4. In the year before the implementation of the *Reid* injunction, individuals detained under Section 1226(c) whose cases lasted more than six months in Hartford or Boston Immigration Courts had an average proceeding length of 352 days. *Id.* ¶ 6.

5. In the Central District of California, the average length of detention under 1226(c) for a set of approximately 1,000 studied individuals detained over six months was 427 days. Detention lasted up to 1,585 days in that cohort. *See* Respondents' Suppl. Br. at 5, *Jennings v. Rodriguez*, 134 S.Ct. 471 (2018).

6. Immigration Relief: In the year before the implementation of the *Reid* injunction, 27% of individuals detained under Section 1226(c) whose cases lasted more than six months in the Hartford or Boston Immigration Courts were ultimately granted immigration relief or termination of their removal proceedings. By comparison, the success rate for all individuals detained throughout their removal proceedings was 15%. SSOUF ¶ 7.

7. Presentment Timeline**:** According to court filings in a parallel case in the Second Circuit, Section 1226(c) detainees with cases at the Varick Street Immigration Court and Batavia Immigration Court in New York spend an average of 43 days and 34 days respectively in detention before their first appearance in immigration court. *See* Pls' Mem. of Law in Supp. of Mot. for Class-Wide Prelim. Inj. at 3, *Sajous v. Decker*, No. 18-CV-2447 (S.D.N.Y. Apr. 25, 2018).

8. As the above examples of Mr. Reid and Mr. Rodriguez demonstrate, proceedings often drag on because the Board of Immigration Appeals and/or the federal Circuit Courts

identify errors made by immigration judges. Plaintiffs' position is that the causes of delay in a detainee's immigration proceedings are relevant to the question of whether a detainee should be *released*, not to the question of whether, or when, a detainee is entitled to a *hearing*. Nevertheless, to the extent the Defendants argue that the causes of delay are relevant to eligibility for a hearing, the examples of Mr. Reid and Mr. Rodriguez demonstrate that delays are not necessarily the fault of the detainee (and the discovery Plaintiffs seek is likely to yield additional similar examples). Furthermore, courts have held that due process prohibits penalizing immigrants for taking advantage of the legal protections afforded them. *See, e.g.*, *Ly v. Hansen*, 351 F. 3d 263, 272 (6th Cir. 2003) ("[A]ppeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.") In fact, every court of appeals to consider it has rejected the government's view that all mandatory detention remains reasonable in relation to its purpose if the delay is caused by the time needed for individuals to litigate their cases, regardless of detention length. *See Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016); *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015); *Reid v. Donelan*, 819 F.3d 486, 500 n.4 (1st Cir. 2016).

**Plaintiffs' Requests for Production**

Plaintiffs requested Defendants provide information that would be relevant in answering the questions that this Court posed regarding the detention regime under Section 1226(c). *See* Plaintiffs' Exhibit A. The first request corresponds with records that the Executive Office of Immigration Review (EOIR) has made publicly available from its electronic database of immigration court proceedings. The spreadsheets available online provide anonymized information on immigration charges, detention, and case outcomes for individuals in removal proceedings, including individuals subject to mandatory detention under Section 1226(c). Unfortunately, unless Defendants produce information matching A-numbers with the anonymous case identification numbers used in the public version of the EOIR data, there is no way to match EOIR data with ICE data, and therefore no way to match critical ICE information (for example, on length of detention) with critical EOIR information (for example, on success in applications for relief).

Additionally, Defendants have provided no individual-level ICE data that would allow the calculation of basic descriptive statistics concerning the class, such as the information on length of detention in ¶ 5 above. (That information comes from data produced by ICE in another case.) As explained in the Declaration of David Hausman, Dkt. No. 387-5, ¶ 8, with EOIR data alone, length of detention must be approximated using information on case length rather than the more precise information on the dates that an individual is booked into and out of ICE custody— information that only ICE, and not EOIR, maintains. And without ICE's production of data, there is no way to link EOIR data with ICE's more detailed and reliable information on detention and factors that would bear on the reasonableness of detention under Section 1226(c).

**Plaintiffs' Conclusion**

In order to facilitate a fuller and more reliable understanding of the government's detention practices per the Court's request, Plaintiffs seek limited discovery and request that the Court order parties (1) to confer regarding a Federal Rule of Civil Procedure 26(f) report within 10 says, (2) submit the report within 10 days of conferral, and (3) commence discovery upon submission of the report.

Respectfully,

Erin Drake, Law Student Intern
Clare Kane, Law Student Intern
Aseem Mehta, Law Student Intern[*]
Amber Qureshi, Law Student Intern
Marisol Orihuela[†]
Michael Wishnie (BBO# 568654)
Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
Fax: (203) 432-1426
marisol.orihuela@ylsclinics.org
michael.wishnie@ylsclinics.org

Ahilan T. Arulanantham[†]
ACLU Immigrants' Rights Project
1313 West 8th Street
Los Angeles, CA 90017
213-977-5211
aarulanantham@aclusocal.org

Anant K. Saraswat (BBO# 676048)
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210
Tel: 617-646-8000
Fax: 617-646-8646
anant.saraswat@wolfgreenfield.com

Michael K.T. Tan[†]
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
212-519-7848 (p)
212-549-2654 (f)
mtan@aclu.org

*Counsel for Plaintiffs*

[*] Law student appearance forthcoming.
[†] Admitted *pro hac vice*.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

COLIN A. KISOR
Deputy Director, District Court Section
Office of Immigration Litigation

ELIANIS PEREZ
Assistant Director

/s/ Lauren E. Fascett
LAUREN E. FASCETT
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3466
Lauren.Fascett@usdoj.gov

**CERTIFICATE OF SERVICE**
Case No.: No. 3:13-cv-30125-PBS

      I hereby certify that on October 17, 2018, I filed the foregoing Joint Status Report and Exhibits on the CM/ECF for the District of Massachusetts.  All parties are registered CM/ECF users and were served electronically.

                    */s/ Lauren E. Fascett*
                    LAUREN E. FASCETT
                    Trial Attorney
                    United States Department of Justice
                    Civil Division
                    Office of Immigration Litigation
                    District Court Section
                    P.O. Box 868, Ben Franklin Station
                    Washington, D.C. 20044
                    (202) 616-3466
                    Lauren.Fascett@usdoj.gov