# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
MARK ANTHONY REID, on behalf of   )
himself and others similarly     )
situated,                        )
                          )
      Plaintiff/Petitioner,   )
                          )       Civil Action
      v.                     )     No. 13-30125-PBS
                          )
CHRISTOPHER DONELAN, Sheriff,   )
Franklin County, et al.,      )
                          )
      Defendants/Respondents.   )
_____)

## MEMORANDUM AND ORDER

October 23, 2018

Saris, C.J.

## INTRODUCTION

In this class action, Plaintiffs challenge the mandatory
detention of certain criminal aliens for more than six months
without the opportunity for a bond hearing during removal
proceedings pursuant to 8 U.S.C. § 1226(c) under the Fifth
Amendment Due Process Clause and the Eighth Amendment Excessive
Bail Clause. In 2014, the court (Ponsor, J.) certified a class
of "[a]ll individuals who are or will be detained within the
Commonwealth of Massachusetts pursuant to 8 U.S.C. § 1226(c) for
over six months and have not been afforded an individualized
bond hearing." Reid v. Donelan, 297 F.R.D. 185, 194 (D. Mass.

1

2014). The Government has filed a motion asking the Court to decertify this class, citing Jennings v. Rodriguez, 138 S. Ct. 830 (2018), and Reid v. Donelan, 819 F.3d 486 (1st Cir. 2016), withdrawn, No. 14-1270, 2018 WL 40000993 (1st Cir. May 11, 2018). Plaintiffs oppose decertification. They have also moved to amend the complaint and modify the class.

After hearing, the Court **ALLOWS** Plaintiffs' motions to amend the complaint (Docket No. 384) and modify the class definition (Docket No. 378) and **DENIES** the Government's motion to decertify the class (Docket No. 377).

## PROCEDURAL HISTORY

### I.    Commencement of Action and Individual Habeas Petition

On July 1, 2013, Plaintiff Mark Anthony Reid filed a petition for writ of habeas corpus and a complaint for injunctive relief. He brought statutory and constitutional claims challenging mandatory detention under § 1226(c) on behalf of a class.[1] On January 9, 2014, the court (Ponsor, J.) granted Reid's individual habeas petition. Reid v. Donelan, 991 F. Supp. 2d 275, 276 (D. Mass. 2014), aff'd, No. 14-1270, 2018 WL 40000993 (1st Cir. May 11, 2018). Following its earlier decision in Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass.

---

[1]    Reid also brought an individual claim alleging that the Government's shackling policy violated due process. The court (Ponsor, J.) disposed of this claim on March 6, 2014. See Reid v. Donelan, 2 F. Supp. 3d 38 (D. Mass. 2014).

2009), the court determined that § 1226(c) "include[d] a 'reasonableness' limit on the length of time an individual can be detained without an individualized bond hearing" to avoid due process concerns with indefinite detention. Reid, 991 F. Supp. 2d at 278-79. The court then evaluated two approaches to implementing this reasonableness requirement: an automatic bond hearing once detention exceeds six months (six-month rule) or a bond hearing only when detention has become unreasonable as analyzed on a case-by-case basis (individualized reasonableness rule). See id. at 279-82. The court held that Reid was entitled to a bond hearing under either approach but suggested it would adopt the six-month rule in the future. See id. at 279.

## II. **Class Certification**

On February 10, 2014, the court (Ponsor, J.) certified the class. Reid, 297 F.R.D. at 194. It determined that the class was sufficiently numerous because Plaintiffs identified between 39 and 42 class members during the course of a one-year period in 2011 and the transient nature of the class made it difficult to identify members at any particular time. See id. at 188-89. The court recognized that the common legal question of "whether § 1226(c) requires a bond hearing after an unreasonable period of detention" governed the entire case. See id. at 189. The court found that Reid's claims were typical of those of the class because all class members presented the same common

question of law and sought the same remedy. See id. at 191. It held that Reid was an adequate class representative, even though it had already granted his individual habeas petition, because the inherently transitory nature of the class meant that it was possible that no individual would be a member long enough to reach certification. See id. at 191-92. The court found the attorneys at the Jerome N. Frank Legal Services Organization at Yale Law School adequate and appointed them class counsel under Rule 23(g). See id. at 192, 194. It certified the class under Rule 23(b)(2), noting that the Government refused to provide bond hearings to any class member under its § 1226(c) detention authority and that the class members all sought an order that § 1226(c) must be read as requiring bond hearings after six months of detention. See id. at 192-93. The Government did not appeal the class certification order.

## III. **Permanent Injunction and First Circuit Appeal**

On May 27, 2014, the court (Ponsor, J.) awarded summary judgment and a permanent injunction to the class on the basis of its holding that § 1226(c) included a requirement for a bond hearing after six months of detention. See Reid v. Donelan, 22 F. Supp. 3d 84, 88-89, 93-94 (D. Mass 2014), vacated, No. 14-1270, 2018 WL 40000993 (1st Cir. May 11, 2018). The Government appealed the classwide injunction and the earlier grant of habeas corpus for Reid.

In its initial decision on April 13, 2016, the First Circuit agreed that "categorical, mandatory, and indeterminate detention raises severe constitutional concerns" and that the canon of constitutional avoidance required reading a bond hearing requirement into § 1226(c). Reid, 819 F.3d at 494. Disagreeing with the district court, however, the First Circuit held that Supreme Court precedent required it to adopt the individualized reasonableness rule. See id. at 495-98. It instructed courts evaluating the reasonableness of § 1226(c) detention without a bond hearing to "examine the presumptions upon which [mandatory detention] was based (such as brevity and removability)" and consider "the total length of detention; the foreseeability of proceedings concluding in the near future . . .; the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order." Id. at 500.

Applying these factors, the First Circuit affirmed the decision to grant Reid a bond hearing on the grounds that he had been detained for fourteen months, he had a colorable argument against removal, and the end of his removal proceedings was not imminent. See id. at 501. It also vacated the grant of summary judgment on the class claims. Id. As "the district court's

adoption of the [six-month] rule was an essential predicate to class certification," the First Circuit's adoption of the individualized reasonableness approach eliminated that predicate and rendered the class overbroad. Id. To avoid potentially "premature adjudication of constitutional questions," the First Circuit remanded the case to reconsider class certification. Id. at 502.

### IV. **_Jennings_ and Withdrawal of First Circuit Opinion**

Two months later, the Supreme Court granted certiorari in Jennings v. Rodriguez, involving a class action in the Ninth Circuit also challenging mandatory detention under § 1226(c). See 136 S. Ct. 2489 (2016). The First Circuit stayed this lawsuit pending resolution of Jennings.[2] On February 27, 2018, the Supreme Court held that the explicit language in § 1226(c) requiring mandatory detention pending removal proceedings barred courts from invoking the canon of constitutional avoidance to read into the statute an implicit requirement for bond hearings. Jennings, 138 S. Ct. at 846-47. Instead, the Court determined that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of

---

[2]     Plaintiffs filed a petition for writ of certiorari while Jennings was pending, arguing that, because Justice Kagan recused herself in Jennings, this lawsuit presented a better vehicle to resolve questions concerning mandatory detention under § 1226(c). The Supreme Court denied the petition after deciding Jennings. See Reid v. Donelan, 138 S. Ct. 1547 (2018).

removal proceedings 'only if' the alien is released for witness-protection purposes." Id. at 847. Since the Ninth Circuit did not decide if this mandatory detention is constitutional, the Court declined to rule on that question. See id. at 851.

Shortly thereafter, the First Circuit withdrew its opinion and vacated its judgment. See Reid, 2018 WL 40000993, at *1. In a summary decision, it affirmed the district court's judgment for Reid individually, vacated the judgment for the class, and remanded the case for reconsideration of the certification order. Id.

**DISCUSSION**

**I.   Motion to Amend Complaint and to Modify Class**

Plaintiffs move to amend the complaint primarily in three respects. First, they seek to add new class representatives. Second, they seek to add an alternative request for relief in light of the First Circuit's vacated decision. Finally, they seek to expand the geographic scope of the class to include New Hampshire.

A party seeking to amend a pleading at this stage of the litigation requires either "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. Reasons to deny leave to amend include undue delay, bad faith, futility of amendment, and undue prejudice to the opposing party.

Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 60 (1st Cir. 2018). To show prejudice, the defendant must demonstrate "a grave injustice" or "undue difficulty in prosecuting the lawsuit as a result of the change in tactics or theories." O'Leary v. N.H. Boring, Inc., 323 F.R.D. 122, 128 (D. Mass. 2018). When the plaintiff delays significantly in seeking leave to amend, he must show "some valid reason for his neglect and delay," Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 34 (1st Cir. 2016) (quoting Perez v. Hosp. Damas, Inc., 769 F.3d 800, 802 (1st Cir. 2014)), such as "new allegations coming to light" or "previously unearthed evidence surfacing," Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011).

Plaintiffs have also moved to modify the class definition to reflect the expanded geographic scope. Courts may alter or amend a certification order before final judgment. Fed. R. Civ. P. 23(c)(1)(C). In determining whether to do so, courts consider "the criteria of Rule 23(a) and (b) in light of factual and legal developments" and if "the parties or the class would be unfairly prejudiced by a change in proceedings." In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109, 115 (S.D.N.Y. 1993) (quoting Manual for Complex Litigation § 30.1.8, at 30-15 (Draft Feb. 1985)).

### A.    Class Representatives

After Reid spent fourteen months in detention, the district court granted him a bond hearing, and he has been released from detention. See Reid, 819 F.3d at 492. Plaintiffs therefore seek to add two new class representatives who have criminal convictions qualifying them for mandatory detention under § 1226(c) and have been detained for six months after completing their prison sentences.

The addition of new class representatives does not prejudice the Government, as Reid and the new class representatives raise the same common legal question concerning the constitutionality of mandatory detention without an individualized hearing under § 1226(c). Nor can the Government allege surprise at this amendment, which the First Circuit specifically suggested in its withdrawn 2016 opinion. See Reid, 819 F.3d at 502. Furthermore, the addition of new class representatives eliminates the Government's concern that Reid is an inadequate class representative because his claims are moot.[3]

_____

[3]    Plaintiffs argue that the "inherently transitory" exception to the mootness doctrine renders Reid an adequate class representative. See Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975). I agree. See Reid, 297 F.R.D. at 192 ("[I]t is not clear how long any given individual will be held and, therefore, whether anyone would be subject to detention long enough for the court to certify a class."). Additionally, because "a class action is not rendered moot when the named plaintiff's individual claim becomes moot after the class has been duly certified," Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74

## B.   Alternative Relief

Plaintiffs also seek to add an alternative request for relief that any alien detained under § 1226(c) beyond six months receive a "reasonableness hearing" before an immigration judge to determine whether his detention should be reviewed at a bond hearing. This amended prayer for relief responds to the First Circuit's adoption of the individualized reasonableness rule in its withdrawn opinion and its suggestion that it may make more sense to conduct this reasonableness review before the agency instead of through individual habeas petitions in federal court. See Reid, 819 F.3d at 498, 502 n.5 (noting "the shortcomings of case-by-case habeas review" of the reasonableness of § 1226(c) detention and the familiarity of the immigration judge "with the intricacies of the case and the particulars of the underlying removal proceedings"). This amendment does not prejudice the Government because the Government has been on notice of this possible resolution since at least 2016.

## C.   Expanded Class and New Defendants

Plaintiffs' counsel recently learned that the ICE Boston Field Office detains up to 130 aliens at a time at the Strafford County House of Corrections in Dover, New Hampshire

---

(2013), Plaintiffs need not amend to add a new class representative if an existing representative is removed or released from detention.

("Strafford"). Strafford transports these detainees to and from the ICE office in Burlington, Massachusetts and the Boston Immigration Court. The aliens detained at Strafford under § 1226(c) are similarly not provided bond hearings. Plaintiffs' counsel is aware of at least one individual who has been detained at Strafford under § 1226(c) beyond six months. Plaintiffs therefore seek to amend the complaint and to modify the class to include aliens detained in New Hampshire under § 1226(c) for more than six months without a bond hearing and to add David Dubois and Christopher Brackett, the sheriff of Strafford County and superintendent of Strafford, respectively, as Defendants.

The Government's only argument specifically against geographic expansion of the class is that Plaintiffs have unduly delayed for five years after initiating their lawsuit and ten years after ICE started detaining aliens at Strafford in 2008. Plaintiffs have provided sufficient justification for this delay. They state they only became aware of the ICE Boston Field Office's use of the Strafford facility while this case was on appeal when the number of detainees there increased dramatically. Plaintiffs raised the motion to amend at the first status conference after the First Circuit remanded the case to the district court. Thus, they made diligent efforts to amend after discovering relevant new information.

The Government also opposes Plaintiffs' motion to modify the class definition and motion to amend on the grounds that the motions are futile for reasons that apply equally to the existing class. The Court addresses those arguments below in connection with the Government's motion for class decertification.

## II.  Class Decertification

### A.  Legal Standard

"[A] district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." Mazzei v. Money Store, 829 F.3d 260, 266 (2d Cir. 2016) (quoting Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982)), cert. denied, 137 S. Ct. 1332 (2017). The question of who bears the burden on a motion to decertify is not settled. See Day v. Celadon Trucking Servs., Inc., 827 F.3d 817, 831 n.5 (8th Cir. 2016) (collecting cases). The Court need not resolve this issue. Plaintiffs have shown that continued certification is proper even if they bear the burden.

### B.  Analysis

The Government makes four arguments for why decertification is required. The Court addresses each in turn.

### 1. Class Certification Was Based on an Incorrect Construction of § 1226(c).

The Government first argues that the Court must decertify the class because the original class certification order relied on an incorrect reading of § 1226(c) to find commonality, namely that the statute included an implicit six-month bond hearing requirement. _Jennings_ did resolve the common statutory question on which Judge Ponsor relied. But the class has another common question: whether the Constitution (either the Due Process Clause or Excessive Bail Clause) requires an individualized hearing for those detained under § 1226(c) beyond six months. Plaintiffs have asserted these constitutional claims since the start of the litigation. _Jennings_' rejection of the statutory claim therefore does not require decertification.

### 2. The Class Lacks Commonality and Typicality Because the Constitution Requires an Individualized Analysis of Detention.

The Government argues that the class does not present a common question because a due process or excessive bail challenge to detention under § 1226(c) post-_Jennings_ requires a fact-specific, individualized analysis. Without a bright-line rule demarcating when detention becomes unreasonable, the Government argues, every class member's claim is completely unique and the class representatives' claims are not typical of those of the class.

The common question here is not whether each alien is
entitled to release but whether the Due Process Clause or
Excessive Bail Clause requires that they at least have the
chance to plead their case after six months at an individualized
bond or reasonableness hearing. Because this common question is
a pure question of law, the Court need not consider the factual
differences among the class members that may be relevant in
determining whether they are ultimately released. See Reid, 297
F.R.D. at 190; cf. Califano v. Yamasaki, 442 U.S. 682, 701
(1979) (finding certification of a class "peculiarly
appropriate" where the plaintiffs were asserting a due process
right to a hearing before recoupment of Social Security
overpayments because the question at issue was the right to a
hearing, which did not involve "differences in the factual
background of each claim").

The Government may ultimately prevail on its merits
argument that the Constitution requires an individualized
determination of whether an alien's detention has become
unreasonable. However, the class still presents the common
threshold question of whether their detention after six months
without a bail hearing or reasonableness review violates the
Constitution. Even if the answer to that question is no, the
class still meets the commonality requirement. See Daffin v.
Ford Motor Co., 458 F.3d 549, 553 (6th Cir. 2006) (declining to

consider "whether the class members can win on the merits of the issue common to the class" in determining whether the class satisfies the requirements of Rule 23(a)). As the court (Ponsor, J.) wrote when certifying the class on the statutory question, "were the court to . . . agree with [the Government] that individual determinations were required, that answer would still resolve the entire case." Reid, 297 F.R.D. at 190; see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (holding that commonality requires that the class has "a common contention" the adjudication of which "will resolve an issue that is central to the validity of each one of the claims in one stroke").

This argument does not undermine typicality either. Even if individual factors would be relevant at a reasonableness hearing in determining whether an alien is entitled to a bond hearing, the desire of each class member for a hearing arises from the same factual scenario (mandatory detention under § 1226(c)) and raises the same legal question (whether that detention comports with the Constitution). See Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (requiring for typicality that the class representative's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of the other class members" and "are based on the same legal theory" (quoting In re Am. Med. Sys., Inc., 75 F.3d

1069, 1082 (6th Cir. 1996))). The interests of the class representatives and members are all aligned in securing a right to an individualized hearing. See Gen. Tele. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982) (noting that typicality helps determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence"). The same reasoning also undermines the Government's concern that the class representatives are inadequate because of the factual differences among the class members. See Reid, 297 F.R.D. at 191.

The Government points to the withdrawn First Circuit opinion in this case to argue that the individualized determination required by due process mandates decertification, specifically its statements that its holding "cast[s] substantial doubt on the composition of the class" and that "[i]t may well be that no suitable class can be formed." Reid, 819 F.3d at 502. This read of Reid is too slim a reed to support decertification. The withdrawn opinion may doom Plaintiffs' argument on the merits. However, the class still presents the common, unanswered question of whether the Due Process Clause or the Excessive Bail Clause requires an individualized hearing after six months of detention.

### 3. The Court Cannot Provide Final Injunctive or Declaratory Relief to the Class as a Whole.

The Government argues that, because a constitutional challenge to § 1226(c) requires an individualized analysis to determine whether detention has become unreasonable, the Court cannot issue an injunction or declaratory judgment that provides relief for all class members. See Fed. R. Civ. P. 23(b)(2) (permitting a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"). Even if the Government is correct on this merits question, the Government is acting on grounds that apply generally to the class by failing to allow those detained under § 1226(c) to argue they are entitled to a bond hearing. A holding that the Constitution provides a right to a reasonableness hearing during a prolonged detention would resolve all class members' claims at once. See Dukes, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."); see also Damus v. Nielsen, 313 F. Supp. 3d 317, 334-35 (D.D.C. 2018) (finding Rule 23(b)(2) satisfied because the class of asylum seekers sought an order requiring ICE to provide

individualized parole determinations, not a remedy for "discrete errors in their parole determinations").

4. *8 U.S.C. § 1252(f)(1) Bars Classwide Injunctive Relief.*

The Government argues that the Court must decertify the class because 8 U.S.C. § 1252(f)(1) prevents the Court from granting the classwide injunction the class seeks and thus there is no single remedy the Court can issue for the class as a whole as required by Rule 23(b)(2). Under 8 U.S.C. § 1252(f)(1), "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-1232] other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." Earlier in this lawsuit, the court (Ponsor, J.) determined that § 1252(f)(1) did not bar the classwide injunction it granted on statutory grounds because the injunction merely required the government to obey § 1226(c) (and its implicit requirement for six-month bond hearings), instead of enjoining the operation of the statute. See Reid, 22 F. Supp. 3d at 89-90. As the Supreme Court noted in Jennings, "[t]his reasoning does not seem to apply to an order granting relief on constitutional grounds." 138 S. Ct. at 851.

Plaintiffs make a myriad of arguments for why § 1252(f)(1) does not bar a classwide injunction here. The Court need not

address these because § 1252(f)(1) does not bar classwide declaratory relief, which suffices to satisfy Rule 23(b)(2). See Alli v. Decker, 650 F.3d 1007, 1012-16 (3d Cir. 2011); Rodriguez v. Hayes, 591 F.3d 1105, 1118-21 (9th Cir. 2010).

Section 1252(f)(1) uses "enjoin" and "restrain" to describe the relief that courts cannot provide except on an individual basis. "Enjoin" plainly refers to injunctions, see Arevalo v. Ashcroft, 344 F.3d 1, 7 (1st Cir. 2003) (noting that "enjoin" covers permanent injunctive relief), which are a different form of relief from declaratory judgments, see, e.g., Steffel v. Thompson, 415 U.S. 452, 471 (1974) (calling a declaratory judgment "a much milder form of relief than an injunction"). "Restrain" also appears to refer to injunctive relief. See Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 481 (1999) (stating that § 1252(f)(1) "is nothing more or less than a limit on injunctive relief" and that it "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231"); Arevalo, 344 F.3d at 7 (noting that "restrain" refers to temporary injunctive relief). The term "restrain" means "to prevent from doing, exhibiting, or expressing something" and "to limit, restrict, or keep under control." Restrain, Merriam Webster's Collegiate Dictionary (10th ed. 1993); cf. Restraint, Black's Law Dictionary (10th ed. 2014) (defining "restraint" as "confinement, abridgment, or

limitation" or "prohibition of action; holding back"). In contrast, a declaratory judgment "establishes the rights and other legal relations of the parties without providing for or ordering enforcement," Declaratory Judgment, Black's Law Dictionary (10th ed. 2014), and noncompliance does not trigger contempt, Steffel, 415 U.S. at 471. A declaratory judgment thus does not prevent or limit any action.

The statutory context bolsters this reading of § 1252(f)(1). The heading of subsection (f) of 8 U.S.C. § 1252 is "Limit on injunctive relief," which supports a statutory construction that its provisions only bar injunctive, not declaratory, relief. See Alli, 650 F.3d at 1013; Rodriguez, 591 F.3d at 1119; see also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008) (permitting use of statutory heading as a tool to resolve questions of statutory interpretation). Plus, a neighboring provision, 8 U.S.C. § 1252(e)(1)(A), prevents courts from entering "declaratory, injunctive, or other equitable relief" in cases involving aliens excluded under 8 U.S.C. § 1225(b)(1). By expressly including declaratory relief in § 1252(e)(1)(A) but not § 1252(f)(1), Congress demonstrated an intent not to bar courts from issuing classwide declaratory relief under the latter provision. See Alli, 650 F.3d at 1012-13; Rodriguez, 591 F.3d at 1119; see also Sebelius v. Cloer, 569 U.S. 369, 378 (2013) ("Where

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting Bates v. United States, 522 U.S. 23, 29-30 (1997))).

Additionally, § 1252(f)(1) states that only the Supreme Court can enjoin the operation of 8 U.S.C. §§ 1221-1232 on a classwide basis. If no lower court could issue any classwide relief, "it is difficult to see how the district court could acquire jurisdiction over the class action in the first place." Gerald L. Neuman, Federal Courts Issues in Immigration Law, 78 Tex. L. Rev. 1661, 1686 (2000). Subsequently, "[t]here would be no case or controversy in the lower court involving the unnamed class members as parties . . . over which the Supreme Court could exercise appellate jurisdiction." Id. Reading § 1252(f)(1) to bar classwide declaratory relief would thus render superfluous the statute's authorization of Supreme Court relief. See Alli, 650 F.3d at 1016; see also Corley v. United States, 556 U.S. 303, 314 (2009) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004))).

The final issue is whether classwide declaratory relief in this case "correspond[s]" to injunctive relief as Rule 23(b)(2)

requires. Fed. R. Civ. P. 23(b)(2) (requiring that "final injunctive relief or *corresponding* declaratory relief [be] appropriate respecting the class as a whole" (emphasis added)). According to the advisory committee's notes, "[d]eclaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief." Id. advisory committee's note to 1966 amendment. Thus, the main purpose of this requirement is to avoid certifying class actions under Rule 23(b)(2) that primarily seek monetary damages. See, e.g., Washington v. CSC Credit Servs. Inc., 199 F.3d 263, 269-70 (5th Cir. 2000); Lukenas v. Bryce's Mountain Resort, Inc., 538 F.2d 594, 595-96 (4th Cir. 1976); Andrew Bradt, "Much to Gain and Nothing to Lose": Implications of the History of the Declaratory Judgment for the (b)(2) Class Action, 58 Ark. L. Rev. 767, 798-99 (2006).

Here, the class does not seek monetary damages, and each class member could use a declaratory judgment announcing a right to an individualized hearing after prolonged detention to secure an individual injunction requiring one. Thus, the available declaratory judgment in this case corresponds to final injunctive relief as required by Rule 23(b)(2).[4]

---

[4]    Since the Court declines to decertify the Rule 23 class, it need not address Plaintiffs' argument that the action could be certified as a representative habeas action pursuant to United States ex rel. Sero v. Preiser, 506 F.2d 1115 (2d Cir. 1974).

**ORDER**

Plaintiffs' motions to amend the complaint (Docket No. 384) and modify the class definition (Docket No. 378) are **ALLOWED**. The Government's motion to decertify the class (Docket No. 377) is **DENIED**.

The Court thus certifies the following class: "All individuals who are or will be detained within the Commonwealth of Massachusetts or the State of New Hampshire pursuant to 8 U.S.C. § 1226(c) for over six months and have not been afforded an individualized bond or reasonableness hearing."

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge