# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| Mark Anthony REID, *et al.*, on behalf of | ) | |
| themselves and others similarly situated, | ) | Case No. 3:13-cv-30125-PBS |
| | ) | |
| *Plaintiffs-Petitioners,* | ) | |
| | ) | |
| v. | ) | |
| | ) | January 16, 2019 |
| Christopher DONELAN, Sheriff, | ) | |
| Franklin County, MA, *et al.*, | ) | |
| | ) | |
| *Defendants-Respondents.* | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PETITION BY LEO FELIX CHARLES FOR WRIT OF HABEAS CORPUS AND MOTION FOR SUMMARY JUDGMENT

Erin Drake, Law Student Intern
Clare Kane, Law Student Intern
Aseem Mehta, Law Student Intern*
Marisol Orihuela[†]
Michael Wishnie (BBO# 568654)
Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
Fax: (203) 432-1426
michael.wishnie@ylsclinics.org


Ahilan T. Arulanantham[†]
ACLU Immigrants' Rights Project
1313 West 8th Street
Los Angeles, CA 90017
213-977-5211
aarulanantham@aclusocal.org

Anant K. Saraswat (BBO# 676048)
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210
Tel: 617-646-8000
Fax: 617-646-8646
anant.saraswat@wolfgreenfield.com


Michael K.T. Tan[†]
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
212-519-7848 (p)
212-549-2654 (f)
mtan@aclu.org

*Counsel for Plaintiffs*
*Law student appearance forthcoming.
[†] Admitted *pro hac vice*.

**Table of Contents**

INTRODUCTION ..................................................................................................... 1

STATUTORY FRAMEWORK .................................................................................. 2

STATEMENT OF FACTS ......................................................................................... 2

PROCEDURAL HISTORY ........................................................................................ 5

ARGUMENT .............................................................................................................. 5

   I.   THE CONSTITUTION REQUIRES THE GOVERNMENT TO PROVIDE MR. CHARLES WITH AN INDIVIDUALIZED CUSTODY HEARING. ................................. 6

     A.   The Government must provide a bond hearing because Mr. Charles's individual circumstances render his detention constitutionally unreasonable. ....................................... 7

     B.   Due process requires the Government to provide an individualized bond hearing to justify prolonged immigration incarceration beyond six months. ........................................ 12

     C.   The Excessive Bail Clause requires the Government to provide an individualized bond hearing to justify incarceration beyond six months. .................................................. 15

   II.  DUE PROCESS REQUIRES THAT THE GOVERNMENT BEAR THE BURDEN OF PROVING MR. CHARLES SHOULD BE DETAINED BY CLEAR AND CONVINCING EVIDENCE AT A BOND HEARING ....................................................... 17

CONCLUSION ........................................................................................................... 19

**<u>INTRODUCTION</u>**

Leo Felix Charles is a 64-year-old man who has suffered from diabetes, degenerative joint disease in his knees, osteoarthritis, gastroesophageal reflux, and anemia while held by Defendants in immigration detention for nearly one year without a bond hearing. Because the facts of his case are undisputed, he moves for summary judgment seeking an order that Defendants provide him a prompt bond hearing before an Immigration Judge.[1]

By denying Mr. Charles the opportunity to plead for release on bond, the government has deprived him of his liberty, separated him from his community, hamstrung his ability to seek lawful immigration relief, and inflicted on him significant and unnecessary medical suffering. Absent a hearing to determine whether Mr. Charles's imprisonment is necessary, Defendants' continued deprivation of Mr. Charles's liberty violates the Due Process Clause, which prohibits the government from arbitrarily detaining any person and from refusing to provide a meaningful method to challenge his detention. Defendants' actions also violate the Excessive Bail Clause of the Eighth Amendment, which requires an individualized hearing before prolonged no-bail incarceration can be sanctioned. The Constitution requires the government to provide Mr. Charles with a bond hearing, at which the government must justify his continued incarceration by clear and convincing evidence that he presents a danger or flight risk.

---

[1] This Court has allowed limited discovery and set a briefing schedule for the class claims that after six months of immigration detention, the Constitution requires an individualized bond hearing before an Immigration Judge, or in the alternative, a "reasonableness" hearing. *See* Dkt. No. 416, 418, 420. This briefing will be concluded on April 30, 2019. Dkt. No. 420. Because Mr. Charles is seeking alternative relief in this Motion based on his own individual circumstances, this Court may decide the question of whether Mr. Charles's detention is unconstitutional independently of  the question of whether a six-month limitation applies to all class members. Thus, the Court need not defer resolution of Mr. Charles's individual motion pending a ruling on the class claims.

## STATUTORY FRAMEWORK

Under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.* ("INA"), and its implementing regulations, the Department of Homeland Security ("DHS") may arrest and initially detain a noncitizen pending a decision on whether that person is subject to removal, and if so, eligible for relief from removal. *Id.* § 1226(a); 8 C.F.R. § 236.1(b)(1). If the individual is detained, a noncitizen is entitled to a custody redetermination hearing, also known as a bond hearing, where an immigration judge ("IJ") decides whether the individual should be released pending the resolution of removal proceedings, based on a determination of the individual's dangerousness or risk of flight. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(d)(1); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). § 1226(c) sets out a narrow exception to this opportunity for release pending removal proceedings, by mandating incarceration without a bond hearing for persons who are removable based on several broad categories of convictions, such as for crimes involving moral turpitude and nearly any drug offense. 8 U.S.C. § 1226(c)(1).

## STATEMENT OF FACTS

Plaintiff Leo Felix Charles came lawfully to the United States from Haiti on a nonimmigrant visa in 1982 at the age of 18. *See* Pls. Statement of Undisputed Facts (hereinafter "SOUF") at ¶ 2. Mr. Charles learned how to fix cars by reading and observing mechanics at work. He taught himself English and began working in auto body shops after his arrival, most recently in Bridgeport, CT. *Id.* ¶ 3. In his free time, Mr. Charles attended church and spent time with his girlfriend, family, and friends in Bridgeport. *Id.* ¶ 4.

Mr. Charles was convicted of a drug offense in 1998,[2] for which he was incarcerated for eleven years. *Id.* ¶ 5. On the basis of that conviction, Defendants placed him in removal

---

[2] Mr. Charles was convicted of sale of illegal drugs. Conn. Gen. Stat. § 21a-278(a)(b).

2

proceedings while he was serving his criminal sentence. *Id.* In 2003, the Immigration Court granted him relief under the Convention Against Torture ("CAT"), because Immigration Judge ("IJ") Straus found that Mr. Charles would likely be detained on arrival in Haiti and subjected to torture, which is pervasive in Haitian prisons. *Id.* ¶ 6. Additionally, IJ Straus found that Mr. Charles was at risk of torture at the hands of a corrupt government official and his associates in Haiti. SOUF at ¶ 6. In 2013, Mr. Charles was convicted of first-degree assault in a domestic violence incident, for which he served five years in prison, and was then transferred directly into ICE custody on February 2, 2018. *Id.* at ¶ 7. Later that month, on DHS's motion to reopen Mr. Charles's 2003 grant of CAT protection on the basis of alleged changed country conditions in Haiti and new evidence regarding the whereabouts of the individuals that Mr. Charles feared, IJ Strauss conducted a *de novo* hearing on the merits. Mr. Charles represented himself *pro se* while detained; IJ Straus terminated Mr. Charles's CAT relief and ordered him removed. *Id.* ¶ 8.

Still acting *pro se*, Mr. Charles appealed and moved for a stay of removal with the Board of Immigration Appeals (BIA). *Id.* ¶ 9. In October 2018, the BIA dismissed Mr. Charles's appeal. *Id.* ¶ 10. Mr. Charles filed a *pro se* Petition for Review and Motion for Stay of Removal in the Second Circuit on October 19, 2018. *Id.* ¶ 11. On December 11, 2018, the Second Circuit granted Mr. Charles's motion for stay of removal and ordered briefing on the Petition for Review. SOUF at ¶ 13. Mr. Charles has now secured *pro bono* counsel to represent him on his Petition for Review before the Second Circuit. *Id* ¶ 12. He has never received a bond hearing. During this time, ICE has detained Mr. Charles in various detention facilities in Massachusetts and New Hampshire. *Id.* ¶ 1. By the time the instant motion is fully briefed, Defendants will have detained Mr. Charles without a bond hearing for more than one year.

Mr. Charles has multiple medical needs which make incarceration significantly painful. He currently uses a wheelchair and has not received the knee replacement surgery or the spinal surgery that would restore his ability to walk. *Id.* ¶¶ 14, 17. Without the appropriate surgeries, Mr. Charles has been confined to a wheelchair despite medical instructions that he use the wheelchair sparingly, because excessive use is deleterious to his back. *Id.* ¶¶ 18-19. In addition, he suffers from diabetes, high blood pressure, acid reflux, and nerve and kidney damage. Mr. Charles also suffers from a range of other conditions, including scoliosis, osteoarthritis, and back problems that have required spinal fusion surgery. *Id.* ¶¶ 15-16.

These medical diagnoses make life in detention unbearable for Mr. Charles. He cannot use the restroom easily; he is in constant pain that makes sleep difficult; he has trouble getting into and out of bed; and he is provided very little assistance. *Id.* ¶¶ 21-22. He has been unable to access the post-operation treatment he needs to properly recover from his 2017 spinal fusion procedure. SOUF at ¶ 19. Mr. Charles takes approximately 20 different pills each day and receives injections of two types of insulin twice a day. *Id.* ¶ 14.

Furthermore, the detention center does not accommodate the diet that Mr. Charles's doctors have ordered. Mr. Charles must avoid salt, spicy food, and red meat. *Id.* ¶ 23. As a result, he can eat only the cereal that he receives with his insulin and the tuna and peanut butter he buys from the commissary. *Id.* He is also not receiving the iron pills or oral diabetes medication that he needs. *Id.* ¶ 24. Every day in detention, his health deteriorates further.

## PROCEDURAL HISTORY

On June 26, 2018, Plaintiffs filed a motion to amend the complaint to add Mr. Charles as named plaintiff and a motion for summary judgment on the class-wide claim that detention beyond six months without a bond hearing or reasonable hearing is unconstitutional.  *See* Dkt. No. 384, 386. Defendants moved to decertify the class and Plaintiffs cross-moved to modify the class to, *inter alia*, add Mr. Charles as a representative. *See* Dkt. No. 377, 378. On October 23, 2018, this Court granted Plaintiffs' motion to amend, denied Defendants' motion to decertify, and granted Plaintiffs' motion to modify the class. *See* Dkt. No. 416. The Court also denied the motion for summary judgment without prejudice to renewal after discovery, to be completed by March 15, 2019, and set a schedule for summary judgment briefing on the class claims that will conclude April 30, 2019, absent extension or reply briefing. *See* Dkt. No. 416, 418, 420. On October 25, 2018, Plaintiffs filed an amended complaint and habeas petition adding Mr. Charles as named plaintiff. Dkt. No. 421.

On November 23, after approximately nine months of detention, Mr. Charles moved for entry of a proposed scheduling order to brief his individual claims for a bond hearing, Dkt. No. 426, which the government opposed. Dkt. No. 428. Pursuant to this Court's order on December 11, 2018 setting a briefing schedule, Dkt. No. 429, Mr. Charles now moves for summary judgment on his individual habeas claim.

## ARGUMENT

By the time this motion is fully briefed, Defendants will have detained Mr. Charles, who is 64 years old, sick, and confined to a wheelchair, for over a year without ever having provided an individualized justification for doing so. Yet the Constitution requires an individualized hearing to determine whether such prolonged detention is actually needed to serve the purpose

advanced by the government. Defendants' failure to provide any individualized justification for imprisoning Mr. Charles since February 2, 2018 violates this fundamental requirement. Both the Due Process Clause and the Excessive Bail Clause prohibit indefinite categorical detention absent an opportunity to request bond. Furthermore, due process requires that the government bear the burden of demonstrating that detention is necessary by clear and convincing evidence.

## I.      THE CONSTITUTION REQUIRES THE GOVERNMENT TO PROVIDE MR. CHARLES WITH AN INDIVIDUALIZED CUSTODY HEARING.

The Constitution mandates that the government provide Mr. Charles with a bond hearing for three independent reasons.

First, the Supreme Court has consistently found, across a variety of contexts, that due process requires individualized hearings to ensure that civil confinement serves a valid purpose and remains reasonable in relation to that purpose. The facts of Mr. Charles's year-long detention have rendered his continued confinement constitutionally unreasonable, thus requiring an individualized bond hearing as the remedy.

Second, the Constitution requires a bond hearing after six months of confinement, *regardless* of individual circumstances.  If the Court agrees that Mr. Charles's individual circumstances warrant a bond hearing, then it need not resolve this separate argument. This separate question, common to all class members, is scheduled for summary judgment briefing on behalf of the class that will conclude April 30, 2019, absent extensions or reply briefing. Nevertheless, if the Court determines that Mr. Charles's individual circumstances do *not* warrant a bond hearing, then it should reach the question whether his year-long incarceration without individual review violates the Supreme Court's precedents recognizing six months of incarceration as a turning point at which the deprivation of liberty becomes profound. Outside of the national security context, the Court has never authorized imprisonment of any kind – civil or

6

criminal – of this length without some form of individualized hearing where the government has had to justify continued confinement. Because Defendants are not exempt from this constitutional command, they must establish that Mr. Charles poses a flight risk or a danger at an individualized bond hearing to justify his continued detention.

Finally, the Excessive Bail Clause of the Eighth Amendment requires the government to provide an individualized bond hearing to justify incarceration beyond six months.  As many courts have held, the government's denial of the opportunity to request bond *at all* is functionally equivalent to setting an impossibly high bond, which the Eight Amendment prohibits.

### A.  The Government must provide a bond hearing because Mr. Charles's individual circumstances render his detention constitutionally unreasonable.

The Court should find that the government is obligated to provide Mr. Charles with a bond hearing because the individual facts of his no-bond incarceration since February 2, 2018 render his continued detention constitutionally unreasonable.

Mr. Charles, like all "person[s]" protected by the Due Process Clause, has a fundamental liberty interest in freedom from incarceration: "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001)*.* The Supreme Court has consistently held, across a variety of civil detention systems, that due process requires individualized hearings to protect this fundamental liberty interest. *See United States v. Salerno*, 481 U.S. 739, 750 (1987) (upholding civil pretrial detention of individuals charged with crimes only upon individualized findings of dangerousness or flight risk at custody hearings); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (requiring individualized finding of mental illness and dangerousness for civil commitment); *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (upholding civil commitment of sex offenders after individualized jury trials on lack of volitional

7

control and dangerousness). The Court has also found that due process requires heightened

procedures when confinement becomes prolonged. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S.

245, 249-50 (1972) ("If the commitment is properly regarded as a short-term confinement with a

limited purpose . . . then lesser safeguards may be appropriate, but . . . the duration of the

confinement must be strictly limited."); *cf. Jackson v. Indiana*, 406 U.S. 715, 738 (1972)

("duration of commitment" must bear "reasonable relation" to its purpose).

Defendants' incarceration of Mr. Charles without a hearing contravenes this well-

established Supreme Court precedent. In *Zadvydas*, the Court recognized that due process

requires "adequate procedural protections" to ensure that the government's justification for

physical confinement "outweighs the individual's constitutionally protected interest in avoiding

physical restraint." 533 U.S. at 690 (internal quotation marks omitted). The Court identified a

"serious constitutional problem" involving comparably severe deprivations of liberty in a scheme

that placed the burden on the detainee to prove that he was not dangerous. *Id*. at 692.

*Demore v. Kim* created a narrow exception to this general rule in upholding the

constitutionality of no-bond detention under § 1226(c), but it limited that holding in important

respects. 538 U.S. 510 (2003). In *Demore*, the Supreme Court carefully limited its opinion to

individuals whose detentions were "brief." *Id.* at 513. The *Demore* Court understood the length

of § 1226(c) detention to be significantly shorter than the nearly twelve months that Mr. Charles

has been imprisoned thus far. *See id.* at 529 ("Under § 1226(c), not only does detention have a

definite termination point, in the majority of cases it lasts for less than the 90 days we considered

presumptively valid in *Zadvydas*."); *id.* at 530 ("In sum, the detention at stake under § 1226(c)

lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about

five months in the minority of cases in which the alien chooses to appeal.").

Thus, *Demore* did not address the constitutionality of prolonged detention such as Mr.

Charles's, nor did it overturn the precedents holding that due process requires individualized

determinations of prolonged civil detention per *Zadvydas, Salerno, Foucha* and *Hendricks*. In

fact, *Demore* is inapposite here, as Defendants have incarcerated Mr. Charles for nearly a year.

His petition for review is pending before the Second Circuit, which has entered a stay of

removal, and so his detention is not likely to end soon. SOUF at ¶ 13. Especially under these

circumstances of prolonged civil detention, the Due Process Clause does not permit the

government to incarcerate Mr. Charles without a bond hearing. *See McNeil*, 407 U.S. at 249-250.

The Court should find that the government is obligated to provide Mr. Charles with a

bond hearing because the individual facts of his no-bond incarceration since February 2, 2018

render his continued detention constitutionally unreasonable. "[C]ategorical, mandatory, and

indeterminate detention raises severe constitutional concerns," and "every federal court of

appeals to examine § 1226(c) has recognized that the Due Process Clause imposes some form of

'reasonableness' limitation upon the duration of detention that can be considered justifiable . . .

[.]" *Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016) (vacated on statutory grounds); *see also*

*id.* at 502 n. 5 (these constitutional concerns may be remedied by "a reasonableness review

before a federal court . . .").

The Court may conduct a "fact-dependent inquiry" of the reasonableness of Mr.

Charles's continued detention, as the First Circuit envisioned in its decision, *id.* at 497, and as it

approved in affirming the grant of individual habeas relief to Petitioner Mark Reid even after the

Supreme Court decision in *Jennings v. Rodriguez* prompted the panel to vacate the rest of its

holding (on purely statutory, rather than Constitutional, grounds). *Reid v. Donelan*, 2018 WL

4000993, (1st Cir. May 11, 2018). The First Circuit suggested consideration of the following nonexclusive factors:

> the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order.

*Id.* at 500.

In reviewing the application of these factors to Mr. Charles's case, the Court should find that his detention is unreasonable, thus requiring the government to provide him with a bond hearing. First, Mr. Charles has been detained since February 2, 2018. By the time briefing on this motion is complete, he will have been detained for over twelve months. This egregious length of detention is similar to the length of detention that Mr. Reid experienced when Judge Ponsor granted him habeas relief. Indeed, the First Circuit affirmed Judge Ponsor's assessment that Mr. Reid's detention had become constitutionally unreasonable, in part, because he "had been detained for fourteen months, which was 'well beyond the brief detainment contemplated in *Demore*.'" *Id.* at 501.

Second, the Second Circuit has stayed Mr. Charles's removal pending the resolution of his Petition for Review, for which he is represented by *pro bono* counsel. The Second Circuit granted his Motion for Stay of Removal on December 11, 2018 and ordered his initial briefing due on March 15, 2019. SOUF at ¶ 13. If the Second Circuit grants his Petition for Review, his case will be remanded to the BIA or the IJ. Proceedings, therefore, will not culminate imminently, but are likely to continue for months or longer.

Additionally, Mr. Charles is in immigration proceedings not as a consequence of his criminal conviction, but rather due to the government's choice to seek to revoke the CAT

protection that the Immigration Court lawfully granted to him in 2003. There are no criminal

bars to an individual's eligibility for CAT protection.

Moreover, Mr. Charles has engaged in his immigration proceedings promptly, without

delay. He was transferred into ICE custody on February 2, 2018. The Immigration Judge granted

ICE's motion to terminate CAT relief by order dated February 22, 2018, so there can be no

suggestion that Mr. Charles has unreasonably prolonged his own detention by delaying

proceedings before the Immigration Court. Moreover, Mr. Charles has promptly and timely

appealed to the BIA, *pro se*, and, upon receiving a decision from the BIA, timely filed a Petition

for Review, also *pro se*, with the Second Circuit. That petition is now pending. At no point

during his appeals has Mr. Charles sought an extension. Thus, relevant to this analysis, there is

no indication that Mr. Charles himself unreasonably delayed his own removal proceedings.

Fifth, Mr. Charles is now represented by counsel in his Petition for Review before the

Second Circuit and has asserted colorable claims that (a) the Immigration Judge erroneously

revoked his grant of deferral of removal under CAT and (b) the DHS and the Immigration Judge

violated his procedural due process rights in the course of his proceedings. Exhibit D, Mr.

Charles's Motion for Stay of Removal before the Second Circuit. In granting this stay, the

Second Circuit necessarily found that Mr. Charles is likely to succeed on the merits of his appeal.

Finally, the Court may look beyond these factors to additional relevant facts in Mr.

Charles's case. *Reid v. Donelan*, 819 F.3d at 501 ("there may be other factors that bear on the

reasonableness of categorical detention, but we need not strain to develop an exhaustive

taxonomy here."). As such, an assessment of the reasonableness of Mr. Charles's continued

detention should take into account the intensity of his illnesses and the degree of suffering to

which he has been subjected while detained.

Mr. Charles turned sixty-four years old during his year in immigration detention. He is unable to walk or sleep, constantly in pain, confined to a wheelchair, and given insufficient food and medication. He suffers from diabetes, degenerative joint disease in his knees, osteoarthritis, gastroesophageal reflux, hypertension and anemia. Moreover, he is in need of *two* serious surgeries that he cannot access from detention. Given Mr. Charles's serious health problems, the primary effect of the government's choice to continue confining Mr. Charles in its penal institutions (at the Bristol County House of Corrections) is to inflict upon him immense physical and psychological suffering. These effects outweigh, and fail to advance, any conceivable purpose of his confinement, thus rendering it unreasonable. *See also Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3rd Cir. 2015) ("Yet, we cannot ignore the conditions of confinement. . . Among our concerns about deprivations to liberties brought about by section 1226(c) is the reality that merely calling a confinement "civil detention" does not, of itself, meaningfully differentiate it from penal measures.") (internal citations omitted); *Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("Courts conducting this reasonableness analysis have considered . . . [w]hether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention.") (internal citations omitted) (vacated on statutory grounds).

For the foregoing reasons, the Court should find the government's continued detention of Mr. Charles unreasonable, grant his petition for writ of habeas corpus, and order that he may not continue to be detained without being afforded a bond hearing.

**B.  Due process requires the government to provide an individualized bond hearing to justify prolonged immigration incarceration beyond six months.**

Mr. Charles's time in detention unambiguously qualifies as long-term incarceration requiring significant procedural review under the Constitution. The nation's legal tradition has

long recognized *six* months as a substantial period of physical confinement, such that significant process is required to continue incarceration beyond that time – let alone a period that is nearly double that length. "It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual . . ." *Muniz v. Hoffman*, 422 U.S. 454, 477 (1975). With few exceptions, "in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term . . ." *Duncan v. State of La.*, 391 U.S. 145, 161 (1968). Consistent with this tradition, the Supreme Court has set six months as the outer limit of confinement for criminal offenses that federal courts can impose without a jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion); *Baldwin v. New York*, 399 U.S. 66 (1970) (extending *Duncan* to the states); *see also People v. Suozo*, ___ N.E.3d___, 2018 WL 6173962 (NY Nov. 23, 2018) (in light of severe consequences of removal, noncitizen charged with deportable crime is entitled to jury trial under Sixth Amendment, even where maximum authorized sentence is term of imprisonment of six months or less).

To be clear: no state or federal authority can imprison a person under the criminal law to more than *six* months' confinement without *a jury trial*. Yet Defendants contend they can imprison – and have proceeded to imprison – Mr. Charles under civil immigration laws for nearly *one year* without even a bond hearing. To accept that assertion would break new ground; outside the national security context, the Supreme Court has *never* authorized civil detention beyond six months without individualized hearings justifying detention.

Six months also has been considered an outer limit for confinement without individualized inquiry in civil contexts. *See McNeil*, 407 U.S. at 250-52 ("six months" commitment without a hearing "a useful benchmark" for the outer constitutional limit). *Zadvydas* itself drew that line because "Congress previously doubted the constitutionality of detention for

more than six months," 533 U.S. at 701, even as to individuals already ordered removed. Both Congress and DHS have adopted six months as an outer limit in immigration detention contexts, even for national security risks and specially dangerous individuals. 8 U.S.C. § 1537(b)(2)(C) (mandating detention review every six months for national security detainees who cannot be repatriated); 8 C.F.R. § 241.14(k)(1)-(3) (requiring IJ review every six months of specially dangerous individuals not substantially likely to be removed).

The Court's analysis of the facts here is straightforward: the government has detained Mr. Charles for more than *eleven* months (and counting), without any individualized review of his incarceration. This prolonged detention without any process egregiously violates constitutional precedents for the scope, length and procedural safeguards required to justify continued incarceration. Like all other "person[s]" subject to prolonged civil incarceration, Mr. Charles is entitled to the protection of a bond hearing to challenge the reason for his imprisonment. There is no legal precedent to justify process-less incarceration for more than eleven months in the immigration detention context. *See Zadvydas,* 533 U.S. at 701 (reasoning that "Congress previously doubted the constitutionality of detention for more than six months"); *Demore*, 538 U.S. at 529-30 (emphasizing, based on since-disproven facts, that even outlier cases would typically conclude in "about five months"). Here, such a bond hearing is required to protect Mr. Charles "against [the] arbitrary action of government," a protection that is "the touchstone of due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (internal quotations and alternations omitted). Accordingly, this Court should hold that the Due Process Clause mandates a bond hearing to protect Mr. Charles's fundamental liberty interests.

//

//

14

### C.  The Excessive Bail Clause requires the government to provide an individualized bond hearing to justify incarceration beyond six months.

Mr. Charles's no-bond imprisonment for over eleven months under § 1226(c)

additionally violates the Eighth Amendment, which provides that "[e]xcessive bail shall not be

required." U.S. Const. amend. VIII. The Excessive Bail Clause prohibits the government from

setting conditions of release or detention that are "'excessive' in light of the perceived evil."

*Salerno*, 481 U.S. at 754. This Clause is implicated "when there is a direct government restraint

on personal liberty, be it in a criminal case *or in a civil deportation proceeding*." *Browning-*

*Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 263 n.3 (1989) (emphasis

added). The Excessive Bail Clause requires that Mr. Charles, now subject to prolonged

mandatory detention of over eleven months under § 1226(c), receive a bond hearing.

The government's refusal to provide Mr. Charles any bond hearing – regardless of the

length of his detention or any other factors – violates the Excessive Bail Clause. "The Eighth

Amendment forbids '[e]xcessive bail.' . . . That rationale applies *a fortiori* to a refusal to hold

any bail hearing at all." *See Jennings*, 138 S. Ct. at 862 (Breyer, J., dissenting). Other jurists have

similarly emphasized a right to a bail hearing under the Eighth Amendment. *Sellers v. United*

*States*, 89 S. Ct. 36, 38 (1968) (Black, J., in chambers) ("The command of the Eighth

Amendment that 'Excessive bail shall not be required' at the very least obligates judges passing

upon the right to bail to deny such relief only for the strongest of reasons."); *Carlisle v. Landon*,

73 S. Ct. 1179, 1182 (1953) (Douglas, J., in chambers) ("It is the unreasoned denial of bail that

the Constitution condemns."); *Carlson*, 342 U.S. at 569 (Burton, J., dissenting) (because the

Eighth Amendment prohibits excessive bail, "[l]ikewise, it must prohibit unreasonable denial of

bail . . . which comes to the same thing"); *Castañeda v. Souza*, 810 F.3d 15, 44 (1st Cir. 2015)

(*en banc*) (Torruella, J., concurring) (§ 1226(c) detention is "ongoing, institutionalized

15

infringement of the right to bail"). *See also Kayla Gassman, Unjustified Detention: The Excessive Bail Clause in Removal Proceedings,* 4 Am U. Crim. L. Br. 35 (2009), https://digitalcommons.wcl.american.edu/cgi/viewcontent.cgi?referer=https://www.google.com/&httpsredir=1&article=1083&context=clb

     Other courts have recognized, in the context of immigration detention, that the government must permit at least a possibility of release on reasonable bail to comply with the Excessive Bail Clause. *See, e.g., Hernandez v. Lynch*, 2016 WL 7116611, at *27 (C.D. Cal. 2016) (certifying class of persons who are or will be detained pursuant to § 1226(a) on bond set by ICE and ordering preliminary injunctive relief requiring the government to consider class members' ability to pay and other conditions of supervision when setting bond); *Danesh v. Jenifer*, 2001 WL 558233, at *7 (E.D. Mich. Mar. 27, 2001) ("Although there is no right to [release on] bail, a statute that mandatorily denies bond violates the Eighth Amendment because such a statute achieves the same result."); *Caballero v. Caplinger*, 914 F. Supp. 1374, 1380 (E.D. La. 1996) ("[T]he denial of the opportunity to seek bail constitutes the setting of excessive bail."); *Probert v. U.S. I.N.S.*, 750 F. Supp. 252, 257 n.4 (E.D. Mich. 1990), *aff'd sub nom. Probert v. I.N.S.*, 954 F.2d 1253 (6th Cir. 1992) ("[A]lthough there is no absolute right to [release on] bail, a statute that mandatorily denies bail violates the Eighth Amendment.").

     This Court should reach the same result. Because the Excessive Bail Clause forbids Mr. Charles's incarceration for over eleven months without the possibility of bail, the Eighth Amendment requires that Mr. Charles be afforded a bond hearing before an Immigration Judge.

     *//*

     *//*

## II.   DUE PROCESS REQUIRES THAT THE GOVERNMENT BEAR THE BURDEN OF PROVING MR. CHARLES SHOULD BE DETAINED BY CLEAR AND CONVINCING EVIDENCE AT A BOND HEARING

The Due Process Clause requires that the government bear the burden of proof of establishing the necessity of Mr. Charles's continued detention by clear and convincing evidence at an individualized bond hearing. When the government seeks to deprive an individual of a "particularly important individual interest[]," *Addington v. Texas*, 441 U.S. 418, 424 (1979), it bears the burden of proof by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745 (1982) (requiring clear and convincing evidence in parental termination cases); *Addington*, 441 U.S. at 432 (same, for civil commitment); *Woodby v. INS*, 385 U.S. 276, 285, 286 (1966) (requiring "clear, unequivocal, and convincing" evidence in deportation cases); *Chaunt v. United States*, 364 U.S. 350, 354-55 (1960) (same, for denaturalization). In fact, the Supreme Court has often relied on the fact that the government bears the burden of proof to find civil detention constitutional. *See, e.g., Salerno*, 481 U.S. at 750 (Bail Reform Act does not violate Constitution in part because statute requires that "the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person."); *Hendricks,* 521 U.S. at 352-53 (upholding statute enabling civil commitment of sex offenders after jury trial on dangerousness in which the state bears burden of proof). By contrast, the Supreme Court has struck down civil detention schemes that place the burden of proof on the detainee. *See, e.g*., *Foucha*, 504 U.S. at 82 (finding that "statute places the burden on the detainee to prove that he is not dangerous" and there was "not enough to defeat [detainee]'s liberty interest under the Constitution in being freed from indefinite confinement); *see also Zadvydas*, 533 U.S. at 692 (finding post-final-order custody review procedures deficient because, *inter alia*, they placed burden of proof on detainee); *Singh v. Holder*, 638 F.3d 1196,

17

1203 (9th Cir. 2011) (government bears burden of justifying detention during pendency of petition for review of removal order in bond hearing before immigration judge); *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 222, 224 n.3 (3rd Cir. 2018) ("We have already recognized in the pre-removal context that when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute . . . The Government must meet its burden in such bond hearings by clear and convincing evidence.") (citing *Singh* and *Addington*) (internal quotations omitted).

The Constitution requires no less here. Incarceration makes it difficult, if not impossible, for Mr. Charles to effectively vindicate his due process rights. Incarceration significantly burdens his ability to gather necessary evidence, to file claims in federal or immigration court, and to secure and communicate with retained or pro bono counsel. *See* Dkt. No. 387-3 ¶ 10; *see also* Plaintiff's Status Report re: Access to Counsel and Notification, Dkt. No 316, at 3-10 (Dec. 5, 2016) (documenting barriers to detainee communication at the four Massachusetts immigration detention centers); *Lyon v. U.S. Immigr. & Customs Enf.*, 171 F. Supp. 3d 961, 985 (N.D. Cal. 2016) (noting "substantial undisputed evidence" that immigration detention impeded individuals' ability to gather evidence and communicate with counsel). Given these material barriers to presenting one's case, the allocation of burden of proof can significantly impact bond hearing outcomes. *See, e.g.*, *Armstrong v. Manzo*, 380 U.S. 545, 551 (1965) ("[I]t is plain that where the burden of proof lies may be decisive of the outcome.") (internal quotations omitted). Under these circumstances, to vindicate Mr. Charles's due process rights, the government must bear the burden of establishing that he poses a flight risk or a danger to the community by clear and convincing evidence. *See also Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 692 (D. Mass.

2018) (holding that "[r]equiring a non-criminal alien to prove that he is <u>not</u> dangerous and <u>not</u> a flight risk at a [§ 1226(a)] bond hearing violates the Due Process Clause").

## CONCLUSION

Because his continued detention without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment and the Excessive Bail Clause of the Eighth Amendment, Mr. Charles respectfully requests that this Court grant his petition for a writ of habeas corpus, ordering Respondents to hold a constitutionally valid individualized bond hearing for Mr. Charles.

January 16, 2019

 Respectfully submitted,

<u>/s/ Michael Wishnie</u>

Erin Drake, Law Student Intern
Clare Kane, Law Student Intern
Aseem Mehta, Law Student Intern[*]
Marisol Orihuela[†]
Michael Wishnie (BBO# 568654)
Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
Fax: (203) 432-1426
michael.wishnie@ylsclinics.org


Ahilan T. Arulanantham[†]
ACLU Immigrants' Rights Project
1313 West 8th Street
Los Angeles, CA 90017
213-977-5211
aarulanantham@aclusocal.org

Anant K. Saraswat (BBO# 676048)
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210
Tel: 617-646-8000
Fax: 617-646-8646
anant.saraswat@wolfgreenfield.com

Michael K.T. Tan[†]
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
212-519-7848 (p)
212-549-2654 (f)
mtan@aclu.org

*Counsel for Plaintiffs*
*Law student appearance forthcoming.
[†] Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I hereby certify that, on January 16, 2019, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by mail to all parties by operation of this court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

Date:   January 16, 2019

Respectfully submitted,

 /s/ Michael J. Wishnie
Michael J. Wishnie (BBO# 568654)
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
P: (203) 432-4800
F: (203) 432-1426