**EXHIBIT A**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
HARTFORD, CONNECTICUT

File: A074-917-669                                              January 9, 2003

In the Matter of

LEO FELIX CHARLES           )
                            )   IN REMOVAL PROCEEDINGS
                            )
    RESPONDENT              )

CHARGES:    Section 237(a)(1)(B) of the Immigration and Nationality Act - nonimmigrant who remained longer than permitted;

Section 212(a)(6)(A)(i) of the Immigration and Nationality Act - present without having been admitted or paroled;

Section 212(a)(2)(C) of the Immigration and Nationality Act - trafficker in a controlled substance.

APPLICATIONS:   Withholding of removal under the Convention against Torture.

ON BEHALF OF RESPONDENT: PRO SE

ON BEHALF OF INS: ROBERT K. BINGHAM, Special Counsel
                  Immigration and Naturalization Service
                  Hartford, Connecticut

## ORAL DECISION OF THE IMMIGRATION JUDGE

### INTRODUCTION

The respondent was originally charged with the Notice to Appear alleging that he is present in the United States without having been admitted or paroled. Those charges were subsequently withdrawn. The proceedings were administratively closed on

1

000532

July 12, 2000 because the respondent's conviction was apparently not final at the time since it was under appeal. Furthermore, the respondent denied he had entered the United States without inspection.

The Service then requested that the matter be re-calendared. Then, the Service also filed an additional charge of deportability charging that the respondent is subject to removal because he is a nonimmigrant who remained longer than permitted. The respondent did admit that he was admitted as a nonimmigrant and remained longer than permitted. Accordingly, the Court finds that on this charge, removability has been established by clear and convincing evidence.

Respondent declined to designate a country of removal, and Haiti was directed. The respondent sought relief in the form of asylum, withholding of removal, and withholding of removal under the Convention against Torture.

## STATEMENT OF THE FACTS

The respondent was born in Haiti on August 16, 1954. He states that his father was a shoemaker and his mother was a vendor and that he lived in the city of Port-au-Prince. The respondent indicated that neither he nor his family was politically involved in Haiti. He indicated that his father was held, arrested by the authorities in 1964 as a pretext somehow for the authorities to abuse some female relatives. It is unclear to the Court exactly what this is about.

The respondent stated that he went to high school and had two years of college in Haiti and worked for a while as a teacher. He stated that he could not make enough money living as a teacher. The respondent indicates that he has two children born in Haiti and that the respondent was never married.

The respondent stated that he hooked up with an agency and that he got a U.S. visa using his real passport. He stated he came to the United States in 1982 because

he could not make a living in Haiti. The respondent's parents remain in Haiti as well as his siblings. Respondent indicates that after arriving in the United States, he came to Bridgeport, Connecticut. He worked as an auto body mechanic.

Respondent indicated he was arrested by the police in 1989 concerning a shooting, discharging a firearm. The respondent stated he pled guilty to reckless endangerment and was sentenced to one year execution suspended and probation. The respondent stated he was arrested for the second time in January 1995. The respondent stated that the police falsely accused him of leaving a pistol. The respondent, however, did plead guilty to possession of a dangerous weapon and sentenced to two years execution suspended and probation.

The respondent claimed that from early 1995 to early 1997, he was providing tips to the police and made some drug buys. The respondent, however, did not provide any corroboration for this. The respondent did provide a document indicating that on January 15, 1997, he became an official registered informant for the police department.

Respondent indicated that in October of 1996, two Haitians had been killed related to, apparently, drug turf. He stated that a Mr. Marcelus, who was a friend of his and, apparently, a drug kingpin, asked him to borrow a car. The respondent stated that the next day, Marcelus said he would not get the car back. He indicated that the car was used by two men to kill some individuals. He indicated that those men worked for Mr. Marcelus. He stated that he paid the respondent $200 and would pay him another $300 for the car.

The respondent stated that, eventually, detectives started asking him questions and that on January 15, 1997, he made a statement to a detective. Exhibit 14-4 does indicate that the respondent made a statement before a detective giving him information about Mr. Marcelus as well as the individuals who apparently committed the murders.

000534

The respondent then indicated that Mr. Marcelus threatened him that if he would give any information to the police, he may be killed. The respondent then stated that a man who worked for Mr. Marcelus assaulted him. The respondent then stated he indicated that the respondent reported this incident to the police.

Then, respondent stated that he was arrested on February 18, 1997 at Mr. Marcelus' apartment. He indicated that he was told by the police to obtain information about the apartment that may relate to the murder. Apparently, the police came in and arrested the respondent, Mr. Marcelus, and another Haitian individual, and that two slabs of cocaine were found in the apartment. Respondent then said he was bonded out the next day. He was apparently rearrested in May of 1997 after failing to appear in court.

The respondent then stated he had a trial for distributing narcotics near a school. He stated that he was represented by a public defender, and apparently, there was no defense put up even though the respondent stated he was innocent and that he was trying to cooperate with the police. The respondent was found guilty by a jury and sentenced to 30 years. See Exhibit 6, please.

The respondent's appeals of his conviction were apparently dismissed by both the Connecticut Court of Appeals and the Connecticut Supreme Court. There is apparently now pending another attack against the conviction. See Exhibit 18.

The respondent then indicated that Mr. Marcelus as well as the two men that killed the victims were arrested in March of 1997 for murder. Respondent then indicated he was going to testify. Then he stated that his sister in Haiti was kidnapped in September of 1998. Respondent said he was also threatened in jail. He then stated he decided not to testify. Subsequently, apparently, Mr. Marcelus acquitted, and his sister was then released.

There were some newspaper articles indicating that Mr. Marcelus was acquitted. However, the respondent stated that he did testify in the trial of the two individuals who apparently actually did the killings, who according to respondent worked for Mr. Marcelus, in 1999.

The respondent indicates that he is in protective custody and has been in a single cell because Haitian gangs have tried to kill him. He also indicates that while he has had sporadic contact with his siblings in Haiti, Mr. Marcelus' brother in Haiti has apparently told his sister that if the respondent would returned to Haiti, he would be killed or tortured. Respondent also indicates that his health is bad because he has diabetes.

The respondent indicates that if he were to return to Haiti, he may be tortured by the government because Mr. Marcelus' brother is an official in the Haitian government and knows the respondent's family. The respondent states that the authorities will torture him because of his testimony.

The respondent also provided a newspaper article (see Exhibit 7-20) dated February 12, 2002. That article discusses the recent resignation of Prime Minister Jean Marie Chérestal, who headed the government since last March, which would be March of 2001. Apparently, there was an accusation that Mr. Chérestal was involved with stealing foreign aid. It also states that barely a week goes by without elected officials, members of parliament, and other top-level appointees being accused of corruption or associating with criminals. It said that police identified one parliamentarian's official vehicle was involved in a robbery and the abduction and murder of foreign exchange brokers, as well as assassinations and embezzlement. The letter goes on to state that a Nawoum Marcelus, a deputy close to the former premier, accused the senators of seeking to lay the blame for the scandal.

000536

The Court also reviewed the State Department report for Haiti for 2001. The document indicates that Haiti is a republic with an elected president. It states that there were elections in 2000 in which were hotly disputed by the opposition and, apparently, boycotted. It states that President Aristide was sworn in in February of 2001. The report notes a significant amount of political violence between the government and the opposition.

The report states that new police cadets are chosen based on political and personal favoritism. It states that allegations of corruption, incompetence, and narcotics trafficking affect all levels of the Haitian National Police. The report goes on to state that the country is politically unstable and that there were serious human rights abuses in Haiti. The report goes on to state that a known gang leader with Lavalas connections apparently shot somebody and killed somebody, but has not been arrested or prosecuted for the murders despite arrest warrants.

The Court also reviewed the section of the report on torture. It states that torture and other forms of abuse in Haitian jails are pervasive. It states that police frequently beat suspects, and it appears that there are serious forms of torture being used. It states that the police are almost never prosecuted for abuse of detainees.

The report goes on to state that since March of 2000, criminal deportees who have served sentences outside the country are kept in preventative detention with no fixed time table for their eventual release. According to police officials, deportees are held in order to prevent an increase in insecurity and to convince them they would not want to risk committing a crime because of prison conditions. It states that the average period of preventative detention for these persons has decreased to approximately one month compared to several months in the year 2000.

## STATEMENT OF THE LAW

In order to qualify for withholding of removal under the Convention against Torture, the respondent must establish that it is more likely than not that he would be tortured if returned to Haiti. See 8 C.F.R. Section 208.16(c)(2). In assessing whether the respondent has met that burden of proof, there are factors set forth in 8 C.F.R. Section 208.16(c)(3). In making the Court's determination, the Court will be guided by the definitions as set forth in 8 C.F.R. Section 208.18(a).

## ANALYSIS AND FINDINGS

The respondent is not eligible for asylum under Section 208 of the Act because of his conviction for narcotics trafficking. That clearly would constitute an aggravated felony. The respondent therefore cannot get asylum.

The respondent also, likewise, cannot get withholding of removal under Section 241(b)(3) of the Act because he was sentenced to more than five years' imprisonment. Therefore, he is barred from withholding of removal.

The only relief available to the respondent is withholding of removal under the Convention against Torture. If the respondent can establish to the Court that it is more likely than not he would be tortured by the government of Haiti, he would be eligible for deferral of removal under the Convention against Torture.

Respondent claims that because of his knowledge and statements given concerning a murder involving a Haitian drug dealer, that he would be tortured if returned to Haiti. Because the respondent would be a criminal deportee, it is likely that he would come into the custody of the Haitian government if he were to return to Haiti. It appears that the Haitian government does take into custody individuals who are returned from the United States for criminal reasons.

However, the respondent must show something beyond the conditions in the

Haitian prison system. Merely the fact that Haitian prisons are substandard does not establish or meet the definition of torture. See Matter of J-E-, 23 I&N Dec. 291 (BIA 2002). In that case, the Board held that a respondent must establish that the authorities would intentionally and deliberately detain the respondent in order to inflict torture and that torture would be specifically inflicted on the respondent. The respondent indicates that this could happen because the brother of Mr. Marcelus is an official in the Haitian government. Respondent did provide an article which mentions this individual in the Haitian government.

The background information, essentially, indicates the following:

It appears that narcotics trafficking affects all levels of the Haitian National Police. It appears that individuals with government connections may sometimes be immune from the legal system. Furthermore, it states that torture in the Haitian prison system is pervasive.

The respondent claims that the authorities in Haiti may torture him because of his testimony and the fact that he gave information in a statement to the police. The respondent indicates he has been in protective custody here in the United States. The question is: Does the respondent meet that burden of proof that it is more likely than not that the Haitian government would torture him? The Court finds there is sufficient evidence for the respondent to make that finding.

The Court finds, similar to the case of Matter of G-A-, 23 I&N Dec. 366 (BIA 2002), that a combination of factors may establish that it is more likely than not that the respondent would be tortured. The Court finds that the combination of these factors are the pervasiveness of torture in the Haitian prison system, the information he gave concerning Haitian narcotics traffickers, the corruption and influence of narcotics traffickers in Haiti, and the brother of Mr. Marcelus, who, apparently, is an official in the

Haitian government. The Court finds that the combination of all these factors does result in a finding that it is more likely than not that the respondent would be tortured.

## ORDER

IT IS HEREBY ORDERED that the respondent's application for asylum under Section 208 of the Act is denied.

IT IS FURTHER ORDERED that the respondent's application for withholding of removal under Section 241(b)(3) of the Act is denied.

IT IS FURTHER ORDERED that the respondent's application for deferral of removal under the Convention against Torture is granted.

---

MICHAEL W. STRAUS
Immigration Judge

## CERTIFICATE PAGE

I hereby certify that the attached proceeding before JUDGE MICHAEL W. STRAUS, in the matter of:

LEO FELIX CHARLES

A074-917-669

HARTFORD, CONNECTICUT

was held as herein appears, and that this is the original transcript thereof for the file of the Executive Office for Immigration Review.

_____

DANIELLE S. VANRIPER (Transcriber)

FREE STATE REPORTING, Inc.

JUNE 25, 2017
_____
(Completion Date)

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
450 MAIN ST., ROOM 628
HARTFORD, CT  06103

RE: CHARLES, LEO FELIX
FILE: 074-917-669                                          DATE:  May 25, 2017
    #193138

TO:

   CHARLES, LEO FELIX 193138
   OSBORN CORRECTIONAL INSTITUTE
   335 BILTON RD
   P.O. BOX 100
   SOMERS, CT  06071

   Please take notice that the above captioned case has been scheduled for a VIDEO hearing before the Immigration Judge on Nov 9, 2017 at 09:00 A.M.. The alien will be present via tele/video.  All other parties and witnesses should report to:

        450 MAIN STREET, RM 628
        HARTFORD, CT  06103

   You may be represented in these proceedings, at no expense to the Government, by an attorney or other individual who is accredited to represent persons before an Immigration Judge.  Your hearing date has not been scheduled earlier than 10 days from the date of service of the Notice to Appear in order to permit you the opportunity to obtain an attorney or representative.  If you wish to be represented, your attorney or representative must appear at the hearing prepared to proceed.  You can request an earlier hearing in writing.
   Failure to appear at your hearing except for exceptional circumstances may result in one or more of the following actions:  (1) You may be taken into custody by the Department of Homeland Security and held for further action. OR (2) Your hearing may be held in your absence under section 240(b)(5) of the Immigration and Nationality Act.  An order of removal will be entered against you if the Department of Homeland Security established by clear, unequivocal and convincing evidence that you or your attorney have been provided this notice and you are removable.
   IN THE EVENT YOU ARE RELEASED FROM CUSTODY, WITHIN FIVE DAYS OF YOUR RELEASE, YOU MUST PROVIDE TO THIS IMMIGRATION COURT A WRITTEN NOTICE/EOIR-33 OF THE ADDRESS AND TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.  CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.
   A list of free legal service providers has been given to you.  For information regarding the status of your case, call toll free 1-800-898-7180 or 240-314-1500.

---

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)     PERSONAL SERVICE (P)
TO: [M] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [P] DHS
DATE: 5/25/17         BY: COURT STAFF _____
     Attachments: [√] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
                                                                         VW

000542