**EXHIBIT C**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
HARTFORD, CONNECTICUT

File: A074-917-669                                           February 22, 2018

In the Matter of

LEO FELIX CHARLES              )      IN REMOVAL PROCEEDINGS
                               )
   RESPONDENT                  )

CHARGES:     Section 237(a)(1)(B) of the Immigration and Nationality Act - non-immigrant overstay.

             Section 212(a)(2)(C) of the Immigration and Nationality Act - trafficker in a controlled substance.

APPLICATIONS:   Deferral of removal under the Convention against Torture.

ON BEHALF OF RESPONDENT: PRO SE

ON BEHALF OF DHS: LEIGH MAPPLEBECK, Senior Attorney

ORAL DECISION OF THE IMMIGRATION JUDGE

INTRODUCTION

The respondent was placed into proceedings in the 1990s while he was serving time at a Connecticut correctional facility. The Court found that the respondent was removable as a non-immigrant overstay. Based on those findings, removability has been established by clear and convincing evidence. The Court conducted a hearing on

1

January 9, 2003. The Court found that based on the fact that in 2003 deportees were detained by the Haitian government, the pervasiveness of torture in the Haitian prison system, information that the respondent provided concerning Haitian drug traffickers, the corruption and influence of narcotics traffickers in Haiti, and the statement that is a brother of Mr. Moirales who is an official in the Haitian government the Court found that the respondent has met his burden.

DHS then submitted a motion for a de novo hearing to terminate his deferral of removal. The respondent objects to that. The Court then did a hearing.

## STATEMENT OF THE FACTS

The Court does not need to reiterate any of the previous statement of facts. The Court conducted a hearing to update the record since the last hearing in January of 2003.

The respondent indicated that he had a number of pretty serious health issues. They included a serious spine issue, making it difficult for him to stand and walk. He has diabetes, in which he takes Insulin twice a day. He has been treated for the last five years for high blood pressure for which he takes medication. He states that he has acid reflux for which he takes medications. He has nerves issues, as well as kidney problems. The respondent is now 63 years old.

The Court then discussed his time in prison from 2003 to his release in February of 2010. He states that he was in protective custody from 1998 to 2006, based on threats from the Marcellus Gang. But then he states that in 2006, he was transferred to the regular population at the Corrigan Correctional Facility. He indicates he did not have any problems there. He states that since the hearing in 2003, he has had no contact with Ronald Marcellus. There is no indication that anyone attempted to harm him while he was in prison from 1998 to 2010.

The respondent states he was arrested in 2010 to a halfway house, where he stated for six months. He then states he lived with a girlfriend and also rented a room in Bridgeport. He claims that he worked as a gas station attendant. But he was arrested soon thereafter in June of 2011 for stabbing his girlfriend. He was charged actually with attempted murder and first degree assault. In September of 2013, he pled guilty to first degree assault and sentenced to 14 years, execution suspended after seven years. The respondent has been incarcerated since that arrest in June of 2011. He states that in the first couple years, he was at a number of jails. He claims that he was transferred to avoid the Marcellus Gang. The respondent did provide evidence that he was concerned about his safety and received threats during the 2000s.

He also said that he had to receive protective custody from the Blood Gang because the victim had some sort of relationship with the Blood Gang, which he said was different from the Marcellus Gang. He claims that he was being treated at Yukon Hospital in June 28, 2017. He claims that he happened to run into Mr. Gans, whom he testified against at his murder trial. He said that Gans said that Mr. Marcellus' brother, someone named Joudi, would kill him. He claims that he told the correctional officer, who then separated them. He said that Mr. Gans' release date is in March of 2027.

The record also reflects that Mr. Marcellus was convicted for narcotics offenses in 2014. There is a document in the record showing his release date is in March of 2027. The respondent had no idea what his Immigration status might be.

He states that Nawoum Marcellus is Ronald Marcellus' brother. DHS did submit some documents relating to a Jean Marcellus in Exhibit R-5, Tab B. The document reflects that he naturalized in 1997. His application lists two children, Pierre and Ronald. The respondent states he has never met Pierre. He was asked why Nawoum was not listed and he said that possibly Nawoum was from a different relationship. He

states that Nawoum was very well known in Haiti as a political figure. He claims that he met Ronald for the first time in 1987 in New York and also met Nawoum in 1988 or 1989 in New York when he was about in his mid-20s. He claims that Ronald introduced Nawoum as his brother.

The respondent states that Mr. Joudi is a deputy of the Marcellus Gang. He claims that he had met Joudi because they were living in the same building in Bridgeport in the late 1980s. He states that Joudi was deported for drugs after serving time in prison maybe sometime in the 1990s or early 2000s. The respondent provided a document at the end of Exhibit R-2 from a publication called "The Week," September 25, 2015. It states that a runoff candidate named Anesandre Joudi is a convicted cocaine trafficker who did prison time in the United States. It states that convicted criminals can take seats in Haiti's parliament thanks to a new election law that does not require them to undergo background checks. The respondent also said in 2010 after he was released from prison, a Haitian woman asked him why he was not dead and indicated that a friend of his was killed.

The respondent states that he would be killed by a number of individuals, including Anesandre Joudi and Nawoum Marcellus, including other people named Kevin Laurent and Mr. Messador. Exhibits R-6 and R-7 indicate that they both have criminal history in the State of Connecticut. The respondent indicates that an individual named Harold Joudi was convicted of murder in 2008 for an offense in 1993. He states that Mr. Joudi is not a senator.

The respondent states that you have to be in the government to run drugs. He said now that the Marcellus Gang is the most powerful gang in Haiti. He claims that it is known as the Zenglendos, the Voodoo Nation, and Fanmi Lavalas, which is the ex-president Aristide's political party. He states that Mr. Marcellus is very powerful.

The respondent states that he has two sons in Haiti. He has had no contact with them since 2011. He indicates that there would be no place for him to go in Haiti.

The Court also reviewed the respondent's document. The Court reviewed the 2003 Country Report for Haiti, as well as the 2016 Report. The reports note the high level of corruption in Haiti. The 2016 Report indicates that there were reports that police allegedly beat or otherwise abused detainees and suspects. Prison conditions were overcrowded, poorly maintained and unsanitary.

The respondent also provided in Exhibit R-2 some documents relating to protective custody request in 2004. There is also a letter from March 24, 2004 from the warden stating that the respondent has issues with inmates he testified against and the warden endorsed a protective custody placement. There is another document from March 23, 2004 entitled "Request for Protective Custody." It states that he feared the associates of individuals whom he testified against threatened him with death. He wrote that he does not know the individuals who threatened him and could not supply names. He gives the name of the person threatening him, mainly Ronald Marcellus, Gans Norman and Amanu Shipman because he testified against the inmates. He also noted that the respondent had a total of 25 disciplinary reports.

There is a memo from April 20, 2006 from a captain at the Cheshire Correctional Facility. It states that he would benefit from a change which would improve his disciplinary issues. He writes that he needs programming and mental health services. Then there is a document entitled request for removal from protective custody from April of 2006, which the respondent made that request and indicated no concerns for his safety while in the general population. In Exhibit R-1, DHS provided some documents from his various transfers while in Department of Corrections custody.

The respondent also provided some additional documents in Exhibit R-3. There

was also a document relating to a lawsuit he filed regarding a request for protective custody. In that document, he alleges that he was threatened to death by an Alan Bulware, the man with whom his victim was having an affair was a member of a security risk group known as the Blood. He claims in this lawsuit that he was attacked by this inmate at the Bridgeport Correctional Center. Respondent also submitted an inmate request form dated June 30, 2017. In that document he said that while he was being attended at Yukon, an Inmate Gans threatened him with death, told him that members of its gang were after me and he would face the same treatment as Jean Baptiste Moirales for snitching. Then the respondent provided a number of medical records.

## ANALYSIS AND FINDINGS

The first issue is the respondent's claim that the Court cannot reopen his case. The Court would note that this is specifically allowed in 8 C.F.R. Section 1208.17(d). The regulation provides that DHS make requests to schedule a hearing to consider whether deferral of removal should be terminated. It states that the motion should be granted if it is accompanied by evidence that is relevant to the possibility he would be tortured and that was not presented at the previous hearing. The respondent's arguments about *res judicata* and other related arguments are misplaced. That this motion is clearly not subject to the rules regarding motions to reopen. The Court found that it properly recalendared and reopened this matter for a new hearing.

The next issue is whether the respondent remains eligible for deferral of removal under the Convention against Torture. The Court looked over its decision that was done 15 years ago. The Court will go through all the factors again. One of the factors is that at the time the respondent would have been possibly detained by Haitian government officials like other deportees. It appears that that is no longer the case.

A074-917-669                                6                                February 22, 2018

The Court also again focused on the pervasiveness of torture in the Haitian prison system. But the Court finds that his claim at this time is not really based so much on the Haitian prison system and there is no evidence that he would face the Haitian prison system. The Court would note that corruption and influence of narcotics traffickers in Haiti remains a serious issue. The Court also looked at the information he provided concerning narcotics traffickers. The record reflects that the respondent testified against two individuals, who were apparently not Haitian, but were working for Mr. Ronald Marcellus, who he said was from Haiti. The Court also focused on the respondent's claim that Marcellus' brother is in the Haitian government, which is a significant factor because of the requirement that the respondent establish government acquiescence, willful blindness or torture by government officials.

DHS argues that because deportees are no longer jailed upon return to Haiti, it diminishes his claim. DHS also points out that since 2006, he has not been harmed, nor have there been any attempts to harm the respondent either after his release from incarceration or during the time he spent in the Department of Corrections. Apparently, the only altercation he had may have been with a boyfriend of the individual he allegedly stabbed who had an affiliation with the Bloods Gang. The respondent stated, however, that it had no relation to the Marcellus Gang. DHS argues that he has not been in protective custody since 2006. But the respondent does state that in June of 2017, he ran into one of the individuals he testified against who threatened him.

A lot of the issues frankly come down to whether who exactly this Mr. Ronald Marcellus is. Respondent claims that he is the head of really the biggest gang in Haiti. He claims that while people would not know them as the Marcellus Gang, they are known as the Zenglendos, the Voodoo Nation and Fanmi Lavalas, who is the political party of ex-president Aristide. He claims that Mr. Marcellus would naturally be a very

powerful person in Haiti. Unfortunately, the respondent did not provide any proof of this.

DHS submitted evidence which was the naturalization application for Ronald Marcellus' father. On that application, he did not list a Nawoum Marcellus. The respondent admitted that Marcellus is a common name in Haiti.

The issue then is looking at the respondent's claim de novo, whether he has met his burden of proof that it is more likely than not he would be tortured. The respondent claims that Mr. Nawoum Marcellus is indeed Ronald Marcellus' brother, but we do not know why he was not listed on his father's naturalization certificate. The Court does find this to be a significant factor. The Court finds that respondent's explanation to be not availing or persuasive.

The Court also finds it very important that there is no evidence in this record to show that Ronald Marcellus is the head of essentially the biggest and most powerful gang in Haiti. There is no documentary evidence from the respondent to back up that assertion.

Again, the Court must balance all the issues in this case to determine whether it is more likely than not that the respondent would be deported to Haiti. The Court finds that looking at all the evidence that the respondent has failed to meet that burden of proof. The Court finds that there is simply at this time insufficient evidence to show it is more likely than not he would be tortured in Haiti based on this record and the issues raised by the Court. The Court finds that the respondent has not met the burden of proof.

The Court also examined the respondent's health issues, which are considerable. But the Court finds there is no evidence that the treatment he would receive or the issue of adequacy of healthcare in Haiti would not constitute torture. While there is no doubt that his deportation to Haiti may endanger his health, there is no evidence that lack of

adequate healthcare treatment would constitute torture, which is the intentional infliction of harm.

## ORDER

IT IS HEREBY ORDERED that the Court is terminating the Court's previous grant of deferral of removal under the Torture Convention.

IT IS FURTHER ORDERED that the respondent be removed to Haiti.

MICHAEL W. STRAUS
Immigration Judge