# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

—————————————————————— )
Mark Anthony REID, *et al.*, on behalf of )
themselves and others similarly situated, )          Case No. 3:13-cv-30125-PBS
)
*Plaintiffs-Petitioners,* )
)
v. )
)          April 15, 2019
Christopher DONELAN, Sheriff, )
Franklin County, MA, *et al.*, )
)
*Defendants-Respondents.* )
—————————————————————— )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Clare Kane, Law Student Intern
Aseem Mehta, Law Student Intern*
Roxana Moussavian, Law Student Intern*
Alden Pinkham, Law Student Intern*
Bianca Rey, Law Student Intern*
Michael Tayag, Law Student Intern*
Michael Wishnie (BBO# 568654)
Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
Fax: (203) 432-1426
michael.wishnie@ylsclinics.org

Ahilan T. Arulanantham[†]
ACLU Immigrants' Rights Project
1313 West 8th Street
Los Angeles, CA 90017
213-977-5211
aarulanantham@aclusocal.org

Anant K. Saraswat (BBO# 676048)
Michelle Nyein (BBO# 685870)
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210
Tel: 617-646-8000
Fax: 617-646-8646
anant.saraswat@wolfgreenfield.com


Michael K.T. Tan[†]
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
212-519-7848 (p)
212-549-2654 (f)
mtan@aclu.org

*Counsel for Plaintiffs*
*Law student appearance forthcoming.
[†] Admitted *pro hac vice*.

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................................3

STATUTORY FRAMEWORK ............................................................................................8

ARGUMENT.......................................................................................................................9

   I.     STANDARD FOR SUMMARY JUDGMENT .................................................10

   II.    THE DUE PROCESS CLAUSE REQUIRES BOND HEARINGS AT SIX MONTHS
        WHERE THE GOVERNMENT BEARS THE BURDEN OF PROOF ..........................11

      A.   Due process requires an individualized hearing to justify prolonged immigration
          incarceration..........................................................................................11

      B.   Due process requires bond hearings after six months of detention............................14

      C.   The First Circuit's opinion does not preclude a six-month rule..................................16

      D.   Due process requires that the government bear the burden of proving class members
          should be detained by clear and convincing evidence. ................................19

   III.   MANDATORY INCARCERATION UNDER § 1226(c) VIOLATES THE EXCESSIVE
        BAIL CLAUSE. .........................................................................................22

   IV.   IN THE ALTERNATIVE, THE CONSTITUTION REQUIRES SIX-MONTH
        REASONABLENESS HEARINGS...............................................................25

      A.   Immigration Judges Should Consider Several Factors When Making Reasonableness
          Assessments.........................................................................................26

      B.   The Due Process Clause Requires Reasonableness Hearings After Six Months of
          Incarceration. ........................................................................................31

   V.    SECTION 1252(f)(1) DOES NOT BAR RELIEF.................................................34

   VI.   PLAINTIFFS' PROLONGED DETENTION CAUSES IRREPARABLE HARM AND
        THE BALANCE OF HARDSHIPS TIPS SHARPLY IN THEIR FAVOR. ...................35

      A.   A Permanent Injunction is in the Public Interest.......................................................36

      B.   The Balance of Hardships Favors a Permanent Injunction.........................................36

      C.   Plaintiffs Are Suffering Irreparable Harm. ..............................................................37

CONCLUSION ..................................................................................................................38

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ........................................................36

*ACLU v. Reno*, No. CIV. A. 98-5591, 1998 WL 813423 (E.D. Pa. Nov. 23, 1998) ...................36

*Addington v. Texas*, 441 U.S. 418 (1979) ...............................................................20

*Am. Freedom Def. Initiative v. Se. Pa. Transp. Auth.*, 92 F. Supp. 3d 314 (E.D. Pa. 2015) .........36

*Baez-Sanchez v. Kolitwenzew*, No. 2:18-cv-02134, 2018 U.S. Dist. LEXIS 215320

    (C.D. Ill. Dec. 21, 2018) ...........................................................................28

*Baldwin v. New York*, 399 U.S. 66 (1970) ........................................................... 14, 15

*Barker v. Wingo,* 407 U.S. 514 (1972) ...................................................................29

*Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989) ....... 23, 25

*Caballero v. Caplinger*, 914 F. Supp. 1374 (E.D. La. 1996) ...........................................24

*Carey v. Piphus*, 435 U.S. 247 (1978) ...................................................................17

*Carlisle v. Landon,* 73 S. Ct. 1179 (1953) .............................................................23

*Carlson v. Landon*, 342 U.S. 524 (1952) ............................................................ 23, 24

*Castañeda v. Souza*, 769 F.3d 32 (1st Cir. 2014) ......................................................30

*Castañeda v. Souza*, 810 F.3d 15 (1st Cir. 2015) ......................................................23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................... 10, 11

*Chaunt v. United States*, 364 U.S. 350 (1960) .........................................................21

*Chavez-Alvarez v. Warden, York County Prison*, 783 F.3d 469 (3d Cir. 2015) ........... 8, 22, 27, 31

*Cheff v. Schnackenberg*, 384 U.S. 373 (1966) ..........................................................15

*Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ................................................14

*Danesh v. Jenifer*, No. 00-CV-74409-DT, 2001 WL 558233 (E.D. Mich. Mar. 27, 2001) ..........24

*Demore v. Hyung Joon Kim*, 538 U.S. 510 (2003) .............................................................. passim

*DeNovellis v. Shalala*, 135 F.3d 58 (1st Cir. 1998) ..................................................... 38

*Diaz Ortiz v. Tompkins*, No. 18-12600-PBS, 2019 U.S. Dist. LEXIS 14155

    (D. Mass Jan. 29, 2019) ............................................................................................. 20

*Diop v. Dep't of Homeland Security*, 656 F.3d 221 (3d Cir. 2011) ...................................... 22, 28

*Doe v. Gallinot*, 657 F.2d 1017 (9th Cir. 1981) .......................................................... 33

*Doe v. Smith*, No. CV 17-11231-LTS, 2017 WL 6509344 (D. Mass. Dec. 19, 2017) ................. 20

*Duncan v. State of La.*, 391 U.S. 145 (1968) .............................................................. 15

*Figueroa v. McDonald,* No. CV 18-10097-PBS, 2018 WL 2209217

    (D. Mass. May 14, 2018) ........................................................................................... 20

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ........................................................... 11, 21

*Gayle v. Johnson*, 4 F. Supp. 3d 692 (D.N.J. 2014) ..................................................... 27

*Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998) ........................................................ 35

*Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906 (N.D. Cal. Jan. 25, 2019) ......... 31

*Gonzalez v. O'Connell*, 355 F.3d 1010 (7th Cir. 2004) ............................................... 18

*Gordon v. Johnson*, 991 F. Supp. 2d 258 (D. Mass 2013) ............................................ 30

*Gordon v. Lynch*, 842 F.3d 66 (1st Cir. 2016) ............................................................. 5

*Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3rd Cir. 2018) ..................... 21

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ................................................................. 33

*Hernandez v. Lynch*, No. EDCV1600620JGBKKX, 2016 WL 7116611

    (C.D. Cal. Nov. 10, 2016) ......................................................................................... 24

*INS v. St. Cyr*, 533 U.S. 289 (2001) ........................................................................ 35

*Jackson v. Indiana*, 406 U.S. 715 (1972) .................................................................. 12

*Jennings v. Rodriguez*, 138 S.Ct. 830 (2018) ...................................................................... passim

*Kansas v. Hendricks*, 521 U.S. 346 (1997) .......................................................... 12, 21

*Korematsu v. United States*, 323 U.S. 214 (1944) ...................................................... 12

*Ludecke v. Watkins*, 335 U.S. 160 (1948) ................................................................. 12

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...................................................... 36

*Lyon v. U.S. Immigr. & Customs Enf.*, 171 F. Supp. 3d 961 (N.D. Cal. 2016) ........................... 22

*Maryland v. Shatzer*, 559 U.S. 98 (2010) ................................................................. 14

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................................................ 26

*Matter of Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006) .................................................... 9

*Matter of Joseph*, 22 I. & N. Dec. 799 (B.I.A. 1999) .................................................. 9

*McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245 (1972) ................................................. 12

*Muniz v. Hoffman*, 422 U.S. 454 (1975) ................................................................. 15

*Muse v. Sessions*, No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052

   (D. Minn. Sept. 18, 2018) ......................................................................... 28, 31

*Nielsen v. Preap*, 139 S.Ct. 954 (2019) .......................................................... 2, 5, 30, 34

*O'Connor v. Donaldson*, 422 U.S. 563 (1975) ........................................................... 16

*Papazoglou v. Napolitano*, No. 1:12–CV–00892, 2012 WL 1570778

   (N.D. Ill. May 3, 2012) ............................................................................ 27

*Pensamiento v. McDonald,* 315 F. Supp. 3d 684 (D. Mass. 2018) ........................................ 20

*Planned Parenthood Minn., N.D., S.D. v. Daugaard*, 799 F. Supp. 2d 1048 (D.S.D. 2011) ........ 36

*Probert v. U.S. I.N.S.*, 750 F. Supp. 252 (E.D. Mich. 1990) ........................................... 25

*Reid v. Donelan*, 22 F. Supp. 3d 84 (D. Mass. 2014) ........................................... 4, 5, 8, 20

*Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014) .............................................. 4, 34

*Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016)....................................................................passim

*Reid v. Donelan*, 991 F. Supp. 2d 275 (D. Mass. 2014) ......................................................3, 4, 37

*Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018)..........................5, 16

*Saint Fort v. Ashcroft*, 329 F.3d 191 (1st Cir. 2003) ....................................................................35

*Sajous v. Decker*, 18-CV-2447 (AJN), 2018 WL 2357266

    (S.D. N.Y. May 23, 2018) ..........................................................................................28, 29, 31

*Santosky v. Kramer*, 455 U.S. 745 (1982)....................................................................................20

*Saysana v. Gillen*, 590 F.3d 7 (1st Cir. 2009) ............................................................................29

*Sellers v. United States*, 89 S. Ct. 36 (1968) .............................................................................23

*Shaughnessy v. United States ex. rel. Mezei*, 345 U.S. 206 (1953) .............................................12

*Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).........................................................................21

*Sopo v. U.S. Attorney General*, 825 F.3d 1199 (11th Cir. 2016)..............................19, 28, 31, 32

*State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ...................................14

*Thuraissigaim v. U.S. Dept. of Homeland Security*, 917 F.3d 1097 (9th Cir. 2019)....................33

*Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) .....................................................................18, 28

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ..................................................................................12

*United States v. Salerno*, 481 U.S. 739 (1987)......................................................................passim

*Woodby v. INS*, 385 U.S. 276 (1966)..........................................................................................21

*Yagao v. Figueroa*, No. 17-CV-2224-AJB-MDD, 2019 WL 1429582

    (S.D. Cal. Mar. 29, 2019) ...................................................................................................31

*Zadvydas v. Davis*, 533 U.S. 678 (2001)...............................................................................passim

## STATUTES

8 U.S.C. § 1101........................................................................................................................9

8 U.S.C. § 1158 ...........................................................................................................27

8 U.S.C. § 1159 ...........................................................................................................27

8 U.S.C. § 1226(a) ..................................................................................................9, 20

8 U.S.C. § 1226(c) ................................................................................................passim

8 U.S.C. § 1229(b) .....................................................................................................27

8 U.S.C. § 1231(a) ..........................................................................................7, 14, 18

8 U.S.C. § 1231(b)(3) ..................................................................................................14

8 U.S.C. § 1252(f)(1) ....................................................................................10, 34, 35

8 U.S.C. § 1255 ...........................................................................................................27

8 U.S.C. § 1537(b)(2)(C) ............................................................................................16

18 U.S.C. § 3142(e) ....................................................................................................30

18 U.S.C. § 3161(b) ....................................................................................................28

## OTHER AUTHORITIES

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

    Procedure § 2948.1 (2d ed.1995) ..........................................................................38

*Brief of 43 Social Science Researchers and Professors as Amici Curiae in Support of*

    *Respondents, Jennings*, 138 S.Ct. 830 (No. 15-1204) (2018) .....................29, 31, 38

Brief of Amici Curiae Retired Immigr. J. and Bd. of Immigr. Appeals Members in Supp. of

    Petitioner-Appellee, *Reid*, 819 F.3d 486 (1st Cir. 2016)........................................37

Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. Pa. L. Rev. 959 (1965) .........24

Department of Justice, National Institute of Justice*, NIJ Journal No. 269,*

    *What is Administrative Segregation?* (March 26, 2012).........................................31

Jason Schreiber, *New Wall Has Opened Door to More Illegal Aliens at Strafford County Jail*,

    N.H. Union Leader (Apr. 2, 2017) ........................................................................8

Kayla Gassman, *Unjustified Detention: The Excessive Bail Clause in Removal Proceedings*,

    4 Am. U. Crim. L. Brief 30 (2009) ....................................................................24

Stephen G. Breyer et al., *Administrative Law and Regulatory Policy* 698 (7th ed. 2011) ..........18

U.S. Immigration and Customs Enforcement, 306-112-002b, *Review of the Use of Segregation*

    *for ICE Detainees* (September 4, 2013) ..............................................................30

**RULES**

Fed. R. Civ. P. 56(c) ..........................................................................................10

**REGULATIONS**

8 C.F.R. § 212.17(b)(2) .....................................................................................30

8 C.F.R. § 236.1(b)(1) .........................................................................................9

8 C.F.R. § 236.1(d)(1) .........................................................................................9

8 C.F.R. § 241.13 ..............................................................................................18

8 C.F.R. § 241.14(k)(1-3) ...................................................................................16

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. V .................................................................................passim

U.S. Const. amend. VIII ............................................................................passim

## INTRODUCTION

Defendant U.S. Immigration and Customs Enforcement ("ICE") has imprisoned Plaintiffs for at least six months without an opportunity to seek release on bond, pursuant to 8 U.S.C. § 1226(c). By denying them the opportunity to plead for release, the government has deprived Plaintiffs of their liberty, separated them from their families, and hamstrung their ability to defend themselves against deportation. These deprivations violate Plaintiffs' constitutional rights under the Fifth and Eighth Amendments. The Constitution requires the government to provide each class member a bond hearing before an Immigration Judge ("IJ") after six months of detention, at which time the government must further justify incarceration by clear and convincing evidence that the individual presents a danger or flight risk. Alternatively, the Constitution requires Defendants to afford each class member an opportunity to appear before an IJ after six months of no-bond detention, so as to determine whether the continued denial of a bond hearing is *reasonable*.

Although *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018), determined that the *statutory* text of 8 U.S.C. § 1226(c) places no temporal limit on ICE's detention authority, *Jennings* expressly left open the question of whether the *Constitution* limits this authority. ICE has argued that its prolonged incarceration of Plaintiffs without a hearing is a permissible exercise of its authority to detain people presumed to be dangerous or flight risks. But, outside of wartime, the courts have never held the Constitution authorizes imprisonment without due process for the prolonged periods—at least six months, and in some cases, *years*—that class members face.

Moreover, the discovery ordered by this Court demonstrates that the presumption on which ICE has based its position is false. IJs, who are in the best position to evaluate a detainee's suitability for release, have ordered release on bond in 36% of cases, a figure comparable to the rate for those not subject to mandatory confinement under § 1226(c). Moreover, that percentage

will likely rise once the Supreme Court's most recent relevant decision, *Nielsen v. Preap*, 139 S.Ct. 954 (2019), results in the prolonged no-bond detention of more individuals who present negligible risk of danger or flight.

In light of these undisputed facts, Plaintiffs are entitled to judgment as a matter of law as to their claim that lengthy imprisonment without the opportunity to seek release on bond violates the Constitution. Class-wide relief is warranted because the Constitution prohibits prolonged incarceration without individualized hearings to assess flight risk and danger and mandates that the government provide such hearings once it has imprisoned class members for longer than six months. Absent bond hearings at which ICE bears the burden of proving that an individual's imprisonment is necessary, Defendants' continued deprivation of Plaintiffs' liberty violates the Due Process Clause. Defendants' actions also violate the Eighth Amendment's Excessive Bail Clause, which requires an individualized determination before sanctioning no-bail incarceration.

If the Court rejects these arguments, it should adopt the reasoning of the First Circuit's vacated opinion in this case and hold that the Constitution requires a two-step approach. *Reid v. Donelan*, 819 F.3d 486, 498-99 (1st Cir. 2016). First, immigrants imprisoned for lengthy periods should receive at least a threshold hearing to determine whether continued denial of a bond hearing has become *unreasonable* under the factors identified by the First Circuit (and others Plaintiffs suggest). Second, for those class members whose no-bond detention is found unreasonable, Defendants must provide a bond hearing to determine danger and flight risk. *Id*. at 500-01. The only workable mechanism to implement such a system requires that reasonableness hearings occur at a fixed time for all class members. The overwhelming weight of authority confirms that this Court should set the time period for reasonableness hearings at six months.

Finally, contrary to Defendants' prior arguments, this Court has the authority to provide

relief for the class in the form of both an injunction and a declaratory judgment requiring bond hearings or, in the alternative, reasonableness hearings.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Mark Reid, a veteran and lawful permanent resident who has lived in this country for over 40 years, has been in removal proceedings since November 2012. Dkt. No. 4 at 2; *id.* ¶ 18. In 2013, Mr. Reid petitioned this Court for a writ of habeas corpus, challenging his prolonged no-bond incarceration under § 1226(c) on statutory and constitutional grounds, and moved for summary judgment. *Id.* at 3. Mr. Reid also moved for representative habeas or class certification for a class consisting of individuals Defendants have detained or will detain in Massachusetts pursuant to § 1226(c) for over six months without bond hearings. Dkt. No. 33 at 1. In January 2014, this Court ruled that Mr. Reid's imprisonment past six months without a bond hearing was unlawful and ordered that Defendants provide Mr. Reid a bond hearing before an IJ within thirty days or release him. *See Reid v. Donelan*, 991 F. Supp. 2d 275, 282 (D. Mass. 2014) ("*Reid I*"), *aff'd*, 819 F.3d 486 (1st Cir. 2016), *vacated*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018) (withdrawing opinion but affirming Mr. Reid's own habeas). In February 2014, an IJ found that Mr. Reid did not pose a danger or flight risk, and ordered his release on bond and compliance with other conditions. *See* Dkt. No. 91-1 at 1. Mr. Reid posted bond and secured his liberty. Ex. A, Pl.'s Statement of Undisputed Facts (hereinafter "SOUF") at ¶ 26.

Mr. Reid continues to contest his removal before Immigration Court. *Id.* ¶¶ 27, 29. The Immigration Court has denied Mr. Reid relief under the Convention Against Torture three times, but the Board of Immigration Appeals ("Board") has reversed and remanded after each denial. *Id.* ¶ 27. The Immigration Court recently found that Mr. Reid has not been convicted of an aggravated felony, a holding that renders him eligible for three previously unavailable forms of relief. *Id.* But nearly a year after that finding, ICE filed an amended Notice to Appear ("NTA"),

charging Mr. Reid with Crimes Involving Moral Turpitude based on past offenses. *Id.* ¶ 28. The IJ scheduled a status conference for Mr. Reid on June 5, 2019.[1]

Meanwhile, after ruling on Mr. Reid's individual habeas petition, this Court certified a class of all detainees in Massachusetts whom Defendants have held or will hold for over six months under § 1226(c) without a bond hearing. *See Reid v. Donelan*, 297 F.R.D. 185, 194 (D. Mass. 2014) ("*Reid II*"). Shortly after class certification, parties filed cross-motions for summary judgment. Dkt. No. 122; Dkt. No. 124. In their motion, Plaintiffs incorporated the constitutional arguments from their original motion, *see* Dkt. No. 124 at 7 n. 3; Dkt. No. 2 at 18, 25 (asserting freestanding Due Process Clause and Eighth Amendment claims), but focused on the statutory rationale this Court had adopted in *Reid I*, when it granted relief to Mr. Reid individually. Dkt. No. 124 at 7. This Court granted summary judgment to the class in May 2014, concluding that § 1226(c) must be interpreted in light of the Due Process Clause to require a bond hearing after six months. *Reid v. Donelan*, 22 F. Supp. 3d 84, 89 (D. Mass. 2014) ("*Reid III*"). This Court ruled on statutory grounds, leaving Plaintiffs' constitutional arguments unresolved. *Id.*

Defendants have detained *Reid* class members for a median 363 days. SOUF at ¶ 11. At least two *Reid* class members have defeated deportation after over *one thousand* days in immigration detention. *Id.* at ¶ 12. For the four years after the *Reid* injunction, ICE detainees held in Massachusetts received bond hearings after six months of immigration imprisonment. *Id.* at ¶ 3. The 104 individuals who vested into the *Reid* class during that time period received bond hearings; IJs set bond for 37 of those class members after determining that each individual would not pose a danger or flight risk if released on bond. *Id.* at ¶ 4-5. Twelve additional class members

---

[1] On April 2, 2019, Massachusetts State Police arrested Mr. Reid after a traffic stop. The Massachusetts charges were dropped. He is currently detained pending extradition to Connecticut based on separate Connecticut charges.

were released under orders of supervision or orders of recognizance. *Id.* at ¶ 6.[2]

On appeal, the First Circuit affirmed the district court's judgment on Mark Reid's individual habeas petition. *Reid*, 819 F.3d at 501 (1st Cir. 2016). The First Circuit also agreed with this Court that categorical, no-bond imprisonment presented severe constitutional concerns and that the statute permitted such no-bond incarceration only for a reasonable time period. *Id.* at 494. However, the court rejected the six-month presumption underlying the class certification and judgment and remanded to reconsider the class certification order. *Id.* at 502-03. The First Circuit subsequently stayed issuance of its mandate pending Supreme Court adjudication of *Jennings v. Rodriguez*, leaving the district court's *Reid* injunction operative until May 2018. *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 at *1 (1st Cir. May 11, 2018). Neither this Court nor the First Circuit reached Plaintiffs' constitutional claims. *Reid III*, 22 F. Supp. 3d at 89; *Reid,* 819 F.3d at 494 (1st Cir. 2016).

On February 27, 2018, the Supreme Court held that the statutory text of § 1226(c) requires no-bond incarceration for the entire duration of removal proceedings, but did not rule on whether prolonged imprisonment without bond hearings under § 1226(c) violates the Constitution. *Jennings*, 138 S. Ct. at 851 (remanding for lower court to address constitutional issues). In light of *Jennings*, the First Circuit vacated its 2016 decision, affirmed this Court's grant of individual relief to Mr. Reid, vacated this Court's 2014 grant of class-wide relief, and remanded the case to the district court. *Reid,* 2018 WL 4000993 at *1 (1st Cir. May 11, 2018). Defendants' refusal to conduct bond hearings since vacatur relegates increasing numbers of

---

[2] The *Reid* class may substantially expand following the Supreme Court's ruling that immigrants with criminal convictions detained after intervening periods of liberty are nonetheless subject to mandatory detention under § 1226(c), and therefore ineligible for bond hearings under the statute. *See Nielsen v. Preap*, 139 S.Ct. 954, 972 (2019). That issue is before this Court. *Gordon v. Lynch*, 842 F.3d 66, 71 (1st Cir. 2016).

people to prolonged detention without the opportunity for release on bond.

Plaintiffs then moved to modify the class and amend the complaint, and supplemented their still-pending 2014 motion for summary judgment on the constitutional claims; Defendants moved to decertify the class. Dkt. Nos. 378, 384, 386, 377-1. This Court heard oral argument on these motions on September 17, 2018, after which it ordered that the parties meet and confer and engage in an expedited discovery process. Dkt. No. 413 at 57-62. Per this order, the parties filed a joint status report on October 17, 2018. Dkt. No. 415. This Court granted Plaintiffs' motions to amend and to modify the class, and denied the Defendants' motion to decertify. Dkt. No. 416 at 23. This Court also denied Plaintiffs' supplemented motion for summary judgment without prejudice to renewal after discovery. Dkt. No. 418. This Court ordered that the parties "conduct limited discovery related to the average and median detention times for aliens subject to 8 U.S.C. 1226(c)," and set a briefing schedule for this motion. Dkt. No. 420.

In October 2018, Robert Williams and Leo Felix Charles joined as named plaintiffs. Dkt. No. 416 at 9, 23. At the time, Defendants were incarcerating Mr. Williams while he litigated his removal. SOUF at ¶¶ 33, 39. Ultimately, Mr. Williams consented to removal rather than continue enduring confinement. *Id.* at 38. By that point, ICE had imprisoned Mr. Williams under § 1226(c) for nearly eleven months without any process whatsoever to determine whether his incarceration was justified. *Id*.

Mr. Charles filed an individual habeas petition before this Court in January 2019 after more than eleven months of incarceration, during which he suffered from diabetes, high blood pressure, acid reflux, nerve and kidney damage, and other conditions. Dkt. No. 430; SOUF at ¶ 49. Mr. Charles could not access surgery to restore his ability to walk while incarcerated, so he was confined to a wheelchair despite medical advice that this would further damage his back.

SOUF at ¶¶ 50-51. The jail refused to accommodate the diet that Mr. Charles' doctors ordered to accommodate his diabetes. SOUF at ¶ 52. On February 14, 2019, a day before the deadline to file an opposition to Mr. Charles' individual habeas petition, Defendants deemed Mr. Charles subject to a different detention statute, 8 U.S.C. § 1231(a), and exercised their discretion to release him under that statute. *Id.* at ¶ 53. He has returned to his family and is now able to seek medical treatment for his disabilities. *Id.* Both Mr. Williams and Mr. Charles continue to contest their removal in petitions for review before the Courts of Appeals. *Id.* at ¶¶ 39, 54.

Imprisonment severely burdens class members' ability to contest their cases. For example, class member Arnoldo Rodriguez had difficulty finding effective counsel and gathering evidence, as his legal calls could be completed only if lawyers chose to accept the calls. *Id.* at ¶ 57. Additionally, he could not access touch-tone phone menus or leave voicemails with counsel from jail phones. *Id.* Mr. Rodriguez ultimately retained a lawyer who made serious mistakes that led to an order of removal on erroneous grounds. *Id.* Confinement similarly interferes with the ability of other class members to gather evidence, secure effective counsel, and communicate effectively with counsel. *Id.* at ¶ 14, 37, 57, 59; Dkt. No. 125 at ¶¶ 12, 23, 41. Mr. Rodriguez's case also demonstrates the impact of release on class members' families and communities. Mr. Rodriguez, detained in July 2016, was released on bond in February 2018. SOUF at ¶ 55. Mr. Rodriguez's children and grandchildren suffered while he was imprisoned, and his release has allowed him to support his family and raise his children while he continues to contest his removal case. *Id.* at ¶ 56.

Furthermore, Plaintiffs face severe hardships while incarcerated. The Supreme Court has recognized that immigration detention is akin to jail: "the circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861

(Breyer, J., dissenting); *see also Reid III*, 22 F. Supp. 3d at 90 ("detention [beyond six months] is an emotional and physical ordeal for class members"); *Chavez-Alvarez v. Warden, York County Prison*, 783 F.3d 469, 478 (3d Cir. 2015) (noting that "[a]mong our concerns about deprivations to liberties brought about by section 1226(c) is the reality that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures"); SOUF at ¶¶ 13-14 (summarizing hardships to class members caused by immigration detention); Jason Schreiber, *New Wall Has Opened Door to More Illegal Aliens at Strafford County Jail*, N.H. Union Leader (Apr. 2, 2017) (explaining that Plaintiffs are treated the same as inmates serving criminal sentences), http://www.unionleader.com/crime/New-wall-has-opened-door-to-more-illegal-aliens-at-Strafford-County-jail-04032017.

Plaintiff class member Jihad Georges's case highlights the severe hardships individuals face while imprisoned. ICE arrested Mr. Georges in June 2017. SOUF at ¶ 63. Four months later, Mr. Georges was severely injured when the ICE van transporting him from detention to court sped excessively and crashed. *Id.* at ¶ 65. Mr. George sustained a brain hemorrhage, a broken spine, and a broken knee. *Id.* After two months in the hospital, Defendants transferred Mr. Georges to a clinic inside a detention facility, but he could not fully recover while incarcerated. *Id.* Mr. Georges was released pursuant to a *Reid* bond hearing in May 2018, and has returned home to his U.S. citizen wife to access much-needed medical care for the traumatic injuries he sustained. *Id.* at ¶ 68.

Plaintiffs now renew their motion for summary judgment on their constitutional claims, which this Court did not reach in his prior decision.

## STATUTORY FRAMEWORK

Plaintiffs have all completed their criminal custodial sentences and are now incarcerated by Defendants pursuant to 8 U.S.C. § 1226(c). Under the Immigration and Nationality Act, 8

U.S.C. §§ 1101 *et seq.* ("INA"), and its implementing regulations, the Department of Homeland Security ("DHS") may arrest and detain a noncitizen pending a decision on whether that person is subject to removal, and if so, eligible for relief from removal. *Id.* § 1226(a); 8 C.F.R. § 236.1(b)(1). If the individual is detained, an IJ generally may hold a custody redetermination hearing, also known as a bond hearing, to decide whether the individual should be released pending the resolution of removal proceedings. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(d)(1). At a bond hearing, the IJ must decide whether the individual presents a danger to others, a threat to the national security, or a flight risk; the IJ has wide discretion in deciding the factors that may be considered in making this determination. *Matter of Guerra*, 24 I. & N. Dec. 37, 40-41 (B.I.A. 2006). The provision at issue in this case, 8 U.S.C. § 1226(c), sets out an exception to this opportunity for release. It imposes mandatory incarceration without an opportunity for a bond hearing on individuals who are removable based on several broad categories of convictions, such as for crimes involving moral turpitude and nearly any drug offense. 8 U.S.C. § 1226(c)(1).[3]

## ARGUMENT

When the Government incarcerates a person for more than six months, the Constitution requires a hearing to determine whether that individual's confinement is necessary to serve a legitimate government purpose. The Due Process Clause prohibits prolonged imprisonment absent an opportunity to request release on bond at an individualized hearing before a neutral decisionmaker. Defendants' failure to provide any individualized hearing for class members violates this fundamental requirement. Furthermore, due process requires this hearing to occur at

---

[3] Unless ICE chooses to release them in the interests of witness protection, the only way for persons imprisoned under § 1226(c) to obtain release under the statute is to show an IJ that DHS has misclassified them as subject to § 1226(c). *See Matter of Joseph*, 22 I. & N. Dec. 799 (B.I.A. 1999); 8 U.S.C. § 1226(c)(2).

the six-month mark because Supreme Court precedent has repeatedly established, in immigration and other contexts, that six months is the threshold at which heightened protections are required to justify detention. Although the First Circuit's vacated opinion in *Reid* foreclosed a six-month threshold as a *statutory* matter, it did not decide the *constitutional* claim presented here. Furthermore, Due Process requires the government to bear the burden of showing that detention is justified. Defendants' no-bond, prolonged incarceration of Plaintiffs and class members also violates the Excessive Bail Clause of the Eighth Amendment, which requires an individualized determination before long-term incarceration may be sanctioned.

In the alternative, if this Court holds that the Fifth and Eighth Amendments do not require a bond hearing at six months, the Court should adopt the First Circuit's reasoning in *Reid* and hold that, at a minimum, the Constitution requires the government to provide Plaintiffs with "reasonableness" hearings before an IJ to consider whether various factors demonstrate that continued no-bond detention has become unreasonable. Under that approach, IJs would provide class members with these "reasonableness" hearings, and then provide bond hearings only where they conclude mandatory detention has become unreasonable. The only workable trigger for such hearings must be a certain length of time, and that time period should be six months.

This Court has authority to grant relief to the class. Even if 8 U.S.C. § 1252(f)(1) barred injunctive relief, which it does not, the Court would still have authority to issue a declaratory judgment stating Plaintiffs' rights under the Constitution.

## I.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). To

defeat summary judgment, the nonmoving party must "go beyond the pleadings and . . .

designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at

324 (quoting Fed. R. Civ. P. 56(e) (2006) (amended 2007)).

## II.   THE DUE PROCESS CLAUSE REQUIRES BOND HEARINGS AT SIX MONTHS WHERE THE GOVERNMENT BEARS THE BURDEN OF PROOF

Due process requires bond hearings whenever individuals are incarcerated beyond six

months. The Supreme Court has consistently found, across a variety of contexts, that due process

requires bond hearings to ensure that confinement serves a valid purpose and remains reasonable

in relation to that purpose. The Supreme Court has also consistently recognized six months of

incarceration as a turning point at which the deprivation of liberty becomes profound. Because

Defendants are subject to this constitutional command, they must establish that each Plaintiff

class member poses either a flight risk or a danger to justify detention beyond six months.

### A.   Due process requires an individualized hearing to justify prolonged immigration incarceration.

Class members, like all "person[s]" protected by the Due Process Clause, have a

fundamental liberty interest in freedom from incarceration: "Freedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the

liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The Supreme Court has consistently held, across a variety of civil detention contexts, that due

process requires individualized hearings to protect this basic right to liberty. *See United States v.

Salerno*, 481 U.S. 739, 750 (1987) (upholding civil pretrial detention of individuals charged with

crimes only upon individualized findings of dangerousness or flight risk at custody hearings);

*Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (requiring individualized findings of mental

illness and dangerousness at civil commitment hearings); *Kansas v. Hendricks*, 521 U.S. 346

(1997) (upholding civil commitment of sex offenders after jury trial on lack of volitional control and dangerousness).

The Supreme Court has also found that due process requires heightened procedures when confinement is prolonged. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) ("If the commitment is properly regarded as a short-term confinement with a limited purpose . . . then lesser safeguards may be appropriate, but . . . the duration of the confinement must be strictly limited."); *cf. Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("duration of commitment" must bear "reasonable relation" to its purpose). Indeed, outside of the national security context, the Supreme Court has never authorized civil confinement for more than six months without the protection of an individualized hearing as to the need for incarceration. *Cf. Korematsu v. United States*, 323 U.S. 214 (1944) (authorizing indefinite incarceration without individualized determinations of dangerousness of American citizens of Japanese descent), *overruled*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018); *Ludecke v. Watkins*, 335 U.S. 160 (1948) (same, for German non-citizens during World War II); *Shaughnessy v. United States ex. rel. Mezei*, 345 U.S. 206 (1953) (authorizing indefinite confinement on Ellis Island of individual non-citizen ordered excluded without hearing by the Attorney General on national security grounds). In *Zadvydas*, the Supreme Court applied these long-standing principles to immigration to hold that immigrants are "persons" entitled to due process, and that due process requires "adequate procedural protections" to ensure that prolonged detention serves valid government goals. 533 U.S. at 690, 693 (internal quotation marks omitted). Thus, there can be no serious dispute that

due process requires an individualized hearing to justify the prolonged incarceration of individuals challenging their removal.[4]

Although *Demore v. Hyung Joon Kim*, 538 U.S. 510 (2003), created a narrow exception to the general bond hearing requirement in upholding the constitutionality of no-bond § 1226(c) detention, that exception does not apply here. *Demore* limited its holding in two important respects. First, it authorized the mandatory detention of an individual who had *conceded deportability*. *Id.* at 522 n.6. For obvious reasons, individuals who concede deportability, unlike class members, are unlikely to be detained for lengthy periods, and are more likely to present a flight risk to evade removal if released. Second, *Demore* carefully limited its holding to individuals whose detentions were "brief." *Id.* at 513. The *Demore* Court understood the length of § 1226(c) detention to be significantly shorter than the length of time for which Plaintiffs in this action have been imprisoned. *See id.* at 529 ("Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*."); *id.* at 530 ("In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.").[5] *Demore* did not address the constitutionality of the detentions in this case, because all class members, by

---

[4] Indeed, the government conceded during oral argument before the First Circuit that due process requires a hearing after some period of incarceration, although disputed that this threshold could be fixed. Audio Recording, *Reid*, 819 F.3d 486, http://media.ca1.uscourts.gov/files/audio/14-1270.mp3 (last visited Apr. 11, 2019), at 5:19 (Selya, J., noting ICE's concession that detainee has right to challenge detention when detention becomes prolonged), 26:05 (same).

[5] After *Demore* was decided, the government acknowledged that its representation to the Court in that case significantly understated the time some individuals are imprisoned under § 1226(c). *See* SOUF at ¶ 24.

definition, have been incarcerated for prolonged rather than brief periods while contesting the government's efforts to remove them from the United States.[6]

**B. Due process requires bond hearings after six months of detention.**

Although the Due Process Clause does not expressly mention six months, the Supreme Court has protected procedural rights in other contexts by mandating specific time boundaries to ensure efficient compliance with limits on state authority. *See e.g., Maryland v. Shatzer*, 559 U.S. 98, 110 (2010) (Fifth Amendment permits police interrogation of suspects without counsel after fourteen days out of custody); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (judicial evaluation of probable cause under the Fourth Amendment generally must occur not later than forty-eight hours after arrest).[7] And the Supreme Court has repeatedly recognized six months as a threshold requiring additional protections in multiple contexts, both civil and criminal, including the immigration context. *See, e.g.*, *Zadvydas*, 533 U.S. at 701 (requiring the government to justify detention under 8 U.S.C. § 1231(a) beyond six months); *Baldwin v. New York*, 399 U.S. 66, 73-74 (1970) (requiring jury trial for sentences in excess of six months). There is no basis for exempting Plaintiffs from this long-standing requirement.

Our nation's legal tradition has long recognized six months as a substantial period of physical confinement, such that significant process is required to continue incarceration beyond

---

[6] In *Demore*, the Supreme Court noted a legal distinction between a detainee's concession that he "is deportable," and a concession that he will "ultimately be deported." 538 U.S. at 522 n.6 (emphasis omitted); *see also* 8 C.F.R.1208.16(f). Although Mr. Kim, the detainee in *Demore*, was incarcerated for more than six months, he sought only withholding of removal, a form of relief that merely prevents the execution of a removal order to a particular country. 8 U.S.C. § 1231(b)(3). As such, he did not have the kind of substantial defense presented by many individuals who continue to vindicate their claims for relief in prolonged incarceration.

[7] In other contexts, as well, the Supreme Court has recognized that the Due Process Clause may impose numerical limits on the deprivation of a protected interest. *See State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 425 (2003) (noting that punitive damages that exceed compensatory damages in excess of 10:1 generally violate due process).

that time. "It is not difficult to grasp the proposition that six months in jail is a serious matter for

any individual . . ." *Muniz v. Hoffman*, 422 U.S. 454 (1975). With few exceptions, "in the late

18th century in America crimes triable without a jury were for the most part punishable by no

more than a six-month prison term . . ." *Duncan v. State of La.*, 391 U.S. 145, 161 (1968).

Consistent with this tradition, the Supreme Court has set six months as the outer limit of

confinement for criminal offenses that courts can impose without a jury trial. *Cheff v.

Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion) (limiting court-imposed sentences

for contempt without jury trial to six months); *Baldwin* at 73-74 (requiring jury trial for

sentences in excess of six months).

To be clear: no state or federal authority can imprison a person under criminal law to

more than six months' confinement without *a jury trial*. Yet Defendants contend they can

imprison class members under civil immigration laws for that period, and far longer, without

even a bond hearing. To accept that assertion would break new ground; outside the national

security context, the Supreme Court has *never* authorized civil detention beyond six months

without individualized hearings justifying detention. This is not surprising, because as *Zadvydas*

shows, the six-month threshold for requiring heightened procedures is *not* limited to the criminal

context. *Zadvydas* noted that "Congress previously doubted the constitutionality of

[immigration] detention for more than six months," even for individuals already ordered

removed. 533 U.S. at 701. *See also id.* at 698 (noting historical immigration statutes permitting

detention incident to physical removal for up to six months); *Demore*, 538 U.S. at 529-30

(emphasizing, based on since-disproven facts,[8] that even outlier cases would typically conclude

in "about five months"). Indeed, both Congress and DHS have adopted six months as an outer

---

[8] *See supra* n. 5.

limit for incarceration without process in immigration contexts, even for national security risks and "especially dangerous" individuals. 8 U.S.C. § 1537(b)(2)(C) (mandating detention review every six months for national security detainees who cannot be repatriated); 8 C.F.R. § 241.14(k)(1-3) (requiring IJ review every six months of especially dangerous individuals not substantially likely to be removed).

Accordingly, this Court should hold that the Due Process Clause mandates bond hearings after six months to protect Plaintiffs' fundamental liberty interests.

**C. The First Circuit's opinion does not preclude a six-month rule.**

The First Circuit opinion interpreted *Demore v. Kim* as implicitly foreclosing its ability to adopt a firm six-month rule. *Reid*, 819 F.3d at 497 (1st Cir. 2016). The First Circuit has since vacated its own holding in light of the Supreme Court decision in *Jennings*, and hence this Court is not bound by that decision. *See Reid*, No. 14-1270 (1st Cir. May 11, 2018) (withdrawing opinion in *Reid*); *Johnson v. Chicago Bd. of Educ.*, 457 U.S. 52, 53–54, (1982) ("Because we have vacated the Court of Appeals' judgments in this case, the doctrine of the law of the case does not constrain either the District Court or, should an appeal subsequently be taken, the Court of Appeals"); *O'Connor v. Donaldson*, 422 U.S. 563, 577 n. 12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives the court's opinion of precedential effect"). Moreover, the First Circuit's opinion addressed only the Plaintiffs' earlier *statutory* theory, and did not address the *constitutional* arguments presented here.  See *Reid*, 819 F.3d at 496 (determining that the Court could not "transplant [a six-month presumption] into [8 U.S.C.] § 1226(c)").

In any event, Plaintiffs respectfully submit that the First Circuit's analysis on this point is incorrect. The First Circuit offered three reasons for rejecting the six-month rule, but none are persuasive. First, the panel wrongly distinguished *Zadvydas* on the ground that it involved

*indefinite* post-final order detention rather than merely *prolonged* detention during removal proceedings. *Reid*, 819 F.3d at 496 (1st Cir. 2016). *Zadvydas* adopted a six-month presumptive limit because "Congress had previously doubted the constitutionality of detention for more than six months." 533 U.S. at 701. To the extent the First Circuit believed the due process principles identified in *Zadvydas* did not apply because it involved "indefinite" rather than merely "prolonged" incarceration, that too was error. *Zadvydas* relied on *Salerno*, which involves detention of finite length. 533 U.S. at 690. If anything, that the detainees in *Zadvydas* had *concluded* their removal proceedings and thus lost all legal right to live here would render their claims weaker than those of Plaintiffs, particularly given that the detention lengths are comparable. SOUF at ¶ 29 (Reid would have been detained for over six years); *see also Jennings*, 138 S.Ct. at 860 (Breyer. J., dissenting) (one individual detained for nearly four years). Just as in *Zadvydas*, prolonged detention of six months absent government justification renders detention presumptively unreasonable, thus necessitating individualized inquiry to determine whether further incarceration remains justified. *See Zadvydas*, 533 U.S. at 679.

Second, the First Circuit based its decision on the assumption that assessing the reasonableness of detention necessarily requires a fact-dependent inquiry. *Reid*, 819 F.3d at 497. But that aspect of its holding conflates the reasonableness of an individual's *detention* with the reasonableness of detention *without a hearing*. Plaintiffs do not contend that every class member must be *released* at six months. The rule Plaintiffs advocate here would not end *detention* after six months; it would merely require a *hearing* on whether confinement remains justified on the basis of danger and flight risk at that time. Due process often—indeed, usually—requires uniform *procedures* to ensure that adjudicators make individualized determinations. *See, e.g., Carey v. Piphus*, 435 U.S. 247, 266 (1978) (recognizing denial of due process "does not depend

upon the merits of a claimant's substantive assertions," but instead on whether the government created a sufficient process). "[T]he determination of what process is due is performed on a 'wholesale' basis for general categories of disputes, rather than on a 'retail' basis taking into account the particular characteristics of each case." Stephen G. Breyer et al., *Administrative Law and Regulatory Policy* 698 (7th ed. 2011). In this vein, *Zadvydas* mandated a uniform threshold—six months—at which the government must show that detention under § 1231(a) was "reasonable in relation to its purpose," and the government subsequently adjusted its regulations accordingly. *Zadvydas*, 533 U.S. at 701; 8 C.F.R. § 241.13 (amended after *Zadvydas* to conduct post-order custody reviews after 180 days).

Third, the First Circuit concluded that *Demore* foreclosed a six-month rule. *Reid*, 819 F.3d at 493-97 (1st Cir. 2016); *see Demore*, 538 U.S. at 513-14. But the detainee in *Demore* did not claim his detention without a hearing was unlawful *because of its length*, as Plaintiffs argue here. *Demore*, 538 U.S. at 523 (explaining that Mr. Kim challenged even "brief" detention without a bond hearing). Moreover, the *Demore* Court believed that § 1226(c) detentions lasted for a brief period. *Id.* at 530.[9] Thus, *Demore* said nothing about length-based as-applied challenges like this one, let alone challenges by individuals who contest their deportability. *Cf. Gonzalez v. O'Connell*, 355 F.3d 1010, 1020 (7th Cir. 2004) ("[a] wholly different case arises when a detainee who has a good-faith challenge to his deportability is mandatorily detained under § 1226(c)"); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) ("The case is distinct from *Demore* [], where the alien conceded deportability").

Moreover, as the First Circuit itself recognized, a uniform hearing requirement features "significant benefits" that a case-by-case rule lacks. *Reid*, 819 F.3d at 497-98 (1st Cir. 2016).

---

[9] *See supra* n. 5.

The First Circuit conceded that its now-vacated ruling would "result[] in inconsistent determinations," could "have the perverse effect of increasing detention times for those least likely to actually be removed at the conclusion of their proceedings," and would be largely duplicative of hearings already held in immigration court. *Id.* In light of these concerns, the panel erred in suggesting that an impractical form of relief, so onerous as to be preclusive for many individuals, could satisfy due process. *See Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1225 (11th Cir. 2016), *vacated* 890 F.3d 952 (11th Cir. 2018) (Pryor, J. concurring in part) (noting that the reasonableness test creates "the risk that the case-by-case approach will result in unpredictable, inconsistent, or arbitrary outcomes itself rais[ing] serious due process concerns"). To the contrary, the Supreme Court has recognized that it is appropriate to specify uniform rules in order to address such practical concerns. *See, e.g., Zadvydas*, 678 U.S. at 700-701 (recognizing that it was "practically necessary to recognize some presumptively reasonable period of detention").

Accordingly, this Court can and should find that the Due Process Clause requires automatic hearings after six months to avoid denying review of prolonged incarceration. To the extent the First Circuit's vacated panel decision disfavored such a rule, that decision is neither binding nor persuasive.

**D. Due process requires that the government bear the burden of proving class members should be detained by clear and convincing evidence.**

Finally, due process requires the government to justify an individual's prolonged immigration incarceration by clear and convincing evidence that it is necessary to prevent flight or harm to the community. This Court already has held that "the Due Process Clause permits continued [prolonged] detention only if it is imposed after affording . . . heightened procedural protections" including "bond hearings at which DHS bears the burden of proving dangerousness

19

or risk of flight by clear and convincing evidence." *Doe v. Smith*, No. CV 17-11231-LTS, 2017

WL 6509344, at *6 (D. Mass. Dec. 19, 2017) (internal citations omitted). That same holding

controls here.[10]

Similarly, in *Pensamiento v. McDonald*, this Court held that due process requires that the

Government bear the burden to prove an individual's dangerousness or flight risk at a § 1226(a)

bond hearing over *initial* periods of detention. 315 F. Supp. 3d 684, 692 (D. Mass. 2018). *See*

*also Figueroa v. McDonald,* No. CV 18-10097-PBS, 2018 WL 2209217 (D. Mass. May 14,

2018); *Diaz Ortiz v. Tompkins*, No. 18-12600-PBS, 2019 U.S. Dist. LEXIS 14155 (D. Mass Jan.

29, 2019); *Doe v. Tompkins,* No. 18-12266-PBS, 2019 U.S. Dist. LEXIS 22616 (D. Mass. Feb.

12, 2019). *A fortiori*, the government should bear the burden at a hearing justifying *prolonged*

imprisonment, which involves an even greater deprivation of liberty.[11]

Supreme Court precedent supports this Court's ruling. The Supreme Court has repeatedly

made clear that when the government seeks to deprive an individual of a "particularly important

individual interest[]," due process requires that it bear the burden of proof by clear and

convincing evidence. *Addington v. Texas*, 441 U.S. 418, 424, 427 (1979) (holding that "[t]he

individual's interest in the outcome of a civil commitment proceeding is of such weight and

gravity that due process requires the state to justify confinement by proof more substantial than a

mere preponderance of the evidence"); *Santosky v. Kramer*, 455 U.S. 745 (1982) (requiring clear

---

[10] This Court's vacated opinion held that the burden of proof under "Section 1226(a) provides a reasonably effective way for class members to obtain the individualized assessment they are entitled to[.]" *Reid III*, 22 F. Supp. 3d at 93., *vacated and remanded*. This decision is not controlling.

[11] Although the Court has declined to require a showing of clear and convincing evidence at *initial* bond hearings, *see Pensamiento*, 315 F. Supp 3d at 693, the Court should find that heightened standard should apply to *prolonged* detention hearings, as the Court has already held. *See Doe v. Smith*, 2017 WL 6509344, at *8.

and convincing evidence in parental termination cases); *Woodby v. INS*, 385 U.S. 276, 285, 286

(1966) (requiring "clear, unequivocal, and convincing" evidence in deportation cases); *Chaunt v.*

*United States*, 364 U.S. 350, 354-55 (1960) (requiring the same for denaturalization cases).

Indeed, the Supreme Court has often relied on the fact that the government bears the

burden of proof to find civil detention constitutional. *See, e.g., Salerno*, 481 U.S. at 750 (holding

the Bail Reform Act constitutional in part because the statute requires that "the Government must

convince a neutral decisionmaker by clear and convincing evidence that no conditions of release

can reasonably assure the safety of the community or any person"); *Hendricks,* 521 U.S. at 352-

57 (upholding statute enabling civil commitment of sex offenders because it "unambiguously

requires a finding of dangerousness either to one's self or to others" in jury trial in which the

state bears burden of proof). By contrast, the Supreme Court has struck down civil detention

schemes that place the burden of proof on the detainee. *See, e.g.*, *Foucha*, 504 U.S. at 82 (finding

that the "statute places the burden on the detainee to prove that he is not dangerous" and

therefore was "not enough to defeat [detainee]'s liberty interest under the Constitution in being

freed from indefinite confinement").

The Constitution requires no less when the government seeks to subject individuals to

prolonged imprisonment under color of its immigration authority. *See Zadvydas*, 533 U.S. at

690-92 (finding post-final-order custody review procedures deficient because, *inter alia*, they

placed burden on detainee by relying on its prior precedents from other civil detention contexts,

including *Foucha*, *Hendricks*, and *Salerno*); *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir.

2011) (holding that government bears burden of justifying prolonged immigration detention by

clear and convincing evidence); *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208,

222, 224 n.3 (3rd Cir. 2018) (same) (citing *Singh* and *Addington*) (internal quotations omitted).

*See also Diop v. Dep't of Homeland Security*, 656 F.3d 221 (3d Cir. 2011) (holding that the government bears the burden of justifying prolonged detention in the § 1226(c) context).

The restrictions of incarceration demonstrate why the burden should fall on the government to justify an individual's imprisonment. Incarceration makes it difficult, if not impossible, for many Plaintiff class members to vindicate their due process rights. Incarceration significantly burdens one's ability to gather necessary evidence and to secure and communicate with counsel for their bond hearings. *See* SOUF at ¶ 14, 37, 57, 59; *see also* Dkt. No 316, at 3-10 (Dec. 5, 2016) (documenting barriers to detainee communication at the four Massachusetts immigration detention centers); *Lyon v. U.S. Immigr. & Customs Enf.*, 171 F. Supp. 3d 961, 985 (N.D. Cal. 2016) (noting "substantial undisputed evidence" that immigration detention impeded individuals' ability to gather evidence and communicate with counsel). At the same time, placing the burden on the government does not disadvantage it, for when detention has become prolonged, the government has had "sufficient time to examine information about [the alien] to assess whether he truly posed a flight risk or presented any danger to the community." *Chavez-Alvarez*, 783 F.3d at 477 (3d Cir. 2015).

In sum, the government should be required to bear the burden of justifying class members' prolonged detention by clear and convincing evidence.

### III.   MANDATORY INCARCERATION UNDER § 1226(c) VIOLATES THE EXCESSIVE BAIL CLAUSE.

No-bond imprisonment past six months under § 1226(c) violates the Eighth Amendment's Excessive Bail Clause, which provides that "[e]xcessive bail shall not be required." U.S. Const. amend. VIII. The Clause prohibits the government from setting conditions of release or detention that are "'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754. As the Supreme Court has said, the Clause is implicated "when there is a direct government

restraint on personal liberty, be it in a criminal case *or in a civil deportation proceeding*."

*Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 263 n.3 (1989)

(emphasis added).[12] The Excessive Bail Clause requires that individuals subject to prolonged

mandatory detention under § 1226(c) receive bond hearings.[13]

Under the Excessive Bail Clause, Plaintiffs are entitled to individualized bail

determinations. Jurists have long recognized that absolute denial of a bail hearing violates the

right and renders the clause meaningless. *See Jennings*, 138 S. Ct. at 862 (Breyer, J., dissenting)

("The Eighth Amendment forbids '[e]xcessive bail.' . . . That rationale applies *a fortiori* to a

refusal to hold any bail hearing at all.");[14] *Sellers v. United States*, 89 S. Ct. 36, 38 (1968)

(Black, J., in chambers) ("The command of the Eighth Amendment that 'Excessive bail shall not

be required' at the very least obligates judges passing upon the right to bail to deny such relief

only for the strongest of reasons."); *Carlisle v. Landon,* 73 S. Ct. 1179, 1182 (1953) (Douglas, J.,

in chambers) ("It is the unreasoned denial of bail that the Constitution condemns."); *Carlson*,

342 U.S. at 569 (Burton, J., dissenting) (because the Eighth Amendment prohibits excessive bail,

"[l]ikewise, it must prohibit unreasonable denial of bail . . . which comes to the same thing");

*Castañeda v. Souza*, 810 F.3d 15, 44 (1st Cir. 2015) (*en banc*) (Torruella, J., concurring) (§

1226(c) detention is "ongoing, institutionalized infringement of the right to bail"). The history of

the Excessive Bail Clause confirms that the Bill of Rights requires a judicial determination

regarding bail. *See* Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. Pa. L. Rev.

---

[12] *Cf. Carlson v. Landon*, 342 U.S. 524, 539-40 (1952) (assuming that Excessive Bail Clause applied to immigration detention, but holding it did not prohibit detention without bail of several members of the Communist Party pending the resolution of their deportation cases).

[13] Although a shorter period of detention may violate the Eighth Amendment, Plaintiffs here challenge only no-bail incarceration in excess of six months on behalf of the certified class.

[14] Though Justice Breyer's remarks were in dissent, they addressed a constitutional question that the majority did not reach.

959, 969 (1965) (An interpretation that Congress may categorically deny access to bail

proceedings "would constitute an anomaly in the American Bill of Rights . . ."); Kayla Gassman,

*Unjustified Detention: The Excessive Bail Clause in Removal Proceedings*, 4 Am. U. Crim. L.

Brief 30, 47 (2009) (concluding that the history of the Excessive Bail Clause renders it

applicable to immigration detention.)

In the few exceptions in which the Supreme Court has allowed no-bail detention, the

Court was clear recognized three factors as essential to satisfy the Excessive Bail Clause: (1) an

individualized finding of danger or flight risk, (2) procedural protections, and (3) the discretion

of government officials to effectuate release. *Salerno,* 481 U.S. at 751–52 and *Carlson,* 342 U.S.

at 540–41. None of these factors is present, in mandatory no-bail § 1226(c) detention, and there

are no safeguards against unwarranted detention. Thus, non-citizens are entitled to an

individualized determination of dangerousness or risk of flight to ensure that the denial of bail is

not unreasonable in violation of the Excessive Bail Clause.

District courts have found that the Excessive Bail Clause requires at least a possibility of

release from immigration detention on reasonable bail. *See, e.g.*, *Hernandez v. Lynch*, No.

EDCV1600620JGBKKX, 2016 WL 7116611, at *27 (C.D. Cal. Nov. 10, 2016) ("Where the

government's interest in preventing danger or flight can be addressed by release on bail, 'bail

must be set by a court at a sum designed to ensure that goal, and no more.'") (citing *Salerno*, 481

U.S. at 754); *Danesh v. Jenifer*, No. 00-CV-74409-DT, 2001 WL 558233, at *7 (E.D. Mich.

Mar. 27, 2001) ("Although there is no right to [release on] bail, a statute that mandatorily denies

bond violates the Eighth Amendment because such a statute achieves the same result.");

*Caballero v. Caplinger*, 914 F. Supp. 1374, 1380 (E.D. La. 1996) ("[T]he denial of the

opportunity to seek bail constitutes the setting of excessive bail."); *Probert v. U.S. I.N.S.*, 750 F.

24

Supp. 252, 257 n.4 (E.D. Mich. 1990), *aff'd sub nom. Probert v. I.N.S.*, 954 F.2d 1253 (6th Cir.

1992) ("[A]lthough there is no absolute right to [release on] bail, a statute that mandatorily

denies bail violates the Eighth Amendment.").[15] This Court should reach the same result.

Furthermore, automatic bond hearings at six months are necessary to remedy Defendants'

routine violations of the Excessive Bail Clause through categorical, indefinite, no-bail

incarceration of class members. A clearly-articulated time limitation for the government to

provide bond hearings checks "[t]he potential for governmental abuse" and is necessary to render

the Excessive Bail Clause meaningful. *Browning-Ferris*, 492 U.S. at 263 n.3.

Because the Excessive Bail Clause forbids the mandatory, indefinite incarceration of

individuals without even the possibility to seek bail, individualized bond hearings are required to

satisfy the Eighth Amendment for members of the Plaintiff class.

## IV.   IN THE ALTERNATIVE, THE CONSTITUTION REQUIRES SIX-MONTH REASONABLENESS HEARINGS.

If this Court does not find that the Constitution requires bond hearings at six months, it

should adopt the First Circuit's position and hold that the Constitution requires a hearing to

determine, based on several factors, whether each class member's continued no-bond

incarceration is reasonable. If the government cannot justify the reasonableness of continued, no-

bond imprisonment at such a hearing, it must then provide a bond hearing consistent with the

standards set forth in Part II.D. Reasonableness hearings would allow for the "fact-dependent

inquiry" that the *Reid* panel envisioned in its decision, *Reid,* 819 F.3d at 497 (1st Cir. 2016).

---

[15] Because the *Demore* Court considered a Fifth Amendment due process claim, it did not reach this question. 538 U.S. at 522-23.

The Due Process Clause requires such hearings occur automatically where incarceration exceeds six months.[16] There must be *some* trigger for determining when reasonableness determinations are conducted, and the six-month period is constitutionally significant for the reasons set forth above. Defendants' previously-proposed alternative—that reasonableness hearings occur only when individual detainees file habeas petitions—cannot be reconciled with due process doctrine or common sense.

### A. Immigration Judges Should Consider Several Factors When Making Reasonableness Assessments

Consistent with *Reid*, IJs should consider several factors when making reasonableness assessments, including the following non-exclusive factors:

> the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order.

819 F.3d. at 500.[17] Other courts have recognized several of these factors as indicia of particularly unreasonable mandatory detention.

In particular, IJs should find mandatory confinement to be unreasonable where it is unlikely that "proceedings will culminate in a final removal order" because an individual raises a

---

[16] While Plaintiffs believe the relevant governing legal framework comes from the cases on which they have relied here, *see supra* § II, the result would be the same if the question were analyzed under the procedural due process framework set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, the detainee's liberty interest increases as the length of confinement increases; government's interest in detaining class members decreases as the length of detention increases, as it is typically a sign that the removal case at issue is complex; and the risk of error—the incarceration of someone who does not need to be incarcerated to ensure their appearance for removal proceedings or community safety—is heightened for class members. *See supra* Statement of Facts and Procedural History.

[17] To be clear, Plaintiffs' chief position remains that these factors are relevant to the IJ's determination of whether detention *itself* remains justified based on danger and flight risk, as those are the only permissible justifications for detention in the immigration context.

substantial challenge to the charge of removability or is eligible for immigration relief. *See id*.

Common forms of relief from a removal order include asylum, 8 U.S.C. § 1158; cancellation of

removal, *id.* § 1229(b); adjustment of status, *id.* § 1255; and waiver for adjustment of status of

refugees and asylees, *id.* § 1159. Individuals raising these claims have a substantial possibility of

defeating the removal cases brought against them by obtaining or maintaining permanent

immigration status, and thereby stand to *improve* their immigration status through the removal

process. This strong incentive to attend removal hearings means these individuals do not pose the

heightened bail risk that could justify their mandatory incarceration.[18] *See also Chavez-Alvarez,*

783 F.3d at 476 (adopting reasonableness test that focuses, in part, on presence of a "legitimately

raised" challenge to removal that presents "real issues."); *Papazoglou v. Napolitano*, No. 1:12–

CV–00892, 2012 WL 1570778, at *5 (N.D. Ill. May 3, 2012) (finding that § 1226(c) mandatory

detention without bail is unconstitutional where the immigrant has a "legitimate and good faith

reason to contest his removability"); *Baez-Sanchez v. Kolitwenzew*, No. 2:18-cv-02134, 2018

U.S. Dist. LEXIS 215320 at *17 (C.D. Ill. Dec. 21, 2018) (recognizing good-faith challenge to

removability as a factor in reasonableness of prolonged detention); *Sajous v. Decker*, 18-CV-

2447 (AJN), 2018 WL 2357266, at *11 (S.D. N.Y. May 23, 2018) (finding that mandatory

detention has become "unreasonable" in part because "the detained alien has asserted defenses to

removal").

Additionally, IJs should find "immigration authorities" have "delay[ed]" an individual's

case such that mandatory detention is unreasonable when ICE has appealed an individual's

---

[18] Plaintiffs maintain that the mandatory detention of individuals who raise substantial defenses
to a removal order is unconstitutional for *any* period of time. *See Gayle v. Johnson*, 4 F. Supp. 3d
692, 706 (D.N.J. 2014), *vacated and remanded sub nom. Gayle v. Warden Monmouth Cty. Corr.
Inst.*, 838 F.3d 297 (3d Cir. 2016). However, Plaintiffs do not advance that argument here.

victorious immigration case or obtained multiple continuances. *Reid*, 819 F.3d at 500 (1st Cir. 2016); *see also Sopo*, 824 F.3d at 1221 (noting that detention was unreasonable when "[t]he bulk of the government's delay . . . came from the IJ erring several times"); *accord*, *Diop*, 656 F.3d at 234; *Tijani v. Willis*, 430 F.3d 1242, 1249 (9th Cir. 2004) (Tashima, J., concurring) (noting that year-long delay since BIA heard petitioner's appeal unreasonably prolonged the petitioner's detention); *Muse v. Sessions*, No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052 at *6 (D. Minn. Sept. 18, 2018) (finding length of detention to be unreasonable considering delays of the removal proceedings caused by the government); *Sajous*, 2018 WL 2357266 at *11 ("continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials"). *See also,* 18 U.S.C. § 3161(b) (Speedy Trial Act considers number of days since arrest in setting trial time).

Furthermore, IJs should find mandatory detention unreasonable where "the period of detention" is *longer* than the criminal sentence. *Reid*, 819 F.3d at 500 (1st Cir. 2016); *see also Sopo*, 825 F.3d at 1218 (listing "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable" as one of several factors that should trigger a bond hearing.); *Sajous,* 2018 WL 2357266 at *11 (requiring bond hearing for individual detained longer than eight months, considering whether civil detention exceeds time spent in prison for crime rendering him removable). Extended immigration incarceration may disrupt these individuals' lives *more* than criminal incarceration, because it is the first instance in which they will lose their job, their home, and therefore their ability to support their families. *Barker v. Wingo,* 407 U.S. 514, 532-33 (1972) ("time spent in jail awaiting trial . . . often means loss of a job; it disrupts family life; and it enforces idleness . . . The time spent in jail is simply dead time."); *see also Brief of 43 Social Science Researchers and Professors as Amici Curiae in*

*Support of Respondents* (hereinafter "*Jennings* Social Science Amicus Brief") at 21, *Jennings*,
138 S.Ct. 830 (No. 15-1204) (2018) ("Immigrants in extended detention almost invariably lose
their jobs, and thus income for necessities, including food and shelter for their families."). This
severe deprivation of liberty weighs strongly in favor of a bond hearing.

In addition to the First Circuit's factors, described above, this Court should instruct IJs to
apply certain additional factors to determine if the individual's mandatory confinement is
unreasonable. *See Reid,* 819 F.3d at 500 n.4 and 501 (1st Cir. 2016) (explaining that the First
Circuit's factors are "non-exhaustive," and additional factors "may bear on the reasonableness of
categorical detention."). Due process demands that an IJ find mandatory detention unreasonable
when any of the following factors are present.

First, IJs should find mandatory detention unreasonable where it is based on a criminal
conviction that is remote in time. The First Circuit has recognized that an inference of flight risk
and danger based on a past criminal offense diminishes over time, particularly when the
conviction occurred years or even decades in the past and the person has lived in the community
without incident. *See Saysana v. Gillen*, 590 F.3d 7, 17-18 (1st Cir. 2009) ("it stands to reason
that the more remote in time a conviction becomes and the more time after a conviction an
individual spends in a community, the lower his bail risk is likely to be"); *Castañeda v. Souza*,
769 F.3d 32, 43 (1st Cir. 2014) (concluding that any "presumption of dangerousness and flight
risk is eroded by the years in which [an] alien lived peaceably in the community"), *reh'g en banc
granted, opinion withdrawn* (Jan. 23, 2015), *on reh'g en banc*, 810 F.3d 15 (1st Cir. 2015);
*Gordon v. Johnson*, 991 F. Supp. 2d 258, 266 (D. Mass 2013) ("Congress's goal in enacting
1226(c) simply does not apply when a person has re-integrated into society"), *aff'd sub nom.
Castaneda*, 810 F.3d 15 (2015); *see also Preap,* 139 S. Ct. at 982 (Breyer, J., dissenting) ("it is

especially anomalous to take [a bail hearing] away from an alien who committed a crime many years before and has since reformed, living productively in a community.").

Second, IJs should find mandatory detention unreasonable where individuals are convicted only of nonviolent offenses. A conviction for a crime of violence has legal significance across the immigration and criminal systems. For example, whether a crime was violent can determine whether an immigrant is granted some form of discretionary relief, including a waiver of inadmissibility. *See* 8 C.F.R. § 212.17(b)(2) ("In cases involving violent or dangerous crimes … USCIS will only exercise favorable discretion in extraordinary circumstances."). Additionally, individuals with nonviolent records are more likely to have been released on bail under the federal bail standard. 18 U.S.C. § 3142(e).

Third, IJs should find the mandatory detention of individuals with serious medical illnesses or documented physical or mental disabilities unreasonable. By ICE policy, individuals with these "special vulnerabilities" are often placed in "administrative segregation." U.S. Immigration and Customs Enforcement, 306-112-002b, *Review of the Use of Segregation for ICE Detainees* (September 4, 2013), https://www.ice.gov/doclib/detention-reform/pdf/segregation_directive.pdf; *see also* Department of Homeland Security, *Immigration Detention Overview and Recommendations* (October 6, 2009), https://www.ice.gov/doclib/about/offices/odpp/pdf/ice-detention-rpt.pdf. Though administrative segregation is allegedly non-punitive, it typically involves single-cell confinement for 23 hours daily and is, thus, nearly identical to solitary confinement. Department of Justice, National Institute of Justice*, NIJ Journal No. 269, What is Administrative Segregation?* (March 26, 2012), https://www.nij.gov/journals/269/pages/administrative-segregation.aspx. This type of isolation exacerbates physical and mental health problems. *See Jennings* Social Science Amicus Brief at

16 ("Research demonstrates that solitary confinement can lead to a combination of symptoms referred to as 'prison psychosis,' including hypersensitivity to external stimuli, hallucinations, panic attacks, obsessive thoughts, paranoia, and lack of impulse control. Suicide and self-harm are also more common in solitary confinement than in general prison populations."). It has been widely recognized that the conditions of one's confinement impact the reasonableness of one's detention. *See, e.g., Sopo,* 825 F.3d at 1218 (listing "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" as one of several factors that should trigger a bond hearing) (citing *Chavez-Alvarez,* 783 F.3d at 478); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *5 (N.D. Cal. Jan. 25, 2019) (adopting reasonableness test considering conditions of detention); *Yagao v. Figueroa*, No. 17-CV-2224-AJB-MDD, 2019 WL 1429582, at *2 (S.D. Cal. Mar. 29, 2019) (adopting reasonableness test and factors outlined in *Gonzalez*, 2019 WL 330906 at *2-*7); *Muse*, 2018 WL 4466052 at *5 (D. Minn. Sept. 18, 2018) (finding length of detention to be unreasonable considering the conditions of detention); *Sajous*, 2018 WL 2357266 at *11 (finding that mandatory detention has become "unreasonable" in part because the immigration facility is not meaningfully different from a penal institution). This is doubly true for individuals with physical and mental disabilities.

## B. The Due Process Clause Requires Reasonableness Hearings After Six Months of Incarceration.

Due process further requires that Defendants automatically provide reasonableness hearings after six months of confinement. Contrary to Defendants' view, the "trigger" for assessing the reasonableness of prolonged detention cannot be the filing of a federal habeas.

The *Reid* opinion itself suggested that due process requires such "reasonableness" hearings be provided as a matter of course. *Reid*, 819 F.3d at 494, 502 n.5 (1st Cir. 2016)

31

("categorical, mandatory, and indeterminate detention raises severe constitutional concerns" and the government should "consider explicitly permitting detainees . . . to seek a reasonableness review before a federal court *or* before an IJ") (emphasis in original). That view comports with the practical understanding that, if the Due Process Clause requires prolonged detention to remain reasonable, there must be *some* triggering mechanism for an IJ to conduct a reasonableness hearing. And as noted above, six months has routinely been recognized by the Supreme Court and by Congress as a threshold for triggering additional procedures in the immigration context. *Supra* § II.B.

Defendants have suggested elsewhere that the triggering mechanism should be the filing of an individual habeas petition in federal court. But the potential availability of individual habeas petitions does not absolve the government of its due process obligation to automatically calendar reasonableness hearings. As in every other civil detention context, including pretrial detention and civil commitment, the government is required to ensure detention remains reasonable by conducting the requisite hearings, whether or not individuals have filed habeas petitions. *See, e.g.*, *Sopo*, 825 F.3d at 1217 n.8 (11th Cir. 2016) ("The constitutional principles at play here . . . apply to the government's conduct—detaining criminal aliens—whether a § 2241 petition is filed or only potentially forthcoming. The government is constitutionally obligated to follow the law, and the law under § 1226(c) now includes a temporal limitation against the unreasonably prolonged detention of a criminal alien without a bond hearing . . . The government is already responsible for implementing the bond mechanism . . . and is equipped to do the same"); *Doe v. Gallinot*, 657 F.2d 1017, 1023 (9th Cir. 1981) (rejecting reliance on habeas as substitute in civil commitment context because "[i]t is the state, after all, which must ultimately

justify depriving a person of a protected liberty interest by determining that good cause exists for the deprivation.").[19]

Requiring reasonableness hearings at six months avoids the lengthy, costly, and complex process of filing habeas petitions in district court, which in practice would both prove administratively burdensome for courts and preclude many class members from vindicating their due process rights. *See Reid*, 819 F.3d at 498 (1st Cir. 2016) (filing a habeas petition while imprisoned in immigration detention is "complicated and time-consuming, especially for [class members] who may not be represented by counsel"). And for the same reasons outlined *supra* § II.D with regard to bond hearings, fundamental fairness requires the government to bear the burden of demonstrating that additional prolonged detention without a bond hearing is reasonable.

Under the First Circuit's approach, if the government fails to show that an individual's continued no-bond detention is reasonable, then due process mandates the IJ hold a further hearing to consider danger and flight risk. *Reid*, 819 F.3d at 497 (1st Cir. 2016) ("It is a supposed finding of 'unreasonableness' . . . that entitles the alien to a bond hearing in the first place."). Without that final step, this imprisonment system would contain no mechanism to ensure class members' prolonged confinement is necessary to serve any purpose, thus giving rise to entirely arbitrary detentions. *Cf. Zadvydas*, 533 U.S. at 721 (Kennedy, J., dissenting) ("[A]liens are entitled to be free from detention that is arbitrary or capricious."). Given that class members'

---

[19] These cases reflect a more basic principle: the government's due process obligations exist separate and apart from the requirements of habeas corpus. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (plurality opinion) (setting forth distinct due process hearing requirements even though "[a]ll agree suspension of the writ has not occurred here"); *Thuraissigaim v. U.S. Dept. of Homeland Security*, 917 F.3d 1097, 1116 (9th Cir. 2019) (holding that Constitution guarantees persons in expedited removal proceedings the right to seek habeas, separate and apart from any due process rights they may have).

fundamental liberty interests are at stake, due process at least requires bond hearings for individuals whose mandatory detention has become unreasonable.

## V.    SECTION 1252(f)(1) DOES NOT BAR RELIEF.

8 U.S.C. § 1252(f)(1) does not divest this Court of its authority to grant the relief Plaintiffs seek. This Court has recognized that § 1252(f)(1) does not bar declaratory relief. Dkt. No. 416 at 19 (finding that "§ 1252(f)(1) does not bar classwide declaratory relief"); *see also Reid II*, 297 F.R.D. at 193 (§ 1252(f)(1) "does not proscribe a class-wide declaratory remedy"). The Supreme Court recently reached the same conclusion. *Preap*, 139 S.Ct. at 962 (finding that under § 1252(f)(1), "the District Court had jurisdiction to entertain the plaintiffs' request for declaratory relief").

This Court previously declined to rule on Plaintiffs' contention that § 1252(f)(1) does not bar injunctive relief. Dkt. No. 416, at 18-19. The statute does not preclude injunctive relief because the provision limits the Court's authority to grant relief only for persons *not* in removal proceedings: "[N]o court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual alien *against whom proceedings under such part have been initiated*." 8 U.S.C. § 1252(f)(1) (emphasis added). But all members of the Plaintiff class, by definition, are in removal proceedings. Thus, the Court has authority to vindicate the rights of the Plaintiff class through injunctive relief.

Additionally, the provision does not strip courts of habeas jurisdiction, and any reading to the contrary would raise serious constitutional questions. As Plaintiffs have previously argued, *see* Dkt. No. 98 at 19, Dkt. No. 124 at 17-19, § 1252(f)(1) lacks the "specific and unambiguous statutory directive" that is required to effect a repeal of habeas jurisdiction. *INS v. St. Cyr*, 533 U.S. 289, 299 (2001); *see also Demore*, 538 U.S. at 517 (declining to find that Congress

34

abrogated habeas review of detention under 8 U.S.C. § 1226(c)); *Goncalves v. Reno*, 144 F.3d 110, 119 (1st Cir. 1998) ("[W]e will not find a repeal of [28 U.S.C.] § 2241 merely by implication, but only by express congressional command"). This clear-statement rule is grounded in historical practice, as "to conclude that the writ is no longer available . . . would represent a departure from historical practice in immigration law." *St. Cyr*, 533 U.S. at 305. It is also grounded in constitutional avoidance, as statutory repeals of habeas jurisdiction raise "difficult and significant" Suspension Clause questions. *Id.* at 304; *accord Saint Fort v. Ashcroft*, 329 F.3d 191, 200-01 (1st Cir. 2003) (finding jurisdiction to hear habeas petition notwithstanding limitations on review of Convention Against Torture claims, in part to avoid "substantial constitutional questions"); *Goncalves*, 144 F.3d at 122 (declining to find that § 1252(g) repealed habeas jurisdiction prior to 2005, thus avoiding "serious, novel and complex constitutional issues"). In light of these decisions, § 1252(f)(1) fails to satisfy the Supreme Court and First Circuit's textual requirements regarding repeal of habeas review.

The Court's power to order injunctive relief remains crucial because the past history of the *Reid* lawsuit demonstrates that court orders are necessary to vindicate class members' rights. For example, in 2014, after concluding that bond hearings were required, this Court had to order Defendants to notify Plaintiffs' counsel of class members' bond hearings, as Defendants' refusal to provide such notice had been depriving class members of counsel at their bond hearings. Dkt. No. 182 at 27-28. Injunctions remain necessary to effectuate the relief Plaintiffs seek.

## VI. PLAINTIFFS' PROLONGED DETENTION CAUSES IRREPARABLE HARM AND THE BALANCE OF HARDSHIPS TIPS SHARPLY IN THEIR FAVOR.

This Court should issue injunctive relief granting the minimal amount of procedural review required by the Constitution because (1) for all the reasons stated above, Plaintiffs should

succeed on the merits; (2) an injunction is in the public interest; (3) the balance of equities tip in Plaintiffs' favor; and (4) Plaintiffs are suffering irreparable physical and mental harm.

### A. A Permanent Injunction is in the Public Interest.

A permanent injunction is in the public interest. The public interest is clearly implicated when the government is a party to a case, particularly the federal government. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992) ("[v]indicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of [both] the Congress and the Chief Executive") (emphasis in original). The public interest is especially weighty in constitutional challenges to government action. *See ACLU v. Reno*, No. CIV. A. 98-5591, 1998 WL 813423, at *4 (E.D. Pa. Nov. 23, 1998). The public interest is not served by the enforcement of unconstitutional laws. *See, e.g., ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional."); Am. *Freedom Def. Initiative v. Se. Pa. Transp. Auth.*, 92 F. Supp. 3d 314, 330 (E.D. Pa. 2015) (asserting that the government "cannot properly claim a legitimate interest in enforcing an unconstitutional law"); *Planned Parenthood Minn., N.D., S.D. v. Daugaard*, 799 F. Supp. 2d 1048, 1077 (D.S.D. 2011) (finding that the public interest in enforcing state laws is secondary to the public interest in protecting constitutional rights and "ensuring the supremacy of the United States Constitution").

### B. The Balance of Hardships Favors a Permanent Injunction.

The balance of hardships favors a permanent injunction. The government's hardship is minimal, as the government's interest in no-bond detention attenuates as imprisonment lengthens and the likelihood of imminent removal diminishes. *See, e.g.*, *Reid*, 819 F.3d at 500 (1st Cir. 2016); *Zadvydas*, 533 U.S. at 701. Individuals who have been held in § 1226(c) detention for six

months or more are not subject to the imminent removal at issue in *Demore*. *See supra* at 4
(median length of detention for *Reid* class members is nearly a year).

 The cost to the government of providing bond or reasonableness hearings at six months is
negligible. Defendants have *never* argued that bond hearings would impose any significant
additional costs on immigration proceedings; reasonableness hearings impose little further
additional cost.[20] These hearings are conducted before an IJ who, after six months, is likely to be
familiar with the case. *Reid I*, 991 F. Supp. 2d at 281. Furthermore, as retired IJs told the First
Circuit, releasing immigrants on bond makes removal proceedings *more* efficient, because
persons are better able to obtain records, secure counsel, and organize witnesses when they are
not detained. Brief of Amici Curiae Retired Immigr. J. and Bd. of Immigr. Appeals Members in
Supp. of Petitioner-Appellee, at 6-10, *Reid*, 819 F.3d 486 (1st Cir. 2016).

### C. Plaintiffs Are Suffering Irreparable Harm.

 There is no dispute that Plaintiffs' prolonged mandatory detention is causing them
irreparable harm. As set forth above, class members' imprisonment deprives them of their
fundamental right to liberty. "Deprivation of a constitutional right, for even minimal periods of
time, unquestionably constitutes irreparable injury." *DeNovellis v. Shalala*, 135 F.3d 58, 71–72
(1st Cir. 1998); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice and Procedure § 2948.1 (2d ed.1995) ("When an alleged constitutional right is involved,
most courts hold that no further showing of irreparable injury is necessary.") (collecting cases).

 Plaintiffs' interest in freedom from confinement is compounded by the harms of
immigration incarceration. Immigration detention is indistinguishable from jail, with all its

---

[20] Nor could they: any additional government cost of bond hearings would be offset by savings of the $123.86 per-person per-day cost of detention, not including payroll. *See* SOUF at ¶ 22. In contrast, the cost of supervision as an alternative to detention is no greater than $14 per person per day, and perhaps lower. *See* Dkt. No. 98, at 15; *see also* SOUF at ¶ 23.

accompanying harms. Moreover, prolonged detention results in distinctive harms that are particularly severe and often irreparable. "Long-term detainees suffer from insufficient medical care, sexual assault, the excessive use of solitary confinement, and generally poor conditions that take an increasing toll the longer one remains in custody." *Jennings* Social Science Amicus Brief at 11-12.[21] This liberty interest far outweighs both the government's interest in categorical prolonged detention and the burden of providing individual process.

That the harms of prolonged detention are irreparable is clear from the cases of individual *Reid* class members. For example, Leo Felix Charles, confined to a wheelchair, went hungry in detention. SOUF at ¶ 52. Robert Williams, who served a one-year sentence for a nonviolent firearms charge, consented to ICE's execution of his order of removal rather than endure his prolonged detention. *Id.* at ¶ 38. Arnoldo Rodriguez's 12-year-old daughter, who has a learning disability, struggled and was bullied in school while her father was detained. *Id.* at ¶ 56. Jihad Georges suffered a brain hemorrhage, a broken spine, and a broken knee when the driver of his ICE van sped recklessly and crashed the van. *Id.* at ¶ 65. Mark Reid's release prevented *six years* of civil incarceration. *Id.* at ¶ 29. *These* are among the harms of mandatory detention.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Summary Judgment.

---

[21] Substandard medical care by ICE is a leading contributor to the death of individuals detained in ICE custody. Between 2012 and 2015, substandard care contributed to the death of seven individuals, or nearly forty percent of the detainees who died in ICE custody during that period. *Jennings* Social Science Amicus Brief at 11-12. Furthermore, ICE does not maintain complete records regarding sexual abuse and assault incidents that take place in detention. *Id.* at 13-14. Detention center staff do not report a large portion of the sexual assault allegations experienced by detainees to ICE headquarters, despite official agency procedures. *Id.* Additionally, on average, 300 immigrants are held in solitary confinement at the 50 largest detention facilities on any given day due, at least in part, to the automatic placement of populations with disabilities and other medical needs in solitary confinement. *Id.* at 15.