## DECLARATION OF DAVID HAUSMAN

I, David Hausman, upon my personal knowledge, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am an attorney at the American Civil Liberties Union Immigrants' Rights Project.

2. This declaration is based on my review of spreadsheets, produced by U.S. Immigration and Customs Enforcement (ICE) and the Executive Office for Immigration Review (EOIR) and provided by Defendants in the discovery process, regarding the detention of individuals in Massachusetts and New Hampshire under 8 U.S.C. § 1226(c).

3. These spreadsheets provide information that the Defendants produced to Plaintiffs regarding 113 *Reid* class members. These spreadsheets also provide information regarding all other individuals with a removal charge triggering mandatory detention pursuant to 8 U.S.C. § 1226(c) whose removal cases were venued in the Boston and Hartford Immigration Courts from October 1, 2016 through early March 2019.

4. Pursuant to Federal Rule of Evidence 1006, this declaration contains a summary of the contents of the spreadsheets as they relate to the detention lengths of both *Reid* class members and other individuals subject to mandatory detention under § 1226(c) whose cases were venued at the Hartford and Boston Immigration Courts between October 2016 and March 2019.

**Class Members' Detention Length**

5. To determine the median length of detention of *Reid* class members, I began by excluding the 9 class members who remained detained at the time the spreadsheets were constructed. (Since those individuals were still detained, it is impossible to know the eventual length of their detention.) I therefore based these calculations on the 104 individuals who were not currently detained.

6. Next, I noticed that some of these 104 individuals had more than one consecutive stint in a detention center. Where consecutive stints were separated by 16 days or less, I considered those stints part of the same detention stint because I believe that individuals may sometimes be temporarily transferred to criminal custody without being released from detention. Combining stints in this way affected only six of the 104 individuals, and does not significantly affect the median length of detention for class members.

7. Next, I identified individuals' relevant stints in detention by identifying all detention stints that 1) ended on or after January 1, 2014 and 2) lasted at least 180 days. I then considered each individual's last stint in detention.

8. I found that the median length of detention for the 104 class members was **363.5 days**.[1] 25% of class members were detained for fewer than 253 days, and 25% were detained for more than 561.5 days. The longest four stints in detention were 1541, 1291, 1101, and 1048 days, respectively..

**Non Class Members' Detention Length**

9. In order to calculate lengths of detention for individuals who were likely detained pursuant to § 1226(c), I used a spreadsheet produced by Defendants that included 864 rows. Since Defendants did not provide A-numbers or individual identifiers, I am unsure how many distinct individuals were represented on this list. Additionally, since Defendants produced this spreadsheet based on the existence of a qualifying immigration charge, the spreadsheet may contain individuals detained pursuant to § 1226(a) (*Gordon v. Johnson*, 300 F.R.D 28 (D. Mass 2014) class members) rather than exclusively individuals detained pursuant to § 1226(c)

---

[1] Among the 98 class members who did not have multiple stints with gaps between them, the median length of detention was 361.5 days.

10. Of the 864 nonclass detention stints, 130 had no book-out date recorded as of the date the spreadsheet was produced. I therefore calculated detention lengths using the 734 stints for which bookout dates were recorded.

11. Among these 734 stints, the median length was 98 days. 25% of stints were completed in 60 days or fewer.

12. In other words, the median detention length for nonclass members was more than 3.5 times shorter than for class members, and the Reid class member spent more than 250 days longer in detention than the median individual detained under § 1226(c). Because the group of non-*Reid* class members contains some *Gordon* class members, the actual median detention length of nonclass members detained under § 1226(c) may be lower.

### *Reid* Class Members' Bond Outcomes

6. To determine how frequently *Reid* class members were successful in their bond hearings, I matched the entries in the ICE detention spreadsheet with entries in an EOIR spreadsheet tracking the outcomes of bond redetermination proceedings. That spreadsheet is called "D_TblAssociatedBond," and it is available for download, as part of a large set of immigration court spreadsheets, at justice.gov/eoir.

7. I found that 104 class members had records of bond hearings in that spreadsheet. Where an individual had more than one custody redetermination proceeding recorded, I considered only the outcome of the latest bond hearing that took place during the relevant stint in detention. I found that the IJ set bond in 37 of these 104 cases, determining that those individuals would not pose a danger or flight risk if released on the bond that was set.

8. An additional 12 class members were recorded as having been released under orders of supervision or orders of recognizance.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed at New York on April 14, 2019.

David Hausman