# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (BOSTON DIVISION)

| | | |
|---|---|---|
| MARK ANTHONY REID, | ) | |
| | ) | |
| on behalf of himself and others | ) | |
| similarly situated, | ) | |
| | ) | |
| Petitioners/Plaintiffs, | ) | |
| | ) | Civil No. 3:13-cv-30125-PBS |
| v. | ) | |
| | ) | |
| CHRISTOPHER DONELAN, SHERIFF, | ) | |
| FRANKLIN COUNTY, MASS., ET AL., | ) | |
| | ) | |
| Respondents/Defendants. | ) | |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## PURSUANT TO LOCAL RULE 56.1

Pursuant to Local Rule 56.1, Respondents submit herewith a concise statement of the material facts.

**The *Reid* Class**

1. There were 113 *Reid* class members identified during May 27, 2014 (the day the district court granted summary judgment to the class) through November 14, 2018. *See* Exhibit 2.

2. 104 of the *Reid* class members identified during this period are aliens convicted of "aggravated felonies," as defined in 8 U.S.C. § 1101(a)(43).[1] *See* Exhibit 2.

3. These convictions include, *inter alia*, aggravated assault, arson, burglary, possession of dangerous weapons, embezzlement, extortion, forgery, fraud, homicide, kidnapping, robbery, sexual exploitation of minors, statutory rape, terrorism, and voluntary manslaughter. *See* Exhibit 2.

---

[1] Under the Immigration and Nationality Act (INA), a noncitizen convicted of an "aggravated felony" is not only deportable, 8 U.S.C. § 1227(a)(2)(A)(iii), but also ineligible for discretionary relief.

**Mark Anthony Reid ("Reid")**

4. The parties have previously presented Plaintiff Mark Anthony Reid's personal and extensive criminal history to the Court. *See e.g.* ECF Nos. 36, 80.[2]

5. As noted below — while seeking relief from removal, and after being release on bond per Judge Ponsor's January 2014 Order (ECF Nos. 80, 91) — on or about March 26, 2019, a Connecticut District Court issued a felony arrest warrant for Reid charging him with Threatening 1st degree, Threatening 2d degree, and Breach of Peace in the 2d degree. *See* Decl. of Deportation Officer Jeffrey P. Schunder ("Schunder Decl."), attached as Exhibit 3 at ¶ 22. Reid's bond was set at $25,000 and extradition was authorized. *Id.* The disposition of this matter remains pending and Reid has a hearing scheduled for April 29, 2019. *Id.*

6. Additionally, on or about April 2, 2019, Massachusetts State Police arrested Reid and charged him with Possession of a Class B substance (cocaine), fugitive from justice, and speeding. *Id.* at ¶ 23. Bail was set at $5000. *Id.*

7. Reid is not in the custody of Immigration and Customs Enforcement ("ICE"). *See* ECF No. 91; *see also* Exhibit 3, Schunder Decl. at ¶ 6. Pursuant to Judge Ponsor's January 9, 2014, Order (ECF No. 80), on February 3, 2014, an immigration judge ("IJ") conducted the bond hearing ordered by the district court. ECF No. 91. On February 25, 2014, Reid posted bond and was released from ICE custody, subject to $25,000 bond and other terms of release. Exhibit 3, Schunder Decl. at ¶ 6.

8. However, Reid is criminally detained at the Worcester County Jail in Massachusetts awaiting extradition to Connecticut on his felony warrant. *Id.* at ¶ 24.

9. Reid first came to the attention of immigration officials in October of 2011, while he was incarcerated by the Connecticut Department of Correction at Carl Robinson Correctional Institute in Enfield, Connecticut. *Id.* at ¶ 4. Reid was serving a prison sentence related to convictions in 2010 for Sale of a Narcotic Substance and Conspiracy to Commit Burglary Third Degree. *Id.* Reid also had a 2002 conviction in Connecticut for possession of heroin. *Id.* ICE served Reid a Notice to Appear on November 13, 2012, placing him into removal proceedings. *Id.*

10. On April 5, 2013, the IJ denied Reid's application for discretionary relief from removal. *Id.* at ¶ 7. Reid filed a Notice of Appeal to the Board of Immigration Appeals ("BIA") on May 5, 2013. *Id.* He filed his opening brief with the BIA on July 11, 2013, and the Department of Homeland Security ("DHS") filed its brief on July 30, 2013. *Id.*

---

[2] Therefore, Defendants incorporate by reference these facts into their Statement of Material Facts.

11. On October 23, 2013, the BIA remanded the case for further proceedings on one of Reid's potential grounds for relief from removal. *Id*. at ¶ 8. On December 17, 2013, the IJ then denied Reid's applications for relief from removal. *Id*. Reid filed his notice of appeal with the BIA on January 16, 2014. *Id*.

12. After briefing on Reid's appeal to the BIA, on or about December 24, 2014, the BIA remanded the removal proceedings to the IJ to properly apply evidence contained in the record to Reid's case.  *Id*. ¶ 9; *see also* BIA Decision, attached as Exhibit 4.

13. On April 2, 2015, the IJ held a hearing and granted Reid's request for further briefing on his eligibility for removal relief. Exhibit 3, Schunder Decl. at ¶ 10.

14. On or about November 4, 2015, the IJ denied Reid's application for protection under the Convention Against Torture. *Id*. at ¶ 11. Reid appealed this decision to the BIA. *Id.*

15. On or about November 7, 2016, the BIA remanded the record to the IJ for further proceedings to consider changed country conditions in Jamaica. *Id*. at ¶ 12.

16. On or about December 13, 2016, the IJ held a hearing to set a future date for submission of updated background materials on country conditions in Jamaica and for any motion to terminate proceedings. *Id*. at ¶ 13.

17. On or about May 24, 2017, the immigration court held a hearing to discuss removability and Reid's motion to terminate based on whether Reid remained removable for having been convicted of a drug trafficking offense. *Id*. at ¶ 14. The Immigration Court reset the case to September 6, 2017, for a decision on termination or to set a date for the merits hearing. *Id*.

18. On or about September 6, 2017, the IJ held a hearing to discuss removability issues and the motion to terminate and then reset the case to October 17, 2017. *Id*. at ¶ 15. On or about October 17, 2017, the IJ held a merits hearing and advised the parties he would issues a written decision on removability. *Id*. at ¶ 16.

19. On December 28, 2017, the IJ issued a written decision denying Reid's motion to terminate finding that he continued to be removable. *Id*. at ¶ 17.

20. On or about January 31, 2018, the IJ held a hearing where Reid's counsel asked for more time so that the BIA could consider his interlocutory appeal of the IJ's decision on the motion to terminate. *Id*. at ¶ 18. The IJ granted the continuance until April 13, 2018. *Id*.

21. On or about April 13, 2018, the IJ held a hearing to discuss when the parties would be ready for a merits hearing and to set deadlines for parties' submissions

for a future merit hearing on CAT, Withholding, Cancellation of Removal and Asylum. *Id*. at ¶ 19.

22. On or about December 18, 2019, the IJ extended the briefing deadlines, due to the impending government shutdown, on whether Reid's convictions remained crimes involving moral turpitude. *Id*. at ¶ 20.

23. On or about February 7, 2019, the IJ reset deadlines for the parties to submit and briefs to February 28, 2019. *Id*. at ¶ 21.

24. On or about April 9, 2019, the IJ held a hearing to discuss Reid's motion to dismiss an additional charge of removability. *Id*. at ¶ 25. The immigration court continued the case until June 20, 2019 for Reid's counsel to resolve his inability to attend future hearings due to pending criminal charges. *Id*.

**Robert Williams ("Williams")**

25. Williams is a native and citizen of Jamaica. Am. Compl., ECF No. 384-1 at ¶ 29.

26. Williams is not in ICE's custody. *See* Declaration of Deportation Officer Derek R. Moore ("Moore Decl."), attached as Exhibit 5 at ¶ 8. On October 25, 2018, ICE removed Williams from the United States to Jamaica. *Id*.

27. Williams first came to the attention of immigration officials in December of 2016 while he was being held by the Connecticut Department of Corrections for pending charges of carrying a pistol without a permit, in violation of Connecticut General Statutes ("C.G.S.") § 29-35a and for carrying a dangerous weapon in violation of C.G.S. § 53-206. *Id*. at ¶ 4. Williams was convicted of these charges and completed a one-year jail sentence. *Id*.

28. On December 6, 2017, after the completion of his one-year jail sentence, Williams entered ICE custody. *Id*. On this same date, ICE also served Williams with a Notice to Appear. *Id*.

29. On February 13, 2018, the IJ sustained this removability charge and ordered Williams removed from the United States. *Id*.

30. On March 9, 2018, Williams filed appeal of the IJ's decision with the BIA. *Id*. at ¶ 5. On August 2, 2018, the BIA dismissed this appeal. *Id*.

31. On August 27, 2018, Williams filed a Petition for Review of the BIA's removal order. *Id*. at ¶ 7.

32. On September 26, 2011, the Bridgeport, Connecticut Police Department arrested Williams for sale of drugs near a prohibited place in violation of C.G.S. § 21a-278a(b). *Id*. at ¶ 9. He pled guilty on February 16, 2012, before the State of

Connecticut Superior Court in Bridgeport to a substitute information charging him with possession of drugs near a prohibited place in violation of C.G.S. § 21a-279(d) and was ordered to pay a fine of $150. *Id.*

33. On April 25, 2016, by the Bridgeport, Connecticut Police Department arrested Williams and charged him with carrying a pistol without a permit in violation of C.G.S. § 29-35(a) and criminal possession of a weapon in violation of C.G.S. § 53a-217. *Id.* at ¶ 10. He pled guilty on December 8, 2016, before the State of Connecticut Superior Court in Bridgeport to a substitute information charging him with carrying a pistol without a permit in violation of C.G.S. § 29-35(a) and carrying a dangerous weapon in violation of C.G.S. § 53-206. *Id.*

34. The resulting sentence for this conviction was five years' jail with execution suspended after one year served in addition to five years conditional discharge for carrying a pistol without a permit, and three years' jail with execution suspended, consecutive, in addition to five years conditional discharge for carrying a dangerous weapon. *Id.*

**Leo Felix Charles ("Charles")**

35. Charles in a native and citizen of Haiti. Am. Compl., ECF No. 384-1 at ¶ 39.

36. Charles is not in ICE's custody. On February 14, 2019, ICE exercised its discretion to release Charles on conditions under 8 U.S.C. § 1231(a). *See* ECF No. 443.

37. Charles first came to the attention of immigration officials in February of 1999, while he was serving a prison sentence with the Connecticut Department of Corrections for Sale of Illegal Drugs in violation of C.G.S. § 21a-278(b) and for Drugs Near a Prohibited Place in violation of C.G.S. § 21a-278a(b). *See* Decl. of Deportation Officer Robert Sousa ("Sousa Decl."), attached as Exhibit 6 at ¶ 4.

38. ICE served Charles with a Notice to Appear in February of 1999, and placed him into removal proceedings on the immigration court's Institutional Hearing Program ("IHP"). *Id.* The IHP docket allows immigration hearings to take place while an alien is still serving a state or federal criminal prison sentence to minimize the amount of time they spend in immigration detention once they are released from criminal detention. *Id.*

39. Charles had several hearings on the IHP docket while he was incarcerated by the state of Connecticut from April 14, 1999 until January 9, 2003. *Id.*

40. On January 9, 2003, an IJ ordered Charles removed from the United States, but granted Deferral of Removal under the Convention Against Torture pursuant to 8 C.F.R. § 1208.17. *Id.* Thus, On February 24, 2010, when Charles was released

from state prison to parole, ICE did not take him into custody due to the January 2003 grant of deferral of removal. *Id.*

41. Charles next came to the attention of immigration officials in August of 2013, while he was detained by the state of Connecticut on pending charges of Criminal Attempt to Commit Murder in violation of C.G.S. sections 53a—54a(a) and 53a-49(a)(2), Assault in the First Degree in violation of C.G.S. §53a-59, and Burglary First Degree in violation of 53a-101(a)(2), in connection with a domestic violence incident where he stabbed a woman with a kitchen knife. *Id.* at ¶ 5. He was convicted for Assault in the First Degree in violation of C.G.S. § 53a–59, for which he received a sentence of 14 years in prison, with seven years to serve. *Id.*

42. In March of 2017, while Charles was serving this criminal sentence, ICE's Office of the Principal Legal Advisor filed a motion to reopen the grant of deferral of removal with the IJ. *Id.* On March 15, 2017, the IJ granted the motion to reopen and set the case for a new hearing on the immigration court's IHP docket. Charles's first immigration hearing on the reopened case was on March 23, 2017, while he was still in the custody of the Connecticut Department of Corrections, on the IHP docket, and not in immigration custody. *Id.* The case was continued at Charles's request to allow him time to find an attorney. *Id.*

43. Charles's next hearing was on May 25, 2017. *Id.* Charles did not have an attorney. The IJ reset the hearing for November 16, 2017, and ordered the transcripts prepared of the hearings that took place from 1999 through 2003.[3] *Id.*

44. On November 16, 2017, the case was set for February 22, 2018 — for a hearing on the merits of Charles's renewed application for deferral of removal pursuant to the Convention Against Torture. *Id.*

45. Charles was released from criminal custody on February 2, 2018 and for the first time, entered immigration custody at the Franklin County House of Correction. *Id.* at ¶ 6.

46. On February 22, 2018, the IJ denied Charles's application for deferral of removal pursuant to the Convention Against Torture. Charles filed his appeal with the BIA on March 5, 2018. *Id.* at ¶ 7.

47. On October 3, 2018, the BIA dismissed Charles's appeal. Following the dismissal of his appeal, Charles was scheduled for a transfer to the Krome Detention Center in Miami, Florida for a Haitian consulate interview, which is necessary to obtain a travel document to remove Charles to Haiti. *Id.* On October 19, 2018, that transfer was cancelled when Charles filed a Petition for Review of the BIA's order and a Motion to Stay his removal with the Court of Appeals for the Second Circuit. *Id.*

---

[3] Charles remained in criminal custody during the February 2017 and November 2017 immigration hearings. *Id.*

48. On December 11, 2018, the Second Circuit Court of Appeals granted Charles a stay of removal. *Id*.

49. On or about March 20, 1990, Charles was arrested for Reckless Endangerment and Discharging a Firearm for which he received a prison sentence of one year, execution suspended. *Id*. at ¶ 10.

50. On or about August 16, 1992, Charles was arrested for Possession of Drug Paraphernalia, the disposition of which is unknown. *Id*.

51. On January 13, 1995, Charles was arrested for NO PISTOL PRMIT (29-35(a)), which was reduced to CARRY DNGRS WPN 53-206(a), for which he received a three-year prison term, suspended three years with probation. *Id*. at ¶ 11. He was found in violation of his probation on July 15, 1998 and his probation was terminated. *Id*.

52. On January 30, 1997, Charles was arrested for Sale of Narcotics, Criminal Trespass and Sale of Narcotics within 1500 feet of a school. Those charges were "nolle" (*nolle prosequi*) on March 1, 1999. *Id*. at ¶ 12.

53. February 18, 1997, Charles was arrested for the Sale of Illegal Drugs in violation of C.G.S. § 21a-278(b) and for Drugs Near a Prohibited Place in violation of C.G.S. § 21a-278a(b). *Id*. at ¶ 13. Charles was released on $100,000 bond, but failed to appear in court. *Id*.

54. Charles was rearrested on May 24, 1997, and was additionally charged with Failure to Appear in violation of C.G.S. §53a-172 and refusing to be photographed and/or Fingerprinted. *Id*.

55. Charles was convicted and sentenced for these offenses on May 22, 1998, for a total effective sentence to serve of 30 years' imprisonment on these events, as follows:

    a.    SALE ILLGL DRUG (21a-278(b)) (FEL -U) 1 CT(S) (ORIG)
             DRGS NR PRHB PL 2la-278a(b) (FEL -U) (CONSP) l CT(S) (SUB)
             8YR JAIL

    b.    DRGS NR PRHB PL(2la-278a(b) ) (FEL -U) 1 CT(S)
             9YR JAIL

    c.    FLR TO APPEAR 1 (53a -172 ) (FEL -D) 1 CT(S) (ORIG )
             DRGS NR PRHB PL 2la-278a(b) (FEL -U) l CT(S) (SUB)
             8YR JAIL

    d.    FLR TO APPEAR 1(53a-172 ) (FEL -0) 1 CT(S)
             5YR JAIL, CONSEC.

*Id*. And on February 6, 2004, Charles's sentences on the above offenses were modified and reduced to a total sentence of 14 years to serve. *Id*.

56. Charles was released to supervised parole on February 10, 2010. *Id*.

57. On June 15, 2011 Charles was arrested for Criminal Attempt to Commit Murder in violation of C.G.S. §§ 53a-54a(a) and 53a-49(a)(2), Assault in the First Degree in violation of C.G.S. §53a-59, and Burglary First Degree in violation of 53a-101(a)(2). *Id*. at ¶ 14.

58. Charles was convicted of Assault First Degree in violation of C.G.S. § 53a-59, for which he received a sentence of 14 years in prison, with seven years to serve. A police report indicates that these charges stemmed from a dispute with his domestic partner over a phone bill. *Id*.

**Jovanny Francisco Pichardo Gomez ("Pichardo Gomez")**

59. Pichardo Gomez is a native and citizen of the Dominican Republic. Am. Compl., ECF No. 384-1 at ¶ 51.

60. Pichardo Gomez s not in ICE's custody. *See* Decl. of Deportation Officer Derek R. Moore ("Moore Decl."), attached as Exhibit 7 at ¶ 7. On August 21, 2018, ICE removed Pichardo Gomez from the United States to the Dominican Republic. *Id*.

61. On December 11, 2017, ICE served Pichardo Gomez with a Notice to Appear. *Id*. at ¶ 4.

62. On January 31, 2018, an IJ sustained all removability charges against Pichardo Gomez and ordered him removed from the United States. *Id*.

63. On March 2, 2018, Pichardo Gomez filed appeal of the IJ's decision with the BIA. *Id*. at ¶ 5. On July 12, 2018, the BIA dismissed his appeal. *Id*.

64. August 29, 2009, the Westchester, New York County Department of Public Safety arrested Pichardo Gomez for operating a motor vehicle while impaired by drugs first degree in violation of N.Y. V.T.L. § 1192(4) and equipment violation relating to windshield tint violation in violation of N.Y. V.T.L. § 375(12A). *Id*. at ¶ 8. He pled guilty on December 14, 2009 before the Mount Vernon, New York City Court to a charge of driving while ability impaired by the consumption of alcohol in violation of N.Y. V.T.L. § 1192(1) and was ordered to pay a fine of $300 with a 90-day license suspension. *Id*.

65. The New York City Police Department arrested Pichardo Gomez on September 16, 2009, for criminal possession of marijuana fifth degree in a public place in violation of N.Y. Penal Law § 221.10(1). *Id*. at ¶ 9. He pled guilty on September

16, 2009, before the New York County Criminal Court to a charge of unlawful possession of marijuana in violation of N.Y. Penal Law § 221.05 and was ordered to pay a fine of $75. *Id*.

66. On October 19, 2010, the Mount Vernon, New York City Police Department arrested Pichardo Gomez for operating a motor vehicle with .08 of 1% alcohol or more in blood first offense in violation of NY V.T.L. § 1192(2) and driving while intoxicated special vehicle first offense in violation of NY V.T.L. § 1192(3). *Id*. at ¶ 10. He pled guilty on December 13, 2010, before the Mount Vernon, New York City Court to a charge of driving while intoxicated first offense in violation of N.Y V.T.L. § 1192(3) and was ordered to pay a fine of $500. *Id*.

67. On February 24, 2012, Pichardo Gomez was arrested and, on March 20, 2013, pled guilty before the New York County Supreme Court to a charge of driving while intoxicated first offense in violation of N.Y. V.T.L. § 1192(3) and was ordered to pay a fine of $500 and a 6-month license suspension. *Id*. at ¶ 11.

68. On March 28, 2013, the New York City Police Department arrested Pichardo Gomez for criminal possession of marijuana fifth degree in a public place in violation of N.Y. Penal Law § 221.10(1) and unlawful possession of marijuana in violation of N.Y. Penal Law.§ 221.05. *Id*. at ¶ 12. He pled guilty on March 29, 2013 before the New York County Criminal Court to a charge of criminal possession of marijuana fifth degree in a public place in violation of N.Y. Penal Law § 221.10(1) and was sentenced to time served and 6-month license suspension. *Id*.

69. On October 9, 2013, the New York City Police Department arrested Pichardo Gomez for criminal possession of marijuana fifth degree in a public place in violation of N.Y. Penal Law § 221.10(1) and unlawful possession of marijuana in violation of N.Y. Penal Law § 221.05. *Id*. at ¶ 13. He pled guilty on October 10, 2013 before the New York County Criminal Court to a charge of criminal possession of marijuana fifth degree in a public place in violation of N.Y. Penal Law § 221.10(1) and was sentenced to time served and 6-month license suspension. *Id*.

70. On December 11, 2013, the New York City Police Department arrested Pichardo Gomez for criminal possession of marijuana fifth degree in a public place in violation of N.Y. Penal Law § 221.10(1) and unlawful possession of marijuana in violation of N.Y. Penal Law § 221.05. *Id*. at ¶ 14. He pled guilty on December 12, 2013 before the New York County Criminal Court to a charge of criminal possession of marijuana fifth degree in a public place in violation of N.Y. Penal Law § 221-10(1) and was sentenced to time served and 6-month license suspension. *Id*.

71. On March 20, 2016, the New York City Police Department arrested Pichardo Gomez for driving while intoxicated with two previous conviction of designated

offenses within 10 years in violation of N.Y. V.T.L. § 1192(3) and aggravated unlicensed operation of a motor vehicle first degree in violation of N.Y. V.T.L. § 511(3). *Id*. at ¶ 15. He pled guilty on September 28, 2016 before the New York County Criminal Court to a charge of driving while intoxicated with two previous conviction of designated offenses within 10 years in violation of N.Y. V.T.L. § 1192(3) and was sentenced to 30 days' jail with five years' probation plus $1000 fine and license revocation. *Id*.

72. On April 14, 2016, the Connecticut State Police arrested Pichardo Gomez and charged him with possession of narcotics with intent to sell in violation of C.G.S. § 21-277(b)+ and illegal operation of a motor vehicle without an interlock ignition device in violation of C.G.S. § 14-227k(a)(2). *Id*. at ¶ 16. He pled guilty on April 12, 2017 before the State of Connecticut Superior Court in New Britain to a charge of possession of narcotics with intent to sell in violation of C.G.S. § 21-277(b)+ and illegal operation of a motor vehicle without an interlock ignition device in violation of C.G.S. § 14-227k(a)(2). *Id*. The resulting sentence was five years' jail with execution suspended after nine months served in addition to three years conditional discharge for possession of narcotics with intent to sell and one year jail with execution suspended after thirty days jail, in addition to three years conditional discharge for illegal operation of a motor vehicle without an interlock ignition device. *Id*.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

COLIN A. KISOR
Deputy Director, District Court Section
Office of Immigration Litigation

*/s/ Elianis N. Perez*
ELIANIS N. PÉREZ
Assistant Director
U.S. Department of Justice
Civil Division
Office of Immigration Litigation — DCS
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Tel: (202) 616-9124
Fax: (202) 305-7000
Email: elianis.perez@usdoj.gov
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**
Case No.: No. 3:13-cv-30125-PBS

I hereby certify on April 15, 2019, I filed the foregoing on the CM/ECF for the District of

Massachusetts.  All parties are registered CM/ECF users and were served electronically.


*/s/ Catherine M. Reno*
CATHERINE M. RENO
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation —
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Tel: (202) 353-8557
Fax: (202) 305-7000
Email: catherine.m.reno@usdoj.gov