# EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAMION ANDRE BROWN,                )
   Petitioner,                    )
                            )
              v.             ) C.A. NO. 14-cv-30184-MAP
                            )
YOLANDA SMITH, Superintendent,     )
South Bay House of Corrections,    )
et al.,                            )
   Respondents.                   )

MEMORANDUM AND ORDER REGARDING
RESPONDENTS' MOTION TO DISMISS
(Dkt. No. 9)

September 29, 2015

PONSOR, U.S.D.J.

## I.   INTRODUCTION

Petitioner Damion Brown, an immigration detainee, has filed this habeas petition requesting that the court grant him relief from the denial of his release after a bond hearing before an Immigration Judge ("IJ").

Brown, a Jamaican citizen, has been detained by Immigration and Customs Enforcement ("ICE") since November 13, 2013. ICE charged Brown with being removable from the United States for his two marijuana-related drug offenses and a violation of a protective order. At a bond hearing, the IJ found Brown a danger to the community and denied his

request for release.  Brown unsuccessfully appealed that decision to the Board of Immigration Appeals and then filed this habeas petition.

In his petition, Brown alleges that the IJ's conduct of his bond hearing violated his rights under both the Fifth Amendment's Due Process Clause and the Eighth Amendment's Excessive Bail Clause.  Respondents, government agents acting in their official capacities, have moved to dismiss the petition on three grounds: lack of subject matter jurisdiction, collateral estoppel, and the inapplicability of the Eighth Amendment to immigration proceedings.  (Dkt. No. 9.)

Following oral argument on the motion to dismiss, the court ordered supplemental briefing.  (Dkt. No. 32.)  After observing that the Eighth Amendment claim appeared to lack merit, the order asked counsel to submit supplemental briefing on the due process claims.  Having now received the supplementation, the court will allow Respondents' motion to dismiss.  The Respondents' motion to dismiss in the related Reid case will be denied as moot.

2

## II.   <u>BACKGROUND</u>[1]

Brown was born in Jamaica. At age nine, he and his father were admitted to the United States, to join his grandmother, ████████████, a U.S. citizen. Since arriving in 1994, Brown has lived in Connecticut, close to his father, grandmother, sister, and the mother of one of his children. Brown has two children, ages four and seven.

Upon reaching adulthood, Brown began getting into trouble with the law. In 2006, Brown pled guilty to possession of marijuana and was sentenced to two years, execution suspended, and two years of probation, which he successfully completed. In 2009, Brown pled guilty to possession of marijuana, possession with intent to sell, and failure to appear. He was sentenced to five years, execution suspended after 90 days, and three years of probation. During his probation period, Brown completed an eight-month outpatient program for marijuana dependence. He successfully completed probation.

Brown later abused alcohol, which he claims led to a

---

[1] Unless otherwise noted, the facts are taken from Brown's Petition for Habeas Relief. (Dkt. No. 1.)

series of confrontations with his then-girlfriend ████████
████████. ████████ obtained a protective order against Brown,
which subsequently led to charges against him for two
violations. Brown pled guilty and was discharged to an
inpatient treatment center for alcohol abuse in May 2011; he
completed treatment and was discharged six months later.

Brown relapsed, leading to his arrest in August 2012
for assault and trespass in violation of the terms of his
probation. Brown had pushed ████████ after showing up at her
house intoxicated. Brown was sentenced to 16 months in jail
for his probation violation, and served 14 months. He
served one year concurrently for a related criminal
trespassing conviction and a third-degree assault
conviction.

On November 13, 2013, Brown was taken from the
Connecticut Department of Correction into custody by ICE.
He has since been detained under the mandatory detention
provisions of 8 U.S.C. § 1226(c).[2] The Department of

---

[2] Section 1226(c) requires ICE to detain specified
individuals, essentially those convicted of enumerated,
relatively serious, predicate crimes, "when the alien is
released."

4

Homeland Security obtained an order to remove Brown from the United States pursuant to §§ 237(a)(2)(B)(I) (controlled substance conviction) and 237(a)(2)(E)(ii) (domestic violence conviction).

Brown appealed his removal order under several theories, including derivative citizenship based on his grandmother's U.S. citizen status and his belief that his father was a U.S. citizen. On February 28, 2014, the Board of Immigration Appeals ("BIA") held that the IJ had failed to provide Brown an adequate opportunity to substantiate his derivative citizenship claim. Following remand, an IJ affirmed the order of removal.

On April 6, 2014, Brown filed a <u>pro</u> <u>se</u> notice of appeal. Subsequently, with the help of counsel, Brown filed a merits brief in support of his new appeal before the BIA. The BIA dismissed his appeal, but subsequently granted Brown's motion to reopen his removal proceedings. In a decision dated May 12, 2015, the BIA remanded his appeal to an IJ to consider additional evidence, including a psychiatric evaluation from March 5, 2015, information regarding current conditions in Jamaica, and affidavits

concerning Brown's sexual orientation.  (Dkt. No. 41.)

On June 18, 2014, Brown requested release on bond at a hearing in front of an IJ.  (Dkt. No. 33-1.)  In his memorandum in support of his request for release, Brown claimed that he had addressed his past substance abuse problems, that he was committed to raising his two sons, (both U.S. citizens), and that he did not pose a danger to the community or present a flight risk.

In support of his request for release, Brown submitted affidavits from his girlfriend and mother of one of his children, ▓▓▓▓▓▓▓▓▓▓, and his sister, ▓▓▓▓▓▓▓▓▓▓.  Both women were prepared to testify telephonically, but after reviewing the affidavits, the IJ declined to hear telephonic testimony, finding that the testimony would not be useful.  The IJ stated: "I don't think it would sway my decision any way frankly."  (Dkt. 33, Ex. 1, 26.)  The IJ ultimately denied Brown's bond request.  (Id.)

Following the denial of bond, Brown appealed the IJ's decision to the BIA.  The BIA, citing Brown's history of recidivism and violations of protective orders, affirmed the IJ's denial of release on bond and dismissed Brown's appeal.

6

(Dkt. No. 10-1.)  Thereafter, as noted above, Brown filed
the habeas petition now before this court.

In his petition, Brown contends that at his bond
hearing, the IJ misapplied the burden of proof and
incorrectly placed the burden on him rather than on the
government.  Moreover, Brown argues, the IJ summarily denied
his bond request without adequately setting forth his
reasoning.  Brown seeks relief on three theories: (1) a
violation of his substantive due process rights arising from
the failure of the IJ to require the government to bear the
burden of proving the propriety of his detention by clear
and convincing evidence; (2) a violation of his procedural
due process rights arising from the IJ's refusal to consider
telephonic testimony and the IJ's failure to articulate his
findings and make clear the standard he applied; and (3) a
violation of the Excessive Bail Clause of the Eighth
Amendment arising from his detention without an adequate
showing that he posed a risk to the community or a flight
risk.  On November 10, 2014, the government filed its motion
to dismiss.  (Dkt. No. 10.)

Following oral argument, the court, as noted, issued an

order regarding supplemental briefing. (Dkt. No. 32.) The order, among other things, identified weaknesses in the Eighth Amendment argument and requested that the parties submit supplemental briefing regarding the due process claims. The court asked the parties to (1) identify what authority required the government to demonstrate the propriety of Brown's continued detention by clear and convincing evidence, and (2) explain what actually happened factually at the Petitioner's underlying bond hearing. Now equipped with the additional briefing and a transcript of the bond hearing (Dkt. No. 33-1), the court will address the motion to dismiss.

## III.    <u>DISCUSSION</u>

Though not specifically stated, Respondents' motion appears to rely on Rule 12(b)(1), asserting lack of subject matter jurisdiction, and 12(b)(6), asserting a failure to state a claim. To survive the motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009)(citation omitted). The court must take the well-

8

pleaded facts in the complaint as true and draw all
reasonable inferences in the plaintiff's favor.  Blum v.
Holder, 744 F.3d 790, 795 (1st Cir. 2014).  However, a court
need not accept as true "statements in the complaint that
merely offer legal conclusions couched as facts or are
threadbare or conclusory."  Soto-Torres v. Fraticelli, 654
F.3d 153, 158 (1st Cir. 2011).

Respondents argue for dismissal on three grounds: (1)
lack of subject matter jurisdiction; (2) collateral
estoppel; and (3) inapplicability of the Eighth Amendment to
the alien detention context.

A.    Subject Matter Jurisdiction.

Respondents contend that 8 U.S.C. § 1226(e) prohibits
federal judicial review of the detention decision.
Petitioner's response is that § 1226(e) bars only challenges
to the IJ's exercise of discretion and not a more
fundamental attack on the underlying constitutionality of
the process.  Petitioner's argument is more persuasive.

Petitioner is being detained pursuant to 8 U.S.C. §
1226(c) -- a statute that requires the Attorney General to
take into custody and detain certain criminally convicted

9

aliens who are removable from this country.  Section 1226(e)

provides:

> The Attorney General's <u>discretionary judgment</u>
> regarding the application of this section shall not
> be subject to review.  No court may set aside any
> action or decision by the Attorney General under
> this section regarding the detention or release of
> any alien or the grant, revocation, or denial of
> bond or parole.

<u>Id.</u> (emphasis supplied).

Despite this language, it is well established that §

1226(e) does not bar a district court from exercising

subject matter jurisdiction over a habeas corpus petition.

<u>See</u> <u>Demore v. Kim</u>, 538 U.S. 510, 517 (2003) (court has

jurisdiction over habeas challenge to immigrant's

detention).  In <u>Demore</u>, the Supreme Court declared that 8

U.S.C. § 1226(e) permits habeas petitions challenging the

constitutionality of the mandatory detention provisions set

forth in § 1226(c), reasoning that "where Congress intends

to preclude judicial review of constitutional claims its

intent to do so must be clear."  <u>Id.</u> (quoting <u>Webster v.</u>

<u>Doe</u>, 486 U.S. 592, 603 (1988)).

Though <u>Demore</u> did not address the specific issue

presented by Petitioner here -- <u>i.e.,</u> whether the government

should be required to justify his continued detention by clear and convincing evidence -- the reasoning of Demore supports the exercise of jurisdiction.  See INS v. St. Cyr, 533 U.S. 289, 299, (2001) ("Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal"); Saint Fort v. Ashcroft, 329 F.3d 191, 200-01 (1st Cir. 2003) (habeas jurisdiction has not been repealed in immigration cases);  Ortega v. Hodgson, No. 11-cv-10358-MBB, 2011 WL 4103138 (D. Mass. Sept. 13, 2011).

In sum, applicable authorities make clear that this court has jurisdiction to address Petitioner's habeas petition.  Respondents' motion to dismiss on jurisdictional grounds is unpersuasive.

B.   Collateral Estoppel.

Respondents next argue that Petitioner is collaterally estopped from bringing his Fifth Amendment due process challenge to his § 1226(a) bond hearing because he is a member of a class that has already litigated and lost on

11

this issue.[3]  On this point, Respondents have the stronger
argument.

It is undisputed that Petitioner is a <u>Reid</u> class
member.  <u>Reid v. Donelan</u>, 297 F.R.D. 185, 194 (D. Mass.
2014) ("Reid II").  In that litigation, Defendant Reid and
his fellow class members -- all of whom had been detained
more than six months pursuant to § 1226(c) -- argued at
summary judgment (1) that they were entitled to
individualized bond hearings, and (2) that at these hearings
the government was required to demonstrate by clear and
convincing evidence that detention was justified.  <u>Reid v.
Donelan</u>, 22 F. Supp. 3d 84, 92 (D. Mass. 2014) ("Reid III").
This court eventually agreed with the first argument and
ruled that a <u>Reid</u> class member was entitled to an
individualized bond hearing once his or her detention
exceeded six months.  <u>Id.</u> at 89.  Based on <u>Reid III</u>,
Petitioner in this case received such a hearing.

With regard to the second argument in <u>Reid III</u>,

---

[3]  Petitioner's other due process claims regarding
telephonic testimony and the summary nature of the IJ's
decision, which are addressed below, were not litigated in
the <u>Reid</u> case.

12

however, the court declined to require the government to
bear the burden of justifying detention by clear and
convincing evidence.  Id. at 93.  Instead, the court opted
to follow the course advocated by the government, which was
to apply the burden and standard of review followed in bail
hearings under § 1226(a).[4]  Id. at 92.  The court explained,
"Section 1226(a) provides a reasonably effective way for
class members to obtain the individualized assessment they
are entitled to, without giving them heightened or special
treatment that due process does not require."  Id.  See also
Gordon v. Johnson, 300 F.R.D. 31, 41 (D. Mass. 2014)
(explaining that as a matter of fairness, aliens detained
under § 1226(c), should not receive more protection that
those detained under § 1226(a)).

        Respondents argue that Brown cannot now anchor his due
process claim on an argument that has already been

---

        [4] In bail hearings under § 1226(a), an IJ must release
an alien on bond if the alien persuades the IJ that he is
neither a flight risk nor a danger to the community.
Demore, 538 at 521.  To secure release, "the alien must
demonstrate to the satisfaction of the officer that such
release would not pose a danger to property or persons, and
that the alien is likely to appear for any future
proceeding."  8 C.F.R. § 1236.1(c)(8).

13

explicitly rejected in <u>Reid III</u>.  They contend he is
collaterally estopped from arguing that the government must
bear the burden of justifying his detention under a clear
and convincing standard, because the very same issue was
fully litigated and decided against Brown in <u>Reid III</u>.

A party seeking to invoke the doctrine of collateral
estoppel must establish: (1) that the issue sought to be
precluded in the later action is the same as that involved
in the earlier action; (2) that the issue was actually
litigated; (3) that the issue was determined by a valid and
binding final judgment; and (4) that the determination of
the issue was essential to the judgment.  <u>Keystone Shopping
Co. v. New England Power Co.</u>, 109 F.3d 46, 51 (1st Cir.
1997).  All four elements are indisputably satisfied here.
Given this, absent some exception, Petitioner is
collaterally estopped from seeking the relief here that was
denied in <u>Reid III</u>.

Perhaps in recognition of the strength of Respondents'
collateral estoppel argument, Petitioner suggests that the
issue of burden of proof in <u>Reid III</u> was merely theoretical,
as the bond hearings had not yet been held.  In the

14

alternative, Petitioner argues that the issue of the
appropriate standard of proof in a detention hearing is a
question of pure law, and that he is entitled to escape
application of collateral estoppel in order to avoid an
"inequitable administration" of justice.

The first argument, while resourceful, is unpersuasive.
The court considered and rejected, in <u>Reid III</u>, the argument
that a clear and convincing standard should apply in the
bond hearings.  22 F. Supp. 3d at 92-93.  The fact that no
hearings had occurred at the time of this decision makes no
difference.  The parties to <u>Reid III</u> have each appealed the
court's decision, and the question regarding the burden of
proof is now before the Court of Appeals for the First
Circuit.  It is not proper to revisit the issue now in a
lawsuit brought by an individual class member.

The "pure law" argument also lacks traction.
Admittedly, a court, in addressing a pure question of law,
may be released from the usual limitations of collateral
estoppel, sometimes called "issue preclusion."  <u>Montana v.</u>
<u>United States</u>, 440 U.S. 147, 162-32 (1979).  This
exceptional situation arises when "the issue is one of law

15

and (a) the two actions involve claims that are
substantially unrelated, or (b) a new determination is
warranted in order to take account of an intervening change
in the applicable legal context or otherwise to avoid
inequitable administration of the laws." Restatement
(Second) of Judgments § 28(2). Invoking the "inequitable
administration of the laws" language, Petitioner argues that
anything other than a "clear and convincing" standard would
offer inadequate protection for Petitioner's liberty
interests.

Although the "inequitable administration of the laws"
phrase strikes a portentous note, Petitioner's argument here
merely amounts to a claim that the court resolved this issue
incorrectly in Reid III and should examine it again now. The
temporal proximity and close alignment of the subject matter
between this petition and the decision of Reid III make it
clear that no exception to the usual collateral estoppel
rule is available to Petitioner here. Indeed, this case
offers facts quite close to the scenario found in the
Court's Montana decision, where an argument unsuccessfully
asserted by the government against the same party less than

16

one month earlier was found to be barred by issue
preclusion.  440 U.S. at 162-64.

It is worth noting that, even setting aside the fatal
problem of collateral estoppel, this is a poor case to test
the appropriate burden of proof and applicable standard at a
detention hearing, for two reasons.  First, a review of the
transcript of the detention hearing provides no clear
enlightenment as to where the IJ placed the burden of proof
and what standard he employed.  For all the record
indicates, the IJ may have used precisely the standard
Petitioner argues for.  Second, given Petitioner's criminal
record, even if the burden had been placed on Respondents to
justify detention by clear and convincing evidence -- as,
for all that appears, it might have been -- the IJ would
have committed no abuse of discretion in detaining
Petitioner.

In sum, because Petitioner is collaterally estopped
from claiming now that Respondents must satisfy a clear and
convincing standard at his bond hearing, Respondents' motion
to dismiss Petitioner's due process claim must be allowed.

C.    <u>Other Due Process Violations.</u>

17

Beyond the burden of proof, Petitioner points to other alleged due process violations during his bond hearing. Petitioner contends his due process rights were violated because the IJ denied his bond request without first ruling on a motion to allow telephonic testimony of his sister and girlfriend.  He also alleges a denial of due process because the IJ "summarily denied bond" without an explicit finding that, if released, that Petitioner "would pose a danger to property or persons," as set forth in 8 C.F.R. § 1236.1 (c)(8).

It is axiomatic that the Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law."  U.S. CONST. Amend V.  This prohibition protects aliens "whether their presence here is lawful, unlawful, temporary, or permanent."  <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693 (2001).

Even recognizing the applicability in general of the Due Process Clause at Petitioner's hearing, however, the court must conclude that these rights were in no way compromised by the IJ's failure to consider telephonic

18

testimony.  Before his hearing, Petitioner submitted letters of support from his sister and his girlfriend, both of whom indicated they were available to testify telephonically. Petitioner's counsel submitted a motion to allow telephonic testimony, but the IJ, in essence, denied that motion, by refusing to accept telephonic testimony.  Petitioner characterizes this decision as a violation of his procedural due process rights based on a denial of "a meaningful opportunity to be heard."  (Dkt. 34, at 2.)

Despite the "procedural due process" label, the Petitioner's argument is actually directed at the discretionary judgment of the IJ, and therefore founders at the 1226(e) bar.  Petitioner challenges the IJ's decision to limit the type of testimony he would receive.  The First Circuit addressed this issue Castaneda, 769 F.3d 32, 36-37 (1st Cir. 2005), and although that decision has been withdrawn pending an en banc hearing, the essential point is fundamental and is unlikely to change.  Other case law confirms it.

In Mehilli v. Gonzales, 433 F.3d 86, 94 (1st Cir. 2005), the Court of Appeals found that "due process"

19

arguments going to the correctness of the IJ's assessment of the evidence, to his failure to explicitly consider evidence, or to his error in judgment were "simple claims that substantial evidence did not support the IJ's credibility finding." <u>See also</u>, <u>Gutierrez-Chavez v. INS</u>, 298 F.3d 824, 828 (9th Cir. 2002) (petitions that seek to change the discretionary result reached by immigration officials are outside the jurisdictional scope of § 2241). Accordingly, this court lacks jurisdiction to review the IJ's decision against receiving telephonic testimony.

Even assuming that this court had authority to review that decision, the result would be the same. The IJ's decision caused no harm. The transcript confirms that Petitioner submitted evidence on his own behalf, including testimony regarding his rehabilitation and remorse for his previous transgressions, and letters of support by his family and friends. The IJ was well within his discretion to refuse telephonic testimony from individuals who had submitted affidavits that he had already read and considered. Given Petitioner's extensive criminal record, the absence of an explicit dangerousness finding of 8 C.F.R.

§ 1236.1(c)(8) cannot form the basis for habeas relief. Unfortunately for Petitioner, the record is clear that he received his <u>Reid</u> remedy in the form of an individualized bond hearing.  He had the opportunity to present evidence, but the IJ ultimately disagreed with his position.

D.   <u>Eighth Amendment Challenge.</u>

Lastly, Petitioner has raised an Eighth Amendment challenge, arguing that his continued detention violates the Excessive Bail Clause.  In its January 23, 2015 memorandum and order (Dkt. No. 32), the court found that this claim "will not hold water."  (<u>Id.</u>)  As the court noted there, if the court were to recognize a claim like Petitioner's, any time an IJ decided to detain an alien, the alien could <u>ipso facto</u> claim an Eighth Amendment violation.  (<u>Id.</u>)  This dilation of the habeas remedy has no support in the law and, in any event, is explicitly barred by § 1226(e).  The Respondents' motion to dismiss the Eighth Amendment challenge will also be allowed on this claim.

IV.   <u>CONCLUSION</u>

In <u>Reid v. Donelan</u>, 22 F. Supp. 3d 84 (D. Mass 2014), the court determined that immigration detainees held more

21

than six months had the right to a bond hearing, but it also
cautioned that "[t]his opportunity, of course, will not make
actual release inevitable, or even necessarily likely." Id.
at 91.  The IJ crossed no constitutional boundary currently
applicable in this circuit in denying Petitioner's bond
request.[5]

For the reasons set forth above, Respondents' Motion to
Dismiss (Dkt. No. 9) is hereby ALLOWED.  The clerk will enter
judgment for Respondents.  This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge

---

[5]  As the court noted in its Reid III decision, the
Ninth Circuit currently requires immigration authorities to
satisfy a "clear and convincing" standard to justify
continued detention under § 1226(c).  22 F. Supp. 3d at 92,
citing Rodriguez v. Robbins, 715 F.3d 1127, 1131 (9th Cir.
2013).  Although this court has declined to adopt it, the
arguments for the Ninth Circuit's approach have force, and
the issue may soon be resolved by the First Circuit.