# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLAYTON RICHARD GORDON,<br>GUSTAVO RIBEIRO FERREIRA,<br>VALBOURN SAHIDD LAWES,<br>NHAN PHUNG VU, and<br>CESAR CHAVARRIA RESTREPO,<br>on behalf of themselves and others similarly situated,<br><br>*Plaintiffs-Petitioners*,<br><br>v.<br><br>ELAINE DUKE, ET AL.,<br><br>*Defendant-Respondents.* | Civil Action No. 13-30146 |

**PLAINTIFFS' FIRST NOTICE OF DEPOSITION TO DEPARTMENT OF HOMELAND SECURITY PURSUANT TO FED. R. CIV. P. 30(B)(6)**

TO DEFENDANTS-RESPONDENTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs Clayton Richard Gordon, Gustavo Ribeiro Ferreira, Valbourn Sahidd Lawes, Nhan Phung Vu, and Cesar Chavarria Restrepo (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, will take the deposition upon oral examination of the U.S. Department of Homeland Security ("DHS") commencing at 9:00 am (EST) on September 14, 2017 at the offices of Latham & Watkins LLP, 200 Clarendon Street, Boston, MA 02116. The deposition will be taken upon oral examination before a notary public or duly qualified officer, authorized to administer oaths, and will be recorded by the stenographic method and videotape. The deposition will continue from day to day until completed, Saturdays, Sundays, and holidays excepted.

PLEASE TAKE FURTHER NOTICE that DHS is requested to designate the person or persons most knowledgeable and prepared to testify on its behalf on the matters set forth in Schedule A below.

PLEASE TAKE FURTHER NOTICE that, pursuant to 6 C.F.R. § 5.45(a), Plaintiffs hereby state that they seek testimony that is relevant and proportional to Plaintiffs' claims, for the reasons set forth below.

Topics 1-5 relate to the size of the class certified in this case and to the burdens created by the Court's orders in this case. On May 21, 2014, the Court issued an order granting summary judgment to the class certified in this case. ECF No. 120 (the "*Gordon* Relief Order"). On January 26, 2017, the Court ordered discovery into, *inter alia*, "what practical problems, if any, have resulted" from the Gordon Relief Order. ECF No. 186. The information sought in Topics 1-5 regarding the size of the class and the burden on DHS from providing relief to the class is therefore directly relevant to the issues into which the Court ordered discovery and is proportional to the needs of the case.

Topics 6-8 relate to the databases that DHS uses to store relevant information about members of the class certified in the case and about similarly-situated individuals, as well as the software DHS uses to identify class members and similarly-situated individuals. Defendants have represented that DHS relied on certain of these databases, specifically EAGLE and EARM, to prepare previous Court filings in this case. *See, e.g.*, ECF No. 188 at ¶5. Defendants have also made representations during discovery regarding the types of aggregate information that can be extracted from these databases. The information sought by topics 6-8 relates to the accuracy and completeness of Defendants' previous court filings and discovery responses and is therefore both relevant and proportional to the needs of the case.

Topics 9-14 relate to the so-called "Cronen Declarations" that Defendants previously submitted to the Court. Defendants have relied on the Cronen Declarations to support their arguments to the Court regarding the practical problems that have resulted from the Gordon Relief Order. Topics 9-14 relate to the facts regarding certain categories of cases Defendants identified in the Cronen Declarations to support their arguments, as well as to how information was gathered and analyzed to prepare the Declarations. Topics 9-14 are therefore relevant and proportional to the needs of the case.

Topics 9-14 relate to DHS policies for identifying and detaining *Gordon* class members and other similarly-situated individuals. These policies are relevant and proportional to the needs of this case because they shed light on what constitutes a "reasonable" custody gap under 8 U.S.C. § 1226(c) and on the practical problems that have resulted from the *Gordon* Relief Order.

## Schedule A

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Notice is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules. In this Notice, the following terms are to be ascribed these definitions:

1. "Defendants," "You," and "Your," mean, individually and collectively, Rand Beers, Michael G. Bellotti, Christopher J. Donelan, Christopher Cronen, Thomas Hodgson, Jefferson B. Sessions III, Elaine Duke, Joseph D. McDonald, Jr., Thomas D. Homan, and Steven W. Tompkins, and, where applicable, their officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. *See* Local Rule 26.5(c)(5). In addition, the terms "Defendants," "You," and "Your" shall mean, individually and collectively, any person currently or previously occupying the positions held by the aforementioned individuals, any government agencies controlled by the aforementioned individuals or their predecessors or successors, any officers, directors, or employees of such agencies, and any other persons acting on behalf of such agencies.

2. "DHS" refers to the Department of Homeland Security, all agencies or divisions within the Department of Homeland Security, any officers, directors, or employees of the Department of Homeland Security or any of its agencies or divisions, and any other persons acting on behalf of the Department of Homeland Security or any of its agencies or divisions.

3. "ICE" refers to Immigration and Customs Enforcement, all agencies or divisions within Immigration and Customs Enforcement, any officers, directors, or employees of Immigration and Customs Enforcement or any of its agencies or divisions, and any other persons acting on behalf of Immigration and Customs Enforcement or any of its agencies or divisions.

4. "ERO" refers to Enforcement and Removal Operations.

5. "Database" shall mean any electronic file composed of records, each containing fields together with a set of operations for searching, sorting, recombining, and/or other functions. Examples of databases include, PLAnet, ENFORCE Alien Removal Module (EARM), PACER, the BIA Inquiry site, the Massachusetts Appellate Court website, the National Crime Information Center, the National File Tracking System, the EOIR Records and Management Information System (RMIS), the Enforce Integrated Database (EID), the EID Arrest Guide for Law Enforcement (EAGLE), the ENFORCE Alien Detention Module (EADM), Deportable Alien Control System (DACS), Detention and Removal Information Management System (DRIMS), and the Electronic Travel Document System (eTD). These examples are illustrative only and in no way preclude or limit the inclusion of other databases within this definition.

6. "Software" shall mean any set of instructions executable by one or more computers. Examples of software include any Database as well as Investigative Case Management (ICM).

7. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). *See* Local Rule 26.5(c)(1).

8. "Concerning" means referring to, describing, evidencing, or constituting. *See* Local Rule 26.5(c)(7).

9. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). Under Local Rule 26.5(c)(2), a draft or non-identical copy is a separate document. "Document" also refers to, without limitation, Communications,

notebooks, correspondence, memo-pads, voice mail messages, e-mails, electronically-recorded materials, other types of recorded information, and tangible items.

10. "Person" is defined as any natural person or any business, legal, or governmental entity or association. *See* Local Rule 26.5(c)(6).

11. "Things" has the broadest meaning prescribed in Fed. R. Civ. P. 34 and includes every kind of physical specimen or tangible item other than a Document.

12. "This Litigation" and "This Case" mean the above-captioned litigation.

13. "*Gordon* Class" refers to the class certified by the Court in this matter pursuant to Fed. R. Civ. P. 23 on March 27, 2014, which consists of all aliens who are or will be detained in Massachusetts under 8 U.S.C. § 1226(c), whom the government alleges to be subject to a ground of removability as described in 8 U.S.C. § 1226(c)(1)(A)–(D), and who were not taken into immigration custody within forty-eight hours (or, if a weekend or holiday intervenes, within no more than five days) of release from the relevant predicate custody.

14. "*Gordon* Class Member" refers to any Person who is or at any time has been eligible for or has been granted a bond hearing in immigration court pursuant to any order issued by this Court in This Litigation.

15. "*Gordon* Relief Order" refers to the Court's May 21, 2014 summary judgment order.

16. "First Cronen Declaration" refers to the Declaration of Christopher M. Cronen filed in This Litigation on December 30, 2016 (ECF No. 170-1).

17. "Second Cronen Declaration refers to the Declaration of Christopher M. Cronen filed in This Litigation on January 11, 2017 (ECF No. 175-1).

18. "Third Cronen Declaration" refers to the Declaration of Christopher M. Cronen filed in This Litigation on January 13, 2017 (ECF No. 177-1).

19. "Fourth Cronen Declaration" refers to the Declaration of Christopher M. Cronen filed in This Litigation on January 26, 2017 (ECF No. 188).

20. "1226(c)(1)(A)-(D)-Alleged Individual" refers to a person who the government alleges is subject to a ground of removability described in 8 U.S.C. § 1226(c)(1)(A)-(D).

21. "Related Litigation" refers to any litigation in any court related to the interpretation of the time period during which the "when … released" language in 8 U.S.C. § 1226(c) requires DHS to arrest a 1226(c)(1)(A)-(D)-Alleged Individual, including without limitation *Preap v. Johnson*, No. 13-CV-5754-YGR (N.D. Cal.) and *Khoury v. Asher*, No. 13-CV-1367-RAJ (W.D. Wash.).

22. "Predicate Criminal Custody" means, with respect to a 1226(c)(1)(A)-(D)-Alleged Individual, the custody imposed as a result of the criminal conviction that led to the person's alleged removability under 8 U.S.C. § 1226(c)(1)(A)-(D).

23. The terms "and" and "or" shall be understood as either conjunctive or disjunctive, whichever is more inclusive in context. The terms "any" and "all" shall be considered to include "each" and "every." The singular form of a noun or pronoun shall be considered to include the plural form of a noun or pronoun so used, and vice versa. The terms "including" and "includes" mean "including but not limited to."

24. "State Authority" refers to any agency of the government of any state in the United States, or any locality within any state, including without limitation any officers, directors, or employees of any such government or agency, and any persons acting on behalf of any such agency, including private individuals or companies operating under a contract with the

agency. For the purposes of this definition, state government agencies include state and local law enforcement agencies, state and local agencies responsible for incarceration, courts, state and local agencies responsible for probation, and any other state or local government agency with responsibility for detaining, convicting, sentencing, maintaining custody over, releasing, or imposing conditions of release on any individual accused or convicted of a crime.

25.    "Notice of 1226(c)(1)(A)-(D)-Alleged Individual" refers to any formal or informal Communication to DHS by any State Authority regarding any individual who is or may become a 1226(c)(1)(A)-(D)-Alleged Individual.

## TOPICS

**TOPIC NO. 1.**

The number of *Gordon* Class Members as of the date of this Notice.

**TOPIC NO. 2.**

The total number of 1226(c)(1)(A)-(D)-Alleged Individuals not in the *Gordon* class detained in Massachusetts from May 21, 2014 until the date of this deposition notice.

**TOPIC NO. 3.**

The total number of 1226(c)(1)(A)-(D)-Alleged Individuals detained in Massachusetts from May 21, 2014 until the date of this deposition notice.

**TOPIC NO. 4.**

The cost to DHS of detaining 1226(c)(1)(A)-(D)-Alleged Individuals, and any cost savings achieved by DHS due to the release of 1226(c)(1)(A)-(D)-Alleged Individuals as a result of the *Gordon* Relief Order or any similar orders in an Related Litigation.

**TOPIC NO. 5.**

Any burden created on DHS by the *Gordon* Relief Order, including any burden created

Gordon et. al v. Duke et. al, 13-cv-30146                8                Plaintiffs' First Notice of Deposition to
                                                                                         Department of Homeland Security Pursuant
                                                                                                        to Fed. R. Civ. P. 30(b)(6)

by the requirement to provide bond hearings to 1226(c)(1)(A)-(D)-Alleged Individuals not detained within 48 hours of their release from Predicate Criminal Custody.

**TOPIC NO. 6.**

Any Databases used by DHS to store information about 1226(c)(1)(A)-(D)-Alleged Individuals, including for each such Database: information about the person(s) or department(s) who have access to it; the operations that can be performed on it; the source(s) of information used for entering data into it; the data fields in the Database relevant to 1226(c)(1)(A)-(D)-Alleged Individuals; the available mechanisms for querying the Database, including but not limited to the mechanisms for generating aggregate statistics from the Database; the steps taken to ensure the information is up to date and accurate; and, the person(s) or department(s) responsible for review of such information.

**TOPIC NO. 7.**

Any Software used by DHS to identify or track 1226(c)(1)(A)-(D)-Alleged Individuals, including: information about the person(s) or department(s) who have access to the Software; the operations that can be performed using the Software; the source(s) of information the Software can access; and the algorithms used by the Software to identify and track 1226(c)(1)(A)-(D)-Alleged Individuals.

**TOPIC NO. 8.**

Any duties imposed on state or local officials under state or federal law to provide information to DHS regarding individuals who are arrested for any reason, including the identity of the individual arrested, criminal charges related to the arrest, and convictions or other dispositions of those criminal charges, including any duties imposed on state or local officials to provide information about an individual's place of birth and/or citizenship, and the practices by

which state and local officials provide such information, including any practices by which state or local officials input such information into federal Databases or Databases accessed by the federal government.

**TOPIC NO. 9.**

For all cases identified in Paragraph 6 of the Fourth Cronen Declaration that Defendants contend involved a "failure of state authorities to notify ICE that an alien had been convicted of a crime or the date of release from custody," what efforts DHS undertook, if any, to request such notification from any state courts or State Authorities, and what response DHS received to that request.

**TOPIC NO. 10.**

For all cases identified in Paragraph 6 of the Fourth Cronen Declaration that Defendants contend that involved a "failure of state authorities to notify ICE that an alien had been convicted of a crime or the date of release from custody," what efforts DHS undertook, if any, to identify and detain the Person in question.

**TOPIC NO. 11.**

For all cases identified in Paragraph 6 of the Fourth Cronen Declaration that Defendants contend involved "instances in which aliens were released from custody prior to ICE determination of legal sufficiency of amenability to removal proceedings," what efforts DHS undertook, if any, to identify and detain the Person in question.

**TOPIC NO. 12.**

For all cases identified in Paragraph 6 of the Fourth Cronen Declaration in which Defendants contend that "a properly lodged ICE detainer was not honored by the detention facility," the factual circumstances regarding the facility's failure to honor the detainer, and what

efforts DHS undertook, if any, to identify and detain the Person in question.

**TOPIC NO. 13.**

The "chain of command" of the 167 ERO officers referred to in Paragraph 1 of the Third Cronen Declaration, including the organizational structure or structures defining the chain of command, the duties of officers at each level of the organizational structure, and the case load of each officer.

**TOPIC NO. 14.**

The preparation of the First Cronen Declaration, Second Cronen Declaration, Third Cronen Declaration, and Fourth Cronen Declaration (collectively, the "Cronen Declarations"), including but not limited to the documents relied on in preparing the Cronen Declarations, the personnel involved in preparing the Cronen Declarations, and any instructions given to any personnel involved in preparing the Cronen Declarations.

**TOPIC NO. 15.**

The policies, procedures, or processes, whether formal or informal, by which DHS identifies and detains 1226(c)(1)(A)-(D)-Alleged Individuals, including 1226(c)(1)(A)-(D)-Alleged Individuals about whom DHS has not received Notice of 1226(c)(1)(A)-(D) Alleged Individual from any State Authority.

**TOPIC NO. 16.**

The policies, procedures, or processes, whether formal or informal, by which DHS identifies and detains 1226(c)(1)(A)-(D)-Alleged Individuals who are not in state or federal custody.

**TOPIC NO. 17.**

All guidance provided to DHS agents, officers, or employees regarding their duties with

respect to taking custody of 1226(c)(1)(A)-(D)-Alleged Individuals.

**TOPIC NO. 18.**

Actions taken by DHS in anticipation of or in response to any relief granted in This Litigation or any Related Litigation, including without limitation any new or modified policies, practices, or procedures, whether formal or informal, promulgated in response to such relief regarding the identification and detention of 1226(c)(1)(A)-(D)-Alleged Individuals.

**TOPIC NO. 19.**

Actions taken by DHS in anticipation of or in response to any state or local policies or practices or any settlements or decisions in any court case, regarding compliance with detainers or sharing of information concerning individuals in state or local custody with DHS, including without limitation the Rhode Island policy referred to in Paragraph 8 of the First Cronen Declaration, the Connecticut Trust Act, and the Massachusetts Supreme Judicial Court's decision in *Lunn v. Commonwealth*, No. SJC-12276 (Mass. July 24, 2017).

**TOPIC NO. 20.**

Any policies, procedures, or processes, whether formal or informal, by which DHS identifies, locates, and detains 1226(c)(1)(A)-(D)-Alleged Individuals who are not detained by DHS immediately upon their release from Predicate Criminal Custody or who are not detained by DHS on or near the premises of a state or local prison, jail, or other detention facility.

**TOPIC NO. 21.**

The number of detainers issued by DHS to any facilities or state or local authorities in Massachusetts between May 21, 2014 and the date of this deposition notice, the facilities or authorities to which the detainers were issued, the number of detainers that resulted in the detention of any individual, the number of detainers that resulted in notice to DHS of an

individual's release date, and any DHS policies or procedures, whether formal or informal, regarding the issuance of detainers or the detention of individuals subject to detainers.

**TOPIC NO. 22.**

Any DHS policies or procedures, whether formal or informal, regarding the maintenance of records relating to detainers, including any files or Databases in which information about detainers is stored.

Dated: August 15, 2017                    Respectfully submitted,

*/s/ Matthew R. Segal*
Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
American Civil Liberties Union
 Foundation of Massachusetts
211 Congress Street
Boston, Massachusetts 02110
(617) 482-3170 x 308

*/s/ Michael Tan*
Michael Tan, admitted pro hac vice
Judy Rabinovitz, admitted pro hac vice
American Civil Liberties Union
Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

*Counsel for Plaintiffs-Petitioners*

*/s/ Anant K. Saraswat*
Anant K. Saraswat (BBO #676048)
anant.saraswat@lw.com
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, MA 02116
Tel: (617) 880-4576; Fax: (617) 948-6001

*Counsel for Plaintiff-Petitioner Cesar Chavarria Restrepo*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a copy of Plaintiffs' First Notice of Deposition to Department of Homeland Security Pursuant to fed. R. Civ. P. 30(b)(6) was served on counsel of record for Defendants via email and first-class mail on August 15, 2017.

                                               /s/  *Anant K. Saraswat*

                                             Anant K. Saraswat (BBO #676048)
                                             anant.saraswat@lw.com
                                             John Hancock Tower, 27th Floor
                                             200 Clarendon Street
                                             Boston, MA 02116
                                             Tel: (617) 880-4576; Fax: (617) 948-6001