# EXHIBIT I

Reena Parikh, Supervising Attorney                    **NON-DETAINED**
Veronica A. Guerrero, Law Student Intern
Healy Ko, Law Student Intern
Laura Kokotailo, Law Student Intern
Saúl Ramírez, Law Student Intern
Megan Yan, Law Student Intern
JEROME N. FRANK LEGAL SVCS. ORG.
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## HARTFORD, CONNECTICUT

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| | ) File No.: A ███████ |
| MARK REID, | ) |
| *Respondent* | ) |
| | ) Telephonic Status Conference: |
| In removal proceedings | ) April 9, 2019 |
| | ) Immigration Judge Philip Verrillo |

## RESPONDENT'S MOTION TO TERMINATE PROCEEDINGS

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
HARTFORD, CONNECTICUT

| | |
|---|---|
| ) | |
| In the Matter of: ) | |
| ) | File No.: A ▮▮▮▮▮ |
| MARK REID, ) | |
| *Respondent* ) | |
| ) | |
| In removal proceedings. ) | March 28, 2019 |
| ) | |

## RESPONDENT'S MOTION TO TERMINATE PROCEEDINGS

Respondent Mark Reid, through counsel, respectfully moves this Court to terminate proceedings. Respondent renews his May 19, 2017 Motion to Terminate Proceedings, as further expanded on in Respondent's September 18, 2018 Motion to Reconsider (with respect to the charge under INA § 237(a)(2)(B)(i)) that is currently pending before this Court. As explained in the accompanying briefing, the newly added charge under INA § 237(a)(2)(A)(ii) is legally insufficient because Respondent's convictions under Conn. Gen. Stat. §§ 21a-277(a) and 21a-278(b) are categorically not Crimes Involving Moral Turpitude ("CIMTs"). Furthermore, the CIMT classification in § 237(a)(2)(A)(ii) is unconstitutionally vague as applied to the statutes of Mr. Reid's relevant convictions.

For these reasons, Mr. Reid respectfully requests that the Court grant his motion to terminate proceedings.

Date: March 28, 2019

_RA Parikh_

Reena Parikh, Supervising Attorney
Veronica A. Guerrero, Law Student Intern
Healy Ko, Law Student Intern
Laura Kokotailo, Law Student Intern
Saúl Ramírez, Law Student Intern
Megan Yan, Law Student Intern

JEROME N. FRANK LEGAL SVCS. ORG.
Yale Law School*
PO Box 209090
New Haven, CT 06520-9090
Phone: (203) 436-8971
Fax: (203) 432-1426
reena.parikh@ylsclinics.org

*Counsel for Respondent*

---

* This brief has been prepared by a clinic operated by Yale Law School, but does not purport to present the school's institutional views, if any.

2

Reena Parikh, Supervising Attorney                          **NON-DETAINED**
Veronica A. Guerrero, Law Student Intern
Healy Ko, Law Student Intern
Laura Kokotailo, Law Student Intern
Saúl Ramírez, Law Student Intern
Megan Yan, Law Student Intern
Jerome N. Frank Legal Services Organization
Yale Law School*
P.O. Box 209090
New Haven, CT 06520-9090


## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## HARTFORD, CONNECTICUT

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| | ) | File No.: A ▮▮▮▮▮▮ |
| MARK REID, | ) | |
| *Respondent* | ) | |
| | ) | Telephonic Status Conference: |
| In removal proceedings | ) | April 9, 2019 |
| _____ | ) | Immigration Judge Philip Verrillo |


## RESPONDENT'S BRIEF IN OPPOSITION TO ADDITIONAL REMOVABILITY CHARGE UNDER INA SECTION 237(a)(2)(A)(ii) AND IN SUPPORT OF MOTION TO TERMINATE REMOVAL PROCEEDINGS

**Table of Contents**

I.      INTRODUCTION ............................................................................................ 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................... 3

III.    LEGAL STANDARD .................................................................................... 5

IV.     ARGUMENT .................................................................................................. 8

        A. DHS Erroneously Claims That §§ 21a-277(a) and 21a-278(b) Constitute CIMTs; However,
        the Connecticut Statutes Are Categorically Not CIMTs................................................. 9

        *1. The Statutes Categorically Lack the Requisite Mental State for CIMTs Because They Do
        Not Require Knowledge of the Substance Being Sold. ...................................................... 9*

        *2. The Statutes' Definition of "Sale" is Overbroad with Respect to Morally Reprehensible
        Conduct as It Includes "Gifting" and Is Indivisible........................................................ 14*

             a)    The Statutes Criminalize Gifting Without Remuneration or a Commercial
                   Transaction, Which Is Not Morally Reprehensible Conduct................................... 14
             b)    The Alternative Actions in the Statutes and Definition of "Sale" Are Indivisible. .. 17
             c)    Even Under the Modified Categorical Approach, the Record of Conviction Fails To
                   Establish That the Convictions Were for an Alternative Action that Is a CIMT ...... 19

        *3. The Statutes in Effect at the Time of Mr. Reid's Conviction Were Overbroad with Respect
        to Morally Reprehensible Substances and Are Indivisible. ........................................... 20*

             a)    The Connecticut Drug Schedule at the Time of Conviction Was Overbroad Because
                   It Included Benzylfentanyl and Thenylfentanyl. ...................................................... 21
             b)    The Connecticut Drug Schedule Is Indivisible with Respect to Specific Narcotic
                   Substance. ............................................................................................................... 22
             c)    Even Under the Modified Categorical Approach, the Record of Conviction Fails To
                   Establish the Specific Narcotic Substance. ............................................................. 24

        B. DHS Fails To Account for Evolving Conventions of Morality and Science Establishing that
        Low-Level, Drug-Related Offenses Are Not CIMTs. ...................................................... 25

        C. The Classification of "Crimes Involving Moral Turpitude" Is Unconstitutionally Vague
        Generally and As Applied to Mr. Reid's Convictions. .................................................... 28

        *1. Generally, the Classification of CIMT is Void for Vagueness......................................... 28*

        *2. Alternatively, the Classification of CIMTs is Unconstitutionally Vague as Applied to
        Drug Crimes. ................................................................................................................ 29*

V.      CONCLUSION ............................................................................................ 31

## I.   INTRODUCTION

The Department of Homeland Security ("DHS") fundamentally misunderstands how the categorical approach applies to Crimes Involving Moral Turpitude ("CIMT") determinations, as clarified by recent federal case law. DHS amended Mark Reid's ("Mr. Reid") Notice to Appear ("NTA") in October 2018, alleging a new charge of removability on the ground that two of his Connecticut convictions constitute CIMTs. Mr. Reid denies this charge. The underlying Connecticut statutes of conviction categorically do not qualify as CIMTs. Furthermore, DHS fails to recognize that modern scientific and societal conceptions view low-level drug sales as a public health crisis often related to the addiction of the seller rather than a moral failing. As such, the Government cannot sustain its CIMT charge and the Court should terminate removal proceedings.

DHS incorrectly alleges that Mr. Reid's convictions for Sale of a Narcotic Substance, Conn. Gen. Stat. § 21a-278(b), and Sale of Hallucinogen/Narcotic, Conn. Gen. Stat. § 21a-277(a) ("the statutes"), constitute two CIMTs not arising out of a single scheme of criminal misconduct under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(ii). The statutes are uniquely distinct from other states' drug sale laws that have been found by the Board of Immigration Appeals ("Board") to constitute CIMTs. Moreover, the correct application of the categorical approach, as clarified by recent federal, Board, and Connecticut case law, reveals that the statutes are both overbroad and indivisible with respect to each of the fundamental requirements of a CIMT: that it (1) be committed with a culpable mental state and (2) be morally reprehensible conduct. *See generally Matter of Silva-Trevino*, 26 I&N Dec. 826, 834 (BIA 2016). First, the statutes do not require the defendant to have knowledge of the substance sold to sustain a conviction; thus, the statutes categorically lack the requisite mental state to constitute a CIMT. Second, the definition of "sale" in the statutes is not divisible and is overbroad as it includes

A ▬▬▬▬▬

"offering" and "gifting," encompassing conduct that is not morally reprehensible. Third, the drug schedules corresponding to the statutes were overbroad at the time of the conviction because they criminalized substances that have since been removed from the Connecticut drug schedule and were not on the federal schedule, which demonstrates that their sale is not morally reprehensible conduct. Since the statutes lack the requisite mental state for a CIMT and criminalize conduct and substances that lack the reprehensibility required for a CIMT, these indivisible statutes cannot pass muster as CIMTs under the categorical inquiry.

Furthermore, DHS's amended NTA fails to account for the significant shift in public perception and scientific understanding of what drug crimes are and their roots in substance addiction. Our society has come to understand that drug dependency is a public health crisis, not a morality crisis. Connecticut, along with the rest of the country, now understands that drug sale statutes criminalize a wide swath of conduct apart from wholesale drug trafficking: conduct of individuals who exchange controlled substances due to an addiction or dependency. Furthermore, scientific understanding of the causes of drug addiction have clarified that addiction-related crimes are not the result of an individual's moral failing, but rather a disease that requires treatment and prevention like any other. As such, not all drug-related conduct encompassed by the indivisible statutes is morally reprehensible; and thus, any perception that the statutes qualify as CIMTs is legally deficient.

Finally, DHS's CIMT charge raises serious constitutional questions. The classification, "crime involving moral turpitude," is unconstitutionally vague, violating due process and is particularly defective as applied to drug statutes. The term is left undefined in the INA and is based on a nebulous and shifting concept of morality, which is unconstitutionally vague when applied to drug convictions. Accordingly, this Court must terminate Mr. Reid's removal proceedings.

A

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Mr. Reid has lived in the United States as a Lawful Permanent Resident ("LPR") for forty

years, since August 31, 1978, and has honorably served in the U.S. Army Reserve for six years.

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. Against

long odds, Mr. Reid has been able to overcome his addiction and has been living in Connecticut

for years as an indispensable member of his community, volunteering his time in service of others.

On November 13, 2012, DHS filed an NTA erroneously alleging that Mr. Reid was

removable under INA §§ 237(a)(2)(A)(iii) and (a)(2)(B)(i) for his convictions under Conn. Gen.

Stat. §§ 21a-277(a), 21a-278(b), and 21a-279(a), charging them as aggravated felonies and

controlled substance offenses. Today, these convictions are between nine and seventeen years old.

After the Supreme Court significantly clarified the application of the categorical approach in its

2016 decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), Mr. Reid filed a Motion to

Amend Pleadings on January 24, 2017, denying all charges of removability. Mr. Reid then

submitted a Motion to Terminate Proceedings arguing that, in light of *Mathis*, his convictions are

not removable offenses. On December 28, 2017, this Court granted Mr. Reid's motion as to the

aggravated felony charge of removability but denied his motion as to the controlled substance

offense charge, finding that § 21a-279(a) is divisible as to the particular narcotic substance at issue

and that his conviction under § 21a-279(a) qualified as a controlled substance offense under the

modified categorical approach.

On September 18, 2018, Mr. Reid submitted a Motion to Reconsider this Court's prior

decision that Mr. Reid's conviction under § 21a-279(a) constitutes a controlled substance offense

A ██████████

under INA § 237(a)(2)(B)(i); this motion is currently pending before the court.[1] Mr. Reid argues

that intervening law from the Board and a federal district court as well as available evidence from

Connecticut criminal defense attorneys confirm that Connecticut controlled substance statutes are

indivisible as to the nature of the substance and thus categorically not controlled substance offenses

under INA § 237(a)(2)(B)(i).

During the pendency of this motion, on October 16, 2018, DHS amended Mr. Reid's NTA,

additionally charging Mr. Reid's convictions under Conn. Gen. Stat. §§ 21a-277(a) and 21a-278(b)

as CIMTs under INA § 237(a)(2)(A)(ii). To advance this new ground of removability, DHS relies

on the same convictions that have been available since filing the original NTA in 2012, and which

were alleged therein.

On October 29, 2018, Mr. Reid appeared telephonically for a conference hearing on his

Motion to Reconsider. The Court did not reach the merits of the Motion to Reconsider; however,

the Court received oral pleadings from Mr. Reid denying the additional CIMT charge and set a

briefing schedule for the parties to address the new CIMT charge. On February 7, 2019, the Court

finalized an amended briefing schedule wherein DHS's brief was due February 28, 2019 and the

Respondent's brief was due March 28, 2019. Upon information and belief, DHS failed to file their

brief on February 28, 2019 and Mr. Reid was not served with any brief from DHS. Nevertheless,

Mr. Reid submits this brief in opposition to the additional CIMT charge under § INA

237(a)(2)(A)(ii) and in support of a motion to terminate removal proceedings.

---

[1] Pursuant to the attached motion, Mr. Reid moves this Court to terminate proceedings on the ground that the newly
added charge under INA § 237(a)(2)(A)(ii) is legally insufficient and renews the request for termination of proceedings
as related to INA § 237(a)(2)(B)(i), outlined in the Motion to Reconsider that is pending before the Court.

A

## III.   LEGAL STANDARD

Pursuant to INA § 237(a)(2)(A)(ii), a noncitizen is removable if convicted of two CIMTs after admission, not arising out of a single scheme of criminal misconduct. The INA does not define CIMT. Thus, federal courts reviewing final orders of removal have afforded immigration courts and the Board deference in defining this term under the *Chevron* doctrine. *Mendez v. Mukasey*, 547 F.3d 345, 346–47 (2d Cir. 2008). Generally, "the BIA has explained that the term 'moral turpitude' generally encompasses 'conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d. Cir. 2006) (per curiam) (quoting *Hamdan v. I.N.S.*, 98 F.3d 183, 186 (5th Cir. 1996) (citations omitted)). The Board has made clear that a CIMT "requires two essential elements: reprehensible conduct and a culpable mental state." *Matter of Silva-Trevino*, 26 I&N Dec. at 834.

One required element, culpable mental state, includes "either specific intent, deliberateness, willfulness, or recklessness." *Matter of Louissaint*, 24 I&N Dec. 754, 757 (BIA 2009) (internal citation omitted). In fact, "it is in the intent that moral turpitude inheres." *United States ex rel. Meyer v. Day*, 54 F.2d 336, 337 (2d Cir. 1931); *see also United States ex rel. Shladzien v. Warden of Eastern State Penitentiary*, 45 F.2d 204 (E.D. Pa. 1930). According to the Board, intentional conduct resulting in a meaningful level of harm may be considered morally turpitudinous; however, as the level of conscious behavior decreases, i.e., from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude. *In Re Solon*, 24 I&N Dec. 239, 242 (BIA 2007). Moreover, where no conscious behavior is required, there can be no finding of moral turpitude, regardless of the resulting harm. *Id.*; *see also Guevara v. Holder*, 533 F. App'x. 23, 26 (2d Cir. 2013) (unpublished) (requiring "an

A

assessment of both the state of mind and the level of harm required to complete the offense") (internal citation omitted). In interpreting the Board's definition of CIMTs, the Second Circuit focuses on the mental state reflected in the statute, emphasizing the requirement of "an evil or malicious intent." *Efstathiadis v. Holder*, 752 F.3d 591, 595 (2d Cir. 2014) (quoting *Michel v. I.N.S.*, 206 F.3d 253, 263 (2d Cir. 2000)). Because the CIMT classification turns on some degree of scienter, it is critical to determine whether one of the culpable mental states, such as knowledge or intent is an element of the statute (i.e. required to be proven for a conviction to stand).

The Board has found that conduct is "morally reprehensible," i.e. the other element of a CIMT, if "the act denounced by the statute grievously offends the moral code of mankind and would do so even in the absence of a prohibitive statute." *Matter of Serna*, 20 I&N Dec. 579, 584 n.8 (BIA 1992) (internal quotation marks omitted). The Second Circuit further requires conduct to be "morally reprehensible and intrinsically wrong" to be a CIMT. *Gayle v. Sessions*, 719 F. App'x. 68 (2d Cir. 2018) (quoting *Matter of Franklin*, 20 I&N Dec. 867, 868 (BIA 1994)). Relatedly, the Second Circuit's interpretation of moral character turns on "generally accepted moral conventions current at the time." *Repouille v. United States*, 165 F.2d 152, 153 (2d. Cir. 1947) (noting the test for lack of good moral character "is not those standards which we might ourselves approve, but whether 'the moral feelings, now prevalent generally in this country' would 'be outraged' by the conduct in question").

In the immigration context, the Board requires that reviewing courts employ the categorical approach, including as applicable, the modified categorical approach, to ascertain whether an offense constitutes a CIMT. *Matter of Silva-Trevino*, 26 I&N Dec. at 830. Under the categorical approach, federal immigration consequences are triggered only when the elements of the crime of conviction categorically match the elements of the federal ground of removability. *Mellouli v.*

A

*Lynch*, 135 S. Ct. 1980, 1991 (2015). Moreover, each statute must be individually evaluated to determine whether convictions under that statute constitute CIMTs. *See Mathis*, 136 S. Ct. at 2256. However, because CIMTs are not defined in the INA, the categorical approach must be used to determine whether the elements of the state offense match the generic definition of CIMT, which requires (1) a culpable state of mind and (2) the commission of a morally reprehensible activity. *See Matter of Silva-Trevino*, 26 I&N Dec. at 834; *Mathis*, 136 S. Ct. at 2247 (2016). If the minimum conduct that has a realistic probability of being prosecuted under the state statute of conviction does not necessarily involve conduct proscribed by the generic definition of CIMT, and the state statute is not divisible as to such conduct, then the statute is categorically not a CIMT. *Mathis*, 136 S. Ct. at 2247.

In *Matter of Silva Trevino*, the Board held that, because federal courts differ on whether the realistic probability test applies to the categorical analysis of CIMTs, courts should apply the Supreme Court's realistic probability test in deciding this issue, "unless controlling circuit law expressly dictates otherwise." 26 I&N Dec. at 832. Under this test, there must be "a realistic probability, not just a theoretical possibility" that the state actually criminalizes conduct falling outside the federal offense in order to find a categorical mismatch. *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007); *Moncrieffe v. Holder*, 569 U.S. 184 (2013)).

If a statute criminalizes more conduct than encompassed in the generic definition of a CIMT, then the categorical inquiry must end, unless the statute is found to be divisible. *Mathis*, 136 S. Ct. at 2256. A statute is divisible when it lists or provides for statutory *elements* in the alternative, thereby defining multiple crimes; however, a court must determine whether the alternative terms in a statute describe alternative means or actual elements of offense. *Id.* In doing

so, courts may look to three sources: (1) the text of the statute; (2) state case law; and if the case law and text of the statute are not dispositive, (3) a "peek" at the record of conviction. *Id*. at 2256–57.

Only after a reviewing court finds *with certainty* that the statute of conviction is divisible may the court proceed to the modified categorical approach. *Id*. at 2257 (applying "*Taylor*'s demand for certainty" to the divisibility analysis) (quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005)). Under the modified categorical approach, courts can review permissible documents within the record of conviction, which may include the plea colloquy, plea agreements, and charging documents, to determine under which alternative element the defendant was convicted. *Id*. at 2249 (relying on *Shepard*, 544 U.S. at 26). In applying the modified categorical approach, courts may not look at documents, such as parole records, local presentence reports, arrest reports, and criminal complaints. *United States v. Dantzler*, 771 F.3d 137, 146–47 (2d Cir. 2014). The court will then compare the specific elements to those of the federal generic offense or definition. *Mathis*, 136 S. Ct. at 2249. If and only if the elements are a match may the predicate conviction serve as the basis for federal immigration consequences. *Id*. at 2249.

## IV.   ARGUMENT

DHS erroneously alleges that Mr. Reid's convictions qualify as CIMTs, while in fact, Board precedent, Second Circuit case law, and Connecticut statutory language and case law definitively establish that Mr. Reid's convictions under §§ 21a-277(a) and 21a-278(b) categorically do not constitute CIMTs for several reasons. First, under a proper application of the categorical approach, the statutes do not require a culpable mental state as is necessary for a finding of a CIMT, thus rendering the Connecticut statutes overbroad with respect to culpable mental state or "*mens rea*." The statutes also criminalize both conduct and substances that are not morally

reprehensible, resulting in a categorical mismatch between the statutes and the requirements of a CIMT. Second, because CIMTs hinge on modern-day public conceptions of morality, under contemporary understandings of drug offenses and their roots in substance-addiction, low-level drug-related conduct, including "sale of narcotics," fails to qualify as morally turpitudinous conduct. Third, DHS's amended NTA charge fails on constitutional grounds: the classification of "crime involving moral turpitude" is unconstitutionally vague, particularly as applied to drug offenses. Thus, this Court must find that Mr. Reid's convictions do not constitute CIMTs and terminate his proceedings.

**A.     DHS Erroneously Claims That §§ 21a-277(a) and 21a-278(b) Constitute CIMTs; However, the Connecticut Statutes Are Categorically Not CIMTs.**

The Connecticut statutes are categorically not CIMTs because they are overbroad and indivisible. Unlike other state statutes criminalizing drug sales, most notably New York's, the Connecticut statutes at issue do not have a knowledge requirement that extends to every other element of the crime. Notably, the statutes do not require that a defendant have knowledge of the substance that was sold in order to sustain a conviction. Further, the Connecticut statutes criminalize conduct that is not morally reprehensible: the definition of "sale" is overbroad and includes conduct that does not require remuneration, and the Connecticut drug schedules at the time of Mr. Reid's convictions included substances not currently considered morally reprehensible at the state or federal level.

**1.     The Statutes Categorically Lack the Requisite Mental State for CIMTs Because They Do Not Require Knowledge of the Substance Being Sold.**

The requisite intent or knowledge element is absent from the statutes, rendering them categorically overbroad compared to elements of a CIMT. As described, *supra*, this Court must apply the categorical approach to determine whether Mr. Reid's convictions under §§ 21a-277(a)

A

and 21a-278(b) constitute CIMTs. To match the definition of a CIMT used by the Second Circuit and the Board, the state statutes must require (1) a culpable state of mind and (2) the commission of a morally reprehensible activity. Whether or not a crime is a CIMT "depends on 'the offender's evil intent or corruption of the mind.'" *Mendez*, 547 F.3d at 346-47 (quoting *In re Serna*, 20 I&N at 581). Both §§ 21a-277(a) and 21a-278(b)[2] are overbroad with respect to evil intent, which can be met if a statute requires "some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness." *Matter of Louissaint*, 24 I&N Dec. 754, 757 (BIA 2009). However, the Connecticut statutes do not require knowledge for all elements of the crime. Specifically, neither statute requires that a defendant have knowledge of the substance they are selling to sustain a conviction, let alone that the substance is a narcotic. Thus, the statutes categorically lack the requisite mental state to constitute a CIMT.

The Board has made clear that where statutes for sale of controlled substances are found to be CIMTs, the *intentional* nature of the offense is critical. For example, in *Matter of J.M. Acosta*, the Board noted that the New York statute of conviction "necessarily involves inherently reprehensible conduct [unlawful distribution of drugs] committed with a mental state of knowledge or intent." 27 I&N Dec. 420, 423 (BIA 2018). In contrast, the plain language of the Connecticut statutes is silent with respect to any required mental state. The statutes penalize any individual who "manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance." Conn. Gen. Stat. § 21a-277(a).

---

[2] While the statutes are distinct, their wordings are parallel for the purposes of the analysis in the brief, and therefore, are considered as such and referred to together as "statutes."

A ▮▮▮▮▮▮

From the face of the statute, a defendant need not know what the substance being sold actually is to be convicted under §§ 21a-277(a) and 21a-278(b). Moreover, Connecticut cases have clearly stated that "[t]o prove sale of a narcotic substance, the state need not prove beyond a reasonable doubt that the defendant knew the character of the substance. . . . The state need prove only that the defendant knowingly sold the substance to another person and that the substance was a narcotic." *State v. Mahon*, 729 A.2d 242, 244–45 (Conn. App. Ct. 1999) (noting also that "knowledge of the substance is not an essential element of the crime of sale of cocaine"). Therefore, the Connecticut statutes at issue lack any requisite mental state as to the nature of the substance; and, thus, categorically cannot constitute a CIMT, for which the requisite mental state must attach to all the prohibited conduct.

The Second Circuit has established that the requisite *mens rea* must attach at every element of an offense for it to constitute a CIMT. In *Efstathiadis v. Holder*, the court found that the *mens rea* requirement of a sexual assault statute did not necessarily extend to every element of the Connecticut statute for fourth-degree sexual assault, and it certified the question back to the Connecticut Supreme Court. 752 F.3d at 595. The question of intent with respect to the lack of consent element was of critical importance; the court noted that for that specific statute, "where the only factors affecting the moral character of the crime are the intention to receive sexual gratification (or to humiliate) and the *mens rea* associated with lack of consent, strict liability as to lack of consent would not lend support to categorization as a CIMT." *Id.* at 597. Similarly, in Mr. Reid's case, the intent to sell is not alone sufficient to characterize the statutes as CIMTs. Instead, since the existence of a controlled substance is an element of the offense, the statute must also require some level of knowledge as to the nature of the controlled substance that was sold to qualify as a CIMT. *Id.* at 596; *see also Matter of Silva-Trevino*, 26 I&N at 835. Because there is

A ▮▮▮▮▮▮▮▮

no *mens rea* requirement for this element in the statute, evil intent or a culpable mental state will not always be inherent in the conviction. Per the face of the statutes and the case law, a Connecticut court can convict someone under these statutes for sale of a narcotic even if he did not know what he was selling or that what he was selling was a narcotic.

This critical absence of a culpable mental state clearly distinguishes the Connecticut statutes at issue from the New York statute found to be a CIMT in *J.M. Acosta*. New York courts have found that knowledge of the substance that was sold is an element of the conviction of criminal sale in the third degree. *See People v. Green*, 60 N.Y.S.3d 712, 713 (N.Y. App. Div. 2017) (finding that "defendant's initial statement during the plea colloquy that he did not know that the substance was heroin . . . negat[ed] an element of criminal sale of a controlled substance in the third degree"). By contrast, the Connecticut statutes and case law as discussed, *supra*, clearly establish that knowledge of the substance that was sold is not an essential element of the crime of sale of narcotic. *Mahon*, 729 A.2d at 244–45.

Similarly, in another case where the Board found a drug sale statute to qualify as a CIMT, *In re Khourn*, 21 I&N Dec. 1041 (BIA 1997), knowledge of the substance was an element of the statute. The federal statute in *Khourn* made it a crime to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841. To convict under this statute, the jury "must be persuaded of the defendant's knowledge that the substance he is charged with trafficking was on the proscribed list," (i.e., whether the substance was controlled). *United States v. Chin Chong*, 991 F. Supp. 2d 453, 456 (E.D.N.Y. 2014) ("To sustain any of the four charges, the government must prove that the defendant knew the substance he allegedly imported and sought to possess with intent to distribute was a controlled substance."); *see also United States v. Walia*, 2014 WL

3734522, at *3 (E.D.N.Y. July 25, 2014) ("[T]he government need only prove that Defendant knew that the substance in question was a controlled substance or 'illegal drug,' that is, a substance proscribed under federal drug laws, but need not prove . . . that the Defendant knew that the substance in question was on the list of federally controlled substances."). This is distinct from the Connecticut statutes at issue, where the government does not need to prove that the defendant even knew the character of the substance at all.

To reach its conclusion in *Khourn*, the Board had to distinguish two CIMT cases, while affirming they are still good law: *Matter of Abreu-Semino*, 12 I&N Dec. 775, 775 (BIA 1968) and *Matter of Serna*, 20 I&N Dec. 579, 580 (BIA 1992). In the former, a drug sale conviction under 21 U.S.C. § 331(q) was found not to be a CIMT because the statute lacked the requisite intent element. *See Matter of Abreu-Semino*, 20 I&N at 777 ("In the statute under consideration, intent is nowhere mentioned in defining the prohibited act; it is nowhere mentioned in describing the crimes charged in the four counts of the information"). In the latter case, a conviction for possession of an altered immigration document under 8 U.S.C. § 1546 was found to not constitute a CIMT. *See Matter of Serna*, 20 I&N Dec. at 585 ("The statute under which the respondent was convicted does not specifically include the element of fraud. Although it requires knowledge that the immigration document was altered, such knowledge is not necessarily equated with the intention to use the document to defraud the United States Government."). In *Khourn*, the Board reasoned that the missing intent element in the statutes at issue in those cases explains why Serna and Abreu-Semino's convictions did not constitute CIMTs, while Khourn's conviction did. *In re Khourn*, 21 I&N Dec. at 1045–46. The Board's work to distinguish these two cases in *Khourn* further exemplifies that a *mens rea* (e.g. knowledge) requirement as to each element of a statute is

A

imperative to classifying it as a CIMT. Connecticut's drug sale statutes simply do not pass this test.[3]

The CIMT definition as applied to the Connecticut statutes at issue is not a categorical match. Every other drug sale statute found to be a CIMT under Board and federal case law has required knowledge of the substance sold as an element of the statute. Connecticut case law confirms that the statutes at issue in this case do not contain knowledge of the substance as a required element; as such, these crimes are not CIMTs.

### 2. The Statutes' Definition of "Sale" is Overbroad with Respect to Morally Reprehensible Conduct as It Includes "Gifting" and Is Indivisible.

Beyond the lack of *mens rea* in the Connecticut statutes as to knowledge of the substance, Mr. Reid's convictions under §§ 21a-277(a) and 21a-278(b) are not CIMTs because these statutes proscribe conduct that is not morally reprehensible, as required for CIMT classification. The statutes are overbroad and indivisible with respect to "sale," a term whose definition in the statute encompasses conduct, like gifting and mere offering, which is not morally reprehensible. Even if the modified categorical approach applied in Mr. Reid's case, the *Shepard* documents do not contain any information about what part of the "sale" definition Mr. Reid was convicted under.

#### a) The Statutes Criminalize Gifting Without Remuneration or a Commercial Transaction, Which Is Not Morally Reprehensible Conduct.

---

[3] Similarly, an Arizona statute for possession and sale of marijuana, Ariz. Rev. Stat. Ann. § 13-3405 (2019), found to be a CIMT in both *Matter of Gonzalez Romo*, 26 I&N Dec. 743 (BIA 2016) and *Barragan-Lopez v. Mukasey*, 508 F.3d 899 (9th Cir. 2007), required knowledge of the substance sold. "The plain language of § 13-3405 indicates the culpable mental state of 'knowingly' applies to each element of the listed offenses. Hence, the state cannot secure a conviction under § 13-3405 without proving the defendant knew the drug involved to be marijuana." *State v. Norris*, 211 P.3d 36, 39 (Ariz. Ct. App. 2009) (citations omitted). Notwithstanding any argument that the CIMT findings in these cases are erroneous on separate grounds because of evolving societal conceptions surrounding marijuana, these cases illustrate that similar to the New York and federal statutes discussed *supra*, the Arizona statute qualified as a CIMT because knowledge of the controlled substance's identity was an essential element of the crime.

A ████

The statutes of conviction that Mr. Reid was charged with are categorically overbroad with respect to morally reprehensible conduct. The definition of "sale" in the statute includes acts such as mere offers and gifting without remuneration, which are not necessarily morally reprehensible. "Sale," as referenced in § 21a-277(a),[4] is defined to include "any form of delivery, which includes barter, exchange or gift, or offer therefor." Conn. Gen. Stat. § 21a-240(50). Federal and state courts have recognized that Connecticut's definition of "sale" criminalizes non-commercial conduct without remuneration, such as the mere offer to sell, an attempt to sell, and a gift of a controlled substance. *United States v. Savage*, 542 F.3d 959, 966 (2d Cir. 2008) (finding that "sale" in Connecticut includes "mere offer to sell"); *State v. Webster*, 60 A.3d 259, 266 (Conn. 2013) ("[T]he plain meaning of the term sale within the context of narcotics transactions includes . . . attempts to transfer narcotics."); *State v. Wassil*, 658 A.2d 548, 556–57 (Conn. 1995) (emphasizing that a gift of narcotics would constitute a "sale" under § 21a-277); *State v. Anonymous (1976-3)*, 355 A.2d 729, 730 n.2 (Conn. Super. Ct. 1976) ("A 'sale' under the statute does not require that the transfer be for profit or for any remuneration."). An offer to sell could constitute a proscribed "sale" under the statute even if the individual is not "in possession of goods" or does not "have control over them." *State v. Brown*, 301 A.2d 547, 553 (Conn. 1972). Additionally, the state legislature has intended for "sale" as defined in § 21a-240(50) to not be limited to "barter, exchange or gift, or offer therefor," but rather that sale encompass "any form of delivery"[5] of narcotics, "whether or not the delivery is also a 'barter, exchange or gift, or offer therefor.'" *Wassil*, 658 A.2d at 557.

---

[4] For the purposes of analyzing divisibility, all references to § 21a-277(a) will be treated as including § 21a-278(b), because they reference the same definition for "sale" and are analytically identical for the purposes of this brief.

[5] In Connecticut, "delivery" is defined as "the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Conn. Gen. Stat. § 21a-240(11).

The broad range of conduct proscribed by the statutes does not require the actual exchange of money for drugs or even the actual exchange or possession of the drugs (e.g. offers of drugs suffice), thus categorically lacking the morally reprehensible conduct necessary for a CIMT. For example, courts have indicated that a drug offense without remuneration does not rise to the level of depravity believed to be inherent in a federal drug trafficking crime, which requires a commercial element. In *Moncrieffe v. Holder*, the Supreme Court found a significant difference between the social sharing of small amounts of marijuana and drug trafficking offenses. 569 U.S. 184, 206 (2013). The Court held that sharing a small amount of marijuana without remuneration "does not fit easily into the everyday understanding of trafficking, which ordinarily . . . means some sort of commercial dealing." *Id.* (internal quotations omitted) (citing *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 574 (2010)). In short, the Court implied that because no money was exchanged, the social sharing of marijuana is a lesser offense than the federal drug trafficking crime. The *Moncrieffe* Court thus recognized that drug sale statutes proscribe a wide spectrum of conduct including less culpable and non-commercial exchanges as compared to the more serious commercial dealings involved in wholesale drug trafficking.

Similarly, the Connecticut statutes at issue here do not require exchange of payment or any particular amount of drug to be exchanged to secure a conviction. In *United States ex rel. De Luca v. O'Rourke*, the Eighth Circuit recognized that "there may be technical, inadvertent and insignificant violations of the laws relating to narcotics, which do not involve moral turpitude." 213 F.2d 759, 762 (8th Cir. 1954). There, the court expressly accepts the reality that drug laws proscribe a range of conduct, some of which fails to rise to the level of moral reprehensibility. The Seventh Circuit, in affirming a district court sentencing order, acknowledged the district court's finding of a stark difference in the moral reprehensibility of a drug trafficking businessman and

one who "sells drugs because they are desperate to get their own fix." *United States v. Thurman*, 179 F. App'x 971, 972 (7th Cir. 2006) (determining the reasonableness of a sentence of a defendant based on a drug-related conviction). The Seventh Circuit did not refute the district court's reasoning "that selling drugs merely for profit is 'more serious and more reprehensible than the person that sells drugs just because that's the way they get their own drugs to satisfy their own addiction,' because [that person] has less of a choice not to sell drugs." *Id.*

The reasoning of the *Moncrieffe* Court, the Eighth Circuit, and the Seventh Circuit applies with great force in Mr. Reid's case. Because the statutes here also criminalize activities that do not involve commercial dealings, such as mere offers to sell and gifting, they encompass conduct that does not rise to the level of being morally reprehensible or depraved. Similar to the definition of "sale," which is one of the enumerated actions in both §§ 21a-277(a) and 21a-278(b),[6] the other "actions" on the face of the statutes criminalize "offer[ing]" and "giv[ing]" without remuneration as ways of violating the statute. This provides further support that the statute is overbroad with respect to the morally reprehensible conduct element of CIMTs.

> **b)** **The Alternative Actions in the Statutes and Definition of "Sale" Are Indivisible.**

Both the statutory language containing the enumerated actions (of which sale is one) and the incorporated definition of sale itself are indivisible, so the categorical inquiry must conclude that the statutes are not CIMTs. The text of the statute establishes that the listed alternative actions in § 21a-277(a) and 21a-278(b) are *means* and not *elements* of committing a drug-sale offense.

---

[6] As noted *supra*, § 21a-277(a) makes it a crime to "manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person any controlled substance." Conn. Gen. Stat. § 21a-277(a). Section 21a-278(b) has analytically identical language, stating "[n]o person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person . . . a narcotic substance." Conn. Gen. Stat. § 21a-278(b).

The Connecticut statutes do not assign different punishments based on the specific act; instead, each listed alternative carries the same punishment, comprising possible *means* of committing a single crime. *See Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then . . . they must be elements. Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it inlucdes only a crime's means of commission.") (internal citations omitted). Moreover, a jury need not making a finding as to the specific enumerated action that an individual committed to be convicted under these statutes. *State v. Bailey*, 842 A.2d 590, 594–95 (Conn. App. 2004). Likewise, the definition of sale is indivisible because a jury need not identify which specific act within the definition of sale an individual committed in order to convict. Thus, the statutes are indivisible with respect to the enumerated actions and the definition of sale.

Case law further establishes that the statutes are indivisible with respect to alternative actions and with respect to the definition of sale. In *State v. Bailey*, the Connecticut Appellate Court did not require a "specific unanimity instruction" for the jury with respect to the underlying conduct to find a violation of § 21a-278(b), which is structurally identical to § 21a-277(a). 842 A.2d 590, 594–95 (Conn. App. 2004). Moreover, in *State v. Cavanaugh*, the state charged the defendant under § 21a-277(a) "with conspiring to distribute, sell *or* otherwise dispense a narcotic substance" and failed to specify the precise act that the defendant had committed to violate the statute. 583 A.2d 1311, 1314 (Conn. App. 1990) (emphasis added). In *United States v. Epps*, a federal district court in Connecticut analyzed in great detail the divisibility of § 21a-277(a) and concluded that the text of the statute and state case law establish that "the actions listed in the statute are indivisible and define only a single crime." 322 F. Supp. 3d 299, 305–6 (D. Conn. 2018). Because a unanimous jury or prosecutor does not need to identify the specific enumerated act or type of sale that was carried out, the case law establishes that the alternative options in the

A ▬▬▬

statutes describe the means of commission of one crime rather than elements of distinct crimes, rendering the statute indivisible in this respect.

However, even assuming *arguendo* that the text and case law are not dispositive on the issue of divisibility with respect to alternative acts, the record of conviction affirms that the statutes are indivisible in this regard. The plea colloquy for the § 21a-278(b) conviction only notes that Mr. Reid was charged with "sale" without specifying which type of sale from either the alternative enumerated actions in the statute or the definition of sale incorporated into the statute. Exh. 34, Tab B (DHS Position on Resp.'s Removability (Apr. 21, 2017)). The document thus fails to establish the underlying conduct beyond the generic term "sale," confirming that "sale" is not divisible.

Given that the record of conviction does not contradict the statutory text and case law, this Court must find that §§ 21a-277(a) and 21a-278(b) are indivisible with respect to morally reprehensible conduct and as to the definition of sale. Because the statutes are overbroad to the CIMT charge and indivisible, this Court must find that the Connecticut statutes are not categorically CIMTs.

> c)   **Even Under the Modified Categorical Approach, the Record of Conviction Fails To Establish That the Convictions Were for an Alternative Action that Is a CIMT.**

Even if this Court were to find the statutes divisible with respect to the alternative actions and the definition of "sale" and apply the modified categorical approach, Mr. Reid's conviction records cannot establish that the underlying conduct constitutes a CIMT. As discussed *supra,* the record does not contain any information about what part of the "sale" definition Mr. Reid was convicted under. Therefore, DHS cannot meet its burden in proving that Mr. Reid was convicted of the portion of the statute that qualifies as a CIMT.

A ▮

The documents included in Mr. Reid's record of conviction fail to identify what type of "sale" he was convicted for, nor do they make reference to any of the terms defining "sale" in the statute. *See* Exh. 34, Tabs B–D (DHS Position on Resp.'s Removability (Apr. 21, 2018)) (containing the records for both §§ 21a-277(a) and 21a-278(b)). Therefore, the purported *Shepard* documents fail to identify whether Mr. Reid pled guilty to any type of "sale" that would be "morally reprehensible" as required to constitute a CIMT. Moreover, the documents establish that Mr. Reid pled under the Alford doctrine for his § 21a-278(b) conviction and both of his § 21a-277(a) convictions, which means that he neither pled to nor confirmed the factual allegations proffered by the government. Therefore, regardless of whether the statute is divisible and permitting use of the modified categorical approach, this Court must conclude that Mr. Reid's convictions under the statutes are categorically not CIMTs.

### 3. The Statutes in Effect at the Time of Mr. Reid's Conviction Were Overbroad with Respect to Morally Reprehensible Substances and Are Indivisible.

Furthermore, the Connecticut statutes at the time of Mr. Reid's convictions were overbroad and indivisible with respect to drug schedule: they included two substances that were not only excluded from the federal drug schedules but also eventually removed from the Connecticut schedule by the state itself. This difference demonstrates that conduct involving these substances cannot be considered morally reprehensible. In 2004 and 2010, the time of Mr. Reid's convictions, Connecticut criminalized two additional substances, benzylfentanyl and thenylfentanyl, beyond the federal schedule on its state drug schedules. However, conduct involving these two substances is not "morally reprehensible," since Connecticut affirmatively removed these substances from its drug schedules shortly after Mr. Reid was convicted, indicating that the state itself declined to find any element of criminality for conduct involving these substances. Moreover, at the time of

A

conviction, the federal schedules did not criminalize theses substances even if the state did. *Compare* Conn. Agencies Regs. §§ 21a-243-7(a)(10), 7(a)(52) (2000) *with* 21 U.S.C. § 802(6) (2000).[7] Since these two drugs are not listed on the federal schedule or the Connecticut schedule, it follows that the federal and state governments do not consider them morally reprehensible or even harmful sufficient to criminalize them. Because the Connecticut drug schedule in effect at the time of Mr. Reid's relevant convictions was overbroad and indivisible with respect to morally reprehensible substances, the statues at issue are not CIMTs.

        a)     **The Connecticut Drug Schedule at the Time of Conviction Was Overbroad Because It Included Benzylfentanyl and Thenylfentanyl.**

The Connecticut drug schedule in effect at the time of Mr. Reid's convictions was overbroad with respect to morally reprehensible substances. More specifically, the inclusion of two substances that were later removed and that were never on the federal drug schedule requires a finding that the Connecticut drug schedule at the time was overbroad, and that the underlying statutes are not CIMTs.

The Drug Enforcement Administration ("DEA") conducted studies of benzylfentanyl and thenylfentanyl, concluding that these substances were "essentially inactive, with no evidence of abuse potential" and "lacked morphine-like addictive properties." *Correction of Code of Federal Regulations: Removal of Temporary Listing of Benzylfentanyl and Thenylfentanyl as Controlled Substances*, 75 Fed. Reg. 37300 (June 29, 2010).[8] In *Samas v. United States*, a judge in the federal district of Connecticut relied on the DEA's findings to conclude that benzylfentanyl and

---

[7] Benzylfentanyl and thenylfentanyl were listed on the state schedule and not the federal schedule at the time of Mr. Reid's 2002 convictions under § 21a-279(a), his 2004 convictions under § 21a-277(a), and his 2010 conviction under § 21a-278(b). The drugs were removed from the state schedule on June 20, 2011, and the federal schedule has not included the drugs since 1986. Conn. Agencies Regs. §§ 21a-243-7(a)(10), 7(a)(52) (2011); 21 C.F.R. § 1308.11 (Oct. 29, 1985) (stating that benzylfentanyl and thenylfentanyl would be removed from the federal schedule after a year).

[8] As a result, the DEA allowed these substances to expire from the federal schedule in 1986 and formally removed them in 2010. 75 Fed. Reg. 37300.

A

thenylfentanyl are "pharmacologically inactive," and therefore not narcotic drugs under 21 U.S.C.

§ 802(17). No. 3:10-CV-422 (JCH), 2011 WL 221866, at *3–4 (D. Conn. Jan. 20, 2011). A finding

that these two substances are inactive and lack addictive properties indicates that they lack

properties that would render them criminal. Connecticut later removed these drugs from its

schedules on June 20, 2011, thus establishing that the state itself found these substances not worth

criminalizing. By denuding these substances of any punitive repercussions, the state demonstrated

that sale involving these additional substances is not morally reprehensible.[9]

Mr. Reid's case is, yet again, distinguishable from *J.M. Acosta*, this time in terms of

overbreadth with respect to substance. Unlike the New York schedule in that case, Connecticut's

drug schedule was definitively overbroad with respect to narcotic substance at the time of Mr.

Reid's convictions.[10] Additionally, while the Board in *J.M. Acosta* found it "[un]necessary to

compare a Federal statute to the [state] statute of conviction because the Federal controlled

substances schedules and statutes are not controlling for purposes of determining whether a crime

involves moral turpitude," the Board only noted that the distinction between the federal and state

drug schedules was irrelevant. 27 I&N Dec. at 423. The Board specifically did not consider any

change to criminalization of a drug *in the same state* as the respondent was initially convicted

under, as is the case here.

   b)   **The Connecticut Drug Schedule Is Indivisible with Respect to**
        **Specific Narcotic Substance.**

---

[9] However, because the removal of the substances did not occur until *after* Mr. Reid's convictions, he could still be charged under §§ 21a-277(a) or 21a-278(b) for conduct involving those substances.

[10] Courts have repeatedly affirmed that the Connecticut schedule bans substances that are not federally controlled. *See, e.g., Samas v. United States*, No. 3:10-cv-422 (JCH), 2011 WL 221866, at *4 (D. Conn. Jan. 20, 2011) (holding that drug convictions under §§ 21a-277(a) and 21a-279(a) could not serve as predicate felony drug convictions under the Armed Career Criminal Act ("ACCA") because inclusion of benzylfentanyl and thenylfentanyl made Connecticut's drug schedule overbroad).

In addition to being overbroad with respect to morally reprehensible substances, the statutes are also indivisible as to the specific narcotic substance, and thus are categorically not CIMTs.

The plain text of the statutes establishes that the specific type of narcotic substance is an alternative means of violating the statute rather than an element. *See* Conn. Gen. Stat. § 21a-278(b) ("Any person who [sells] to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance . . . shall be imprisoned . . . ."). The different substances do not carry different penalties, nor do they require the prosecutor to select a specific substance (which would signal that different substances constituted elements under *Mathis*). 136 S. Ct. at 2256.

As Mr. Reid has argued in his Motion to Reconsider submitted on September 18, 2018, arguments which are incorporated here as well, Board and Connecticut case law confirm that his drug conviction statutes are indivisible with respect to specific narcotic substance. *See* Exh. 46, (Respondent's Motion to Reconsider in Light of New Authority (Sept. 18, 2018)). The Board in *In re Chavarria Restrepo* held that § 21a-277(a) is not divisible with respect to substance. *In re Chavarria Restrepo*, A 046 570 410, at 1 (BIA April 26, 2018) ("*Chavarria Restrepo*"). Applying the test set forth in *Mathis*, the Board held that § 21a-277(a) creates alternative means, and not elements, of satisfying the statutory element of "narcotic substance." *Id*. The Board relied on a Connecticut Supreme Court case, *State v. Rawls*, 502 A.2d 374 (Conn. 1985), in its divisibility determination . In *Rawls*, the court found that in § 21a-279(a), which is analytically similar to §§ 21a-277(a) and 21a-278(b), the identity of the specific narcotic substance is a means rather than an element of the offense. *Id*. at 379.

Similarly, in *United States v. Epps*, the United States government conceded that under Connecticut law, the specific substance is a means and not an element,of violating § 21a-277(a). 322 F. Supp. 3d at 307 ("The Government does not appear to dispute that under Connecticut state case law the type of substance at issue is not a separate element of the offense."). The *Epps* court held that § 21a-277(a) is indivisible with respect to conduct and substance. *Id.* at 306–07.

Moreover, the jury instructions illuminate that a jury is not required to identify the substance; a jury only needs to find that the substance was a narcotic substance. *See State v. Vessichio*, 500 A.2d 1311, 1316–17 (Conn. 1985) (upholding jury instructions for § 21a-277(a)); *State v. Green*, 838 A.2d 1030, 1037–38 (Conn. App. 2004) (upholding jury instructions for § 21a-278(b) that did not include specific substances as an element).

Accordingly, the statutes are overbroad and indivisible with respect to a morally reprehensible substance, and thus the statutes are categorically not CIMTs.

###### c)    Even Under the Modified Categorical Approach, the Record of Conviction Fails To Establish the Specific Naroctic Substance.

Even if the statutes were divisible for specific narcotic substance, Mr. Reid's record of conviction does not identify any specific narcotic substance and thus cannot support a CIMT charge. The Court's categorical inquiry need not reach this issue because §§ 21a-277(a) and 21a-278(b) are indivisible and categorically lack the morally reprehensible conduct to constitute a CIMT. However, even assuming *arguendo* that the statute is divisible and the modified categorical approach applies, the result is the same: the record of convictions fails to establish that Mr. Reid was convicted of any offense involving a controlled substance considered morally reprehensible under the law. This finding was confirmed by this Court in its December 28, 2017 order on Mr. Reid's removability. For Mr. Reid's conviction under § 21a-278(b), the Court correctly found:

A ▆▆▆▆▆▆

DHS submitted a certified copy of the disposition record for Respondent's conviction for C.G.S. § 21a-278(b). This document does not indicate what narcotic substance his offense involved. DHS also submitted a copy of the plea transcript. The Court acknowledges that Respondent entered an Alford Plea, so the Court cannot consider the factual basis for the plea. The plea transcript in this case is not sufficient to prove that Respondent pleaded guilty to a charge that was narrowed to generic limits.

Decision & Order on Respondent's Motion to Terminate Proceedings, at 15–16 (Dec. 28, 2017) (internal citations omitted). For Mr. Reid's § 21a-277(a) convictions, the Court determined that the disposition record "does not indicate that Respondent pleaded guilty to a charge that was narrowed to generic limits . . . . [and] is not sufficient to establish that a substance controlled in the CSA underlies Respondent's convictions." *Id.* at 14.

Even under the modified categorical approach, Mr. Reid must prevail; the records of his conviction do not establish what specific narcotic substance was involved rendering it impossible to determine that the reprehensible conduct element of a CIMT has been met. Thus, the CIMT charge fails. *Mathis*, 136 S. Ct. at 2257.

**B.     DHS Fails To Account for Evolving Conventions of Morality and Science Establishing that Low-Level, Drug-Related Offenses Are Not CIMTs.**

Societal standards of morality as related to drug-related conduct have changed significantly, compelling the conclusion that Mr. Reid's convictions do not constitute CIMTs. Mr. Reid's convictions under §§ 21a-277(a) and 21a-278(b)—that is, for low-level, drug-related offenses, which is the type of conduct that those statutes encapsulate given no requirement for any particular quantity of substance—are no longer considered morally reprehensible by society. Courts have repeatedly recognized that "moral turpitude" is "measured against contemporary moral standards and may be susceptible to change." *Zaranska v. U.S. Dep't of Homeland Security*, 400 F. Supp. 2d 500, 520 (E.D.N.Y. 2005); *see also United States v. Gayle*, 996 F. Supp. 2d 42, 50 (D. Conn. 2014) ("Crimes involving moral turpitude 'shock the public conscience' and are

'contrary to the accepted rules of morality and the duties owed between persons or to society in general.'") (internal citation omitted); *United States v. Francioso*, 164 F.2d 163 (2d Cir. 1947) (recognizing that "the standard [i]s, not what we personally might set, but the commonly accepted mores: i.e. the generally accepted moral conventions current at the time, so far as we could ascertain them") (internal citations and quotation marks omitted).

Under prevailing "contemporary moral standards," informed by evolving scientific understandings, today, low-level, drug-related offenses, like those that Mr. Reid has been convicted under, are not considered morally turpitudinous and, therefore, are not CIMTs. Notably, Connecticut permits courts to discretionarily invoke an accelerated rehabilitation program in lieu of a sentence for these offenses. Conn. Gen. Stat. § 54-56e. Moreover, scholars, journalists, and legislatures recognize that such offenses are not morally depraved. Instead, they are broadly considered a public health concern that cannot be addressed through outdated and draconian drug laws. These laws, which are considered products of then-New York Governor Nelson Rockefeller's tough-on-drugs policy, imposed mandatory life sentences for low-level offenders, including drug dealers and addicts. *See* Brian Mann, *The Drug Law That Changed How We Punish*, NPR (Feb. 14, 2013), https://www.npr.org/2013/02/14/171822608/the-drug-laws-that-changed-how-we-punish. Yet, even those who advocated for these "Rockefeller drug laws" of the 1970s consider them a failure.[11] Because of these laws, nearly half a million residents, including Mr. Reid, have served or are currently serving disproportionate sentences for low-level, drug-related offenses. *Id.*

---

[11] Joseph Persico, an aide who helped Rockefeller push for these zero-tolerance drug policies in the 1970s, noted: "I concluded very early that this was a failure. It's filling up the prisons, first-time offenders. . . . This was obviously unjust—and not just unjust, it was unwise; it was ineffective." Brian Mann, *The Drug Law That Changed How We Punish*, NPR (Feb. 14, 2013), https://www.npr.org/2013/02/14/171822608/the-drug-laws-that-changed-how-we-punish.

A ▮▮▮▮▮

Furthermore, the public has dramatically shifted their position on low-level, drug-related offenses, like those comprising Mr. Reid's convictions. For instance, the ubiquity of opioid addition has recently been declared a public health emergency—rather than a public *safety* emergency—with state governments committing significant resources to drug treatment and recovery services.[12] For example, Massachusetts committed $20 million to drug rehabilitation programs and created a committee in the state senate to address drug addiction in the community. *Id*. Notably, scientific findings have shed light on substance abuse and addiction as a disease affecting the brain. A recognition of the failure of the war on drugs has fostered the policy shift from incarceration to rehabilitation. *Id*.

In short, our society's past treatment of drug addiction, which has led drug-dependent individuals to sell drugs, has precipitated a response today focused on public health and rehabilitation, as opposed to the more punitive incarceration. According to the Pew Research Center, in a survey conducted in February 2014, sixty-three percent of Americans support moving away from mandatory prison sentences for non-violent drug crimes like Mr. Reid's convictions under §§ 21a-277(a) and 21a-278(b). *America's New Drug Policy Landscape*, PEW RESEARCH CENTER (Apr. 2, 2014), http://www.people-press.org/2014/04/02/americas-new-drug-policy-landscape/. This is indicative of a collective transformation regarding the societal understanding of low-level, non-violent, drug-related offenses, like those proscribed by §§ 21a-277(a) and 21a-278(b), as not being morally reprehensible, instead meriting an investment of recourses to rehabilitating individuals, like Mr. Reid, who have suffered from addiction.

---

[12] *See* Shira Schoenberg, *Public Attitudes and Policy Toward Drug Addiction Shift from 'War on Drugs' to Focus on Treatment*, MASS LIVE (Apr. 11, 2014), https://www.masslive.com/politics/index.ssf/2014/04/public_attitudes_and_policy_to.html.

These attitude shifts regarding drugs demonstrate that low-level, drug-related crimes, like those at issue in Mr. Reid's case, do not offend the moral sensibilities of the public today. In fact, the affirmative acts of local and state government and law enforcement to reframe drug use as a public health issue and the gradual decriminalization of certain low-level, drug-related conduct affirms that the standard of morality regarding drugs has shifted. Thus, under prevailing norms, low-level, drug-related statutes, like the ones underlying Mr. Reid's convictions, do not constitute CIMTs.

### C.   The Classification of "Crimes Involving Moral Turpitude" Is Unconstitutionally Vague Generally and As Applied to Mr. Reid's Convictions.

#### 1.   Generally, the Classification of CIMT is Void for Vagueness.

Mr. Reid's convictions cannot constitute CIMTs because the CIMT classification is void for vagueness and therefore unenforceable. The term CIMT, like the term "crime of violence," violates due process because it lacks a clear definition and fails to provide an individual with an understanding or notice of what exactly is proscribed. "Crime of violence," defined in 18 U.S.C. § 16(b), is analogous to "crimes involving moral turpitude" in the immigration context: it provides a category of crimes, a conviction for which can render a noncitizen removable. The language of 18 U.S.C. § 16 reads as follows:

> (a) the offense has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In *Sessions v. Dimaya*, the Supreme Court found the term "crime of violence," as defined under § 16(b) to be "impermissibly vague" in the immigration context and "suffer[ing] from the same constitutional defect," as the federal law's definition of "violent felony." 138 S. Ct. 1204, 1210 (2018) (citing *Johnson v. United States*, 135 S. Ct. 2551 (2015)). Section 16(b), defining a

"crime of violence" and cross-referenced in the aggravated felony definition in INA §
101(a)(43)(F), did not meet the minimum test for fairness and due process under the law. *See
Dimaya*, 138 S. Ct. at 1212–16. Instead, the statute "require[d] the court to identify a crime's
'ordinary case' in order to measure the crime's risk, but 'nothing in § 16(b) helps courts to perform
that task." *Id*. at 1215. Moreover, the statute contained no guidance about what level of risk made
a crime "violent." *Id*.

The *Dimaya* reasoning applies to the term CIMT as well: the term CIMT, for many cases,
leaves judges rudderless as to which crimes fall under its category. Although there is BIA
precedent attempting to provide guidance on CIMTs or classifying a certain statute or other as a a
CIMT, the *Dimaya* court reached this decision despite Board precedent there as well that
purportedly provided guidance to immigration judges. *See, e.g.*, *Matter of Francisco- Alonzo*, 26
I&N Dec. 594 (BIA 2015) (finding that the "ordinary case" analysis was appropriate in considering
whether a state offense was categorically a crime of violence under § 16(b)); *Matter of Velasquez*,
25 I&N Dec. 278 (BIA 2010) (finding physical force necessary to establish a crime of violence
conviction must be "violent" force). The CIMT statute is similarly vague: it gives judges no tools
to evaluate what is "moral turpitude." Under the *Dimaya* framework, it does not matter if the Board
attempted to clarify this term, since that does not negate the vagueness in the statute. As such, Mr.
Reid, as in the case of Respondent James Dimaya, is entitled to constitutional protections against
impermissibly vague statutes, as applied in his immigration case.

> **2.** **Alternatively, the Classification of CIMTs is Unconstitutionally Vague as Applied to Drug Crimes.**

Drug offenses do not fit easily into the categories that have historically been found to be
CIMTs, such as crimes of fraud. In *Jordan v. DeGeorge*, the Supreme Court considered "whether
conspiracy to defraud the United States of taxes on distilled spirits is a 'crime involving moral

turpitude' within the meaning of s[ection] 19(a) of the Immigration Act of 1917." 341 U.S. 223, 223–24 (1951). In *DeGeorge*, the Court emphasized "that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." *Id.* at 229. The Court added that it was "therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a 'crime involving moral turpitude.'" *Id.* In other words, "[w]hatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which *fraud was an ingredient* have always been regarded as involving moral turpitude." *Id.* at 232 (emphasis added); *see also Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1250 (9th Cir. 2019) (finding that the holding in *DeGeorge* controlled in a challenge to the CIMT statute as unconstitutionally vague). However, *DeGeorge*'s holding that CIMTs are not constitutionally impermissible is properly limited to fraud crimes. Therefore, *DeGeorge* does not preclude as-applied challenges to certain crimes—beyond fraud—that do not meet the test the Court set forth: "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.* at 231–32.

In the context of drug offenses, particularly §§ 21a-277(a) and 21a-278(b), CIMTs—similar to the "crime of violence" statute that the Supreme Court considered in *Dimaya*—satisfy the void-for-vagueness doctrine, as it does not meet the test presented in *DeGeorge*. A comparison of the statutes at issue in *Dimaya* and the statutes at issue here in this case reveal analogous, perplexing terms that have the same result of being impermissibly vague as applied to drug offenses. As noted above, 18 U.S.C. § 16(b), at issue in *Dimaya*, defined a crime of violence as one containing an element of "use, attempted use, or threatened use of physical force" or "any other offense that is a felony and that, by its nature, involves a substantial risk" of physical force

committed. 18 U.S.C. § 16. Similarly, in its amended NTA, DHS alleges that Mr. Reid is removable pursuant to INA § 237(a)(2)(ii), which reads:

> Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor [sic] and regardless of whether the convictions were in a single trial, is deportable.

As was the case for § 16(b), INA § 237(a)(2)(ii)'s reference to "crimes involving moral turpitude" is unconstitutionally vague as applied to drug offenses because it likewise "isn't your everyday ambiguous statute. It leaves the people to guess about what the law demands—and leaves judges to make it up." *Dimaya*, 138 S. Ct. 1204 (2018), at 1224 (Gorsuch, J., concurring). Such a vague statute in the context of drug offenses—one of the "peripheral cases,"—does not meet the test the Court presented in *DeGeorge* with regard to CIMTs. *DeGeorge*, 341 U.S. 223 (1951), at 232 (holding that "[w]ithout exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude," *DeGeorge*, 341 U.S. 223 (1951), at 227, regardless of "whatever else the phrase [CIMT] may mean in peripheral cases."). Therefore, the *DeGeorge* reasoning only extends insofar as crimes of fraud are CIMTs, if at all. Thus, the term "crime involving moral turpitude" is unconstitutionally vague as applied to drug offenses, as in Mr. Reid's case.

## V.    CONCLUSION

Under the categorical approach, Mr. Reid's convictions under §§ 21a-277(a) and 21a-278(b), which are overbroad and indivisible statutes, do not constitute CIMTs. Even if the modified categorical approach were to apply, this Court cannot find that his conviction records demonstrate a categorical match with the requirements of a CIMT. Moreover, constitutional violations render the CIMT charge ineffectual. Accordingly, Mr. Reid is not removable on CIMT grounds, and this Court must terminate proceedings.

A

Date: March 28, 2019

Respectfully submitted,

Reena Parikh, Supervising Attorney
Veronica A. Guerrero, Law Student Intern
Healy Ko, Law Student Intern
Laura Kokotailo, Law Student Intern
Saúl Ramírez, Law Student Intern
Megan Yan, Law Student Intern

JEROME N. FRANK LEGAL SVCS. ORG.
Yale Law School[*]
PO Box 209090
New Haven, CT 06520-9090
Phone: (203) 436-8971
Fax: (203) 432-1426
reena.parikh@ylsclinics.org

*Counsel for Respondent*

---

[*] This brief has been prepared by a clinic operated by Yale Law School, but does not purport to present the school's institutional views, if any.

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**HARTFORD, CONNECTICUT**

<table>
<tr><td>In the Matter of:</td><td>)<br>)<br>)</td><td>File No.: A ▮▮▮▮▮▮</td></tr>
<tr><td>MARK REID,<br><i>Respondent</i></td><td>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>In removal proceedings.</td><td>)<br>)<br>)</td><td></td></tr>
</table>

**[PROPOSED] ORDER OF THE IMMIGRATION JUDGE**

Upon consideration of the Respondent's Motion to Terminate Proceedings, it is HEREBY ORDERED that the motion be ☐ **GRANTED** ☐ **DENIED** because:

☐ DHS does not oppose the motion.
☐ The respondent does not oppose the motion.
☐ A response to the motion has not been filed with the court.
☐ Good cause has been established for the motion.
☐ The court agrees with the reasons stated in the opposition to the motion.
☐ The motion is untimely per _____.
☐ Other:

_____          _____

Date                                   Immigration Judge Philip Verrillo

_____

**Certificate of Service**

This document was served by: ☐ Mail        ☐ Personal Service
To: ☐ Alien   ☐ Alien c/o Custodial Officer ☐ Alien's Atty/Rep ☐ DHS

Date: _____          By: Court Staff _____

## CERTIFICATE OF SERVICE

This is to certify that on March 28, 2019, I caused a true and correct copy of

**Respondent's Motion to Terminate, Brief in Opposition to the Additional Removability**

**Charge, and the foregoing documents** to be hand delivered to counsel for the Department of

Homeland Security at the Trial Attorney Unit, U.S. Department of Homeland Security, A.A.

Ribicoff Federal Building, Room 483, 450 Main Street, Hartford, CT 06103.

DATED: March 28, 2019

Laura Kokotailo
JEROME N. FRANK LEGAL SVSC. ORG.
Yale Law School
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 436-8971