## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                               )
MARK ANTHONY REID; ROBERT       )
WILLIAMS; and LEO FELIX CHARLES,  )
on behalf of themselves and others )
similarly situated,            )
                               )
         Plaintiffs/Petitioners,  )
                               )       Civil Action
         v.                    )       No. 13-30125-PBS
                               )
CHRISTOPHER DONELAN, Sheriff,    )
Franklin County, et al.,        )
                               )
         Defendants/Respondents.  )
_____)

## MEMORANDUM AND ORDER

July 9, 2019

Saris, C.J.

## INTRODUCTION

In this class action, Plaintiffs challenge the constitutionality of mandatory detention of noncitizens with certain criminal convictions who have been detained for more than six months during removal proceedings without the opportunity for a bond hearing pursuant to 8 U.S.C. § 1226(c). Plaintiffs represent a class of "[a]ll individuals who are or will be detained within the Commonwealth of Massachusetts or the State of New Hampshire pursuant to 8 U.S.C. § 1226(c) for over six months and have not been afforded an individualized bond or

1

reasonableness hearing." Reid v. Donelan, No. 13-30125-PBS, 2018 WL 5269992, at *8 (D. Mass. Oct. 23, 2018). Both Plaintiffs and the Government have moved for summary judgment on whether mandatory detention of the class members under 8 U.S.C. § 1226(c) for over six months violates the Fifth Amendment Due Process Clause or the Eighth Amendment Excessive Bail Clause. After hearing, the Court **ALLOWS IN PART** and **DENIES IN PART** Plaintiffs' motion for summary judgment (Docket No. 453) and **ALLOWS IN PART** and **DENIES IN PART** the Government's motion for summary judgment (Docket No. 455).

In summary, the Court holds and declares as follows: First, as the Government agrees, mandatory detention without a bond hearing under 8 U.S.C. § 1226(c) violates due process when an noncitizen's individual circumstances render the detention unreasonably prolonged in relation to its purpose in ensuring the removal of deportable noncitizens with criminal records. Second, the determination of whether mandatory detention without a bond hearing has become unreasonably prolonged is a fact-specific analysis. The most important factor in determining whether detention has become unreasonably prolonged is the length of the detention. The Court rejects Plaintiffs' request that the Court impose a bright-line six-month rule on the ground that it is unsupported by the record and the caselaw. Third, in the unusual instances when mandatory, categorical detention

2

9

lasts for more than one year during agency removal proceedings, excluding any dilatory tactics attributable to the noncitizen, the delay is likely to be unreasonable. This one-year period reflects the Government's own regulations and policies, which aim to complete removal proceedings in no more than nine months, and statistics showing that most removal proceedings take less than one year. However, detention of under a year may be unreasonably prolonged if the matter just lingers on the immigration court or Board of Immigration Appeals ("BIA") docket.

Fourth, a noncitizen subject to mandatory detention without a bond hearing under § 1226(c) must bring a habeas petition in federal court to challenge his detention as unreasonably prolonged. If the court agrees, the individual is entitled to a bond hearing before an immigration judge at which the Government bears the burden of proving that he is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence. If the Government demonstrates that the individual is dangerous or a risk of flight, for example if he has a serious criminal record, he is not entitled to release. Fifth, in making its release determination, the immigration court may not impose excessive bail, must evaluate the individual's ability to pay in setting bond, and must consider alternative conditions of release such as GPS monitoring that

reasonably assure the safety of the community and the individual's future appearances.

## PROCEDURAL HISTORY

The Court assumes familiarity with the complex procedural posture of this case from its October 23, 2018 memorandum and order and only briefly summarizes the relevant background. See Reid, 2018 WL 5269992, at *1-3.

On July 1, 2013, Plaintiff Mark Anthony Reid filed a petition for writ of habeas corpus and complaint for injunctive relief that raised statutory and constitutional claims challenging mandatory detention under § 1226(c). On January 9, 2014, the court (Ponsor, J.) granted Reid's individual habeas petition. Reid v. Donelan, 991 F. Supp. 2d 275, 282 (D. Mass. 2014), aff'd, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018). Following its earlier decision in Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009), the court held that § 1226(c) "include[d] a 'reasonableness' limit on the length of time an individual can be detained without an individualized bond hearing" to avoid due process concerns with indefinite detention, Reid, 991 F. Supp. 2d at 279. The court evaluated two approaches to implementing this reasonableness requirement: an automatic bond hearing once mandatory detention exceeds six months ("six-month rule") or a bond hearing only when mandatory detention has become unreasonable as analyzed on

4

a case-by-case basis ("individualized reasonableness rule").
See id. at 279-82. The court determined that Reid was entitled
to a bond hearing under either approach but suggested it would
adopt the six-month rule. See id. at 279.

On February 10, 2014, the court (Ponsor, J.) certified the
following class under Federal Rule of Civil Procedure 23(b)(2):
"All individuals who are or will be detained within the
Commonwealth of Massachusetts pursuant to 8 U.S.C. § 1226(c) for
over six months and have not been afforded an individualized
bond hearing." Reid v. Donelan, 297 F.R.D. 185, 194 (D. Mass.
2014). Three months later, the court (Ponsor, J.) awarded
summary judgment and a permanent injunction to the class on the
basis of its holding that § 1226(c) includes a requirement for a
bond hearing after six months of mandatory detention.
See Reid v. Donelan, 22 F. Supp. 3d 84, 88-89, 93-94 (D. Mass.
2014), vacated, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11,
2018). The court also held that due process did not require that
the Government bear the burden of proof at the class members'
bond hearings, let alone by clear and convincing evidence. Id.
at 92-93.

On appeal, the First Circuit agreed that "categorical,
mandatory, and indeterminate detention raises severe
constitutional concerns" and that the canon of constitutional
avoidance necessitated reading a bond hearing requirement into

§ 1226(c). <u>Reid v. Donelan</u>, 819 F.3d 486, 494 (1st Cir. 2016),
<u>withdrawn</u>, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018).
Disagreeing with the district court, however, the First Circuit
held that Supreme Court precedent required it to adopt the
individualized reasonableness rule. <u>See</u> <u>id.</u> at 495-98. It
instructed district courts evaluating the reasonableness of
§ 1226(c) detention without a bond hearing to "examine the
presumptions upon which [mandatory detention] was based (such as
brevity and removability)" and consider "the total length of the
detention; the foreseeability of proceedings concluding in the
near future . . .; the period of the detention compared to the
criminal sentence; the promptness (or delay) of the immigration
authorities or the detainee; and the likelihood that the
proceedings will culminate in a final removal order." <u>Id.</u> at
500. Based on this holding, the First Circuit vacated the grant
of summary judgment to Plaintiffs on the class claims. <u>Id.</u> at
501. Since its decision raised questions as to the continued
propriety of class certification, the court declined to address
Plaintiffs' cross-appeal challenging the district court's
holding that due process does not require the Government to bear
the burden of proof at a bond hearing. <u>See</u> <u>id.</u> The court noted,
however, that Plaintiffs raised "a bevy of weighty
constitutional arguments" concerning the procedural protections
required at a bond hearing. <u>Id.</u>

Two months later, the Supreme Court granted certiorari in
Jennings v. Rodriguez, a class action in the Ninth Circuit also
challenging mandatory detention under § 1226(c). See 136 S. Ct.
2489 (2016) (mem.). The First Circuit stayed this lawsuit
pending resolution of Jennings. On February 27, 2018, the
Supreme Court held that the explicit language in § 1226(c)
requiring mandatory detention during removal proceedings barred
courts from invoking the canon of constitutional avoidance to
read an implicit requirement for bond hearings into the statute.
Jennings v. Rodriguez, 138 S. Ct. 830, 846-47 (2018). Because
the Ninth Circuit did not decide if such mandatory detention is
constitutional, the Court declined to rule on that question.
See id. at 851.

Shortly thereafter, the First Circuit withdrew its previous
opinion in this case. See Reid, 2018 WL 4000993, at *1. In a
summary decision, it affirmed the district court's judgment for
Reid individually, vacated the judgment for the class, and
remanded the case for reconsideration of the certification
order. Id. After the case was reassigned on remand, this Court
determined that continued certification of the class was proper.
See Reid, 2018 WL 5269992, at *8. While adoption of the
individualized reasonableness rule would require an analysis of
the circumstances of each class member's detention, the class
still raised the common question of "whether the Due Process

7

Clause or Excessive Bail Clause requires that they at least have the chance to plead their case after six months at an individualized bond or reasonableness hearing." Id. at *5. The Court declined to address whether 8 U.S.C. § 1252(f)(1) would bar a classwide permanent injunction because it could, at a minimum, issue a declaratory judgment establishing class members' right to a bond or reasonableness hearing. Id. at *6. After an opportunity for discovery, both Plaintiffs and the Government now move for summary judgment.

## STATISTICAL BACKGROUND ON § 1226(c) DETENTION

The Court allowed for limited discovery concerning the average and median detention times for individuals subject to mandatory detention under 8 U.S.C. § 1226(c). The parties did not submit any deposition testimony but present dueling statistics about § 1226(c) detention. Plaintiffs state that the median length of detention for released or removed class members (whose detention has ended and who, per the class definition, were detained for at least 180 days) was 363.5 days, with 25% detained for fewer than 253 days and 25% detained for more than 561.5 days. Dkt. No. 460-1 ¶ 8. The two longest periods of detention were 1,541 and 1,291 days. Id. Non-class members detained under § 1226(c) (i.e., for less than 180 days) were held for a median of 98 days, with 25% detained for 60 days or fewer. Id. ¶ 11. Plaintiffs do not provide information on the

average period of § 1226(c) detention overall. They do add,
however, that 27% of class members detained under § 1226(c)
before implementation of Judge Ponsor's 2014 injunction obtained
relief from removal or termination of their removal proceedings.
Dkt. No. 387-5 ¶ 9.

The Government provided the Court with data on the duration
of removal proceedings in the Boston and Hartford Immigration
Courts for individuals detained under § 1226(c) over the past
twenty years. Dkt. No. 415-1 at 9-14. The Government emphasizes
that immigration court proceedings for only 3.8% of aliens
lasted more than a year, but this figure does not account for
the duration of an appeal to the BIA. From the Government's
charts, the Court has calculated that removal proceedings,
including any appeal to the BIA, but not including any petition
for review to the circuit court, lasted longer than one year for
5.8% of aliens detained under § 1226(c) over the past five
years.[1] See id. The median completion time for removal

---

[1] I added together the "total cases not appealed" (second
column of Charts 1 and 2) and the "total appeals" (second column
of Charts 5 and 6). This figure (1302) is the total number of
§ 1226(c) removal cases over the past five years in the Boston
and Hartford Immigration Courts. I then added together the
number of cases that took more than twelve months at the
immigration court level where there was no appeal (fourth column
of Charts 1 and 2) and the number of cases that took more than
twelve months in total where there was an appeal (fourth column
of Charts 5 and 6). This figure (75) represents the number of
§ 1226(c) removal cases over the past five years that lasted
longer than a year within the agency. 75 is 5.8% of 1302.

proceedings at the immigration court level over the past five years was around 40 days in non-appealed cases and three months in cases that were ultimately appealed to the BIA. Id. ¶ 18. In 2018, the median pendency of an appeal to the BIA was around four months. Id. ¶ 24. Nearly 90% of non-appealed cases were completed within six months. Id. ¶ 18. Only 22% of § 1226(c) detainees were granted relief or had their removal proceedings terminated in 2018 in the Boston Immigration Court. Id. ¶ 20.

The parties agree that close to half of the class members that received a bond hearing pursuant to Judge Ponsor's 2014 injunction were given an opportunity for release. Immigration judges set bond for 37 of the 104 class members (36%) and released 13 others under orders of supervision or recognizance (13%). See Dkt. No. 460-1 ¶¶ 14-15; Dkt. No. 467 ¶¶ 5-6.

The Government has also submitted the criminal histories of all of the members of the class. This information reveals that the class is comprised of immigrants with a wide range of criminal backgrounds. Some class members have only one conviction for a nonviolent offense. See, e.g., Dkt. No. 459-1 at 33 (gambling); id. (identity theft). A number have been convicted of drug offenses. See, e.g., id. at 21 (two convictions for drug possession); id. at 22 (one conviction for selling marijuana). Others have lengthy criminal histories with a number of convictions for violent crimes. See, e.g., id. at 10

10

(multiple convictions for burglary and aggravated assault); id.
at 23-24 (two convictions for assault and one for kidnapping).

Mark Reid, the original class representative, was convicted
in 2002 and 2010 of drug trafficking and possession and
conspiracy to commit burglary. U.S. Immigration and Customs
Enforcement ("ICE") detained him on November 13, 2012 and
initiated removal proceedings. At the bond hearing Judge Ponsor
ordered for him in January 2014, an immigration judge released
him on bond. Reid's removal proceedings are still ongoing, as
the BIA has remanded his case back to the immigration judge
three times. The immigration judge determined that Reid has not
committed an aggravated felony, and Reid is currently
challenging whether his convictions are crimes involving moral
turpitude and is claiming eligibility for asylum, withholding of
removal, and relief under the Convention Against Torture. In
March and April 2019, Reid was charged in two separate incidents
with, inter alia, threatening, breach of the peace, and
possession of cocaine.

Robert Williams, another class representative, pled guilty
to drug possession and weapons charges. ICE served Williams with
a Notice to Appear and took him into custody on December 6,
2017. An immigration judge ordered him removed and denied his
application for cancellation of removal, and the BIA dismissed
his appeal. He was removed on October 25, 2018 while his

petition for review of the BIA order was pending at the Second Circuit.

Leo Felix Charles, the final class representative, was convicted of drug trafficking and first-degree assault. After completing his term of imprisonment, he was detained by ICE on February 2, 2018. An immigration judge terminated his deferral of removal under the Convention Against Torture, which he had received in 2003, and the BIA dismissed his appeal. Charles filed a petition for review of the BIA dismissal, and the Second Circuit stayed his removal on December 11, 2018 pending resolution of his petition. ICE released Charles from custody on February 14, 2019.

**DISCUSSION**

## I.   **Statutory Background**

8 U.S.C. § 1226 governs the detention of aliens[2] during removal proceedings. <u>Jennings</u>, 138 S. Ct. at 837. The Government may generally release an alien on bond or conditional parole pending a decision on his removability. 8 U.S.C. § 1226(a). However, 8 U.S.C. § 1226(c) "carves out a statutory category of aliens who may <u>not</u> be released." <u>Jennings</u>, 138 S. Ct. at 837.

---

[2]    In light of the Supreme Court and First Circuit's use of the terms "aliens" for noncitizens and "criminal aliens" for noncitizens with criminal convictions that serve as predicates for mandatory detention under § 1226(c), the Court uses these terms.

Under § 1226(c), the Government "shall take into custody any alien" who is inadmissible or deportable based on a conviction for "certain crimes of moral turpitude, controlled substance offenses, aggravated felonies, firearm offenses, or acts associated with terrorism." 8 U.S.C. § 1226(c)(1) (emphasis added); Gordon v. Lynch, 842 F.3d 66, 67 n.1 (1st Cir. 2016). The crimes that serve as predicates for mandatory detention under § 1226(c) vary widely from simple drug possession, 8 U.S.C. § 1227(a)(2)(B)(i), to violent crimes such as rape and murder, 8 U.S.C. § 1101(a)(43)(A).

A criminal alien is subject to mandatory detention whether or not he is taken into immigration custody as soon as he is released from criminal custody for his underlying offense. See Nielsen v. Preap, 139 S. Ct. 954, 965 (2019).[3] The Government may release such an alien only for witness protection purposes and only if the alien shows he is not a danger to the community or a risk of flight. 8 U.S.C. § 1226(c)(2). The statute does not provide a right to a bond hearing, but an alien who believes he does not have the requisite criminal conviction to qualify for mandatory detention may challenge his classification in Joseph

---

[3]    In Preap, the Supreme Court held that the language of § 1226(c) does not require that the Government take the alien into immigration custody immediately upon release from criminal custody to trigger mandatory detention. 139 S. Ct. at 965. The Court did not address whether this interpretation of § 1226(c) renders the statute unconstitutional. See id. at 972.

hearings. Preap, 139 S. Ct. at 971 n.8 (citing Matter of Joseph,

22 I. & N. Dec. 799 (BIA 1999)).

Congress enacted § 1226(c) in the 1990s in response to the

difficulty the Government faced in removing deportable criminal

aliens. See Demore v. Kim, 538 U.S. 510, 521 (2003). Congress

had evidence that the Government was unable to remove deportable

criminal aliens in large part because of its "broad discretion"

to release aliens on bond during removal proceedings and the

"severe limitations on funding and detention space, which . . .

affected its release determinations." Id. at 519. Between one-

in-five and one-in-four aliens with criminal records released on

bond failed to appear at their removal hearings. See id. at 519-

20. In enacting § 1226(c), Congress determined that "detention

of criminal aliens during their removal proceedings might be the

best way to ensure their successful removal." Id. at 521.

The Supreme Court has decided two cases concerning

§ 1226(c) that are relevant to Plaintiffs' constitutional

claims. First, in Demore v. Kim, the Court rejected an alien's

facial due process challenge to mandatory detention under

§ 1226(c). 538 U.S. at 522-23, 530. The Court emphasized that

"[d]etention during removal proceedings is a constitutionally

permissible part of that process" and Congress may detain aliens

based on statutory presumptions rather than relying on

individualized dangerousness and flight risk determinations for

14

each alien. Id. at 526, 531. As the Court explained, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." Id. at 528. Accordingly, mandatory detention under § 1226(c) was a permissible exercise of Congress's immigration authority to ensure that aliens removable for serious criminal offenses would neither commit new crimes nor abscond before execution of their removal orders. See id. at 517-20, 528.

The Court relied on statistics showing that the vast majority of aliens subject to mandatory detention were detained for no more than five months and noted that the petitioner had been detained himself for only six months. Id. at 529-31. Unfortunately, these statistics turned out to be erroneous. See Jennings, 138 S. Ct at 869 (Breyer, J., dissenting) (explaining that the statistics the Court relied on in Demore were incorrect and that "[d]etention normally lasts twice as long as the Government then said it did"). The Court therefore emphasized that § 1226(c) detention was permissible for "the brief period necessary for . . . removal proceedings." Demore, 538 U.S. at 513; see also id. at 531 (upholding the petitioner's detention "for the limited period of his removal proceedings"). In a concurrence, Justice Kennedy, who provided the fifth vote for the majority, noted that due process might require "an

individualized determination as to [an alien's] risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

Second, as discussed above, the Court held in Jennings v. Rodriguez that § 1226(c) unambiguously "mandates detention of any alien falling within its scope" and permits detention to end "prior to the conclusion of removal proceedings only if the alien is released for witness-protection purposes." 138 S. Ct. at 847 (internal quotation omitted). Because of the statute's clarity, the Court reversed the Ninth Circuit's use of the canon of constitutional avoidance to read an implicit requirement for an individualized bond hearing once an alien is detained pursuant to § 1226(c) for six months. See id. at 836, 839. The Court declined to address whether this interpretation of § 1226(c) violated due process. Id. at 851.

## II.  **Due Process Clause**

In its brief and at the hearing, the Government concedes that mandatory detention under § 1226(c) without a bond hearing violates the Due Process Clause when it becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens. This concession accords with the pre-Jennings decisions of the six circuit courts, including the First Circuit, that read a reasonableness limitation into § 1226(c) via the canon of constitutional avoidance. See Sopo v.

16

U.S. Att'y Gen., 825 F.3d 1199, 1212-13 (11th Cir. 2016) (collecting cases), vacated, 890 F.3d 952 (11th Cir. 2018). While Demore upheld the constitutionality of mandatory detention under § 1226(c) for the brief period of time reasonably necessary to effectuate the removal of a deportable criminal alien, it did not address the lengthy period of detention at issue in this case, which Plaintiffs point out lasted over four years for one class member. Indeed, Justice Kennedy recognized in Demore that due process would require "an individualized determination as to [an alien's] risk of flight and dangerousness if the continued detention became unreasonable or unjustified." 538 U.S. at 532 (Kennedy, J., concurring). And Jennings rejected the use of the canon of constitutional avoidance to read a reasonableness limitation into § 1226(c) because of the statute's unambiguous language, not because prolonged, categorical detention under § 1226(c) does not raise due process concerns. 138 S. Ct. at 836; see also id. at 851 (declining to address the underlying due process question).

This Court therefore holds that mandatory detention under § 1226(c) without a bond hearing violates due process when it becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens. See Reid, 819 F.3d at 498-99.

The more difficult question is how to determine when a criminal alien's mandatory detention becomes unreasonably prolonged. Before Jennings, circuit courts developed two approaches. The Second and Ninth Circuits adopted a six-month rule requiring an automatic bond hearing for any alien detained under § 1226(c) for more than six months. See Lora v. Shanahan, 804 F.3d 601, 616 (2d Cir. 2015), vacated, 138 S. Ct. 1260 (2018); Rodriguez v. Robbins, 715 F.3d 1127, 1138 (9th Cir. 2013), abrogated by Jennings, 138 S. Ct. 830 (2018). The First, Third, Sixth and Eleventh Circuits utilized an individualized reasonableness rule requiring a fact-specific analysis of whether an alien's detention had become unreasonable. See Sopo, 825 F.3d at 1215; Reid, 819 F.3d at 498; Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d Cir. 2011), abrogated by Jennings, 138 S. Ct. 830 (2018); Ly v. Hansen, 351 F.3d 263, 271 (6th Cir. 2003), abrogated by Jennings, 138 S. Ct. 830 (2018).

Plaintiffs urge the Court to adopt the six-month rule and grant each class member a bond hearing, while the Government advocates for the individualized reasonableness rule. In the event the Court adopts the individualized reasonableness rule, Plaintiffs ask the Court to order the Government to provide each class member a "reasonableness hearing" in immigration court at which the Government bears the burden of demonstrating that the alien's continued mandatory detention without a bond hearing is

reasonable. The Government contends that each class member must raise his fact-specific challenge to the reasonableness of his mandatory detention via an individual habeas petition in federal court. Finally, Plaintiffs argue that due process requires a number of procedural protections for criminal aliens who are granted bond hearings, namely that the Government bear the burden of proving dangerousness and/or risk of flight by clear and convincing evidence.

### A.    Six-Month Rule or Individualized Reasonableness Rule?

As an initial matter, Demore implicitly forecloses adoption of the six-month rule. See Reid, 819 F.3d at 497. The alien in Demore spent six months in immigration detention before the district court granted his habeas petition. 538 U.S. at 530-31. Neither the majority opinion nor Justice Kennedy's concurrence expressed any concern that his detention had become unreasonable by virtue of hitting the six-month mark, although the Court was not directly presented with this question. Plaintiffs point out that the statistics concerning the average length of § 1226(c) detention on which the Court relied were erroneous and that "[d]etention normally lasts twice as long as the Government then said it did," Jennings, 138 S. Ct at 869 (Breyer, J., dissenting), but they do not explain why this fact renders the six-month rule required as a matter of due process. Plaintiffs assert that the median length of detention for released or

removed class members (who, per the class definition, were
detained for at least 180 days) was 363.5 days, while non-class
members detained under § 1226(c) (i.e., for less than 180 days)
were detained for a median of 98 days. Dkt. No. 460-1 ¶¶ 8, 11.
These data do not show that six months is the outer limit of a
reasonable period for the Government to complete removal
proceedings.

The six-month rule is also inconsistent with the Supreme
Court's opinion in Jennings. The Supreme Court expressly
rejected the six-month rule as a matter of statutory
interpretation, noting that "nothing in [§ 1226(c)] imposes a 6-
month time limit on detention without the possibility of bail."
Jennings, 138 S. Ct. at 851. The Court also emphasized that "due
process is flexible, . . . and it calls for such procedural
protections as the particular situation demands." Id. at 852
(quotation omitted). An alien's mandatory detention without a
bond hearing becomes unreasonably prolonged when it no longer
reasonably serves to ensure the swift removal of a deportable
criminal alien. This determination is inherently fact-specific.
Cf. Barker v. Wingo, 407 U.S. 514, 521 (1972) (recognizing in
the speedy trial context that courts "cannot definitely say how
long is too long in a system where justice is supposed to be
swift but deliberate"). Section 1226(c) detention does not
necessarily stop reasonably serving its statutory purpose at six

months. The six-month rule has practical advantages in avoiding inconsistent and burdensome individual determinations, but it does not account for the fact-specific nature of the due process inquiry. See Reid, 819 F.3d at 497-98.

Since the Supreme Court decided Jennings in 2018, the vast majority of district courts have adopted the individualized reasonableness rule as a matter of due process. See, e.g., Cabral v. Decker, 331 F. Supp. 3d 255, 260 (S.D.N.Y. 2018); Dryden v. Green, 321 F. Supp. 3d 496, 502 (D.N.J. 2018). The Court has identified only one decision that has utilized the six-month rule post-Jennings. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 U.S. Dist. LEXIS 4228, at *18 (N.D. Cal. Jan. 7, 2019).

The six-month rule fails to account for actions taken by an alien that may extend his pre-removal detention. The Government reports that the median completion time of removal proceedings in cases appealed to the BIA in 2018 was just under nine months. See Dkt. No. 415-1 ¶ 24. As the Court explained in Demore, § 1226(c) detention does not violate due process simply by virtue of the length of time it takes for an alien to effectuate an appeal. See 538 U.S. at 530 n.14. A bright-line six-month rule would effectively grant a bond hearing to aliens who appealed to the BIA even where those proceedings were moving forward in a timely manner. See Reid, 819 F.3d at 500 n.4

21

(recognizing that mandatory detention does not become unreasonable during the pendency of a promptly adjudicated appeal by the alien but explaining that "there may come a time when promptness lapses"). The six-month rule also does not account for dilatory tactics by the alien that extend removal proceedings. Plaintiffs argue that an immigration court could consider such tactics at a bond hearing, but the only relevant considerations in determining the suitability of bond are dangerousness and risk of flight. See In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006), abrogated on other grounds by Pensamiento v. McDonald, 315 F. Supp. 3d 684 (D. Mass. 2018).

Zadvydas v. Davis, 533 U.S. 678 (2001), does not compel, or even support, the conclusion that due process requires an automatic bond hearing after six months of mandatory detention under § 1226(c). In Zadvydas, the Supreme Court addressed whether 8 U.S.C. § 1231(a)(6) authorized the Government to detain an alien subject to a final order of removal for more than the ninety-day statutory period to secure his removal. 533 U.S. at 682. Because "indefinite detention of [such] aliens . . . would raise serious constitutional concerns" if they were never removed, the Court read § 1231(a)(6) to "contain an implicit 'reasonable time' limitation." Id. "[T]o guide lower court determinations," the Court adopted six months after entry of the final order of removal as the "presumptively reasonable

period of detention." Id. at 701. After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

The Zadvydas Court did not simply order release (or a bond hearing) for any alien detained under § 1231(a)(6) for six months after entry of a removal order. Instead, the Court required the Government to present evidence after six months of post-removal-order detention that removal was still reasonably foreseeable for the alien being detained, i.e., that detention still reasonably served the purpose of the statute. See id. Zadvydas therefore undermines the notion that the reasonableness of immigration detention can be determined by a bright-line rule without some individualized analysis of each alien's circumstances.

Furthermore, the question at issue here, namely whether unreasonably prolonged, categorical detention during removal proceedings violates due process, presents different considerations than the issue in Zadvydas. See Demore, 538 U.S. at 527 (recognizing that the circumstances in Zadvydas were "materially different" from § 1226(c) detention). "[P]ost-removal-period detention, unlike detention pending a determination of removability . . . , has no obvious termination

point." Zadvydas, 533 U.S. at 697; see also Demore, 538 U.S. at 529 (explaining that § 1226(c) detention has "a definite termination point"). In Zadvydas, the Supreme Court adopted a bright-line presumption to give some metric to determine "how much longer towards eternity could be considered 'reasonable.'" Reid, 819 F.3d at 496. Removal proceedings have a reasonably foreseeable endpoint.

Plaintiffs contend that mandatory detention becomes unreasonable after six months because an immigration court can continue to detain any alien found to be dangerous or a risk of flight at a bond hearing, which protects the Government's interests in flight and danger prevention. Under this reasoning, mandatory detention under § 1226(c) would violate due process from the start, a conclusion the Supreme Court rejected in Demore. The Government need not "employ the least burdensome means to accomplish its goal" of ensuring the removal of deportable criminal aliens and may rely on "reasonable presumptions and generic rules" to determine whom to detain. Demore, 538 U.S. at 526, 528 (quotation omitted).

Plaintiffs challenge the congressional presumption that criminal aliens are likely to be dangerous or risks of flight, but they have presented no evidence on point. And Congress implemented § 1226(c) based on statistics showing that released

criminal aliens were committing new offenses and absconding. See id. at 518-20.

Plaintiffs also point to the Sixth Amendment's requirement of a jury trial for any crime punishable by a term of imprisonment of more than six months. See Baldwin v. New York, 399 U.S. 66, 69 (1970). The Supreme Court adopted this six-month rule based on "the existing laws and practices in the Nation" with regard to jury trials. Id. at 70 (quoting Duncan v. Louisiana, 391 U.S. 145, 161 (1968)). Plaintiffs provide no reason why this historically based six-month cutoff should apply to the materially different context of immigration detention, especially given Congress's unique authority to legislate with regard to aliens. See Demore, 538 U.S. at 521. And while Zadvydas imposed a version of the six-month rule based on its historical understanding "that Congress previously doubted the constitutionality of detention for more than six months," 533 U.S. at 701 (citing United States v. Witkovich, 353 U.S. 194 (1957)), the case it cited for this proposition also involved post-removal-order detention, see Witkovich, 353 U.S. at 194. Plaintiffs present no historical justification for the six-month rule in the context of detention pending removal proceedings.

For these reasons, the Court holds that mandatory detention under § 1226(c) without a bond hearing violates due process when an alien's individual circumstances render the detention

unreasonably prolonged in relation to its purpose in ensuring
the removal of deportable criminal aliens. Because mandatory
detention under § 1226(c) "is premised upon the alien's <u>presumed</u>
deportability and the government's <u>presumed</u> ability to reach the
removal decision within a brief period of time," <u>Reid</u>, 819 F.3d
at 499 (citing <u>Demore</u>, 538 U.S. at 531 (Kennedy, J.,
concurring)), the reasonableness of a criminal alien's mandatory
detention depends on the strength of these presumptions, <u>id.</u> at
500. "As the actualization of these presumptions grows weaker or
more attenuated, the categorical nature of the detention will
become increasingly unreasonable." <u>Id.</u> The First Circuit held
that the following nonexclusive factors are relevant in
determining the reasonableness of continued mandatory detention:

> the total length of the detention; the foreseeability
> of proceedings concluding in the near future (or the
> likely duration of future detention); the period of
> the detention compared to the criminal sentence; the
> promptness (or delay) of the immigration authorities
> or the detainee; and the likelihood that the
> proceedings will culminate in a final removal order.

<u>Id.</u>

The total length of the detention is the most important
factor. <u>See</u> <u>Sopo</u>, 825 F.3d at 1217 (describing this factor as
"critical"). To provide guidance in determining the
reasonableness of prolonged mandatory detention under § 1226(c),
the Court concludes, based on the record and the Government's
own policies, that such detention is likely to be unreasonable

if it lasts for more than one year during removal proceedings
before the agency, excluding any delays due to the alien's
dilatory tactics.[4] See id. ("[A] criminal alien's detention
without a bond hearing may often become unreasonable by the one-
year mark . . . ."); Chavez-Alvarez v. Warden York Cty. Prison,
783 F.3d 469, 476-78 (3d Cir. 2015) (recognizing that mandatory
detention under § 1226(c) becomes unjustified around the one-
year mark unless the alien engages in delay tactics), abrogated
by Jennings, 138 S. Ct. 830 (2018). The Executive Office for
Immigration Review ("EOIR") has set a goal that immigration
courts complete 85% of removal cases involving detained aliens
within sixty days of the filing of a Notice to Appear, James R.
McHenry III, Director of EOIR, Memorandum on Case Priorities and
Immigration Court Performance Measures 3 (2018),
https://www.justice.gov/eoir/page/file/1026721/download, and an
agency regulation requires the Board of Immigration Appeals
("BIA") to adjudicate appeals from the immigration court within
six months absent "exigent circumstances," 8 C.F.R.
§ 1003.1(e)(8)(i). It is reasonable to expect EOIR to complete
removal proceedings within one year for most aliens. In fact,
the Government's data show that, over the past five years, the

---

[4]     The parties do not specifically address how the period of
time while a petition for review with a circuit court is pending
should factor into the reasonableness analysis. The Court
therefore does not take a position on this issue.

agency completed removal proceedings for all but 5.8% of aliens detained under § 1226(c) within a year.[5]

This one-year period is not a bright line. Periods of detention directly attributable to an alien's dilatory tactics should not count in determining whether detention has exceeded the one-year mark. The Court also does not exclude the possibility that an alien's individual circumstances would render mandatory detention of less than one year unreasonable if the Government unreasonably delays or the case languishes on a docket. The one-year period simply recognizes that, based on EOIR's own goals and statistics, the agency should reasonably be able to complete removal proceedings for most aliens within one year.

---

[5]   Despite a six-month opportunity for discovery about the length of § 1226(c) detention, the data the parties provide is far from helpful. Plaintiffs present separate statistics for class members and non-class members but do not aggregate data for all § 1226(c) detainees. The Government provides statistics on the length of immigration court proceedings and BIA appeals separately and fails to explain how to aggregate the two periods to determine the median and average length of the entire agency proceeding. The data both Plaintiffs and the Government present, however, do make clear that removal proceedings that last longer than one year at the agency level are outliers. See Dkt. No. 460-1 ¶ 8 (explaining Plaintiffs' calculation that the median length of detention for released or removed class members (whose detention has ended and who, per the class definition, were detained for at least 180 days) was 363.5 days); Dkt. No. 467 ¶ 8 (noting the Government's calculation that removal proceedings for only 3.8% of § 1226(c) detainees took more than one year in 2013 and 2014 at the immigration court level in Boston and Hartford Immigration Courts).

The Court's refusal to import the six-month rule from Zadvydas into the context of mandatory detention under § 1226(c) does not prevent the adoption of a presumption that mandatory detention exceeding one year is unreasonable. As noted above, the six-month rule in Zadvydas provided a metric to determine how long toward an unforeseeable endpoint (the possible execution of a final removal order) could be considered reasonable. See Reid, 819 F.3d at 496. Under Zadvydas, an alien subject to a final order of removal cannot challenge his detention until the six-month period has elapsed. See 533 U.S. at 701. By contrast, an alien subject to mandatory detention under § 1226(c) may bring an individual habeas petition at any point. The one-year presumption simply acknowledges that, given EOIR's own goals and statistics, detention for longer than a year is likely to be unreasonably prolonged.

Once an alien's mandatory detention has become unreasonably prolonged in violation of due process, he is entitled to a bond hearing before an immigration judge, not immediate release. At the bond hearing, an immigration judge will assess the alien's dangerousness and risk of flight. The Court recognizes the Government's concern about the extensive criminal records of many members of the class and emphasizes that an immigration judge is under no obligation to release a criminal alien deemed to be dangerous or a risk of flight under the burden and

29

standard of proof described below. Indeed, when Judge Ponsor's 2014 injunction was in effect, more than half of the class members were denied bond. Aliens convicted of certain relatively minor, nonviolent offenses (like simple drug possession or gambling), however, are subject to mandatory detention under § 1226(c), and just under half of the class members granted bond hearings were released on supervision or offered bond. Already tasked with holding bond hearings for aliens detained under § 1226(a), immigration judges are capable of determining which criminal aliens are dangerous or risks of flight.

### B.   Reasonableness Hearings or Individual Habeas Petitions?

As an alternative to the six-month rule, Plaintiffs argue that due process requires a "reasonableness hearing" before the immigration court for any criminal alien detained under § 1226(c) for more than six months at which the Government must bear the burden of showing that the alien's continued categorical detention remains reasonable. If the immigration court determines that mandatory detention has become unreasonable, Plaintiffs submit, it must hold a bond hearing. Plaintiffs' suggestion for reasonableness hearings before the immigration court is derived from a footnote in the First Circuit's withdrawn opinion in this case. See Reid, 819 F.3d at 502 n.5 ("[W]e have no occasion to consider here whether another

petitioner might be able to challenge the individualized reasonableness of his continued categorical detention before the immigration courts rather than the federal courts."). The Government responds that the proper mechanism for a criminal alien to challenge his mandatory detention as unreasonable is via an individual habeas petition in federal court. I agree.

The Government argues that providing every alien detained under § 1226(c) for six months with a reasonableness hearing would overwhelm the already overburdened immigration courts. Moreover, the Government raises a more fundamental concern: the immigration court's lack of jurisdiction to adjudicate the constitutional question of when mandatory detention under § 1226(c) becomes unreasonable. Administrative agencies generally do not adjudicate questions concerning the constitutionality of congressional statutes. See Johnson v. Robison, 415 U.S. 361, 368 (1974). Accordingly, "it is settled that the immigration judge and [the BIA] lack jurisdiction to rule upon the constitutionality of the" Immigration and Nationality Act ("INA"). Matter of C-, 20 I. & N. Dec. 529, 532 (BIA 1992); see also Hinds v. Lynch, 790 F.3d 259, 263 n.4 (1st Cir. 2015) ("The BIA is without jurisdiction to adjudicate purely constitutional issues . . . ." (quotation omitted)). Determining that a criminal alien's mandatory detention has become unreasonable under the Due Process Clause is the

31

equivalent of holding that § 1226(c) is unconstitutional as applied to that alien, a constitutional judgment about a federal statute that immigration courts and the BIA cannot adjudicate. While requiring federal courts to adjudicate individual habeas petitions does impose a burden on the judiciary, "federal courts have the institutional competence to make fact-specific determinations, and they have great experience applying reasonableness standards." Sopo, 825 F.3d at 1217.

The Court's holding that the proper mechanism for a criminal alien to challenge his mandatory detention without a bond hearing is via an individual habeas petition does not mean that the Government has no responsibility to ensure that criminal aliens are not subject to unreasonably prolonged mandatory detention. Indeed, the Department of Justice issued regulations establishing a review process for aliens detained under 8 U.S.C. § 1231(a)(6) after Zadvydas. See 8 C.F.R. §§ 241.4, 241.13-14; see also Bonitto v. Bureau of Immigration & Customs Enf't, 547 F. Supp. 2d 747, 752-53 (S.D. Tex. 2008) (explaining the "Post Order Custody Review" procedures and process for an alien detained under § 1231(a)(6) to request release).

While the Court urges ICE to establish similar procedures for ensuring criminal aliens are not subject to unreasonably prolonged mandatory detention without a bond hearing, the

Government has explained that no such administrative procedures currently exist. An individual criminal alien must therefore bring an individual habeas petition if he believes his detention has become unreasonably prolonged.

## C.    Procedural Protections at Bond Hearings

For a criminal alien whose mandatory detention has become unreasonable, thus entitling him to a bond hearing before the immigration court, Plaintiffs argue that due process requires that the Government prove the alien's dangerousness or risk of flight by clear and convincing evidence. The Government claims Plaintiffs are barred from raising this argument by the doctrines of collateral estoppel and the law of the case because the court (Ponsor, J.) held in its 2014 judgment for the class in this case that the alien should bear the burden of proof. See Reid, 22 F. Supp. 3d at 92-93. However, "it is hornbook law that '[a] vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case.'" Jackson v. Coalter, 337 F.3d 74, 85 (1st Cir. 2003) (alteration in original) (quoting No E.-W. Highway Comm., Inc. v. Chandler, 767 F.2d 21, 24 (1st Cir. 1985)). The First Circuit vacated the 2014 judgment for the class, Reid, 2018 WL 4000993, at *1, so Plaintiffs may relitigate the burden of proof issue.

1.  *Burden of Proof*

In Pensamiento v. McDonald, this Court held that due process requires that the Government bear the burden of proof at bond hearings for non-criminal aliens detained under § 1226(a). 315 F. Supp. 3d 684, 692 (D. Mass. 2018), appeal dismissed, No. 18-1691 (1st Cir. Dec. 26, 2018). Plaintiffs ask the Court to extend this holding to bond hearings provided to criminal aliens detained under § 1226(c) when mandatory detention becomes unreasonable. Many courts have done so, both before Jennings as a matter of statutory interpretation, see, e.g., Lora, 804 F.3d at 616; Diop, 656 F.3d at 235, and after Jennings as a matter of due process, see, e.g., De Oliveira Viegas v. Green, 370 F. Supp. 3d 443, 449 (D.N.J. 2019); Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 239-40 (W.D.N.Y. 2019); Portillo v. Hott, 322 F. Supp. 3d 698, 709 (E.D. Va. 2018). The Court agrees that the status of § 1226(c) detainees as criminal aliens does not alter the conclusion that due process requires that the burden of proof fall on the Government at their bond hearings.

Section § 1226(c) embodies a reasonable presumption within Congress's authority that removable criminal aliens are more likely than other removable aliens to be risks of flight or dangerous. See Demore, 538 U.S. at 526. As the Government concedes, though, once a criminal alien's detention becomes unreasonably prolonged in violation of due process, this

presumption no longer mandates categorical detention. The alien is then held pursuant to the Government's discretionary authority to detain during removal proceedings under § 1226(a).[6] And when "the sole procedural protections available to the alien are found in administrative proceedings" in which the alien bears the burden of proof without significant judicial review, prolonged detention violates due process. Zadvydas, 533 U.S. at 692; see also Foucha v. Louisiana, 504 U.S. 71, 81-82 (1992) (finding unconstitutional a state statute placing the burden of proof to justify release on an individual civilly committed after being found not guilty by reason of insanity).

The Government points to language in both Jennings and Preap that it claims requires that the alien bear the burden of proof. See Preap, 139 S. Ct. at 959-60 (explaining that agency precedent places the burden of proof on the alien at a § 1226(a)

---

[6] Congress has enacted a rebuttable presumption that criminal defendants facing certain serious charges or with certain prior convictions are subject to pretrial detention. See United States v. O'Brien, 895 F.2d 810, 814-15 (1st Cir. 1990) (citing 18 U.S.C. § 3142(e)). A defendant bears the initial burden of production to introduce some evidence that there are conditions that will reasonably assure his appearance. Id. at 815. If he satisfies this burden, the court may still consider the congressional presumption in favor of detention in deciding whether the Government has met its ultimate burden to justify detention. Id. The parties do not address the analogous question of what weight an immigration court should give to the congressional presumption codified in § 1226(c) at a bond hearing for a criminal alien whose mandatory detention becomes unreasonably prolonged in violation of due process.

bond hearing); _Jennings_, 138 S. Ct. at 847-48 (rejecting the

Ninth Circuit's allocation of the burden of proof to the

Government as a matter of statutory interpretation because

"[n]othing in § 1226(a)'s text . . . even remotely supports the

imposition of" this requirement). Both decisions addressed

questions of statutory interpretation involving § 1226(c), and

neither addressed whether due process requires the Government to

bear the burden of proof. These decisions simply reflect how

agency precedent currently allocates the burden of proof.[7]

Neither _Jennings_ nor _Preap_ throws this Court's due process

holding in _Pensamiento_ into doubt. _See_ _Portillo_, 322 F. Supp. 3d

at 709 n.9 (rejecting the argument that _Jennings_ "ma[de] clear

that the burden must remain with the alien" because the Court

"focused on the protections required by the statute and did not

reach the constitutional question"); _Cortez v. Sessions_, 318 F.

Supp. 3d 1134, 1146-47 (N.D. Cal. 2018) (declining to find that

---

[7]     Section 1226 does not place the burden of proof on the
immigrant and is silent on the subject of the allocation of the
burden and the standard of proof to be applied. Before 1999, the
BIA placed the burden of proof at a bond hearing on the
Government to show that the alien was dangerous or a risk of
flight. _See_ _Matter of Patel_, 15 I. & N. Dec. 666, 666 (BIA
1999). In 1999, after the enactment of the Antiterrorism and
Effective Death Penalty Act and the Illegal Immigration Reform
and Immigration Responsibility Act, the BIA flipped the burden
and held that an alien detained under § 1226(a) bore the burden
of proof at a bond hearing. _See_ _In re Adeniji_, 22 I. & N. Dec.
1102, 1113 (BIA 1999); _see also_ Mary Holper, _The Beast of Burden_
_in Immigration Bond Hearings_, 67 Case Western Res. L. Rev. 75,
90-95 (2016) (explaining this shift).

Jennings reversed the Ninth Circuit's earlier determination in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), as to the burden and standard of proof at a bond hearing); see also Guerrero-Sanchez v. Warden York Cty. Prison, 905 F.3d 208, 224 n.12 (3d Cir. 2018) (placing the burden of proof on the Government at a bond hearing for an alien detained under 8 U.S.C. § 1231(a)(6) post-Jennings).

Nor does Zadvydas suggest that a criminal alien should bear the burden of proof at a bond hearing. The Supreme Court did place the initial burden on a detained alien subject to a final removal order to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to justify release from detention. Zadvydas, 533 U.S. at 701. But the ultimate burden falls on the Government to provide "evidence sufficient to rebut that showing." Id. While Zadvydas did not address the burden of proof at a bond hearing, it is consistent with placing the burden of proof on the Government at a criminal alien's bond hearing after the alien demonstrates that his detention has become unreasonably prolonged. See Pensamiento, 315 F. Supp. 3d at 692.

Finally, the Government points out that § 1226(c)(2), which permits the release of a criminal alien for witness protection purposes, places the burden on the alien to prove that he is not dangerous or a risk of flight. See 8 U.S.C. § 1226(c)(2). But

§ 1226(c)(2) codifies an exception to a reasonable and constitutional period of mandatory detention.[8] The provision is not relevant in determining the constitutionally required burden of proof in the far different context of mandatory detention that has become unreasonably prolonged under the Due Process Clause.

    *2.   Standard of Proof*

Plaintiffs argue that due process requires that the Government justify continued detention of a criminal alien at a bond hearing with clear and convincing evidence of his dangerousness and/or risk of flight. They point to a slew of circuit and district court cases imposing a clear and convincing standard of proof on the Government both before and after Jennings and for bond hearings for aliens held under a range of immigration detention statutes. See, e.g., Guerrero-Sanchez, 905 F.3d at 224 n.12; Lora, 804 F.3d at 616; Rodriguez, 715 F.3d at 1135; Calderon-Rodriguez v. Wilcox, 374 F. Supp. 3d 1024, 1032 n.8 (W.D. Wash. 2019); Darko v. Sessions, 342 F. Supp. 3d 429, 435-36 (S.D.N.Y. 2018). In Pensamiento, this Court declined to adopt the clear and convincing standard but did not rule out the possibility that it is required by due process. See 315 F. Supp. 3d at 693.

---

[8]    The Court expresses no opinion on whether the allocation of the burden of proof in § 1226(c)(2) is constitutional.

The Court holds that due process requires the Government to prove an alien's dangerousness by clear and convincing evidence at a bond hearing. The Supreme Court has "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." Zadvydas, 533 U.S. at 691-92. As such, civil commitment of a mentally ill individual requires proof by clear and convincing evidence of his dangerousness to himself or others. See Foucha, 504 U.S. at 80; Addington v. Texas, 441 U.S. 418, 431-32 (1979). The fact that immigration detention aims to ensure the removal of deportable aliens does not justify a lower standard of proof for dangerousness because "civil commitment for any purpose constitutes a significant deprivation of liberty" that requires due process protection. Singh, 638 F.3d at 1204 (emphasis in original) (quoting Addington, 441 U.S. at 425). While due process does not necessarily entitle aliens to the same rights as citizens, see Demore, 538 U.S. at 522, the Supreme Court in Zadvydas indicated that the requirement for strong procedural protections before an individual is detained for dangerousness applies to citizens and aliens alike, see 533 U.S. at 690-92.

But the Court is not persuaded that due process requires that the Government prove an alien's risk of flight by more than a preponderance of the evidence. Although the Supreme Court has

imposed a clear and convincing standard in a number of civil contexts, see, e.g., Addington, 441 U.S. at 431-32 (civil commitment for the mentally ill); Woodby v. INS, 385 U.S. 276, 286 (1966) (deportation); Chaunt v. United States, 364 U.S. 350, 353 (1960) (denaturalization), none of these contexts involves considerations of risk of flight. The most comparable context is criminal pretrial detention, and under the Bail Reform Act of 1984, which the Supreme Court upheld in United States v. Salerno, 481 U.S. 739, 755 (1987), the Government must only prove a defendant's risk of flight by a preponderance of the evidence to justify his detention, see United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991). An alien in removal proceedings is not entitled to more procedural protections under the Due Process Clause than a pretrial criminal detainee. Cf. Demore, 538 U.S. at 522 ("Congress may make rules as to aliens that would be unacceptable if applied to citizens."). Given the reasonable concern about risk of flight that prompted Congress to enact § 1226(c), see id. at 517-21, due process requires only that the Government prove an alien's risk of flight by a preponderance of the evidence to justify his detention at a bond hearing.

　　　　3.　 *Alternatives to Detention and Ability to Pay*

Finally, due process requires that an immigration court consider both an alien's ability to pay in setting the amount of

bond and alternative conditions of release such as GPS
monitoring that reasonably assure the safety of the community
and the criminal alien's future appearances.[9] See Hernandez v.
Sessions, 872 F.3d 976, 1000 (9th Cir. 2017) (requiring
consideration of these factors for non-criminal aliens detained
under 8 U.S.C. § 1226(a)); Abdi v. Nielsen, 287 F. Supp. 3d 327,
338 (W.D.N.Y. 2018) (same for arriving aliens detained under 8
U.S.C. § 1225(b)). This requirement guarantees that the decision
to continue to detain a criminal alien is reasonably related to
the Government's interest in protecting the public and assuring
appearances at future proceedings. See Hernandez, 872 F.3d at
990. The Government contends that immigration judges do not have
the authority to consider alternative conditions of release, but
the BIA has concluded otherwise. See Matter of Garcia-Garcia, 25
I. & N. Dec. 93, 98 (BIA 2009) (citing 8 U.S.C. § 1226(a)(2)(A)
and 8 C.F.R. § 1236.1(d)(1)).

### III. **Excessive Bail Clause**

Plaintiffs also argue that mandatory detention under
§ 1226(c) violates the Excessive Bail Clause of the Eighth
Amendment. See U.S. Const. amend. VIII ("Excessive bail shall
not be required . . . ."). The Excessive Bail Clause applies to

---

[9]    8 U.S.C. § 1226(a) authorizes an immigration court to
release an alien on "bond of at least $1,500" or "conditional
parole." 8 U.S.C. § 1226(a)(2). Plaintiffs do not challenge the
statutory minimum bond amount.

civil immigration proceedings. See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 263 n.3 (1989) (stating that the Excessive Bail Clause is implicated by any "direct government restraint on personal liberty, be it in a criminal case or in a civil deportation proceeding"); Carlson v. Landon, 342 U.S. 524, 544-46 (1952) (assuming that the Excessive Bail Clause applied to deportation detention and ruling on the merits of detained aliens' excessive bail claims). It prohibits excessive bail in those cases where bail is granted. See Salerno, 481 U.S. at 752; Carlson, 342 U.S. at 545. Thus, if a criminal alien's mandatory detention becomes unreasonably prolonged and an immigration court holds a bond hearing, the Eighth Amendment prohibits setting bond in an amount greater than necessary to secure the alien's future appearances. See Salerno, 481 U.S. at 754.

Nonetheless, the Excessive Bail Clause does not guarantee bail in all cases. See id. at 752; Carlson, 342 U.S. at 545; see also Bolante v. Keisler, 506 F.3d 618, 619 (7th Cir. 2007) ("[T]he Court has never held that persons detained in civil proceedings, such as deportation . . . proceedings, are entitled to release on bail."). Congress may "defin[e] the classes of cases in which bail shall be allowed." Carlson, 342 U.S. at 545. Accordingly, mandatory detention for certain criminal aliens under § 1226(c) does not violate the Excessive Bail Clause.

See Marogi v. Jenifer, 126 F. Supp. 2d 1056, 1061-62 (E.D. Mich. 2000); Avramenkov v. INS, 99 F. Supp. 2d 210, 218 (D. Conn. 2000). The Due Process Clause, not the Excessive Bail Clause, imposes limits on Congress's ability to detain aliens without an individualized hearing as part of the removal process. See Zadvydas, 533 U.S. at 690-96 (explaining the due process concerns raised by potentially indefinite detention of an alien subject to a final order of removal); cf. Lopez-Valenzuela v. Arpaio, 770 F.3d 772, 792 n.16 (9th Cir. 2014) (explaining that "bail-denial schemes" in the criminal context are properly evaluated under the Due Process Clause, not the Excessive Bail Clause).

## IV.   **Remedy**

Plaintiffs ask the Court to issue a classwide injunction ordering the Government to provide all class members, who by definition have been detained at least six months, with either a bond hearing or a reasonableness hearing. Having concluded that due process requires a federal court to determine via an individual habeas petition that a criminal alien's mandatory detention under § 1226(c) has become unreasonable based on his particular circumstances before he is entitled to a bond hearing, the Court declines to issue either injunction Plaintiffs request. While certain class members whose mandatory detention has become unreasonable would be entitled to

43

injunctions ordering the Government to provide them with a bond hearing, Federal Rule of Civil Procedure 23(b)(2), under which the class is certified, does not allow for individualized injunctions. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011) ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."). The Court therefore need not address whether 8 U.S.C. § 1252(f)(1) prohibits a classwide permanent injunction ordering the Government to provide bond hearings for each class member.

The Government argues that § 1252(f)(1) deprives the Court of jurisdiction to issue even a classwide declaratory judgment concerning the rights of class members to a bond hearing. The Court already rejected this argument in the October 23, 2018 memorandum and order. See Reid, 2018 WL 5269992, at *6-7. Three justices in Preap subsequently stated that a district court has jurisdiction to entertain a request for declaratory relief despite § 1252(f)(1), 139 S. Ct. at 962 (opinion of Alito, J.), adding their voices to the three other justices who said the same in dissent in Jennings, 138 S. Ct. at 875 (Breyer, J., dissenting). Section 1252(f)(1) does not bar declaratory relief.

Finally, the Court may issue a classwide permanent injunction ordering the Government to follow the procedural rules mandated by due process at a bond hearing. These rules

apply to any class member who is granted a bond hearing without regard to his individual circumstances. Section 1252(f)(1), which strips courts of jurisdiction "to enjoin or restrain the operation of" certain provisions of the INA on a classwide basis, 8 U.S.C. § 1252(f)(1), does not bar this injunction because the INA is silent on the procedural rules for bond hearings, see Pensamiento, 315 F. Supp. 3d at 689. This injunction abrogates agency precedent imposing the burden of proof on the alien at a bond hearing, but it in no way enjoins or restrains the operation of the detention statute.

A court may issue a permanent injunction if "(1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction." Healey v. Spencer, 765 F.3d 65, 74 (1st Cir. 2014) (quotation omitted). As discussed above, due process requires certain procedural protections at bond hearings. In the absence of an injunction, class members risk irreparable harm from the loss of their liberty. See Ferrara v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) ("Obviously, the loss of liberty is a . . . severe form of irreparable injury."). Since this injunction does not require bond hearings for each class member,

45

it imposes minimal burden on the Government. Finally, the public
interest supports requiring the Government to obey the
Constitution in its administration of immigration detention. See
Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005)
("[P]ublic interest concerns are implicated when a
constitutional right has been violated, because all citizens
have a stake in upholding the Constitution."). In opposing an
injunction, the Government again emphasizes its concerns about
criminal aliens' dangerousness and flight risk, but the
procedural protections mandated by due process simply ensure
that the Government detains only aliens who are in fact
dangerous or flight risks. Plaintiffs have therefore met the
four prerequisites for a permanent injunction ordering certain
procedural protections at their bond hearings.

## ORDER

For the foregoing reasons, Plaintiffs' motion for summary judgment is **ALLOWED IN PART** and **DENIED IN PART** (Docket No. 453), and the Government's motion for summary judgment is **ALLOWED IN PART** and **DENIED IN PART** (Docket No. 455).

The Court denies Plaintiffs' request for a permanent injunction ordering the Government to provide class members with bond or reasonableness hearings. The Court also denies Plaintiffs' request for a declaratory judgment insofar as they seek a declaration that due process requires an automatic bond hearing or reasonableness hearing for all criminal aliens detained under § 1226(c) for more than six months.

## DECLARATORY JUDGMENT

The Court declares that mandatory detention without a bond hearing under 8 U.S.C. § 1226(c) violates due process when the detention becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens. The most important factor in determining the reasonableness of a criminal alien's mandatory detention is the length of the detention. Mandatory detention without a bond hearing is likely to be unreasonable if it lasts for more than one year, excluding any delays due to the alien's dilatory tactics. A criminal alien subject to mandatory detention without a bond hearing under § 1226(c) must bring a habeas petition in federal court to

challenge his detention as unreasonably prolonged. If the court agrees, the alien is entitled to a bond hearing before an immigration judge.

## PERMANENT INJUNCTION

For any bond hearing held for a class member, the Court orders that the immigration court require the Government to prove that the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence. The immigration court may not impose excessive bail, must evaluate the alien's ability to pay in setting bond, and must consider alternative conditions of release such as GPS monitoring that reasonably assure the safety of the community and the alien's future appearances.

The Court orders that this declaratory judgment and permanent injunction be provided to all members of the class within thirty days and shall be provided to any new members of the class when their § 1226(c) detention exceeds six months. SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge